1  Ronald Richards (CA Bar No. 176246)
   ron@ronaldrichards.com
2  Morani Stelmach (CA Bar No. 296670)
   morani@ronadlrichards.com
3  Law Offices of Ronald Richards & Associates, APC
   P.O. Box 11480
4  Beverly Hills, California 90213
   Telephone:  310.556.1001
5  Facsimile:  310.277.3325

6  Special Litigation Counsel for Elissa D. Miller, Chapter 7 Trustee

7

8  **UNITED STATES BANKRUPTCY COURT**

9  **CENTRAL DISTRICT OF CALIFORNIA**

10  **LOS ANGELES DIVISION**

| In re | Case No. 2:20-bk-21022-BR |
|---|---|
| GIRARDI KEESE, | Chapter 7 |
|      Debtor. | |

| ELISSA D. MILLER, Chapter 7 Trustee, | Adv. Proc. No. 2:21-ap-01155-BR |
|---|---|
|      Plaintiff, | **TRUSTEE'S FIRST AMENDED COMPLAINT FOR:** |
| v. | **1) DECLARATORY RELIEF; 2) TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. § 542; (3) AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER; (4) CONVERSION; (5) CONSTRUCTIVE TRUST; (6) ACCOUNT STATED; (7) OPEN BOOK ACCOUNT; (8) MONEY HAD AND RECEIVED; (9) UNJUST ENRICHMENT; AND (10) ACCOUNTING** |
| ERIKA N. GIRARDI, an individual; EJ GLOBAL, LLC, a limited liability company; and PRETTY MESS, INC., a corporation, | |
|      Defendants | |
| | Date:     TBD |
| | Time:    TBD |
| | Place.:   Courtroom 1668 |
| | United States Bankruptcy Court |
| | 255 East Temple Street |
| | Los Angeles, CA 90012 |

///

For her First Amended Complaint for (1) Declaratory Relief; (2) Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542; (3) Avoidance and Recovery of Fraudulent Transfer; (4) Conversion; (5) Constructive Trust; (6) Account Stated; (7) Open Book Account; (8) Money Had and Received; (9) Unjust Enrichment; and (10) Accounting (the "Complaint"), plaintiff Elissa D. Miller, the duly appointed, qualified and acting Chapter 7 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate of debtor Girardi Keese (the "Estate"), alleges as follows:

## STATEMENT OF JURISDICTION, PARTIES AND PROCEEDINGS

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a), as this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).  Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a), in that the instant proceeding is related to a case under title 11 of the United States Code which is still pending.

2.      Plaintiff Elissa D. Miller is the duly appointed, qualified and acting Chapter 7 Trustee of the bankruptcy estate (the "Estate") created in the instant Chapter 7 bankruptcy case pending in the Los Angeles Division of the United States Bankruptcy Court for the Central District of California which is styled In re Girardi Keese, bearing Case No. 2:20-bk-21022-BR (the "Bankruptcy Case").

3.      Girardi Keese (the "Debtor") is the debtor in the Bankruptcy Case and this case was initiated by the filing an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code on December 18, 2020 (the "Petition Date").   The Court entered the Order for Relief on the involuntary petition on January 13, 2021.

4.      Plaintiff is informed and believes, and on that basis alleges thereon, that at all times mentioned herein, defendant Erika N. Girardi ("Erika") is an individual that resides and/or has conducted business within the jurisdiction of this Court and is the wife of Thomas Girardi, owner and controlling member of the Debtor.

5.      Plaintiff is informed and believes, and on that basis alleges thereon, that at all times mentioned herein, defendant EJ Global, LLC ("EJG") is a California limited

TRUSTEE'S FIRST AMENDED COMPLAINT

1   liability company conducting business within the jurisdiction of this Court.   EJG was

2   formed in 2008 and is exclusively owned and controlled by defendant Erika.   Defendant

3   Erika is the only manager and sole 100% member of EJG.   Defendant Erika filed her

4   income from EJG on Schedule C of her personal income tax returns for many years

5   because she was the sole owner and member of EJG.    Defendant Erika going back to

6   2008, was the only manager of the EJG.   The articles of organization show EJG was only

7   managed by Erika.   Defendant Erika was the only one in control of EJG.

8          6.       Plaintiff is informed and believes, and on that basis alleges thereon, that at

9   all times mentioned herein, defendant Pretty Mess, Inc. ("PMI") is a California corporation

10  conducting business within the jurisdiction of this Court.   PMI was formed in 2021 as a

11  successor entity to EJG and is also owned and controlled exclusively by defendant Erika.

12  Defendant Erika is the only office or director of PMI.   It was formed by her business

13  manager, who was referred to her by Lisa Rinna, a cast mate of Erika's on her television

14  show, "The Real Housewives of Beverly Hills".   Plaintiff alleges that in order to avoid the

15  large liability to EJG and its alter ego Erika Girardi, Erika incorporated PMI as a personal

16  services company, just like EJG, and has diverted her going forward income to this entity

17  to avoid creditors of EJG and Erika Girardi.   PMI is a mere continuation of EJG, a

18  personal services corporation using the same expenses previously paid by the Debtor.

19  Erika is the same 100% owner of both EJG and PMI and the formation of PMI is for the

20  fraudulent purpose of escaping liability for EJG and Erika's debts.   Specifically, it was

21  only after she left Thomas Girardi and the Debtor stopped paying for EJG and Erika's

22  debts, did Erika incorporate PMI which does nothing different that EJG.   Both entities are

23  tax pass through to the same beneficial owner, Erika Girardi.

24          7.       Plaintiff is informed and believes, and on that basis alleges thereon, that at

25  all times mentioned herein, defendants EJG and PMI is the alter ego of each other and of

26  defendant Erika, in that each of them has maintained such a unity of interest and

27  ownership that the separate personalities of the entities and the individual defendant no

28  longer exist.

3          TRUSTEE'S FIRST AMENDED COMPLAINT

8.      Plaintiff further alleges that the entity EJG is completely a shell entity, has no capital in it whatsoever, has a single owner, with no separate books, current bank accounts, or other indicia of corporate formality.  EJG was a personal service company for Erika Girardi aka Erika Jayne.  EJG meets all requirements for an alter ego finding.  Clearly, if EJG was allowed to shield Erika Girardi from over $25,000,000 in expenses just spent on her, there would be an egregious inequitable result.  The existence of EJG was merely an instrumentality to funnel a large scale tax fraud from the Debtor to the benefit of Defendant Erika.   No one else but Defendant Erika benefitted from the expenses described below.  In response to the demand letter by the Trustee, Erika has taken the ludicrous position that since she did not receive the payments directly from the Debtor she is not liable and if EJG is liable, it would not expand to her personally as she was just a member.  The Plaintiff alleges that all payments and monies received by Erika were via her American Express card issued to her personally with her own number, and vendors picked by her and all of the payments were directed by her.  Just like she has taken the ludicrous position that attorneys may not comment about her case and facts related to her conduct, she has not stopped there.  She attempts to create a distinction between handing her money directly versus paying all of her bills directly. The distinction, like her prior motion for reconsideration is meritless.  Any payments made for her benefit are her responsibility.

9.      Erika, EJG, and PMI all have the same attorney representing them in this action further showing they are all one in the same.  The attorney believes all of the interests are completely aligned which further supports each of them are the alter ego of one another.

10.    Defendants Erika, EJG and PMI are collectively referred herein as the "Defendants").

**GENERAL FACTUAL ALLEGATIONS**

11.    Plaintiff is informed and believes and, on that basis alleges thereon, that in or around August 2012, the Court entered an Order approving a settlement agreement in

the Marston v. Marston state court action, San Bernardino Superior Court Case Number CIVRS 910950 (the "Court Approved Settlement Agreement").  A true and correct copy of the Court Approved Settlement Agreement is attached hereto, marked as Exhibit "A" and incorporated herein by this reference.

12.    Plaintiff is informed and believes and, on that basis alleges thereon, that the Debtor diverted and transferred its right to receive attorneys' fees from the Court Approved Settlement Agreement in the form of an ongoing stream of payments from the State of California Lottery to the Defendants (the "Lottery Payments").

13.    Plaintiff is informed and believes and, on that basis alleges thereon, that the Defendants received more than $242,658 in payments from the State of California Lottery from 2012 to 2021.  The Defendants are scheduled to still receive $78,000 in payments from the State of California Lottery in years 2022 through 2025.  The payments are part of a continuous course of conduct and are on-going.  Erika directly agreed to receive the payments, personally signed the lottery forms directing the payments to her, and on information and belief, approved the stipulation authorizing the payments to her.  Erika even withheld the 2021 payment.  At all times prior to 2021, Erika concealed the existence of the lottery payments settlement and payment instructions. Even though Erika signed the California Lottery Payee Setup in Exhibit C, she willfully concealed this income or assignment from the Trustee AFTER the Chapter 7 relief was entered and was confronted by the Trustee's Special Counsel.  The Ninth Circuit has held that in fraudulent transfer cases, when some transfers occur outside the statute of limitations and some occur within the statute of limitations, a court "may presume that the earliest payments received by the investor are payments against the investor's claim for restitution." Donell v. Kowell, 533 F.3d at 762, 774 (9th Cir.2008).  In this case, Plaintiff alleges that the fact that notwithstanding the concealment by Erika of these lotter payments, any statute is reset upon the next payment becoming due as the transfer is not complete until the last payment in 2025.  Plaintiff alleges that any applicable statutes of limitation would run no earlier than 2032, seven years after the last payment.  Plaintiff

1    further alleges that the Trustee's Complaint was filed within one year of discovering

2    Erika's diversion of the lottery proceeds    (See Donell v. Mojtahedian, 976 F. Supp. 2d

3    1183, 1189 (C.D. Cal. 2013).

4        14.    Plaintiff intercepted and is currently holding funds in the amount of

5    $19,760.00 which represents the Lottery Payments for the year 2021, which funds the

6    Plaintiff is currently holding in trust pursuant to an agreement with defendant Erika

7    pending resolution of this dispute and further order of the Court.  A true and correct copy

8    of the letter agreement regarding 2021 Lottery Payments is attached hereto, marked as

9    Exhibit "B" and incorporated herein by this reference.    Erika refuses to release this

10    payment even though she has no legal claim to the money as she was not an attorney

11    who earned any fees.    The fact that Erika has claimed that the Lottery Payments is her

12    money and refuses to release it shows her knowledge and admission as to the nature of

13    the Debtor's income and operations.

14        15.    Plaintiff is informed and believes and, on that basis alleges thereon, that

15    Lottery Payments belong to the Girardi Keese bankruptcy estate and that none of the

16    Lottery Payments made to the Defendants have been repaid to the Debtor and remain

17    outstanding.    A true and correct copy of the demand letter regarding the Lottery

18    Payments is attached hereto, marked as Exhibit "C" and incorporated herein by this

19    reference.  Erika has contended that the Debtor may have received some of the Lottery

20    Payments alleged herein.  It was Erika who directed the Lottery Payments.  To the extent

21    the Debtor has already received some of the earlier Lottery Payments, the Debtor will

22    credit those from the prayer in this action.

23        16.    Plaintiff is informed and believes and, on that basis alleges thereon, that the

24    Defendants received jewelry and other luxury items purchased using the Debtor's funds

25    (the "Luxury Items").    As discovery is taken, the Trustee will outline the specific luxury

26    items.  Erika is aware of the $25,000,000 plus in expenses paid for her and she is in the

27    best position to itemize her jewelry, clothes, and other personal property.

28    ///

17.     Plaintiff is informed and believes and, on that basis alleges thereon, that diverting and/or transferring of the Lottery Payments and the Luxury Items to the Defendants are collectively referred herein as the "Transfers."

18.     Plaintiff is informed and believes and, on that basis alleges thereon, that the Debtor and the Defendants conspired to conceal the Transfers and keep these assets away the Debtor's creditors.  Plaintiff is further informed and believes and, on that basis alleges thereon, that due to the concealment of the Transfers, the Trustee only recently discovered the Transfers and therefore any applicable deadlines and statute of limitations are tolled.

19.     Plaintiff is informed and believes and, on that basis alleges thereon, that additionally, based on the Debtor's books and records and tax returns, the Debtor is owed no less than $25,592,261.26 plus interest in receivables from the Defendants (the "Receivables").

20.     Specifically, the Receivables have been identified as no less than $25,592,261.26 in payments made by the Debtor for charges made by the Defendants.  The payments by the Debtor were exclusively for the benefit of the Defendants.   The expenses consist largely of expenses to promote Erika personally.  Moreover, the over $14,000,000 in American Express charges were made by Erika on a card issued to her.  The other $11,000,000 or so in vendor payments were made for Defendant Erika's benefit only.  None of the payments appear to be legitimate law firm payments but for the sole benefit of Defendant Erika's massive spending, glam squad, talent professionals, image professionals, travel, clothes, purses, shoes, jewelry and other lavish expenses that were meticulously added to the Debtor's books as a valid and enforcement open book account and account stated and receivable.

21.     Plaintiff further alleges that Defendant Erika received the complete benefit of the Receivables and does not get any sort of immunity or windfall from the Debtor's tax fraud for her community property law firm and entertainment business.

///

TRUSTEE'S FIRST AMENDED COMPLAINT

22.     Plaintiff will contend it will not be a defense to this Complaint simply because Defendant Erika contends she did not know her husband was maintaining a debt.  It would be a miscarriage of justice, if Defendant Erika was allowed to simply walk completely free of owing over $25,000,000 to the Estate.  Erika signed all of her tax returns, numerous credit card slips, and was well aware of the money she spent on the Debtor's credit cards and the Debtor's payment of her personal expenses.  Her feigned willful blindness and ostrich approach to these expenditures will do absolutely nothing to limit her liability.

23.     Erika has direct knowledge that for at least 12 years, all of her expenses were being paid by the Debtor as she was generating them.  Moreover, Erika has repeatedly contended, "It is expensive to be me".  In fact, there was an entire publicly aired episode on "The Real Housewives of Beverly Hills" entitled, "It's Expensive to Be Me". (Season 7, Episode 7).  The glam cannot be supported by a sham.  This decade long spending spree was improperly paid for by Erika's community property law firm.  Erika has repeatedly contended that she is entitled to any left over money from this Estate.  She has signed years of joint tax returns.  Even though knowledge is not required for liability, it is alleged she knew exactly where the money was coming from when her $175,000 per month spending budget was paid each month by the law firm on the law firms credit card issued to her personally as well as the submissions for payment were made by her and her alone.  Erika directed all of her personal vendors to be paid by the law firm. Only Erika knew that her entire singing, acting, bling, brand, glam squad, and other Erika only expenses were completely funded by the Debtor.  Even to this today, it is alleged that Erika continues to receive funding from other sources of unknown origin to cover her extravagant lifestyle.

24.     Erika shows no sign of slowing down with the continued tax frauds which she benefitted from for years, income tax avoidance schemes referenced in this Complaint, and belief that she can just hide large sources of income under the banner of privacy.   The Trustee's Special Litigation counsel has now been asking for many

8          TRUSTEE'S FIRST AMENDED COMPLAINT

1    months, where is the source of income that has generated over $600,000 in expenditures

2    to Erika personally.  Erika has refused to disclose who or how she is getting access to

3    large swaths of capital to finance frivolous legal activities and threatening letters to the

4    Trustee's Special Litigation Counsel.  Notwithstanding the Court's findings and exclusion

5    of any proffered evidence, Erika continues to file frivolous appeals and takes meritless

6    positions all geared towards hindering the Trustee's investigation.  Erika believes she is

7    above the law and is entitled to shield and conceal her sources of capital from the

8    Trustee's Special Litigation Counsel notwithstanding they are not privileged.    Her

9    reckless and shotgun approach to litigation are all consistent with her husband's

10   menacing and threatening litigation style.  Erika directed her counsel at least five times

11   on August 25, 2021 to threaten the Trustee's Special Litigation Counsel with Rule 11

12   sanctions if he did not drop most of the Trustee's complaint.    All of Erika's threats only

13   prove her direct involvement in the litigation and her desperate attempts to try and

14   intimidate her opponents with a chronic stream of motions to disrupt the investigation and

15   the Trustee's choice of counsel.

16        25.    The Receivables, in the form of an open book account, has been entered

17   and maintained each year since 2008 on the Debtor's books and records and tax returns.

18   The book account is based upon a contract that is implied by the parties' conduct,

19   business records, excel spread sheets, and other writings. Plaintiff alleges the book

20   account had entries and were added to it from time to time.  EJG and Erika had financial

21   transactions with the Debtor.  The Debtor in a regular course of business kept an

22   electronic account of the debits and credits of the transactions, EJG, Erika, and the

23   successor entity PMI, owe money on the account, and the amount due is specified in

24   paragraph 19 and elsewhere herein.  The last entry for the Receivables was as recent as

25   June 2020. Interest is accruing at 10% per year on the Receivables.

26        26.    It is further alleged that "[a]ctions to recover on an account stated or a book

27   account accrue on the date of the last item or entry in the account." Prof'l Collection

28   Consultants, Cal. App. 5th at 966, 214 Cal.Rptr.3d 419; Cal. Civ. P. Code § 337(2)

1  ("Where an account stated is based upon an account of more than one item, the time

2  shall begin to run from the date of the last item."); R.N.C. Inc. v. Tsegeletos, 231

3  Cal.App.3d 967, 971-972, 283 Cal.Rptr. 48 (1991) ("the four-year period of limitations on

4  a book account begins as of the last entry in the book account."). Ordinario v. LVNV

5  Funding, LLC, 721 F. App'x 602, 604 (9th Cir. 2017). The statute expires for an open

6  book account on June 20, 2024.

7       27.    Plaintiff is informed and believes and, on that basis alleges thereon, that

8  although demand has been made, none of the Receivables owed by the Defendants to

9  the Debtor have been repaid to the Debtor and remain outstanding. A true and correct

10  copy of the demand letter regarding the Receivables is attached hereto, marked as

11  Exhibit "D" and incorporated herein by this reference. A redacted copy of her Schedule C

12  from Erika's 2018 personal federal income tax return is attached as Exhibit "E" showing

13  she is the 100% owner of EJG. Statement 8 of the Schedule C specifically shows, for

14  example, that in 2018, Erika claimed $2,127,004.00 in expenses for her own company

15  but which were paid for by the Debtor. The expenses detailed on Statement 8 of the

16  Schedule C show that the Debtor paid for the professionals that created and maintained

17  the brand Erika Jayne and benefitted only Defendant Erika. A whopping $1,466,197.00

18  was paid for production only and $508,448.00 in professional services in 2018 alone.

19  Erika Girardi personally signed these tax returns. Erika is charged with knowledge of the

20  contents of the return. The expenses only benefitted her brand and performer career.

21       28.    Plaintiff is informed and believes and, on that basis alleges thereon, that

22  defendant Erika has used her glamor and notoriety to continue to aid and abet in sham

23  transactions that have occurred with respect to large transfers of assets from the Debtor

24  to the Defendants.

25  ///

26  ///

27  ///

28  ///

    TRUSTEE'S FIRST AMENDED COMPLAINT

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief)

29.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 28 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

30.    An actual controversy exists between the Plaintiff and the Defendants concerning their respective rights and duties in that the Trustee contends that the Defendants currently have no ownership interest in the Lottery Payments and the Luxury Items and that the Lottery Payments and the Luxury Items are property of the Estate. Whereas, the Defendants may dispute the Trustee's contention and may assert an ownership interest in the Lottery Payments and the Luxury Items.

31.    Plaintiff desires a judicial determination of her rights and duties and a declaration that the Defendants have no ownership interest in the Lottery Payments and the Luxury Items and that the Lottery Payments and the Luxury Payments are property of the Estate.

## SECOND CLAIM FOR RELIEF

### (Turnover Of Property Of The Estate Pursuant To 11 U.S.C. § 542(a))

32.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 31 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

33.    Plaintiff is informed and believes and, on that basis alleges thereon, that the Lottery Payments, the Luxury Items  and the Receivables are all property of the Estate pursuant to, among other things, 11 U.S.C. § 541.  Plaintiff also alleges that based upon the receipt of the benefit of the payments from the Debtor in the amount of $25,592,261.26, the Defendants shall turnover any property purchased with those payments made to vendors on the Defendants' behalf.

34.    Plaintiff is informed and believes and, on that basis alleges thereon that the Defendants are in possession, custody or control, during this bankruptcy case, of

TRUSTEE'S FIRST AMENDED COMPLAINT

1  property that the Trustee may use, sell or lease under 11 U.S.C. § 363 and such property

2  is not of inconsequential value or benefit to the Estate.

3  <center>**THIRD CLAIM FOR RELIEF**</center>

4  <center>**(Turnover Of Property Of The Estate Pursuant To 11 U.S.C. § 542(b))**</center>

5      35.    Plaintiff realleges each and every allegation contained in paragraphs 1

6  through 34 of this Complaint and, by this reference, incorporates said allegations as

7  though set forth fully herein.

8      36.    Plaintiff is informed and believes and, on that basis alleges thereon, that the

9  Lottery Payments, the Luxury Items and the Receivables are all property of the Estate

10  pursuant to, among other things, 11 U.S.C. § 541.  Plaintiff also alleges that based upon

11  the receipt of payments from the Debtor for $25,592,261.26, the Defendants shall

12  turnover any property purchased with those payments made to vendors on the

13  Defendants' behalf.

14      37.    Plaintiff is informed and believes that the Defendants owe a debt that is

15  property of the Estate and that is matured, payable on demand, or payable on order and

16  such debt may not be offset under 11 U.S.C. § 553 against a claim against the Debtor.

17  <center>**FOURTH CLAIM FOR RELIEF**</center>

18  <center>**(Avoidance Of Fraudulent Transfer, Actual Intent, Pursuant To [11**</center>

19  <center>**U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.04(a)(1))**</center>

20      38.    Plaintiff realleges each and every allegation contained in paragraphs 1

21  through 37 of this Complaint and, by this reference, incorporates the allegations as

22  though set forth fully herein.

23      39.    Plaintiff is informed and believes and, based thereon, alleges that the

24  Transfers were made with the actual intent to hinder, delay or defraud the Debtor's

25  creditors.

26      40.    By reason of the foregoing, the Transfers are avoidable pursuant to 11

27  U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.04(a)(1).

28  ///

<center>12       TRUSTEE'S FIRST AMENDED COMPLAINT</center>

## FIFTH CLAIM FOR RELIEF

**(Avoidance Of Fraudulent Transfer, Constructive Intent, Pursuant To**

**11 U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.05)**

41.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 40 of this Complaint and, by reference, incorporates the allegations as though set forth fully herein.

42.    Plaintiff is informed and believes and, based thereon, alleges that the Transfers were made for less than reasonably equivalent value at a time when the Debtor was insolvent or as a result of which the Debtor became insolvent.

43.    By reason of the foregoing, the Transfers are avoidable pursuant to 11 U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.05.

## SIXTH CLAIM FOR RELIEF

**(Avoidance Of Fraudulent Transfer, Constructive Intent, Pursuant To**

**11 U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.04(a)(2)(A))**

44.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 43 of this Complaint and, by reference, incorporates the allegations as though set forth fully herein.

45.    Plaintiff is informed and believes and, based thereon, alleges that the Transfers were made without the Debtor receiving reasonably equivalent value in exchange for the Transfers, and that at the time of the Transfers, the Debtor was engaged or was about to engage in a business or a transaction for which their remaining assets were unreasonably small in relation to the business or transaction.

46.    By reason of the foregoing, the Transfers are avoidable pursuant to 11 U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.04(a)(2)(A).

///

///

///

///

TRUSTEE'S FIRST AMENDED COMPLAINT

1

### SEVENTH CLAIM FOR RELIEF

2

### (Avoidance Of Fraudulent Transfer, Constructive Intent, Pursuant To

3

### 11 U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.04(a)(2)(B))

4        47.    Plaintiff realleges each and every allegation contained in paragraphs 1

5 through 46 of this Complaint and, by this reference, incorporates the allegations as

6 though set forth fully herein.

7        48.    Plaintiff is informed and believes, and based thereon, alleges that the

8 Transfers were made without the Debtor receiving reasonably equivalent value in

9 exchange for the Transfers, and that the Debtor intended to incur, or reasonably should

10 have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as

11 they became due.

12       49.    By reason of the foregoing, the Transfers are avoidable pursuant to 11

13 U.S.C. §§ 544(b) and 548 and Cal. Civ. Code § 3439.04(a)(2)(B).

14

### EIGHTH CLAIM FOR RELIEF

15

### (Recovery Of Avoided Transfer Pursuant To 11 U.S.C. § 550(a))

16       50.    Plaintiff realleges each and every allegation contained in paragraphs 1

17 through 49 of this Complaint and, by this reference, incorporates the allegations as

18 though set forth fully herein.

19       51.    By reason of the foregoing, Plaintiff is entitled to recover the Transfers or

20 their value from the Defendants pursuant to 11 U.S.C. § 550(a).

21

### NINTH CLAIM FOR RELIEF

22

### (Conversion)

23       52.    Plaintiff realleges each and every allegation contained in paragraphs 1

24 through 51 of this Complaint and, by this reference, incorporates the allegations as

25 though set forth fully herein.

26 ///

27 ///

28 ///

TRUSTEE'S FIRST AMENDED COMPLAINT

53.    The Lottery Payments, the Luxury Items and the Receivables are all property of the Estate and the Defendants have substantially, intentionally, actually and wrongfully interfered with the Plaintiff's right of possession of the Lottery Payments, the Luxury Items and the Receivables.

54.    The Defendants have refused to return the Lottery Payments, the Luxury Items and the Receivables despite Plaintiff's demand for same and instead the Defendants have received and/or diverted the Lottery Payments, the Luxury Items and Receivables to themselves for their own benefit.

55.    Plaintiff is entitled to damages against the Defendants for conversion of the Lottery Payments, the Luxury Items and the Receivables in an amount to be proved at trial pursuant to Cal. Civ. Code § 3336.

56.    Plaintiff also alleges that base upon the receipt of payments from the Debtor for $25,592,261.26, the Defendants shall turnover any property purchased with those payments made to vendors on the Defendants behalf.  The funds used to make those payments, on information and belief, came from wrongfully appropriated settlement funds due clients of the Debtor and other joint ventures, attorney's fees splitting cases or other victims of the Debtor's former owner, Thomas Girardi.  Discovery will show that Erika was not entitled to the benefit of the expenses paid for her by the Debtor with other parties' earmarked funds.

## **TENTH CLAIM FOR RELIEF**

### **(Constructive Trust)**

57.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 56 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

TRUSTEE'S FIRST AMENDED COMPLAINT

58.    By virtue of the Defendants' wrongful acts, the Defendants hold the wrongfully acquired funds and property of the Estate and proceeds acquired in exchange for the wrongfully acquired funds and property of the Estate as constructive trustees for the benefit of the Plaintiff and the Estate.

## ELEVENTH CLAIM FOR RELIEF

### (Account Stated)

59.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 58 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

60.    Plaintiff is informed and believes and, on that basis alleges thereon, that within the last four (4) years an account was stated in writing between the Debtor and the Defendant wherein it was agreed that the Defendants were indebted to the Debtor for the the Receivables.    The Receivables owed to the Debtor by the Defendants remain outstanding in an amount in excess of $25,000,000 or in an amount to be proved at trial, plus interest at the maximum rate permitted by law.

## TWELFTH CLAIM FOR RELIEF

### (Open Book Account)

61.    Plaintiff realleges each and every allegation contained in paragraphs 1 through 60 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

62.    Plaintiff is informed and believes and, on that basis alleges thereon, that within the last four (4) years, the Defendants became indebted to the Debtor on an open book account for money due on account of the Receivables (an amount no less than $25,592,261.26 or in an amount to be proved at trial) for monies provided to or for the benefit of the Defendants and for which the Defendants agreed to pay.

63.    No part of the Receivables have been paid although demand has been made and there is now due, owing, and unpaid from the Defendants to the Debtor a sum no less than $25,592,261.26 or in an amount to be proved at trial, plus interest at the

TRUSTEE'S FIRST AMENDED COMPLAINT

1    maximum rate permitted by law.

2    <div align="center">**THIRTEENTH CLAIM FOR RELIEF**</div>

3    <div align="center">**(Money Had And Received)**</div>

4        64.    Plaintiff realleges each and every allegation contained in paragraphs 1

5    through 63 of this Complaint and, by this reference, incorporates said allegations as

6    though set forth fully herein.

7        65.    Plaintiff is informed and believes and, on that basis alleges thereon, that

8    within the last four (4) years, the Defendants received and/or benefitted from the

9    Receivables in an amount no less than $25,592,261.26 or in an amount to be proved at

10   trial from the Debtor that was intended for the use and benefit of the Debtor.

11       66.    No part of the Receivables have been paid although demand has been

12   made and there is now due, owing and unpaid from the Defendants to the Debtor an

13   amount no less than $25,592,261.26 or in an amount to be proved at trial, plus interest at

14   the maximum rate permitted by law.

15   <div align="center">**FOURTEENTH CLAIM FOR RELIEF**</div>

16   <div align="center">**(Unjust Enrichment)**</div>

17       67.    Plaintiff realleges each and every allegation contained in paragraphs 1

18   through 63 of this Complaint and, by this reference, incorporates said allegations as

19   though set forth fully herein.

20       68.    As a result of the wrongful acts of the Defendants alleged herein, the

21   Defendants have been unjustly enriched at the expense of the Estate and its creditors.

22   The Defendants have derived and continue to derive benefit from their wrongful acts.

23       69.    The Defendants are under an obligation to pay the Plaintiff and the Estate

24   all amounts by which the Defendants have been unjustly enriched in an amount

25   according to proof.

26   ///

27   ///

28   ///

TRUSTEE'S FIRST AMENDED COMPLAINT

**FIFTEENTH CLAIM FOR RELIEF**

**(Accounting)**

70.     Plaintiff realleges each and every allegation contained in paragraphs 1 through 69 of this Complaint and, by this reference, incorporates said allegations as though set forth fully herein.

71.     The Defendants are in possession of money and property including, but not limited to, the Lottery Payments, the Luxury Items and the Receivables, that rightfully belong to the Estate as were fraudulently obtained by the Defendants.  The amount owed by the Defendants to the Estate cannot be easily ascertained without an accounting of the money and property received by the Defendants.

72.     Plaintiff also alleges that the EJG and Erika received from the Debtor $25,592,261.26.  The Plaintiff needs an accounting of those funds.

**WHEREFORE**, Plaintiff prays for judgment against the Defendants as follows:

**On the First Claim for Relief**:

1.     For a judgment that the Defendants have no ownership interest in the Lottery Payments and the Luxury Items and the Lottery Payments and the Luxury Items are property of the Estate;

**On the Second and Third Claims for Relief**

2.     For a judgment against the Defendants for turnover of the Lottery Payments, the Luxury Items, the Receivables and any profits and proceeds thereof under 11 U.S.C. § 542(a) and/or 542(b);

**On the Fourth, Fifth, Sixth and Seventh Claims for Relief**:

3.     For a judgment against the Defendants that the Transfers be avoided;

**On the Eighth Claim for Relief:**

4.     For a judgment against the Defendants that the Transfers, or their respective value, be recovered for the benefit of the estate pursuant to 11 U.S.C. § 550;

**On the Ninth Claim for Relief:**

5.     For a judgment against the Defendants for conversion of the Lottery

1  Payments, the Luxury Items and the Receivables in an amount to be proved at trial

2  pursuant to Cal. Civ. Code § 3336;

3  **On the Tenth Claim for Relief:**

4  6.     For a judgment against the Defendants declaring that the wrongfully

5  acquired funds and property of the Estate and proceeds acquired in exchange for the

6  wrongfully acquired funds and property of the Estate are held in trust for the benefit of the

7  Plaintiff and the Estate;

8  **On the Eleventh, Twelfth and Thirteenth Claims for Relief:**

9  7.     For a judgment against the Defendants in an outstanding amount of no less

10 than $25,592,261.26 or in an amount to be proved at trial, plus interest at the maximum

11 rate permitted by law.

12 **On the Fourteenth Claim for Relief:**

13 8.     For a judgment against the Defendants ordering the Defendants to pay the

14 Plaintiff and the Estate all amounts by which the Defendants have been unjustly enriched

15 in an amount according to proof;

16 **On the Fifteenth Claim for Relief:**

17 9.     For a judgment against the Defendants ordering an accounting of all money

18 and property received by the Defendants from the Debtor and for payment of the amount

19 due from the Defendants as a result of the accounting;

20 **On All Claims for Relief:**

21 10.    For such other and further relief as the Court deems just and proper.

22

23 DATED:  August 26, 2021          Respectfully submitted,

24                                 LAW OFFICES OF RONALD RICHARDS &
                                   ASSOCIATES, APC
25

26                                 By:      */s/ Ronald Richards*
                                   _____
27                                 Ronald Richards
                                   Attorneys for Elissa D. Miller, Chapter 7 Trustee
28

19     TRUSTEE'S FIRST AMENDED COMPLAINT

# EXHIBIT A

1  MATTHEW R. EASON  SBN 160148
   KYLE K. TAMBORNINI SBN 160538
2  LAW OFFICES OF EASON & TAMBORNINI
   1819 K Street, Suite 200
3  Sacramento, CA  95814
   Tel: (916) 438-1819
4  Fax: (916) 438-1820

5  Attorneys for Defendant

**FILED**
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
RANCHO CUCAMONGA DISTRICT

AUG – 2 2012

BY _____
    CHRISTINA L. BANDFIELD, DEPUTY

6

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9      IN AND FOR THE COUNTY OF SAN BERNARDINO – RANCHO CUCAMONGA

10                                   DISTRICT

11  MAURICE MARSTON, ET AL            Case No.:  CIVRS 910950

12          Plaintiffs,

13  v.                                STIPULATION AND [PROPOSED]
                                      ORDER AUTHORIZING CALIFORNIA
14  NATALIE MARSTON-SALEM, f/k/a or a/k/a  LOTTERY TO DISBURSE LOTTERY
    NATALIE MARSTON                   WINNINGS & FINAL DISMISSAL OF
15                                    ACTION

16          Defendant.

17

18

19        Plaintiff Maurice L. Marston ("Plaintiff") and defendant Natalie E. Marston-Salem

20  ("Defendant") hereby stipulate, through their undersigned counsel of record, to the following

21  Order:

22        1.      Defendant Natalie E. Marston-Salem was entitled to receive twenty (20) annual

23  payments of $260,000.00 for twenty (20) years from the California Lottery winnings.  Pursuant

24  to Government Code section 8880.325 ("Section 8880.325"), California Lottery Regulation

25  section III(B)(2) ("Regulation III(B)(2)"), and the June 12, 2012 settlement agreement between

26  Plaintiff and Defendant attached hereto as Exhibit 1, the Court hereby approves an assignment

27  by the Defendant of 100% of the gross annual amount of California Lottery winnings less

28  Federal taxes and deductions authorized by law for the calendar year 2012 as follows:

---

STIPULATION AND ORDER FOR ASSIGNMENT Page 1

a.    60% ($156,000.00) to Maurice L. Marston and Nancy Norton-Marston

b.    13.34 % ($34,684.00) to ██████ ████

c.    13.33% ($34,658.00) to Erika Girardi

d.    13.33 % ($34,658.00) to ████████████

2.    Pursuant to Government Code section 8880.325 ("Section 8880.325"), California Lottery Regulation section III(B)(2) ("Regulation III(B)(2)"), and the June 12, 2012 settlement agreement between Plaintiff and Defendant attached hereto as Exhibit 1, the Court hereby approves an assignment by the Defendant of 75% of the gross annual amount of California Lottery winnings of $260,000.00 less Federal taxes and deductions authorized by law for the calendar years 2013 through 2025 as follows:

a.    45% ($117,000) to Maurice L. Marston and Nancy Norton-Marston

b.    10 % ($26,000) to ████████

c.    10% ($26,000) to Erika Girardi

d.    10 % ($26,000) to ██████████

Defendant will retain $65,000.00 or twenty-five percent (25%) of the gross amount of California Lottery winnings for the calendar years 2013 through 2025. For the calendar years 2026 through 2028, Defendant will receive one hundred percent (100%) of the gross annual amount of the California Lottery winnings of $260,000.00.

3.    The Court authorizes the California Lottery to disburse the above stated amounts, less federal taxes and deductions that the Lottery is required by law to withhold, to Plaintiff and the assignees set forth in Paragraph 1 herein.

4.    The Lottery will pay the balance of the lottery prize to Defendant Natalie E. Marston-Salem after the allocations set forth in Paragraph 2a. – d. herein.

5.    Additionally, pursuant to Section 8880.325 and Regulation III(B)(2), the Court finds as follows:

(a)    Defendant/Winner's name on California Lottery claim form:  Natalie E. Marston. She was later married and changed her name to Natalie E. Marston-Salem.

(b)    Defendant/Winner's address and social security number:  Confidential/has already

been provided to the California Lottery;

(c)    Plaintiff/Assignee's name: Maurice L. Marston and Nancy Norton-Marston (Federal taxes will be paid under Maurice L. Marston's Social Security Number as provided under separate cover);

(d)    Plaintiff/Assignee's address, birth date, and social security number: Confidential/will be provided to the California Lottery under separate cover;

(e)    Additional assignees' names: ███████████, Erika Girardi, and ███████ █████████

(f)    Additional assignees' addresses, birth dates, and social security numbers: Confidential/will be provided to the California Lottery under separate cover;

(g)    Defendant/Winner has reviewed and understands the terms of the foregoing assignment; understands that she will not receive the assigned prize payments or a portion thereof for the payments assigned; has entered into the agreement of her own free will without undue influence or duress and not under the influence of drugs or alcohol; has had an opportunity to retain and consult with an independent financial and tax advisor(s) concerning the effect of the assignment, who have fully advised her about the tax consequences of the assignment; and has been represented by independent legal counsel, Matthew R. Eason, Eason & Tambornini, ALC who has advised her of her legal rights and obligations under the assignment and whose State Bar of California number is 160142;

(h)    Defendant/Winner is married and her spouse has executed this stipulation disclaiming any interest, as provided in his Declaration, and there are no other non-spouse co-owners, claimants, or lien holders asserting a claim against Defendant/Winner's lottery winnings, including, but not limited to, payments that are the subject of this assignment;

(i)    Defendant/Winner has obtained and filed with the Court a notification from the California State Lottery of any liens, levies, or claims, and the Controller's office of any offsets asserted as of that time against Defendant/Winner, as reflected in their respective official records as of the time of the notification; and

(j)    The California Lottery and the State of California are not parties to the proceeding

1   and the California Lottery and the State of California may rely upon this order in disbursing the

2   lottery prize payments that are the subject of this order.  Further, upon payment of lottery prize

3   monies pursuant to an order of the court, the California Lottery, the director, and commission

4   and the employees of the California Lottery, and the State of California shall be discharged of

5   any and all liability for the lottery prize paid, and these persons and entities shall have no duty or

6   obligation to any person asserting another interest in, or right to receive, the lottery prize

7   payment.

8       6.    The June 5, 2012 annual lottery payment that is currently being held by the

9   Lottery will be disbursed upon confirmation of the assignment and the necessary time to set up

10  the payees.

11      7.    The Court hereby dismisses the above-captioned action with prejudice with each

12  party to bear its own attorneys' fees and court costs.

13
14  Dated:  July 30, 2012

15                                          Natalie E. Marston-Salem, Defendant

16  Dated:  July 30 2012

17                                          John Salem, Consenting Spouse

18  Dated:  July 30, 2012

19                                          Maurice L. Marston, Plaintiff

20  Dated:  July 30, 2012

21                                          Nancy Norton-Marston, Consenting
                                            Spouse
22

23                              **ORDER**

24  **IT IS SO ORDERED.**

25              AUG 0 2 2012

26  DATED: ~~July        , 2012~~            JOSEPH R. BRISCO

27                                          _____
                                            **HONORABLE JOSEPH R. BRISCO**
28                                          Judge of the Superior Court


STIPULATION AND ORDER FOR ASSIGNMENT Page 4

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of June __, 2012, by and between Maurice Marston ("Plaintiff"), Natalie Marston Salem ("Defendant"). Plaintiff and Defendant are also sometimes referred to herein collectively as the "Parties" and/or individually as a "Party."

## RECITALS

WHEREAS, on September 29, 2009, Plaintiff filed a action for damages, declaratory relief, and injunctive relief against the Defendant. The case is commonly known as Marston v. Marston, San Bernardino Superior Court Case Number CIVRS 910950 ("The Action");

WHEREAS, on November 29, 2011, judgment was entered in "The Action" on behalf of the Plaintiff and against the Defendant;

WHEREAS, Defendant appealed that judgment;

WHEREAS, the Parties, their respective counsel, and Nancy Marston attended a settlement conference before the Fourth District Court of Appeals Presiding Justice Manuel A. Ramirez.

WHEREAS, as of the drafting of this agreement, the California Lottery has made the first three years of a twenty year payout to the Defendant. The 2012 payment representing year four has not yet been made.

WHEREAS, because of the time, expense and uncertainties associated with further litigation between the Parties and in exchange for the mutual considerations exchanged and agreed to by the Parties under this Agreement, the Parties agree to fully, finally and completely resolve and settle all issues between the Parties, as expressly set forth in this Agreement;

## TERMS

1.    In connection with the Recitals set forth above, which are all fully incorporated herein by reference, the Parties hereby agree to fully, finally and completely resolve and settle all past and present disputes, known and unknown, between them.

2.    Defendant has paid Plaintiff in consideration of this agreement the sum of $135,000.

3.    As of the drafting of this agreement, the payment for 2012 (year 4) from the California State Lottery has not been issued. The parties agree that the proceeds of that payment will be surrendered promptly to the Plaintiff. If the check comes in made payable to the Defendant, the Defendant will negotiate the check, and immediately upon confirmation of availability of funds will submit the entire funds to the Plaintiff. If the check comes in made payable to multiple parties which include the Defendant, Defendant will promptly execute the check and surrender the check to the Plaintiff.

6-6-'12

4.      The parties agree that the Defendant will voluntarily assign to Plaintiff, or his to his named assignees a seventy-five percent (75%) portion of the payments for years five (5) through seventeen (17) (Calendar years 2013-2025).  Defendant will retain a twenty-five (25%) portion of the payments for years five (5) through seventeen (17) (Calendar years 2013-2025), and she shall retain 100% of the payments for years eighteen (18) through twenty (20) (Calendar years 2026- 2028).

5.      Plaintiff will apply for, and Defendant will cooperate in, the executing of court documents to have the assignments contemplated above approved by a court of competent jurisdiction pursuant to Government Code Section 8880.325(j).

6.      Upon satisfaction of the terms above, the Defendant will file a notice of abandonment of appeal, and the Plaintiff will cause to be filed a satisfaction of judgment in full.

7.      In consideration of the Settlement Payment, and promises of the Parties specified in this Agreement, the Parties hereby fully, finally and forever release, acquit, exonerate, waive, settle and discharge, each other, and each Party's attorneys, insurance carriers, agents, servants, representatives, employees, subsidiaries, affiliates, directors, board members, partners, officers, directors, shareholders, predecessors, successors-in-interest, assigns, heirs, spouses, and all persons acting by, through, under or in concert with them, of and from any and all past and present claims, demands, obligations, actions, causes of action, damages, costs, attorneys' fees, losses of service, expenses, liability, suits, and compensation of any nature whatsoever, whether based in tort, contract, or any other theory of recovery arising from the recitals set forth above, including without limitation any claim or claims that may have been filed between them.  The foregoing is hereinafter referred to as the "Released Matters."

8.      The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

9.      Except for the obligations set forth in this Agreement, the Parties, after consulting with their respective counsel, hereby waive and relinquish any and all rights and benefits which they may have under, and which may be conferred upon them by, the provisions of Section 1542 regarding the Released Matters to the fullest extent that they may lawfully waive such rights or benefits.  The Parties declare that they understand the full nature, extent and import of Section 1542 of the California Civil Code and have been so advised, and/or have had the opportunity to be so advised, by their respective attorneys.

10.     The Parties each represent and warrant that they/it are the sole owner of all rights, title, and interests in and to all of the Released Matters settled under this Agreement and that they have not heretofore assigned, transferred, or purported to assign and/or transfer to any person or entity any matters, or portions thereof, settled and released under this Agreement.

11.     The settlement, releases and other matters set forth herein are a compromise and

settlement of disputed and contested claims between the Parties, and nothing contained herein shall be construed as an admission by any Party of any obligation and/or liability of any kind to any other Party.

12.    This Agreement contains and embodies the entire agreement of the Parties with regard to the obligations under this Agreement and to the Released Matters covered in this Agreement, and no representations, inducements, or other agreements, oral or otherwise, not embodied herein, exist nor shall they be of any force or effect. This Agreement can only be modified or amended by a subsequent written agreement signed by the Parties.

13.    This Agreement is binding upon and shall inure to the benefit of the Parties, their respective agents, employees, representatives, shareholders, officers, directors, partners, board members, divisions, corporations, subsidiaries, parents, affiliates, assigns, heirs, predecessors, spouses, and successors, past, present, and future, and all of their insurers, guarantors, sureties and reinsurers.

14.    The Parties to this Agreement shall each be deemed to have drafted this Agreement, such that no ambiguity in this Agreement, if any, shall be construed against any Party.

15.    The Parties shall each bear their own costs, expenses and fees, of all kind, including attorney, consultant, and expert fees, up through the date this Agreement is entered into, regarding the Released Matters.

16.    The Parties agree to execute any and all such other documents and perform such other acts as are necessary to give effect to the intent and purposes of this Agreement.

17.    If any part, provision, condition, or term of this Agreement, or the application thereof to any person, Party or circumstance, shall to any extent be invalid or unenforceable, the remainder of this Agreement shall not be affected thereby, and each part, provision, condition or term of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

18.    Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the Parties hereto. This Agreement and the performance of the Parties' obligations hereunder are for the sole and exclusive benefit of the Parties.

19.    This Agreement is entered into and shall be subject to the laws of the State of California. Any dispute shall be resolved before the Superior Court of the County of Riverside which shall retain exclusive jurisdiction over this matter.

20.    This Agreement may be signed in counter-parts, all of which taken together shall be construed as one original. Telefaxed signatures shall constitute original signatures.

21.    Each Party hereto represents and warrants that it is represented by, or has had the opportunity to consult with, legal counsel and that it is authorized to sign this Agreement and bind the respective Party hereby and that all acts necessary to confer such authority have been duly, properly and legally taken.

IN WITNESS WHEREOF, the parties hereto have executed or caused this Agreement to be executed as of the date first written above.

Dated: June 12, 2012

Natalie Marston-Salem

Dated: June 6, 2012

Maurice Marston

**EXHIBIT B**

# GREENBERG GROSS LLP

Evan C Borges
Direct Dial: (949) 383-2860
EBorges@GGTrialLaw com

June 28, 2021

**VIA E-MAIL: ron@ronaldrichards.com**

Ronald Richards
Special Counsel to Chapter 7 Trustee, Girardi Keese Estate
Law Offices of Ronald Richards & Associates, A.P.C.
P.O. Box 11480
Beverly Hills, CA 90213

    Re:    **In re Girardi Keese; CACB Case No. 2:20-bk-21022-BR**

Dear Ronald:

      This letter sets forth the agreement effective as of June 28, 2021 (the "Agreement") between Elissa D. Miller, in her capacity as chapter 7 trustee for bankruptcy debtor Girardi Keese ("GK") (the Trustee) on the one hand, and party in interest Erika Girardi ("Ms. Girardi") on the other hand, regarding the proceeds of a certain check (the "Check") dated June 9, 2021, bearing check number ▇▇▇▇ and received at the offices of GK from the State of California, made payable to Erika N. Girardi, based on a gross amount of $26,000, from which the State of California withheld federal taxes of $6,240.00, resulting in a net payment amount of **$19,760.00** (the "Check Proceeds").

      1.    **Endorsement and Deposit of Check By Trustee in Trust Account**.  Ms. Girardi consents to the Trustee endorsing the check with Ms. Girardi's signature "for deposit only" and depositing the check into the trust account of GK, over which the Trustee represents that she has exclusive control.  The Trustee further agrees to hold and segregate the Check Proceeds in the GK trust account, subject to the terms of this Agreement.

      2.    **Check Proceeds Retained in Trust Account**.  The Trustee and Ms. Girardi agree that the Check Proceeds shall be held by the Trustee in the GK trust account and shall not be released or distributed absent (a) a further written agreement signed by the Trustee and Ms. Girardi, or (b) a binding and final court order.

      3.    **Mutual Reservation of Rights**.  The Trustee and Ms. Girardi reserve all rights and claims as to entitlement to the Check Proceeds and the subject matter of this Agreement.

GREENBERG GROSS LLP

Ronald Richards
June 28, 2021
Page 2

4.      **Mutual Cooperation**.  The Trustee and Ms. Girardi agree to cooperate with one
another in exchanging information relevant to resolution of entitlement to the Check Proceeds
and the subject matter of this Agreement.

5.      **Miscellaneous**.  This Agreement contains the entire agreement between the
parties regarding the subject matter hereof.  This Agreement may not be modified or amended
verbally, and only may be modified or by a writing signed by both of the parties hereto.  This
Agreement may be signed in counterpart copies by pdf electronic signatures of the parties, which
shall be deemed original signatures, and which together shall constitute the fully executed
Agreement.

By their signatures below, the Trustee and Ms. Girardi agree to this Agreement.

Very truly yours,

Evan C. Borges

IT IS SO AGREED.

By: _____
        Elissa D. Miller, in her capacity as chapter 7 trustee
        for bankruptcy debtor Girardi Keese

By: _____
        Erika Girardi

ECB:CW

GREENBERG GROSS LLP

Ronald Richards
June 28, 2021
Page 2

4.    **Mutual Cooperation**.  The Trustee and Ms. Girardi agree to cooperate with one another in exchanging information relevant to resolution of entitlement to the Check Proceeds and the subject matter of this Agreement.

5.    **Miscellaneous**.  This Agreement contains the entire agreement between the parties regarding the subject matter hereof.  This Agreement may not be modified or amended verbally, and only may be modified or by a writing signed by both of the parties hereto.  This Agreement may be signed in counterpart copies by pdf electronic signatures of the parties, which shall be deemed original signatures, and which together shall constitute the fully executed Agreement.

By their signatures below, the Trustee and Ms. Girardi agree to this Agreement.

Very truly yours,

Evan C. Borges

IT IS SO AGREED.

By:    _____
    Elissa D. Miller, in her capacity as chapter 7 trustee
    for bankruptcy debtor Girardi Keese

By:    _____
    Erika Girardi

ECB:CW

# EXHIBIT C

LAW OFFICES OF

## Ronald Richards and Associates

**A Professional Corporation**
**310-556-1001 Los Angeles Office**
**202-508-1060 DC Office**

Office Locations:

Richards Law Building
West Hollywood, CA

CA Mailing Address:
PO Box 11480
Beverly Hills, CA  90213

DC Office Address:
1629 K ST. Suite 300
Washington D.C., 20006

*Admitted in the following
Courts:*
All Fed. and State Cts. in
California, 2nd, 9th & 11th Circuit,
C.O.A's, ED of Michigan, D of
Colorado, W.D. of Tenn., District
of Columbia D.C.,
The United States Supreme Court
(U.S.S.C.)
**Bar Membership:**
California
District of Columbia

EMAIL: RON@RONALDRICHARDS.COM
WEBSITE: WWW.RONALDRICHARDS.COM

June 10, 2021

Mr. Peter Mastan
Dinsmore & Shohl LLP
550 S. Hope Street, Suite 1765
Los Angeles, CA 90071

Dear Mr. Mastan,

### DEMAND FOR REIMBURSEMENT AND ASSIGNMENT OF LOTTERY PAYMENTS

As you are aware, our office is Special Counsel to Elissa D. Miller, Trustee of the Girardi Keese Chapter 7 Estate.

I am attaching for your review a lottery payee set up dated 6/26/2012, made payable to your client, Erika Nay Girardi.  A stipulation and court order for disbursement of Girardi Keese Attorneys Fees.  A settlement agreement for attorneys' fees for Girardi Keese.  Finally, a disbursement letter from Girardi Keese signed by ████████.

We would like to have the remaining payments assigned to the Estate immediately. We would also like to have the Estate reimbursed for the payments received since June of 2012 to the present.

Based on the attached evidence, we are demanding an execution of a new lottery payee form to Elissa D. Miller, Chapter 7 Trustee, for the Girardi Keese estate, as well as a wire of the proceeds that have been previously tendered, to the attached bank account for the Trustee.

1

Here is the breakdown as we see it:

$34,658.00 paid in 2012.
$208,000.00 for years 2013 to 2021
$78,000 for the years, 2022 to 2025.

Please feel free to call me to discuss this matter.   This demand will expire within ten days from today's date before we take further steps to recover these funds for the Estate and prevent further dissipation of Estate assets.

Sincerely,

Ronald Richards, Esq.



 CALIFORNIA LOTTERY
**PAYEE SETUP**

calottery

Please complete, sign, obtain notarization, and return this form to the following address:

**California Lottery**
**Attn: Investments Section**
**700 North 10th Street**
**Sacramento, CA 95811**

The following information is required to properly set up your file, and will determine the appropriate tax withholding rate. Please see information about Federal Tax Reporting below.

**PLEASE PRINT IN INK OR TYPE**

| NAME (FIRST, MIDDLE, LAST) | | HOME TELEPHONE NO. | WORK TELEPHONE NO. |
|---|---|---|---|
| ERIKA NAY GIRARDI | | ▮ | ▮ |

| MAILING ADDRESS (STREET, RURAL ROUTE, OR PO BOX) | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 1126 Wilshire Boulevard | Los Angeles | CA | 90017 |

| COUNTRY (If not USA) | SOCIAL SECURITY/TAX ID NO. | DATE OF BIRTH | DRAW DATE |
|---|---|---|---|
| | ▮ | ▮ | 6 ▮ 9 |

| ARE YOU A U.S. CITIZEN? ☒ YES ☐ NO | IF NOT A U.S. CITIZEN, YOUR RESIDENT STATUS | ☐ Resident | ☐ Non-Resident |
|---|---|---|---|

*I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

| SIGNATURE | DATE |
|---|---|
| *[signature]* | 6 / 26 / 12 |

**NOTARY PUBLIC ACKNOWLEDGMENT**

State of ___California___                County of ___Los Angeles___

On ___June 26, 2012___ before me, Shirleen H. Fujimoto, Notary ___ personally
                                                                    Public
appeared ___Erika Girardi___ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

___*[signature]* Shirleen H. Fujimoto___

*[seal]* SHIRLEEN H. FUJIMOTO
COMMISSION # 1933089
Notary Public - California
LOS ANGELES COUNTY
My Comm. Expires May 15, 2015

(Seal)

**INFORMATION ABOUT FEDERAL TAX REPORTING:** The California Lottery (Lottery) is required by Internal Revenue Code Treasury Regulations, § 31.3402(a)-1 to withhold income on the proceeds of a single wager which exceeds $5,000. The withholding rate for income tax depends on your personal resident status. The Lottery is currently required to withhold federal taxes at the rate of 25% for a U.S. citizen and resident aliens; 30% for non-resident aliens, and 28% for U.S. citizens and resident aliens who do not have a Social Security Number.

**PRIVACY NOTICE:** The State Information Practices Act of 1977 (Civil Code § 1798.17) and the Federal Privacy Act (Public Law 93-579) require that this notice be provided when the Lottery collects personal information from individuals. Social Security numbers and birth dates are used for identification purposes only, except as required by state and federal law. Providing the requested information will prevent delays in receipt of annual prize payments.

The information you provide may be disclosed to state and federal government agencies including, but not limited to: the State Controller's Office, State Franchise Tax Board, Department of Health Services, and the Federal Internal Revenue Service.

You have the right to access your personal information maintained by the Lottery by contacting the California Lottery, 700 North 10th Street, Sacramento, CA 95811, Attention: Public Records Act Coordinator. ·

CSL 1270 (R06/11)                                      Event No. TV ▮ ▮    | 1476 |



GIRARDI | KEESE
LAWYERS

August 2, 2012

**SENT VIA U.S. PRIORITY MAIL**

MR. MAURICE MARSTON
8780 19th Street - #460
Alta Loma CA 91701

  Re: **Marston v. Marston**

Dear Maurice:

  I am enclosing herewith a copy of the **STIPULATION AND ORDER AUTHORIZING CALIFORNIA LOTTERY TO DISBURSE LOTTERY WINNINGS AND FINAL DISMISSAL OF ACTION ("ORDER")** as signed by the Honorable Joseph Brisco on August 2, 2012.

  As you will note from this ORDER, you will receive payments from the California Lottery, pursuant to Paragraph 2, for the next twelve (12) years or for calendar years 2013 – 2025.   You will receive within sixty (60) days the payment set forth in paragraph 1 of this ORDER.   Please keep the enclosed ORDER in a safe place for future reference. It is on file with the State Lottery Commission.

  If there is a change in the address as set forth in the Payee Setup Form which you previously executed, you must so notify the State Lottery for receipt of future payments.

     Very truly yours,

     **GIRARDI | KEESE**

█ L./ata
Enclosure

1126 WILSHIRE BOULEVARD • LOS ANGELES, CALIFORNIA • 90017-1904
TELEPHONE: 213-977-0211 • FACSIMILE: 213-481-1554

# EXHIBIT D

LAW OFFICES OF

# Ronald Richards and Associates

**A Professional Corporation**
**310-556-1001 Los Angeles Office**
**202-508-1060 DC Office**

Office Locations:

Richards Law Building
West Hollywood, CA

CA Mailing Address:
PO Box 11480
Beverly Hills, CA  90213

DC Office Address:
1629 K ST. Suite 300
Washington D.C., 20006

**\*Admitted in the following**
**Courts:\***
All Fed. and State Cts. in
California, 2nd, 9th & 11th Circuit,
C.O.A's, ED of Michigan, D of
Colorado, W.D. of Tenn., District
of Columbia D.C.,
The United States Supreme Court
(U.S.S.C.)
**Bar Membership:**
California
District of Columbia

EMAIL: RON@RONALDRICHARDS.COM
WEBSITE:  WWW.RONALDRICHARDS.COM

August 18, 2021

Evan C. Borges, Esq.
Greenberg Gross LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626

**VIA EMAIL PDF:  EBorges**

Dear Mr. Borges,

As you know, our office is Special Counsel to the Trustee Elissa Miller for the Girardi Keese Chapter 7 Bankruptcy Estate.

Please consider this a formal demand for payment of the receivable in favor of Girardi Keese against EJ Global, LLC and Erika Girardi in the amount of $25,592,261.26 plus $2,559,226.10 in interest through June 2021.  The open book account has been entered and maintained each year since 2008.  The last entry was in June of 2020.  Interest is accruing at 10% per year.

I have attached a breakdown of the figure to the penny.  These charges were all for the benefit of Erika Girardi and EJ Global, LLC, which was 100% owned by Erika Girardi. These charges were made by Erika Girardi and were exclusively for her benefit.  Her LLC was filed on her personal return for many years as a Schedule C since she was the sole owner.  Mrs. Girardi signed under penalty of perjury the return and personally approved the charges allocated to the breakdown.

For the sake of this letter, we are presuming that Mrs. Girardi accurately represented her receivable to the Internal Revenue Service.   We are also presuming that all of the charges on her personally assigned American Express Card and other personal Erika Jayne aka Erika Girardi vendors were exclusively for her benefit.

We are reserving all rights to add additional common counts or claims and this letter should not be construed as a limitation of any those rights.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Ronald Richards, Esq.
Special Counsel

**Girardi Keese**
**Summary of Net Payments Charged to EJ Global Receivable Account**
**For the Period 2008 - 2020**

| Payee | Net Amount |
| --- | --- |
| AMERICAN EXPRESS | $14,259,012.84 |
| McDONALD SELZNICK ASSOC., INC. | 1,532,774.88 |
| UNKNOWN | 1,417,587.50 |
| PARADIGM MANAGEMENT LLC | 1,260,000.00 |
| KIDSQUARED, INC. | 863,880.93 |
| CAK ENTERTAINMENT, INC. | 450,000.00 |
| GREENBERG TRAURIG LLP | 260,000.00 |
| TROY JENSEN INC | 252,100.00 |
| SANRE' ENTERTAINMENT | 220,000.00 |
| CITRUSONIC, LLC | 205,838.54 |
| BLOC TALENT AGENCY, INC. | 171,991.50 |
| THE DANICA GROUP LLC | 170,108.71 |
| DNA INC. | 156,600.00 |
| JEREMY SULLIVAN | 150,000.00 |
| AWESTRUCK PRODUCTIONS, INC. | 142,800.00 |
| JASMINE VEGA | 137,896.67 |
| MARCO BOLLINGER PHOTOGRAPHY | 134,264.00 |
| MMA | 133,154.73 |
| CLEAR TALENT GROUP | 130,334.93 |
| REGINAL A. MATHIS LLC | 125,000.00 |
| PRESTON MENESES | 114,500.00 |
| IMMACULATE ASSISTANCE AGENCY | 108,373.91 |
| STEPHANIE SHEPHERD | 102,596.77 |
| GERALD HELLER | 100,000.00 |
| CLOUTIER-REMIX | 98,012.37 |
| HOT ROLLER INC. | 97,683.80 |
| HOCHMAN SALKIN ROSCHER PEREZ P.C. | 94,111.77 |
| JON KOOREN | 88,934.00 |
| GARY BALLEN | 88,808.68 |
| ORLANDO PUERTA | 88,000.00 |
| MMK MANAGEMENT | 80,939.41 |
| RICHARD LEHER | 80,000.00 |
| TMG INTERNATIONAL | 80,000.00 |
| MICHAEL NUNEZ | 76,818.40 |
| BOBBY SHAW PROMOTIONS | 76,000.00 |
| FRANCESCO GALASSO | 75,681.00 |
| CENTERSTAGING MUSICAL PROD INC | 75,144.98 |
| ROGERS & COWEN | 69,274.89 |
| MISSSHIU INC | 66,875.00 |
| ARCHER PRODUCTIONS LLC | 65,628.21 |
| LEVINE COMMUNICATIONS OFFICE | 62,475.00 |

**Girardi Keese**
**Summary of Net Payments Charged to EJ Global Receivable Account**
**For the Period 2008 - 2020**

| Payee | Net Amount |
|---|---|
| MATTHIAS HEIDEMANNS | 60,000.00 |
| PHILIP SANDHAUS | 60,000.00 |
| ELIAS TAHAN | 59,950.00 |
| OUTBOUND INC. | 59,100.00 |
| KIMBERLY C. KYEES | 58,875.00 |
| MVA PUBLIC RELATIONS GROUP | 55,000.00 |
| MILES HIGH PRODUCTIONS | 51,486.84 |
| APOLLO JETS | 45,161.69 |
| JAREK RIEWER | 44,200.00 |
| THE HUNGRY CREATIVE AGENCY LLC | 43,447.00 |
| MITCH SCHNEIDER ORGANIZATION | 42,717.12 |
| CHUCK OLINER | 41,665.00 |
| THERESE WILLIS | 37,017.50 |
| MICHAEL GATSWIRTH | 36,000.00 |
| RAFELSON MEDIA CONSULTING INC. | 34,300.00 |
| GO 2 TALENT AGENCY INC | 30,786.14 |
| MICHAEL GRUBER | 30,000.00 |
| BRYAN CROSS, LLC | 29,705.29 |
| SCOTT BARNES | 28,300.00 |
| PRISCILLA RANGEL | 28,282.40 |
| 1645 N. VINE ST. 705, LLC | 27,980.00 |
| GUI SCHOEDLER | 21,600.00 |
| MONGOOSE ATLANTIC, INC. | 21,140.00 |
| JULIANA Z. INC. | 19,500.00 |
| JOHN RITTENOUR | 18,000.00 |
| LORENZO CALDERON | 17,532.00 |
| COLBY COLON | 17,500.00 |
| OPUS BEAUTY | 17,415.00 |
| ANDREW DIPALMA | 17,000.00 |
| BRITTEN PARK | 16,400.00 |
| MARCO BOLLINGER | 16,350.00 |
| MELROSE STUDIOS, INC | 15,156.01 |
| JOSEPH FISHER | 15,000.00 |
| MATT WATERHOUSE | 15,000.00 |
| MICHAEL SCHMIDT STUDIOS INC. | 14,530.00 |
| LAURENTIUS PURNAMA | 14,469.00 |
| THE HOLLYWOOD REPORTER | 13,360.00 |
| BLOCNYC | 12,970.00 |
| KATIE BERENSON | 12,502.79 |
| MARTIN MILLIGAN | 11,887.75 |
| LEE DAGGER | 10,500.00 |

**Girardi Keese**
**Summary of Net Payments Charged to EJ Global Receivable Account**
**For the Period 2008 - 2020**

| Payee | Net Amount |
| --- | --- |
| MARC JACKSON BURROWS | 10,500.00 |
| LOS ANGELES TIMES MAGAZINE | 10,400.00 |
| ESCAPE PRODUCTIONS INC. | 10,000.00 |
| VIDEO STATIC | 10,000.00 |
| POLITO EPPICH ASSOCIATES LLP | 9,700.00 |
| CoCo de Mer | 9,029.52 |
| ISABEL PEREZ | 9,000.00 |
| E5 GLOBAL MEDIA LLC | 8,480.00 |
| BLAH BLAH MUSIC LTD. | 8,223.92 |
| WOODMAR INC | 7,527.54 |
| RALPHI ROSARIO INC. | 7,000.00 |
| JACOB R. ARCHER | 6,775.00 |
| BERNIE GRUNDMAN MASTERING | 6,700.78 |
| EN ROUTE TRAVEL | 6,191.80 |
| BOB GAIL ENTERPRISES,INC | 6,045.58 |
| HECTOR FONSECA | 6,000.00 |
| KGS STUDIOS LTD | 6,000.00 |
| L.A. MODELS | 6,000.00 |
| TYPRODUCTIONS | 6,000.00 |
| CHRIS ALBA | 5,500.00 |
| EXTREMEDYS HAND & FOOT SPA | 5,160.00 |
| MARCO MARCO | 5,030.00 |
| AMPLE ENTERTAINMENT, INC | 5,000.00 |
| JODY DEN BROEDER | 5,000.00 |
| JOHN RUSSO PHOTOGRAPHY | 5,000.00 |
| JOY FERNBACH HARN | 5,000.00 |
| MAMS TAYLOR | 5,000.00 |
| MIXMASTERED RECORDS | 5,000.00 |
| THREE SIX ZERO GROUP | 5,000.00 |
| HSMPR | 4,800.00 |
| KATHERINE DELANY | 4,675.00 |
| THE LOOK PARTNERSHIP LLC | 4,500.00 |
| NAILS BY SARAH B | 4,444.79 |
| BRANDON SHOWERS PHOTOGRAPHY | 4,052.00 |
| HITS MAGAZINE, INC. | 4,000.00 |
| MDM ARTISTS, INC. | 4,000.00 |
| UNDOCUMENTED MANAGEMENT | 4,000.00 |
| WIZARDZ OF OZ | 3,900.00 |
| COLIN YEO | 3,800.00 |
| THE BASEMENT DANCE CENTER | 3,575.00 |
| SIMON THIRLAWAY INC. | 3,500.00 |

**Girardi Keese**
**Summary of Net Payments Charged to EJ Global Receivable Account**
**For the Period 2008 - 2020**

| Payee | Net Amount |
| --- | --- |
| PREMIERE VALET SERVICE | 3,330.00 |
| PETER GALVIN PRODUCTIONS | 3,288.91 |
| FRANCHISE TAX BOARD | 3,256.96 |
| GORDON LAKE | 3,200.00 |
| POWER PROMOTIONS | 3,187.30 |
| DUN & COMPANY | 3,072.10 |
| BILL HAMEL, INC. | 3,000.00 |
| CHRIS BREDESEN | 3,000.00 |
| COTTON GRAPHIC DESIGN | 3,000.00 |
| DJ LYNWOOD GROUP OF COMPANIES | 3,000.00 |
| RICHIE PANGILINAN | 3,000.00 |
| SAMUEL PISENO | 3,000.00 |
| TARA, INC. | 3,000.00 |
| TKC ENTERTAINMENT | 3,000.00 |
| TOO BOB FOR YOUR MOM | 3,000.00 |
| TRENDSETTER MEDIA & MARKETING | 3,000.00 |
| VINCENT PASSERI | 3,000.00 |
| WILLIAM CLARK | 3,000.00 |
| KIMBLE HAIR STUDIO | 2,980.29 |
| QBT MEDIA COMPANY | 2,980.19 |
| LIGHTENUP, INC. | 2,925.00 |
| JASON LEDER | 2,825.00 |
| CHRISTINE D'ANGELO | 2,646.12 |
| SOUNDCHECK LA, LLC | 2,571.00 |
| GUY FURIOUS PRODUCTIONS | 2,500.00 |
| ODYSSEY MAGAZINE | 2,500.00 |
| SACHA COLLISSON | 2,500.00 |
| ARNE KNUDSEN | 2,431.66 |
| ANTHONY SPENCER | 2,275.00 |
| KIMMIE K | 2,250.00 |
| ELECTRO LIGHTING, LLC | 2,200.00 |
| KIM KIMBLE | 2,100.00 |
| STAGE THIS | 2,020.00 |
| WARREN CONFECTIONS CORP. | 2,006.58 |
| HED PRODUCTIONS | 2,000.00 |
| SURFER ROSA RECORDS | 2,000.00 |
| SEAN KAYSEN | 1,950.00 |
| GRID AGENCY, INC. | 1,800.00 |
| KENNETH WORMALD | 1,800.00 |
| SETOLOGY | 1,800.00 |
| BRINN BIERMAN | 1,700.00 |

**Girardi Keese**
**Summary of Net Payments Charged to EJ Global Receivable Account**
**For the Period 2008 - 2020**

| Payee | Net Amount |
| --- | --- |
| CANDICE CRAIG | 1,700.00 |
| ERIN HERNANDEZ | 1,700.00 |
| JAMIE RUIZ | 1,700.00 |
| HONEYGUN LABS LLC | 1,500.00 |
| MICHAEL CARR | 1,500.00 |
| ONE STOP DIGITAL, INC. | 1,500.00 |
| PICNIC | 1,500.00 |
| SUSANNE BARTSCH | 1,500.00 |
| STEELE VFS, INC. | 1,435.00 |
| FRANK GALASSO | 1,400.00 |
| HEATHER HANES | 1,250.00 |
| ROBERT HOFFMAN | 1,250.00 |
| STARWORKS ARTISTS, LLC | 1,200.00 |
| NIGHTS OF NEON, INC | 1,190.83 |
| KIMBERLY McALLISTER | 1,150.00 |
| AMPED UP, LLC | 1,121.00 |
| JEREMIAH PITMAN | 1,100.00 |
| MARIO DEDIVANOVIC | 1,000.00 |
| MICHAEL DES BARRES | 1,000.00 |
| QUYNH STANLEY | 1,000.00 |
| JASON WAWRO | 950.00 |
| GROVEMASTERING | 875.00 |
| CUSTOM LIGHTING | 850.00 |
| PATRICIA WILLIAMS | 800.00 |
| CAPRICE | 775.00 |
| JOSEPH CORRIGAN | 750.00 |
| PURE MANAGEMENT NYC, LLC | 720.00 |
| JIMMY'S PERMIT SERVICE | 684.00 |
| DICK SMART | 666.67 |
| PHIL LUJAN | 645.83 |
| AXION BUSINESS GROUP | 630.63 |
| BRANDON NIZNIK | 600.00 |
| CRAIG STULL | 600.00 |
| LISA MITCHELL METHOD, INC | 600.00 |
| ANDREW R. POLAND | 550.00 |
| DERRICK ARMAND | 550.00 |
| IRA BOYD | 550.00 |
| JOSHUA LINKEY | 550.00 |
| STEVE FRANCIS | 550.00 |
| SIGN CENTRAL | 533.88 |
| DYLAN ZWICKER | 525.00 |

**Girardi Keese**
**Summary of Net Payments Charged to EJ Global Receivable Account**
**For the Period 2008 - 2020**

| Payee | Net Amount |
| --- | --- |
| JEFF WESSELS | 525.00 |
| ROBERT DOWLING | 525.00 |
| VICTOR G. MAJOR | 525.00 |
| ERNEST WALTON | 500.00 |
| JARMAN, INC. | 500.00 |
| KATHERINE BORMAN | 500.00 |
| LEO ABRAHAM | 500.00 |
| MATES, INC. | 450.00 |
| DAVID BALLEN | 400.00 |
| LOS ANGELES COUNTY FIRE DEPT. | 386.37 |
| SO CAL SANITATION | 380.00 |
| SEAN SPILLANE | 340.00 |
| CHAD MICHAEL MORISETTE | 305.00 |
| DAVONEE SOU | 300.00 |
| OCTAVIO SANCHEZ | 300.00 |
| SHAMEL PUBLICATIONS, INC. | 300.00 |
| BRENDAN CRAIGHILL | 250.00 |
| DEANNA DELLACIOPPA | 250.00 |
| KAREN BLAKEMAN | 250.00 |
| BUSINESS FILINGS DIVISION | 239.00 |
| CHAD MICHAEL | 225.00 |
| ANTHONY ORTIZ | 200.00 |
| MICHAEL J. COHEN | 200.00 |
| ANNUAL FILING DIVISION | 195.00 |
| ANA RUTH SANTIZO | 120.00 |
| BUNKER PRINTING | 100.00 |
| LOS ANGELES TIMES | 100.00 |
| OFFICE OF FINANCE, CITY OF LA | 80.06 |
| SECRETARY OF STATE | 66.00 |
| Total | $25,592,261.26 |

# EXHIBIT E

| SCHEDULE C<br>(Form 1040) | **Profit or Loss From Business**<br>(Sole Proprietorship) | OMB No. 1545-0074 |
|---|---|---|
| | | **2018** |
| Department of the Treasury<br>Internal Revenue Service  (99) | ► Go to *www.irs.gov/ScheduleC* for instructions and the latest information.<br>► Attach to Form 1040, 1040NR, or 1041; partnerships generally must file Form 1065. | Attachment<br>Sequence No.  **09** |

Name of proprietor

ERIKA N. GIRARDI

Social security number (SSN)

**A**  Principal business or profession, including product or service (see instructions)

PERFORMER

**B**  Enter code from Instructions ►

**C**  Business name. If no separate business name, leave blank.

EJ GLOBAL LLC

**D**  Employer ID number (EIN) (see instr.)

**E**  Business address (including suite or room no.) ►

City, town or post office, state, and ZIP code

**F**  Accounting method:  (1) [X] Cash  (2) [ ] Accrual  (3) [ ] Other (specify) ►

**G**  Did you 'materially participate' in the operation of this business during 2018? If 'No,' see instructions for limit on losses ... [X] Yes  [ ] No

**H**  If you started or acquired this business during 2018, check here ..................................... ►

**I**  Did you make any payments in 2018 that would require you to file Form(s) 1099? (see instructions)..................... [ ] Yes  [X] No

**J**  If 'Yes,' did you or will you file required Forms 1099?................................................. [ ] Yes  [ ] No

## Part I  Income

| | | |
|---|---|---|
| 1 | Gross receipts or sales. See instructions for line 1 and check the box if this income was reported to you on Form W-2 and the 'Statutory employee' box on that form was checked .......................... ► [ ]  **1** | 1,063,572. |
| 2 | Returns and allowances................................................................. **2** | |
| 3 | Subtract line 2 from line 1.............................................................. **3** | 1,063,572. |
| 4 | Cost of goods sold (from line 42)........................................................ **4** | |
| 5 | **Gross profit.** Subtract line 4 from line 3. ............................................... **5** | 1,063,572. |
| 6 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions)........................................................................ **6** | |
| 7 | **Gross income.** Add lines 5 and 6. ................................................... ► **7** | 1,063,572. |

## Part II  Expenses. Enter expenses for business use of your home **only** on line 30.

| | | | | | |
|---|---|---|---|---|---|
| 8 | Advertising .................. **8** | 175. | 18  Office expense (see instructions)......... **18** | |
| 9 | Car and truck expenses (see instructions)............... **9** | | 19  Pension and profit-sharing plans ........ **19** | |
| 10 | Commissions and fees......... **10** | | 20  Rent or lease (see instructions): | |
| 11 | Contract labor (see instructions)............... **11** | | a  Vehicles, machinery, and equipment..... **20a** | |
| | | | b  Other business property........... **20b** | 37,289. |
| 12 | Depletion..................... **12** | | 21  Repairs and maintenance............... **21** | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see instructions)............... **13** | | 22  Supplies (not included in Part III)... **22** | 3,647. |
| | | | 23  Taxes and licenses ..................... **23** | 17,748. |
| | | | 24  Travel and meals: | |
| 14 | Employee benefit programs (other than on line 19) ......... **14** | | a  Travel............................... **24a** | 534,512. |
| 15 | Insurance (other than health) ... **15** | | b  Deductible meals (see instructions)............................ **24b** | 3,489. |
| 16 | Interest (see instr.): | | 25  Utilities................................. **25** | |
| a | Mortgage (paid to banks, etc.)........ **16a** | | 26  Wages (less employment credits)........ **26** | |
| b | Other......................... **16b** | | 27a  Other expenses (from line 48). .......... **27a** | 2,127,004. |
| 17 | Legal and professional services **17** | | b  Reserved for future use................. **27b** | |
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27a........................ ► **28** | 2,723,864. |
| 29 | Tentative profit or (loss). Subtract line 28 from line 7................................................ **29** | -1,660,292. |

30  Expenses for business use of your home. Do not report these expenses elsewhere. Attach Form 8829 unless using the simplified method (see instructions).

Simplified method filers only: enter the total square footage of: (a) your home: _____

and (b) the part of your home used for business: _____ . Use the Simplified Method Worksheet in the instructions to figure the amount to enter on line 30...........................  **30**

31  **Net profit or (loss).** Subtract line 30 from line 29.

- If a profit, enter on both **Schedule 1 (Form 1040), line 12** (or **Form 1040NR, line 13**) and on **Schedule SE, line 2.** (If you checked the box on line 1, see instructions). Estates and trusts, enter on **Form 1041, line 3.**
- If a loss, you **must** go to line 32.

**31**  -1,660,292.

32  If you have a loss, check the box that describes your investment in this activity (see instructions).

- If you checked 32a, enter the loss on both **Schedule 1 (Form 1040), line 12** (or **Form 1040NR, line 13**) and on **Schedule SE, line 2.** (If you checked the box on line 1, see the line 31 instructions). Estates and trusts, enter on **Form 1041, line 3.**

**32a** [X] All investment is at risk.

- If you checked 32b, you **must** attach **Form 6198.** Your loss may be limited.

**32b** [ ] Some investment is not at risk.

**BAA  For Paperwork Reduction Act Notice, see the separate instructions.**    FDIZ0112L  09/24/18    Schedule C (Form 1040) 2018

Schedule C (Form 1040) 2018  ERIKA N. GIRARDI                                                                    Page 2

| Part III | Cost of Goods Sold (see instructions) | | |
|---|---|---|---|

**33** Method(s) used to value closing inventory:  **a** ☐ Cost  **b** ☐ Lower of cost or market  **c** ☐ Other (attach explanation)

**34** Was there any change in determining quantities, costs, or valuations between opening and closing inventory?
If 'Yes,' attach explanation................................................................................................  ☐ Yes  ☐ No

| | | | |
|---|---|---|---|
| **35** | Inventory at beginning of year. If different from last year's closing inventory, attach explanation................................................................ | **35** | |
| **36** | Purchases less cost of items withdrawn for personal use.............................. | **36** | |
| **37** | Cost of labor. Do not include any amounts paid to yourself............................. | **37** | |
| **38** | Materials and supplies................................................................ | **38** | |
| **39** | Other costs.......................................................................... | **39** | |
| **40** | Add lines 35 through 39............................................................. | **40** | |
| **41** | Inventory at end of year............................................................. | **41** | |
| **42** | **Cost of goods sold.** Subtract line 41 from line 40. Enter the result here and on line 4...................... | **42** | |

| Part IV | Information on Your Vehicle. Complete this part **only** if you are claiming car or truck expenses on line 9 and are not required to file Form 4562 for this business. See the instructions for line 13 to find out if you must file Form 4562. |
|---|---|

**43** When did you place your vehicle in service for business purposes? (month, day, year)  ▶ _____

**44** Of the total number of miles you drove your vehicle during 2018, enter the number of miles you used your vehicle for:

  **a** Business _____  **b** Commuting (see instructions) _____  **c** Other _____

**45** Was your vehicle available for personal use during off-duty hours?...................................................  ☐ Yes  ☐ No

**46** Do you (or your spouse) have another vehicle available for personal use?............................................  ☐ Yes  ☐ No

**47a** Do you have evidence to support your deduction?...................................................................  ☐ Yes  ☐ No

  **b** If 'Yes,' is the evidence written?..............................................................................  ☐ Yes  ☐ No

| Part V | Other Expenses. List below business expenses not included on lines 8-26 or line 30. | |
|---|---|---|

SEE STATEMENT 8

| | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| | | | |
|---|---|---|---|
| **48** | **Total other expenses.** Enter here and on line 27a........................................ | **48** | 2,127,004. |

FDIZ0112L  07/16/18

**2018**                       **FEDERAL STATEMENTS**                       **PAGE 3**

**CLIENT GIRATHO**          **THOMAS V. AND ERIKA N. GIRARDI**

10/11/19                                                                              01:41PM

**STATEMENT 7**

---

**STATEMENT 8 - PERFORMER**
**SCHEDULE C, PART V**
**OTHER EXPENSES**

| | | |
|---|---|---:|
| AGENT EXPENSE | $ | 61,964. |
| BANK CHARGES | | 103. |
| DESIGN | | 500. |
| MANAGER | | 4,278. |
| MARKETING | | 66,247. |
| PHOTOGRAPHY | | 3,310. |
| POSTAGE | | 1,049. |
| PRODUCTION | | 1,466,197. |
| PROFESSIONAL SERVICES | | 508,448. |
| PROMOTION | | 4,456. |
| SECURITY | | 706. |
| TELEPHONE | | 9,746. |
| TOTAL | $ | 2,127,004. |

---

**STATEMENT 9**

**RENTAL AND ROYALTY EXPENSES**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
PO Box 11480
Beverly Hills, CA  90213


A true and correct copy of the foregoing document entitled (*specify*): _____
amended complaint

_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 26, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:


<div align="right">X    Service information continued on attached page</div>

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.


<div align="right">☐    Service information continued on attached page</div>

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) June 23, 2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.


<div align="right">Service information continued on attached page</div>
☐
I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


| August 26, 2021 | Ronald Richards | /s Ronald Richards |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**2:21-ap-01155-BR Notice will be electronically mailed to:**

Ori S Blumenfeld on behalf of Interested Party Courtesy NEF
ori@marguliesfaithlaw.com,
Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com

Evan C Borges on behalf of Defendant EJ Global, LLC, a limited liability company
eborges@ggtriallaw.com, cwinsten@ggtriallaw.com

Evan C Borges on behalf of Defendant Pretty Mess, Inc., a corporation
eborges@ggtriallaw.com, cwinsten@ggtriallaw.com

Evan C Borges on behalf of Defendant Erika Girardi
eborges@ggtriallaw.com, cwinsten@ggtriallaw.com

Craig G Margulies on behalf of Interested Party Courtesy NEF
Craig@MarguliesFaithlaw.com,
Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com

Elissa Miller (TR)
CA71@ecfcbis.com, MillerTrustee@Sulmeyerlaw.com;C124@ecfcbis.com;ccaldwell@sulmeyerlaw.com

Ronald N Richards on behalf of Plaintiff Elissa Miller
ron@ronaldrichards.com, morani@ronaldrichards.com

Frank X Ruggier on behalf of Interested Party Courtesy NEF
frank@ruggierlaw.com, enotice@pricelawgroup.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Timothy J Yoo on behalf of Interested Party Courtesy NEF
tjy@lnbyb.com

**2:21-ap-01155-BR Notice will not be electronically mailed to:**