LARRY W. GABRIEL [SBN 68329]
JENKINS MULLIGAN & GABRIEL LLP
585 Lorna Lane
Los Angeles, CA 90049
Telephone: 818.943.8992
Email: lgabrielaw@outlook.com

Special Litigation Counsel for Plaintiff
Elissa D. Miller, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re

GIRARDI KEESE,

Debtor,

ELISSA D. MILLER, chapter 7 trustee for the estate of Girardi Keese,

Plaintiff,

vs.

ERIKA J. GIRARDI, an individual; EJ GLOBAL, LLC, a limited liability company; and PRETTY MESS, INC., a corporation,

Defendants.

Case No. 2:20-bk-21022-BR

Chapter 7

Adv. No. 2:21-ap-01155-BR

**NOTICE OF MOTION AND MOTION FOR ORDER FOR TURNOVER OF PERSONAL PROPERTY; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF ELISSA D. MILLER, DAPHNE MASIN AND LARRY W. GABRIEL**

**[Request For Judicial Notice Filed Concurrently Herewith]**

**Via ZoomGov**

Judge: Hon. Barry Russell
Date: February 15, 2022
Time: 2:00 p.m.
Place: Courtroom 1668
Roybal Federal Building
255 E. Temple Street
Los Angeles, CA 90012

**TO THE HONORABLE BARRY RUSSELL, JUDGE UNITED STATES BANKRUPTCY COURT, THE OFFICE OF THE UNITED STATES TRUSTEE, DEFENDANTS ERIKA N. GIRARDI, EJ GLOBAL, LLC AND PRETTY MESS, INC., AND THEIR ATTORNEYS OF RECORD AND TO ALL OTHER INTERESTED PARTIES:**

**PLEASE TAKE NOTICE THAT** on February 15, 2022, at 2:00 p.m., in Courtroom 1668 of the United States Bankruptcy Court, located at 255 E. Temple Street, Los Angeles, California 90012, Elissa D. Miller, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Girardi Keese (the "Debtor" or "GK" or "Firm"), will and hereby does move this Court for an order pursuant to 11 U.S.C. § 542 to compel Defendant, Erika N. Girardi ("Erika") to turn over to the Trustee a pair of diamond earrings Defendant Erika's now estranged-husband, Thomas Girardi ("Girardi") purchased for $750,000.00 ("Diamond Earrings") for Erika with funds from the GK (the "Firm") Client Trust Account.

This Notice of Motion and Motion is based upon the grounds that on March 7, 2007, Girardi issued a check drawn on the GK Client Trust Account payable to M&M Jewelers in the amount of $750,000.00 for the purchase of the Diamond Earrings. Girardi then concealed the theft by describing the purpose of the check on the GK Rezulin Trust Account ("RTA") Ledger as a "cost" item of the "*Rezulin*" mass tort litigation, noting the payee to be "M&M" without further explanation.[1] The Diamond Earrings were then given to Defendant Erika who now has possession of the same. The RTA ledger evidences that that GK was paid $15,074,805.82 for "costs" and $7.5 million in fees from the GKRTA. The ending balance of the RTA is out of trust in the amount of ($2,833,662.83).

Given that the funds used to purchase the Diamond Earrings came from the RTA , Erika has no legal or equitable right to the Diamond Earrings and the same are legally and equitably valuable assets of the GK Bankruptcy Estate that the Trustee can and should sell under Section 363 of the Bankruptcy Code. Based upon the foregoing, the Trustee has demanded return of the

[1] *In re Rezulin Prods. Liab. Litig.* MDL No. 1348, 2002 U.S. Dist. LEXIS 29103 (D.C.S.D. N.Y. 2002) ("*Rezulin*").

Diamond Earrings from Erika. As of the filing of this Motion, Erika has refused to comply with the request of the Trustee.

Accordingly, the Court should issue an order requiring Erika to turn over to the Trustee the Diamond Earrings in accord with 11 U.S.C. § 542 ("Turnover Order") and/or California Code of Civil Procedure § 512.010, *et seq.*, ("Writ of Possession").

This Motion is based upon these moving papers, the attached Memorandum of Points and Authorities, the Declarations of Elissa D. Miller, Daphne Masin and Larry W. Gabriel, the Request for Judicial Notice filed concurrently herewith together with the Exhibits attached thereto and the pleadings and orders on file in this case, and such other additional evidence and arguments of counsel as may be presented at or before the hearing on this Motion.

**PLEASE TAKE FURTHER NOTICE** that due to the COVID-19 outbreak, Judge Russell's hearings will be available via ZoomGov video and audio. Please check the Court's calendar for the hearing date, the connection information and the Court's procedure for utilizing "ZoomGov." The Court's calendar can be accessed at the following web address: *http://ecfciao.cacb.uscourts.gov/CiaoPosted/default.aspx.* No pre-registration is required however, you must notify the Court of your ZoomGov appearance *not later than 2 p.m. on the day prior to the hearing*. Please e-mail: stacey_fortier@cacb.uscourts.gov. In the re: line of the e-mail, please reference the date, time, and calendar number(s) of the hearing(s) (for example: Re: February 15, 2022, 2:00 p.m., Calendar No. #___). The e-mail must include:

• The name of the case and the bankruptcy case number (and adversary number, if applicable);

• The date and time of the hearing;

• The calendar number assigned to the matter (or, if a calendar number has not yet been assigned, then a statement so stating);

• Who the party appearing by telephone or video represents; and

• Contact information, including email address and telephone number.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f), any interested party that wishes to oppose the relief requested in the Motion must file his or

her opposition not later than 14 days prior to the scheduled hearing date, with the Clerk of the Bankruptcy Court, located at 255 E. Temple Street, Los Angeles, California 90012, and serve a copy upon the Office of the United States Trustee, located at 915 Wilshire Boulevard, Suite 1850, Los Angeles, California 90017, and the Trustee's counsel, located at the address indicated on the upper left corner of the first page of this notice, "[a] complete written statement of all reasons in opposition thereto, declarations and copies of all photographs and documentary evidence on which the responding party intends to rely and any responding memorandum of points and authorities."

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(h), failure to file and serve a timely response may be deemed consent to the relief requested in the Motion.

WHEREFORE, the Trustee respectfully requests that this Court enter an order:

1. Granting this Motion;
2. Compelling Defendant Erika N. Girardi to turn over to the Trustee the Diamond Earrings no later than 5 days after entry of the order granting this Motion;
3. Enjoining Defendant Erika Girardi from transferring, selling or otherwise disposing or transferring the Diamond Earrings pending her turning over the Diamond Earrings to the Trustee; and
4. Granting such other and further relief as is just and appropriate in the circumstances.

Dated: January 24, 2022

Respectfully Submitted,

JENKINS MULLIGAN & GABRIEL LLC

By: ______________________________
Larry W. Gabriel
Special Litigation Counsel for Plaintiff
Elissa D. Miller, Chapter 7 Trustee, Estate of
Girardi Keese

# TABLE OF CONTENTS

Page


I. INTRODUCTION ....................................................................................1

II. JURISDICTION AND VENUE .................................................................1

III. STATEMENT OF FACTS .......................................................................2

A. General Background ..............................................................................2

1. Thomas Girardi ......................................................................................2

2. Erika Girardi ..........................................................................................3

B. Events Leading Up to the Filing of the Involuntary Petitions and the Appointment of the Trustee [*In re Lion Air Flight JT 610 Crash*] ..........3

C. The Girardi Keese Bankruptcies ..............................................................4

D. Girardi's State Bar Proceedings-2021 .......................................................5

E. The Trustee's Investigation of GK Business Affairs ...................................5

F. Girardi's 2007 Theft of $750,000 from the GK Client Trust Account to Pay for Erika's Diamond Earrings ........................................6

IV. DISCUSSION ........................................................................................7

A. The Diamond Earrings Are Property of the GK Estate ..............................7

1. The Bankruptcy Estate Includes All Legal or Equitable Interests of the Debtor's Property ..............................................................7

2. Erika Cannot Claim an Ownership Interest in the Diamond Earrings ........................................................................................8

B. Erika Must Turn Over the Diamond Earrings to the Trustee ......................10

C. Alternatively, The Court Should Issue a Writ of Possession Entitling the Trustee to Obtain Possession of Erika's $750,000 Diamond Earrings ..........................................................................10

D. Statute of Limitations ..........................................................................12

1. The Discovery Rule Defers the Commencement of the Statute of Limitations Until Girardi's Fraud was Discovered by the Trustee. ...................................................................12

2. The Accrual Date is Delayed Until the Plaintiff is Aware of the Injury ..........................................................................................14

3. The Girardis' Conversion of the GK's Trust Fund Money......................15

V. CONCLUSION.....................................................................................................17

DECLARATION OF ELISSA D. MILLER …………………………………………………...18

DECLARATION OF DAPHNE MASIN. ……………………………………………………..20

DECLARATION OF LARRY W. GABRIEL …………………………………………………22

# TABLE OF AUITHORITIES

**Page(s)**

**Cases**


*4 Wall Las Vegas, Inc. v. Triebwasse*r, 2:12-cv-2746-KJN, 2013 U.S. Dist. LEXIS 33412, 2013 WL 930620 at *3 (E.D. Cal. March 8, 2013) .................................... 10

*Abarca v. Merck & Co,* 2008 U.S. Dist. LEXIS 71300 (C.D. Cal.2009) .................................... 2

*Bainbridge* v. *Stoner,* 16 Cal.2d 423 (1940) .................................... 9

*Bartlett v. Pacific Nat. Bank,* 110 Cal. App. 2d 683 (1933) .................................... 15

*Bennett v. Hibernia Bank*, 47 Cal. 2d 540 (1956) .................................... 15

*Burlesci v. Petersen*, 68 Cal.App.4th 1062 (1998) .................................... 15

*Butner v. United States,* 440 U.S. 48, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979) .................................... 7

*Collect Access, LLC v. Hernandez,* 483 B.R. 713 (9th Cir., BAP 2012) .................................... 10

*Connecticut Gen. Life Ins. v. Universal Ins. Co.*, 838 F.2d 612 (1st Cir. 1988) .................................... 7

*Coy v. E.F. Hutton & Co.*, 44 Cal. App. 2d 386 (1941) .................................... 15, 16

*Demain v. State Bar (1970)* 3 Cal.3d 381, 387 .................................... 9

*First National Bk. v. Thompson*, 60 Cal. App. 2d 79 (1943) .................................... 15, 16

*Franco. Dow Chem. Co.*, 611 F.3d 1027 (9th Cir. 2010) .................................... 2

*Fremont Indemnity Co. v. Fremont General Corp.*, 148 Cal.App.4th 97 (2007) .................................... 15

*Hobart v. Hobart Estate Co.*, 26 Cal. 2d 412 (1945) .................................... 15

*In re Hallinan*, 43 Cal.2d 243 (1954) .................................... 8

*In re Lack*,
2010 U.S. Dist. LEXIS 128354 (2010) .......... 2

*In re Lion Air Flight JT 610 Crash*,
D.C.N.D. Ill, 1:18-cv-07686 .......... 3

*In re Pettit,*
217 F.3d at 1078 .......... 7

*In re Plotner*,
5 Cal.3d 714 (1971) .......... 8

*In re Rezulin Prods. Liab. Litig.*
MDL No. 1348, 2002 U.S. Dist. LEXIS 29103 (D.C.S.D. N.Y. 2002) .......... 2

*In re Schick*,
234 B.R. at 342 (Bkrtcy.S.D.N.Y. 1999), 96 B 42902 .......... 7

*In re Smith*,
67 Cal.2d 460 (1967) .......... 8

*In re TFT-LCD (Flat Panel) Antitrust Litig,*
2013 U.S. Dist.LEXIS 49885 (N.D.Cal. 2013) .......... 2

*Giovanazzi v. The State Bar*
(1980) 28 Cal.3d 465 .......... 9

*Greenbaum v. State Bar*
(1976) 15 Cal.3d 893, 905 .......... 9

*Lockheed Martin Corp. v. Superior Court*
(2003) 29 Cal.4th 1096 .......... 2

*Moeller v. Superior Court,*
16 Cal.4th 1124 (1997) .......... 8

*Naftzger v. American Numismatic Society,*
42 Cal.App.4th 421 (1996) .......... 8, 9, 10, 14, 17

*Notinger v. Migliaccio,*
468 B.R. 487 (N.H. Bankr. 2012) .......... 7

*Pashley v. Pacific Elec. Ry. Co*.,
25 Cal. 2d 226 (1944) .......... 15

*Pena v. Toney,*
98 Cal. App. 3d 534 (1979) .......... 9

*Prakashpalan v. Engstrom, Lipscomb & Lack,*
223 Cal. App. 4th 1105 (2014) .......... 8, 14

*Rose v. Dunk-Harbison Co*.,
7 Cal. App. 2d 502 (1935) .......... 15

*Sears v. Rule,*
27 Cal. 2d 131 (1945) .......... 15

*Society of California Pioneers v. Baker*, 43 Cal.App.4th 774 (1996) ....................14

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 127 S. Ct. 1199, 167 L. Ed. 2d 178 (2007)....................7

*Weiner v. A.G. Minzer Supply Corp,* 301 B.R. 104 (Bankr. D. Mass. 2003) ....................7

*Weiss v. Marcus,* 51 Cal.App.3d 590 (1975) ....................9

*Wolf v. Jacobson,* 676 F.3d 1193 (9th Cir., 2012) ....................10

**Statutes**

11 U.S.C. § 303(g) ....................4

11 U.S.C. § 541(a)(1)....................7, 9, 10

11 U.S.C. § 541(d) ....................7

11 U.S.C. § 542.................... 1-3, 10

11 U.S.C. § 542(a) ....................10

28 U.S.C. § 157(b)(1) ....................1

28 U.S.C. § 157(b)(2)(A)....................1

28 U.S.C. § 157(b)(2)(E) ....................1

28 U.S.C. § 157(b)(2)(H)....................1

28 U.S.C. § 157(b)(2)(O)....................1

28 U.S.C. § 1334....................1

28 U.S.C. § 1409(a) ....................1

Cal. Code Civ. Proc. § 338 ....................17

Cal. Code Civ. Proc. § 388, subd. 3 [now subdivision (c)] ....................15

Cal. Code Civ. Proc. § 2224 ....................9

Cal. Code Civ. Proc. § 2338 ....................13

Cal. Code Civ. Proc. § 512.010 ....................11

Cal. Code Civ. Proc. § 512.010(a)....................1, 11

Cal. Code Civ. Proc. § 512.010(b)....................12

Cal. Code Civ. Proc. § 512.060 ....................12

Penal Code § 484 .......... 13

Penal Code § 506 .......... 8

Probate Code § 16460 .......... 14

Probate Code § 16460(a)(2) .......... 14

**Rules**

Fed. R. Civ. P. 64 .......... 11

Fed. R. Civ. P. 64(a) .......... 11

Fed. R. Civ. P. 26 .......... 22

Rules of Prof Conduct, Rule 4-100 (B)(4) .......... 3

Rules of Prof Conduct, Rule l.15 .......... 3

**Treatises**

5 Collier on Bankruptcy ¶ 542.02 (16th ed. 2011) .......... 10

3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 469, p. 499 .......... 15

2 Wood on Limitations (4th ed., 1916) 858-859 .......... 15

38 A.L.R.3d 1354; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 131, pp. 5487-5488 .......... 9

## MEMORANDUM OF POINTS AND AUTHORITES

### I. INTRODUCTION

By this Motion the Trustee is requesting the Court issue an order pursuant to 11 U.S.C. § 542 or, alternatively pursuant to Cal. Code Civ. Proc. § 512.010(a), requiring Defendant Erika Girardi ("Erika") to turn over to the Trustee a pair of "Diamond Earrings" her husband, Thomas Girardi, purchased in 2007 for $750,000 with a check drawn against the Girardi Keese ("GK") Client Trust Account. Not only did Girardi steal money from the GK Client Trust Account to buy the Diamond Earrings, he covered up the theft by describing the purpose of the check as a "cost" of litigation incurred by the Firm in the prosecution of the "*Rezulin*," mass tort, complex litigation cases in which GK functioned as "lead counsel."[2] Because the Diamond Earrings were bought with funds stolen from the GK Trust Account, Girardi could not transfer legal or equitable title to the Diamond Earrings to Erika and accordingly Erika cannot retain possession of the Diamond Earrings as the same are part of the GK estate.

Further, upon discovery of theft from the Client Trust Account, the Trustee made demand of Erika to turn over possession of the Diamond Earrings so that the same could be properly administered by the Trustee. As of the filing of this Motion, Erika has refused to do so.

### II. JURISDICTION AND VENUE

The Bankruptcy Court (the "Court") has jurisdiction over this adversary proceeding under 28 U.S.C. § 157(b)(1) and 1334 and the Trustee consents to entry of a final judgment in this matter by the Bankruptcy Court.

This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H), and (O).

Venue properly lies in this judicial district because this proceeding arises in and relates to a case pending in this district under title 11 of the United States Code as provided for in 28 U.S.C. § 1409(a).

This adversary proceeding arises out of and is related to the bankruptcy case of *Girardi Keese* (the "Debtor"), Case No. 2:20-bk-21022-BR.

---

[2] *See, infra*. Fn. 1.

## III. STATEMENT OF FACTS

### A. General Background

#### 1. Thomas Girardi

Thomas Girardi ("Girardi") was admitted to practice law in the State of California on January 13, 1965, State Bar No. 36603. [Request for Judicial Notice ("RFJN"), Exhibit 1.][3] Over time he became one of the most renown "plaintiff's lawyers" in the state, if not the country, following his settlement of the PG&E San Bruno disaster case, and became even more famous by the movie "Erin Brockovich." The "Brockovich Settlement" vaulted Girardi to the front line of Plaintiff's lawyers handling "mass tort" cases, and with his status and reputation came the ability to be appointed as "lead counsel" in some of the nation's largest mass tort and class action cases, thus providing Girardi the power to control which lawyers could participate in these mega cases that often generated millions of dollars in fees.[4] The position also gave Girardi the power to direct that settlement and or recovery proceeds would be funneled through GK and thus subject to Girardi's direction and control.

In 2010 Girardi was investigated by the California State Bar based upon a referral made by the 9th Circuit Court of Appeal after finding Girardi and his co-counsel Walter Lack, misled the district court and the 9th Circuit in affidavits they filed in attempting to enforce a putative judgment against the wrong party. *See*, *Franco. Dow Chem. Co*., 611 F.3d 1027 (9th Cir. 2010) ("*In re Girardi*")[5] The State Bar initiated an investigation which investigation was terminated after several months. No further action was taken by the State Bar.

[3] The Exhibits are attached separately and where appropriate designated as a document for which judicial notice is requested.

[4] *See, e.g., Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096 [Discharge chemicals into water supply]. *See also*, *Abarca v. Merck & Co,* 2008 U.S. Dist. LEXIS 71300 (C.D. Cal.2009) [Environmental contamination at cooling tower mfg. facility in Merced County]; *In re TFT-LCD (Flat Panel) Antitrust Litig,* 2013 U.S. Dist. LEXIS 49885 (N.D.Cal. 2013) [Anti-trust litigation re global price-fixing conspiracy in the market for thin-film transistor liquid-crystal display panels ("TFT-LCD"): *In re Rezulin Prods. Liab. Litig.* MDL No. 1348, 2002 U.S. Dist. LEXIS 29103 (D.C.S.D. N.Y. 2002) ("*Rezulin*").

[5] Girardi was found to have given Lack the authority to sign his name to a declaration, without ever reviewing and approving the same. *Girardi*, 611 F.3d at 1039. The contempt proceedings resulted in a formal reprimand for Girardi, and a suspension from the practice of law before the Ninth Circuit for six months for Lack. *In re Lack*, 2010 U.S. Dist. LEXIS 128354 (2010).

**2. Erika Girardi**

Erika is a self-professed actor, songwriter, and author[6] and a mainstay on the hit television reality show "The Real Housewives of Beverly Hills" ("RHOBH"). Erika and Girardi married in 2000. Twenty-one years later and two months prior to the filing of the involuntary in this case, Erika filed for divorce. [RFJN, Exhibit 2]

**B. Events Leading Up to the Filing of the Involuntary Petitions and the Appointment of the Trustee [*In re Lion Air Flight JT 610 Crash*]**

In 2018 Girardi and G&K became one of the lead counsels in the multi-district litigation filed on behalf of the victim-plaintiffs of the Indonesia plane crash, *In re Lion Air Flight JT 610 Crash*, D.C.N.D. Ill, 1:18-cv-07686. In 2020, the cases settled after mediation conferences which settlements were approved by the District Court. [RFJN 8: 1:18-cv-07686, ECF Docs. 384, 419, 424, 576, 588]. The settlement funds were to be managed according to procedures set forth in a sealed declarations submitted by one of the plaintiffs' attorneys, Ari Scharg. Those declarations provide that Boeing was to wire the settlement funds to a trust account held by GK, and that GK would then wire the proceeds to the clients in Indonesia. [RFJN 9 1:18-cv-07686, ECF Docs. 380, 411, 421, 426, 575, 587] The settlement money from Boeing was wired to GK's trust account. Although an attorney is obligated to disburse settlement funds to clients upon receipt of the same (Rules of Professional Conduct, Rule l.15 "Safekeeping Funds and Property of Clients," Rule 4-100 (B)(4)) Girardi did not disburse all of the settlement funds to the settling plaintiffs or pay its co-counsel, Edelson PC, the entirety of its share of the contingency fees.

On December 2, 2020, Edelson PC filed a "Motion for Rule to Show Cause" in the Illinois District Court as to why Girardi Keese should not be held in contempt of court for violating the Court Orders re approval of the settlement and the disbursement of the settlement funds. [RFJN, 10: 1:18-cv-07686, ECF Doc. 842] On December 14, 2020, the District Court entered a civil contempt Order against GK and Girardi for violating its order to disburse settlement funds and thereafter entered a $2 million judgment against Girardi, ordered his assets frozen, and referred

---

[6] In 2018, Gallery Books published her "autobiography" "*Erika Jayne Pretty Mess*".

him to the United States Attorney's Office for criminal investigation. [RFJN 11: 1:18-cv-07686, ECF Doc. 879]

**C. The Girardi Keese Bankruptcies**

On December 18, 2020, petitioning creditors Jill O'Callahan, as successor in interest to James O'Callahan, Robert M. Keese, John Abassian, Erika Saldana, Virginia Antonio, and Kimberly Archie (collectively, the "Petitioning Creditors") filed an involuntary chapter 7 bankruptcy petition against the Debtor.[7] [ECF Doc. 1]

On December 24, 2020, the Petitioning Creditors filed a *Motion for Appointment of Interim Trustee Pursuant to 11 U.S.C. § 303(g).* [ECF Doc. 12] The Court entered an order granting the motion on January 5, 2021. [ECF Doc. 45] On January 6, 2021, Elissa D. Miller, was appointed as the interim trustee. [ECF Doc. 50]

On January 13, 2021, the Court entered an Order Directing: (1) The Clerk of Court to Immediately Enter an Order for Relief under Chapter 7; (2) The United States Trustee to Immediately Appoint a Chapter 7 Trustee; (3) The Debtor to File All Schedules and Related Documentation for Chapter 7 Case within Fourteen Days of the Entry of the Order; and (4) Vacating February 16, 2021, Status Conference. [ECF Doc. 68] On January 13, 2021, the Clerk of Court entered an order for relief against the Debtor [ECF Doc. 69] and the Trustee was appointed and accepted her appointment in the Debtor's case. [ECF Doc. 71]

The Trustee initiated this action on July 14, 202, by filing an adversary complaint against Erika Girardi, EJ Global, LLC and "Pretty Mess," a California corporation. *Miller v. Girardi, et al.,* Adversary Case No: 2:21-ap-01155. [ECF Doc. 1] The Trustee filed an amended complaint on August 26, 2021 [ECF Doc. 12] The defendants filed their answer to the Amended Complaint on November 1, 2021. [ECF Doc. 20]

[7] The Petitioning Creditors also filed an involuntary chapter 7 bankruptcy petition against Thomas V. Girardi, which is currently pending as Bankruptcy Case No. 2:20-bk-21020-BR.

**D. Girardi's State Bar Proceedings-2021**

On March 30, 2021, the State Bar filed a Notice of Disciplinary Charges against Girardi. *See*, *In the Matter of Thomas Vincent Girardi*, State Bar No. 36603, State Bar Court Case No. SBC-21-O-30192. [RFJN, Exhibit 3] Prosecutors charged him with fourteen counts of misconduct, including misappropriation, misrepresentation, failure to maintain client trust accounts, failure to disburse client funds promptly, failure to obey a court order to distribute client funds, making a false statement in a settlement disbursement, and failure to cooperate in a State Bar investigation. *Id.* The charges arise from a number of different matters in which Girardi and his firm, Girardi Keese mishandled settlement funds owed to clients. *Id.* Girard was ordered "inactive" on March 30, 2021 and was suspended from the practice of law by the State Bar on August 9, 2021 [RFJN, Exhibit 1].

**E. The Trustee's Investigation of GK Business Affairs**

Upon her appointment, the Trustee commenced an investigation into the business affairs of GK. Among other things, the Trustee hired Development Specialists, Inc./DSI Consulting, a forensic accounting /management consulting firm, [Order Approving Retention, ECF Doc., 169] and Daphne Masin as a records paralegal [Order Approving Employment, ECF Doc. 259] to audit the books and records of GK.[8] During their investigation the following documents were found among the business records of GK:

1. A letter written by Thomas Girardi dated July 6, 2012, to Ms. Xin Xu, California Franchise Tax Board and Declaration of Ared Michael Menzilcian [*See,* Declaration of Daphne Masin, ("Masin Decl."), ¶ 3, [RFJN, Exhibit 4];
2. A March 2, 2007 check drawn on the GK trust account in the amount of $750,000.00, payable to M& M Jewelers. [Masin Decl. ¶ 4, RFJN, Exhibit 5]
3. A GK Trust Account ledger for the *Rezulin* mass tort action, with an entry of March 2, 2007, in the amount of $750,000, payable to M & M, for "costs." without further description. [Masin Decl., ¶ 5 [RFJN, Exhibit 6]

[8] *See*, https://dsiconsulting.com

The letter Mr. Girardi sent to the Franchise Tax Board, [RFJN, Exhibit 4] tells the story of how Erika wound up with Diamond Earrings with a 2007 value of $750,000.00. A guesstimate of its value today - $1.4 million. [9]

**F. Girardi's 2007 Theft of $750,000 from the GK Client Trust Account to Pay for Erika's Diamond Earrings**

As presented by Mr. Girardi in his July 6, 2012 letter, in 2007 the Girardi's home was broken into while they were away for a three-day weekend. The home had been completely ransacked, however, almost of Erika's jewelry were stored in a massive safe that could not be opened or moved. Erika however left a pair of diamond earrings in a little cup in her dressing room. [Masin Decl., ¶ 4, RFJN, Exhibit 4] According to Girardi, the stolen diamond earrings cost $800,000 and were not insured. [*Id.*] Girardi immediately replaced the earrings, purchasing a similar style piece ("Diamond Earrings") from M&M Jewelers for $750,000.00. [*Id.* at p. 4, Declaration of Ared Michael Menzilcian]

Although Girardi stated in his letter to Ms. Xin Xu that he paid for the Diamond Earrings from a Comerica $19 million line of credit [*Id.*, p. 1] the statement was a lie. In fact, the replacement $750,000 Diamond Earrings were paid for by a check dated March 2, 2007, drawn against the "Girardi Keese Client Trust Account" for the Rezulin Mass Tort Case. The check is co-signed by then GK partner, James O'Callahan and Thomas Girardi. [Masin Decl., ¶ 4, Exhibit 5][10] To hide his embezzlement Girardi entered an accounting entry in the GKRTA ledger (GK Account # 21101), dated March 2, 2007, identifying the $750,000.00 as a "cost" of the litigation. [Masin Decl. ¶ 5, RFJN, Exhibit 6] The GKRTA ledger further evidences that G&K paid itself

---

9 Assuming Girardi paid fair market value for the Diamond Earrings in 2007, the Trustee anticipates that the value of the Diamond Earrings has increased substantially. The Trustee intends to retain an expert diamond appraiser to establish the value of the Diamond Earrings once the same have been delivered to the Trustee. [Gabriel Decl. ¶ 5] Internet information tells us that the value of gem quality natural diamonds increases by 6% per year. Diamond Prices and Trends Over the Years (petragems.com). Given 14 years have passed, the Diamond Earrings may have increased in value by 84%. __ ___

10 According to his "Linkedin account, O'Callahan was a partner of the firm [https://www.linkedin.com/in/james-o-callahan-2209775] Mr. O'Callahan died in 2019. _____________.

$15,074,805.82 as repayment for "costs" and another $7,500,000 for fees. [Masin Decl., RFJN, Exhibit 6 and Exhibit 9]

Upon discovering the fraud, the Trustee made demand upon Erika, through her counsel, to return the Diamond Earrings to the Trustee. [Declaration of Larry W. Gabriel ("Gabriel Decl.") ¶¶ 3-4] As of the filing of this Motion, the Diamond Earrings have not been returned to the Trustee. [*Id.*]

**IV. DISCUSSION**

**A. The Diamond Earrings Are Property of the GK Bankruptcy estate-state**

**1. The Bankruptcy Estate Includes All Legal or Equitable Interests of the Debtor's Property**

Section 541(a)(1) of the Bankruptcy Code provides that property of the estate includes "all *legal* or *equitable* interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added). Section 541(d) operates to limit the extent of the estate's interest in property in which the debtor holds "only legal title and not an equitable interest." 11 U.S.C. § 541(d); *Weiner v. A.G. Minzer Supply Corp. (In re UDI Corp.),* 301 B.R. 104, 110 (Bankr. D. Mass. 2003). In such situations the property belongs to the estate "only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d).

The contours of the estate's and debtor's interest in property are determined by reference to non-bankruptcy state law. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co*., 549 U.S. 443, 451, 127 S. Ct. 1199, 167 L. Ed. 2d 178 (2007) (citing *Butner v. United States,* 440 U.S. 48, 54-55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979)); *In re Pettit,* 217 F.3d at 1078 ("[B]ankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case.") Although the equitable interests of the trust account may not be property of the estate, the debtor's legal interest in the property is property of the estate. *See,* discussion in *Notinger v. Migliaccio (In re Fin. Res. Mortg., Inc.)* 468 B.R. 487 (N.H. Bankr. 2012) citing to *Connecticut Gen. Life Ins. v. Universal Ins. Co.*, 838 F.2d 612, 618 (1st Cir. 1988) ("When a debtor is in possession of property impressed

by a trust-express or constructive-the bankrupt estate holds the property subject to the outstanding interest of the beneficiaries."); *Schick*, 234 B.R. at 342 ("If a debtor holds only legal title to the property, that is all that vests in the estate.").

Under California law there can be no reasonable dispute that an attorney's client trust account is an express trust. Rules of Professional Conduct, rule 4-100 provides: "(A) All funds received or held for the benefit of clients by a member or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labeled 'Trust Account,' 'Client's Funds Account' or words of similar import, maintained in the State of California … ." Further, an attorney owes the client a duty to account for funds held in the client trust account. *Prakashpalan v. Engstrom, Lipscomb & Lack,* 223 Cal. App. 4th 1105, 1124-1125 (2014). As an express trust, the trustee (here the GK Trustee) holds legal title to the account subject to the claims of the beneficiaries. *Moeller v. Superior Court,* 16 Cal.4th 1124 (1997).

The money used to purchase the Diamond Earrings came out of the GK Client Trust Account. At a minimum the GK estate and hence the Trustee has legal title to the Diamond Earrings, even assuming *arguendo* that none of the money in the Trust Account that was used to buy the Diamond Earrings was to go to GK but was subject to the equitable rights of the Gerardi client-plaintiffs.

**2. Erika Cannot Claim an Ownership Interest in the Diamond Earrings**

As presented above, Girardi paid for the $750,000 Diamond Earrings in 2007 with a check drawn against the GK Client Trust Account and documented the withdrawal as a payment of costs. [Masin Decl., ¶¶ 3-5, RFJN, Exhibits 5-6] Simply put, Girardi stole $750,000 from the GK's Client Trust Account, to pay for the Diamond Earrings. Girardi's crime-Embezzlement. California Penal Code § 506 provides that: "Every …, attorney, entrusted with or having in his control property for the use of any other person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, . . . other than for that which he received it, is guilty of embezzlement. *In re Hallinan*, 43 Cal.2d 243, 247 (1954); *see also*, *In re Plotner*, 5 Cal.3d 714, 726 (1971); *In re Smith*, 67 Cal.2d 460, 462 (1967).

Moreover, Girardi & Keese paid itself $15,074,805.82 allegedly as repayment of costs. However, all the payments except one, were paid in round numbers of either $1,000,000.00 or $500,000.00, GK also paid itself $7,250,000 in fees. Yet, the ending balance of the RTA shows a $2,833,662.83 deficit (out of trust). The fact that the RTA was overdrawn by $2,833,662.83 is sufficient evidence to support a conclusion of misappropriation. See *Giovanazzi v. The State Bar*, (1980) 28 Cal.3d 465, 474, citing to *Greenbaum* v. *State Bar* (1976) 15 Cal.3d 893, 905, *Demain* v. *State Bar* (1970) 3 Cal.3d 381, 387. ("The mere fact that the balance in an attorney's trust account has fallen below the total of amounts deposited in and purportedly held in trust, supports a conclusion of misappropriation.)

It is also well settled that "[s]tolen property remains stolen property as a thief "cannot convey valid title to an innocent purchaser of stolen property." *Naftzger v. American Numismatic Society,* 42 Cal.App.4th 421, 432 (1996) ("*Naftzger*"). The same would be true where the thief, in this case Girardi, gifted the proceeds of his embezzlement to another, in this case, Erika. California Civ. Code, § 2224 provides: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."). *See also*, 38 A.L.R.3d 1354; 7 Witkin, <u>Summary of Cal. Law</u> (8th ed. 1974) Trusts, § 131, pp. 5487-5488; *Bainbridge* v. *Stoner,* 16 Cal.2d 423, 428 (1940); *Weiss v. Marcus,* 51 Cal.App.3d 590, 599-600 (1975).

The case of *Pena v. Toney,* 98 Cal. App. 3d 534 (1979) is on point. In *Pena,* Kirk P., a juvenile, stole approximately $15,000 from an Arco service station in Davis, California, owned and operated by Celso Pena. The following day, Marc Kempton, in turn, stole approximately $6,000 of the pilfered $15,000 from Kirk P. Kempton spent approximately $4,000 of these stolen funds to purchase a 1972 Chevrolet vehicle. Kempton was later arrested in Yolo County with the automobile and some of the identified stolen funds in his possession. Charged with robbery and receiving stolen property, Kempton engaged Toney, an attorney, to represent him in the criminal action and executed a bill of sale, to transfer title to the automobile to Toney as payment for his legal services. Pena then filed a civil action against Kempton and Toney asking for various forms

of relief, including declaratory relief. Upon the relief requested, the Trial Court found that Pena had equitable title to the automobile and imposed a constructive trust on the same. The Court of Appeal affirmed. *See also*, *Naftzger,* 42 Cal.App.4th at 427-428.

In this case, the Trustee has established that Girardi embezzled $750,000 from the GK trust account to purchase Diamond Earrings with a check drawn against the GK Trust Account and then gave the Diamond Earrings to Erika. On these facts, Erika cannot claim title to the Diamond Earrings, and is an involuntary trustee thereof, for the benefit of the owner, which in this case is the Trustee. 11 U.S.C. § 541(a)(1).

**B. Erika Must Turn Over the Diamond Earrings to the Trustee**

Bankruptcy Code § 542(a) provides:

> An entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

*See also*, *Collect Access, LLC v. Hernandez (In re Hernandez),* 483 B.R. 713, 720 (9th Cir., BAP 2012) (instructing that "[a] bankruptcy court may order turnover of property to the debtor's estate if, among other things, such property is considered 'property of the estate.'"). The Trustee has the initial burden of proving the estate is entitled to the turnover of the property. *Wolf v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1200-01 (9th Cir., 2012) (citing 5 Collier on Bankruptcy ¶ 542.02 (16th ed. 2011)).

The Trustee has fulfilled her burden of proving that the estate is entitled to the turnover of the $750,000 Diamond Earrings bought by Tom Girardi for Erika to replace the stolen earrings, as the same were paid for by Girardi using funds embezzled from the G&K Client Trust Account. Accordingly, the Trustee is entitled to possession of the $750,000 Diamond Earrings purchased by G&K trust funds and the Court should issue an order requiring Erika to turn over the Diamond Earrings to the Trustee forthwith. 11 U.S.C. § 542.

**C. Alternatively, The Court Should Issue a Writ of Possession Entitling the Trustee to Obtain Possession of Erika's $750,000 Diamond Earrings**

Federal Rule of Civil Procedure 64 states, in pertinent part:

> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

Fed. R. Civ. P. 64(a). "California law provides for the return of property to creditors via a writ of possession*." 4 Wall Las Vegas, Inc. v. Triebwasse*r, 2:12-cv-2746-KJN, 2013 U.S. Dist. LEXIS 33412, 2013 WL 930620 at *3 (E.D. Cal. March 8, 2013) (citing Cal. Code Civ. Proc. § 512.010(a) which provides that "[u]pon the filing of the complaint or at any time thereafter, the plaintiff may apply pursuant to this chapter for a writ of possession by filing a written application for the writ with the court in which the action is brought."). Under Cal. Code Civ. Proc. § 512.010 the writ application must include:

(1) A showing of the basis of the plaintiff's claim and that the plaintiff is entitled to possession of the property claimed. If the basis of the plaintiff's claim is a written instrument, a copy of that instrument shall be attached.

(2) A showing that the property is wrongfully detained by the defendant, the manner in which the defendant came into possession of the property, and according to the best knowledge, information, and belief of the plaintiff, of the reason for the detention.

(3) A particular description of the property and a statement of its value.

(4) A statement, according to the best knowledge, information, and belief of the plaintiff, of the location of the property, and, if the property, or some part of it, is within a private place which may have to be entered to take possession, a showing that there is probable cause to believe that such property is located there.

(5) A statement that the property has not been taken for a tax, assessment, or fine, pursuant to a statute; or seized under an execution against the property of the plaintiff; or, if so seized, that it is by statute exempt from such seizure.

Cal. Code Civ. Proc. § 512.010(b). California Code of Civil Procedure § 512.060 also provides that:

(a) At a hearing, a writ of possession shall issue if both of the following are found:

(1) The plaintiff has established the probable validity of the plaintiff's claim to possession of the property; and

(2) The undertaking requirements of § 515.010 are satisfied.

(b) No writ directing the levying officer to enter a private place to take possession of any property shall be issued unless the plaintiff has established that there is probable cause to believe the property is located there.

The evidence before the Court is that Erika is in possession of the Diamond Earrings, and that she came into possession of the same from Girardi after he purchased the Diamond Earrings with Client Trust Funds as evidenced by the copy of the check and the GK Client Trust Fund ledger . [RFJN Exhibits 4-6, Gabriel Decl. ¶3-4] The purchase price value of the Diamond Earrings, $750,000, is likewise established given the check that was issued to M&M Jewelers as evidenced by the Declaration of the owners of M&M Jewelers. [RFJN Exhibit 4, p. 4] and as demonstrated by the check used to pay for the Diamond Earrings. [Exhibit 5] The amount of the purchase and the date of the purchase together with the Daphne Masin declaration satisfies the elements of the claim for a particular description of the property and the value of the same.

The Trustee is also informed and believes that Erika is in possession of the Diamond Earrings. [Gabriel Decl. ¶¶ 3-4] The Trustee is further informed and believes that the property has not been taken for a tax, assessment, or fine, pursuant to a statute; or seized under an execution against the Diamond Earrings. [*Id.*] Thus, all elements of the writ of possession have been addressed.

**D. Statute of Limitations**

**1. The Discovery Rule Defers the Commencement of the Statute of Limitations Until Girardi's Fraud was Discovered by the Trustee.**

The Trustee fully anticipates that Erika will defend this Motion by claiming the Statute of Limitations is a bar to the Trustee's right to a return of the Diamond Earrings. For a number of

reasons, there is no statute of limitations that would preclude the Trustee from recovering the Diamond Earrings.

One Statute of Limitation that may have relevance to the Trustee's claim is California Code of Civil Procedure § 2338, which provides in relevant part:

> Within three years . . . (2) The cause of action in the case of theft, as described in Section 484 of the Penal Code, of an article of historical, interpretive, scientific, or artistic significance is not deemed to have accrued until the discovery of the whereabouts of the article by the aggrieved party, his or her agent, or the law enforcement agency that originally investigated the theft.
>
> Section 484 of the Penal Code provides:
>
> **(a)** Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft. In determining the value of the property obtained, for the purposes of this section, the reasonable and fair market value shall be the test, and in determining the value of services received the contract price shall be the test. If there be no contract price, the reasonable and going wage for the service rendered shall govern. For the purposes of this section, any false or fraudulent representation or pretense made shall be treated as continuing, so as to cover any money, property or service received as a result thereof, and the complaint, information or indictment may charge that the crime was committed on any date during the particular period in question. The hiring of any additional employee or employees without advising each of them of every labor claim due and unpaid and every judgment that the employer has been unable to meet shall be *prima facie* evidence of intent to defraud.

Assuming *arguendo* that Diamond Earrings that cost $750,000 are something more than a mere bobble to hang from one's earlobes, they certainly can be considered of artistic significance. Thus, the statute of limitations in C.C.P. § 2338 would not begin to run until the discovery of the whereabouts of the Diamond Earrings, or in or around December 2021, at which time it was confirmed that Erika has possession of the Diamond Earrings.

**2. The Accrual Date is Delayed Until the Plaintiff is Aware of the Injury.**

More generally, the statute of limitations usually commences when a cause of action "accrues," and it is generally said that an action accrues on the date of injury. Alternatively, it is often stated that the statute commences upon the occurrence of the last element essential to the cause of action., *Naftzger v. American Numismatic Society,* 42 Cal.App.4th 421, 428 (1996).

These general principles have been significantly modified by the common law "discovery rule," which provides that the accrual date may be delayed until the plaintiff is aware of her injury and its negligent cause. The discovery rule protects those who are ignorant of their cause of action through no fault of their own. It permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue. *Society of California Pioneers v. Baker*, 43 Cal.App.4th 774, 783-784 (1996) (the running of the statute of limitations for the recovery of stolen property begins upon the actual discovery of the stolen property without regard to the owner's diligence or lack thereof.) *See also*, *Prakashpalan v. Engstrom, Lipscomb & Lack*, 233 Cal.App. 4th 1105 (2014) [applying the discovery rule as set forth in Probate Code § 16460 to claims that law-firm failed to provide an accounting extends statute for filing claims for misappropriation or improper distribution of settlement funds until knowledge of wrongdoing.[11]

Here, the discovery of the fraud did not occur until after the Trustee was appointed and conducted an investigation of GK's books and records. The discovery occurred in or around July 2021 when the Trustee's investigators discovered the July 6, 2012 letter from Girardi to Xin Xu of the California Franchise Tax Board. [Exhibit 4] Upon discovery of the letter, a review was conducted of the GK books and records which review turned up the ledger for the *Rezulin* mass tort case. The ledger disclosed the $750,000 payment to M&M identified as "costs." [Exhibit 6] In fact, the Trust Account check Girardi issued went to pay for the Diamond Earrings. The check shows an endorsement by M&M Jewelers and that the check was deposited in an account for M&M Jewelers. [Exhibit 5]

---

[11] Probate Code §16460 (a) (2) provides: "If an interim or final account in writing or other written report does not adequately disclose the existence of a claim against the trustee for breach of trust or if a beneficiary does not receive any written account or report, the claim is barred as to that beneficiary unless a proceeding to assert the claim is **commenced within three years after the beneficiary discovered, or reasonably should have discovered,** the subject of the claim.

**3. The Girardis' Conversion of the GK's Trust Fund Money**

Conversion is generally described as the wrongful exercise of dominion over the personal property of another. [Citation.] The basic elements of the tort are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages. [Citation.] *Fremont Indemnity Co. v. Fremont General Corp.*, 148 Cal.App.4th 97, 119 (2007). "Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066 (1998).

The statute of limitations for a claim of conversion is three years. *See, e.g.*, *Coy v. E.F. Hutton & Co*., 44 Cal. App. 2d 386, 390 (1941) (plaintiff's cause of action accrued the day of the alleged conversion of his stock, and suit against stockbroker filed more than four years later was barred by statute of limitations); *First National Bk. v. Thompson*, 60 Cal. App. 2d 79 (1943), citing *Coy v. E.F. Hutton & Co*., *supra*, at 386, 390 [suit to recover shovel from person who purchased it from one who had not satisfied the terms of his conditional sales contract barred because filed more than three years after conversion].)

While this may be the general rule, the California Supreme Court has noted an exception for cases in which a fiduciary has concealed the material facts giving rise to the cause of action. "Ordinarily the statute of limitations applying in conversion actions (Code Civ. Proc., § 388, subd. 3 [now subdivision (c)]) begins to run from the date of the conversion even though the injured person is ignorant of his rights. *First Nat. Bank v. Thompson*, 60 Cal. App. 2d 79, 83 (1943); *Coy v. E.F. Hutton & Co*., 44 Cal. App. 2d 386, 389-391 (1941) ; *Rose v. Dunk-Harbison Co*., 7 Cal. App. 2d 502, 505-506 (1935). This rule, however, is not absolute; for example, where there has been a fraudulent concealment of the facts the statute of limitations does not commence to run until the aggrieved party discovers or ought to have discovered the existence of the cause of action for conversion. *Bartlett v. Pacific Nat. Bank,* 110 Cal. App. 2d 683, 694 (1933); *see, Rose v.*

*Dunk-Harbison Co*., 7 Cal. App. 2d 502, 505; 2 *Wood on Limitations* (4th ed., 1916) 858-859; cf. *Pashley v. Pacific Elec. Ry. Co*., 25 Cal. 2d 226, 229 (1944).

"Since a fiduciary has a duty to make a full disclosure of facts which materially affect the rights of the parties, it seems obvious that any act by him amounting to a conversion of trust property is akin to a fraudulent concealment. [Citations.] This is in accord with statements in many decisions that statutes of limitations do not begin to run against an action for breach of a voluntary trust until there has been a repudiation which is brought home to the beneficiary. [Citations.]" *Bennett v. Hibernia Bank*, 47 Cal. 2d 540, 561 (1956); *see also, Sears v. Rule,* 27 Cal. 2d 131, 147-148 (1945); *Hobart v. Hobart Estate Co*., 26 Cal. 2d 412, 436-441 (1945); 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 469, p. 499 (in actions against a fiduciary accrual of the cause of action is delayed until the beneficiary has knowledge or notice.)

As a partner in the firm GK, Girardi was a fiduciary with respect to the GK client trust account. Girardi's fraud/embezzlement wasn't discovered until July, 2021 when the Trustee's investigators came across the July 6, 2012 letter from Girardi to Xin Xu. It is only upon this discovery that the statute of limitations commenced to run.

Moreover, Girardi covered up the embezzlement by disguising describing the check to M&M as a "cost" as set forth in the leger for the *Rezulin* mass tort action. [Exhibit 6]

Another way to look at this issue is using the assumption that Erika was unaware that her husband stole trust funds to pay for the Diamond Earrings. As already established, even assuming this lack of knowledge of the theft, Erika does not have legal or equitable title to the Diamond Earrings and is still in possession of the same. By the Trustee's action against Erika, and through correspondence with Erika's counsel, the Trustee has made demand for a return of the Diamond Earrings, a demand that has been rejected by Erika. [Gabriel Decl. ¶¶ 3-4 ] As such, Erika's refusal post filing of the bankruptcy to turn over the Diamond Earrings to the Trustee is also conversion. The refusal of Erika to turn over the Diamond Earrings is a new action by Erika that is inconsistent with the rights of the Trustee to obtain possession of all assets of the estate. Accordingly, the Trustee's cause of action for conversion begins at the time that Erika acted in a manner inconsistent with the Trustee's interest, which in this case is after the filing of the

bankruptcy. The statute of limitations for the claim for conversion (3 years, Cal. Code of Civ. Proc. §338) accrued only after Erika refused to return the Diamond Earrings to the Trustee after demand therefore was made. *Naftzger,* 42 Cal.App.4th at pp. 428-429.

## V. CONCLUSION

For all the foregoing reasons, the Court should grant the Trustee's application for an order requiring Erika to turn over the $750,000 Diamond Earnings purchased by Girardi with the funds from the GK trust account or, in the alternative, issue a writ of possession in favor of the Trustee.

Dated: January 24, 2022

Respectfully Submitted

Larry W. Gabriel
Jenkins Mulligan & Gabriel, LLP

Special Litigation Counsel for Elissa D. Miller,
Chapter 7 Trustee, Estate of Girardi Keese

**DECLARATION OF ELISSA D. MILLER**

I, Elissa D. Miller, declare as follows:

1. I am the duly appointed Chapter 7 Trustee in the bankruptcy case of Girardi Keese. I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto. I am also a partner at the law firm SulmeyerKupetz. I make this declaration in support of my Application for Turnover Order or in the Alternative, for the Issuance of Writ of Attachment to which this declaration is attached (the "Application"). Unless otherwise defined in this declaration, all terms defined in the Application are incorporated herein by this reference.

2. Upon my appointment as Chapter 7 Trustee I requested that the Court approve my applications to employ Daphne Masin as a paraprofessional (ECF Doc. 128) and Development Specialists Inc. ("DSI") as my accountants and financial advisors (ECF Doc. 82)

3. The orders approving the applications were entered on March 11, 2021 (ECF Doc. 259, Masin Application) and on February 9, 2021 (ECF Doc., 169, DSI Application).

4. Subsequent to their appointment I tasked Masin and DSI to work jointly with my general counsel, Smiley Wange-Ekvall, LLP to gather all of the business records of GK and to being a review and examination of the same. In the process we have been collecting information as to the Debtor's bank accounts, including accounts at Citizens Business Bank, Torrey Pines Bank, Wells Fargo Bank, Citibank, and Comerica Bank California.

5. During the course of the review of the Firms books and records, it was discovered that over a 10- year period the Firm had provided Erika Girardi a "Black" American Express card, and authorized Erika to use the credit of the card for her expenses. It was further discovered that during this 10- year period of time, Erika charged and the firm paid Erika's American Express charges in an amount in excess of $14 Million.

6. In addition, the examination of the books and records of the Firm reveal that in or around 2007, Girardi had issued a check payable to M&M Jewelers in the amount of $750,000, which check was used to purchase a set of Diamond Earrings. It was then discovered that the $750,000 check was drawn against the Firm's Client Trust Account at Comerica Bank California

and that Girardi accounting for the check as a "cost" of litigation, which was debited against the Firm's ledger account for the *Rezulin* MDL action.[13] The documents evidencing the transaction are presented as Exhibits 4-6 to this Motion.

7. I have reviewed the Declaration of Daphne Masin attached hereto and find the same to be accurate as to the information set forth therein.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct and if called upon would and could competently testify thereto.

Executed this the 14 day of January 2022 at Studio City, California

Elissa D. Miller

[12] *See* fn.1, *infra*.

**DECLARATION OF DAPHNE MASIN IN SUPPORT OF TRUSTEE'S APPLICATION**

I, Daphne Masin, declare as follows:

1. I am the duly employed paraprofessional for the Trustee, Elissa D. Miller, Estate of Girardi Keese, Case No. 2:20-bk-21022-BR, which employment was approved by the Bankruptcy Court [ECF Doc. 128]

2. As the Trustee's paraprofessional, I have been tasked with gathering the business files and records of the Debtor, Girardi Keese, maintaining the inventory of the same and further tasked with assisting the Trustee and her professionals with providing Girardi Keese ("GK" or the "Firm") business records to the Trustee and her professionals on an as needed basis. As such, I have a working knowledge of GK's business records, which includes all email transmissions, financial statements, accounting records, etc., as maintain on GK's computer systems.

3. As part of my duties to gather and store GK's emails, I conducted a search of the emails addressing any tax issues of the Firm. My search produced various documents including the July 6, 2012 letter from Thomas Girardi to Ms. Xin Xu, Franchise Tax Board, referencing account no: 1106622649/Thomas V. & Erika N. Girardi for 2007, which is Exhibit 4 to the Trustee's RFJN. The Declaration of Ared Michael Menzilcian p. 4 of Exhibit 4, was attached to the July 6, 2012 letter.

4. I was also tasked with reviewing and organizing copies of all bank records the Trustee received from the various banks GK did business with and where it had accounts. One such bank is Comerica Bank California. The Comerica Bank California records were produced to the Trustee in accord with the Trustee's 2004 records request for Comerica Bank. During my review of those business records, I came across a copy of a Girardi Keese Client Trust Account check dated March 2, 2007, payable to M&M in the amount of $750,000.00. A true and correct copy of this check is Exhibit 5 to the Trustee's RFJN.

5. I have also been tasked with keeping the financial records of the Firm, and to provide various documents from those records to the Trustee and her professionals as requested. I was recently requested to conduct a search "Payee Transaction" and M&M. As presented therein,

the search produced an accounting of all checks written to M&M. The search produced a ledger account for checks written to M&M on the Firm's operating account at Comerica Bank totaling in excess of $1.6 million, [RFJN, Exhibit 8] and another ledger account entry on the Firm's Rezulin Trust Account at Comerica Bank dated March 2, 2007, check no. 15847 payable to M&M in the amount of $750,000.00. [RFJN, Exhibit 6, p.88] That is the case # used by the Firm for the *Rezulin* MDL action.[14] The Description on the ledger identifies as the payment was made for "costs." [RFJN, Exhibit 6] A complete review of the RTA demonstrates that G&K paid itself $15,074,805.82 described as "costs" and $7,500,000 described as payment for "fees". [A listing of the fees and costs is set forth on a spreadsheet, attached as Exhibit 9 to RFJN.]

6. All of the records above-referenced are from the records of Girardi Keese that were kept in the ordinary course of business of the debtor as turned over to the Trustee after her appointment in January 2021, save and except Exhibit 9, which was prepared using the RTA Ledger.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and if called upon would and could competently testify thereto.

Executed this the 25th day of January, 2022, at Monrovia, California

Daphne Masin

[13] *See*, fn.1, *infra*.

**DECLARATION OF LARRY W. GABRIEL**

I, Larry W. Gabriel, hereby declare as follows:

1. I am an attorney-at-law duly licensed to practice in the State of California and admitted to practice before this Court. I know the contents declared herein to be true of my own personal knowledge and if called upon could and would competently testify thereto.

2. In or around November 11, 2021, the Trustee requested that I assume the role as special litigation counsel to the Trustee for the *Miller v. Erika Girardi* Adversary Action, adversary case no. 2:21-ap-01155-BR. A formal substitution of attorney was filed on November 11, 2021. [ECF Doc. 848] On the same day an application to employ me, and my firm, Jenkins Mulligan & Gabriel LLP was filed [ECF Doc. 849] and then subsequently amended. [ECF Doc. 858] No opposition was presented to the application [ECF Doc. 907] and an order approving the appointment was entered on December 17, 2021. [ECF Doc. 932]

3. After the substitution I have had several communications both by telephone and email with counsel for Erika Girardi, Evan Borges. Mr. Borges and I have known each other for over 20 years when we were both involved in the First Alliance Mortgage bankruptcy proceedings. During our conversations including a Rule 26 meeting for this case, we have discussed the facts of this case, the parties' legal positions relative thereto, and have started to exchange documents as required by FRCP Rule 26. Also, during the course of our discussions, I requested that Erika Girardi turn over to the Trustee the "Diamond Earrings" Tom Girardi purchased for her in 2007 using the Settlement Funds from the *Rezulin* MDL action.[14] Mr. Borges represented that the Diamond Earrings, together with all other jewelry, is in the possession of Erika and that they will remain in her possession at a minimum until the issues involving the items have been resolved. I subsequently wrote Mr. Borges again demanding that the Diamond Earrings be turned over to the Trustee.

4. As of the filing of this Application, the Diamond Earrings have not been turned over to the Trustee and although conversations on the topic continue, to protect the interests of the estate, the Motion to which this declaration is appended was prepared for filing.

---

[14] *See*, fn.1, *infra*.

5. I have also contacted a diamond expert so that the Diamond Earrings could be appraised. I was advised that in order for the appraiser to render an opinion, the appraiser must have the Diamond Earrings in hand so that they can be properly evaluated. Online research has indicated that over the last 14 years, the value of diamonds has increase by 6% per year.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct and if called upon would and could competently testify thereto.

Executed this 10th day of January, 2022, at Los Angeles, California.

______________________________

Larry W. Gabriel

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR ORDER FOR TURNOVER OF PERSONAL PROPERTY; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF ELISSA D. MILLER, DAPHNE MASIN AND LARRY W. GABRIEL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 25, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ori S Blumenfeld** ori@marguliesfaithlaw.com, Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com
- **Evan C Borges** eborges@ggtriallaw.com, cwinsten@ggtriallaw.com
- **Larry W Gabriel** lgabrielaw@outlook.com, tinadow17@gmail.com
- **Craig G Margulies** Craig@MarguliesFaithlaw.com, Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- **Elissa Miller (TR)** CA71@ecfcbis.com, MillerTrustee@Sulmeyerlaw.com;C124@ecfcbis.com;ccaldwell@sulmeyerlaw.com
- **Ronald N Richards** ron@ronaldrichards.com, morani@ronaldrichards.com
- **Frank X Ruggier** frank@ruggierlaw.com, enotice@pricelawgroup.com
- **United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
- **Timothy J Yoo** tjy@lnbyb.com

☐ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) January 25, 2022, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ________________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 25, 2022 | Cheryl Caldwell | */s/Cheryl Caldwell* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |