1 | EVAN C. BORGES, State Bar No. 128706
    *EBorges@GGTrialLaw.com*
2 | GREENBERG GROSS LLP
  | 650 Town Center Drive, Suite 1700
3 | Costa Mesa, California 92626
  | Telephone: (949) 383-2800
4 | Facsimile: (949) 383-2801

5 | Attorneys for Defendant Erika Girardi

6

7 | **UNITED STATES BANKRUPTCY COURT**

8 | **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**

9

| | |
|---|---|
| 10 In re | Case No. 2:20-bk-21022-BR |
| 11 GIRARDI KEESE, | Chapter 7 |
| 12    Debtor. | Adv No. 2:21-ap-01155-BR |
| 13 ─────────────── | **OPPOSITION OF ERIKA GIRARDI TO TRUSTEE'S MOTION FOR ORDER FOR TURNOVER OF PERSONAL PROPERTY** |
| 14 ELISSA D. MILLER, Chapter 7 Trustee, | |
| 15    Plaintiff, | *Declaration of Erika Girardi filed concurrently herewith* |
| 16       v. | |
| 17 ERIKA N. GIRARDI, an individual; EJ GLOBAL, LLC, a limited liability company; and PRETTY MESS, INC., a corporation, | Date:    June 28, 2022<br>Time:    2:00 p.m.<br>Ctrm:    1668 |
| 18 | |
| 19    Defendants. | Judge:   Hon. Barry Russell |
| 20 ─────────────── | Action Filed:   July 14, 2021<br>Trial Date:    Not Assigned |
| 21 | |

22

23

24

25

26

27

28

1

2

# TABLE OF CONTENTS

**Page**

3   I.    INTRODUCTION ...................................................................................................6

4   II.   FACTUAL BACKGROUND ...............................................................................8

5   III.  THE TRUSTEE'S MOTION IS BARRED BY THE APPLICABLE STATUTES
      OF LIMITATION AND THE STATUTE OF REPOSE. .................................10

6
      A.    The Motion Does Not Address the Correct Statute of Limitations. .........11

7
          1.    The Trustee's Claims Are Time-Barred. ......................................11

8
   IV.  THE TRUSTEE'S MOTION DOES NOT SEEK TO RECOVER PROPERTY OF
9     THE ESTATE; ACCORDINGLY, THE TRUSTEE LACKS STANDING.
      FURTHER, THE MOTION MUST BE DENIED REGARDLESS OF WHETHER
10    THE FUNDS USED TO PURCHASE THE EARRINGS WERE GK CLIENT
      PROPERTY OR GK PROPERTY ...................................................................14

11
      A.    The GK Trust Account Funds Were and Are Not Property of the Estate. ...............15

12
      B.    The Trustee Lacks Standing to Pursue Turnover of the Earrings. ...........16

13
      C.    The Trustee's Turnover and Writ of Possession Claims Fail. .................17

14
          1.    The Trustee's Turnover Claim Lacks Merit. ................................17

15
          2.    The Trustee's Writ of Possession Claim Fails. ...........................18

16
   V.    CONCLUSION ...................................................................................................19

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ahcom, Ltd. v. Smeding*
(9th Cir. 2010) 623 F.3d 1248 .................................................................. 18

*Bavely v. Powell*,
219 B.R. 754 (6th Cir. BAP 1998) ........................................................... 15

*In re Bernard L. Madoff Investment Secur., LLC*
721 F.3d 54 (2nd Cir. 2013) ..................................................................... 18

*In re California Trade Technical Schools, Inc.*,
923 F.2d 641 (9th Cir. 1991) ..................................................................... 15

*Collect Access, LLC v. Hernandez (In re Hernandez)*,
483 B.R. 713 (9th Cir., B.A.P. 2012) ......................................................... 17

*Daly v. Kennedy*,
279 B.R. 455 (Bankr.D.Conn. 2002) ......................................................... 16

*In re De Berry*,
59 B.R. 891 (Bankr. E.D.N.Y. 1986) ......................................................... 11

*Donell v. Keppers*,
835 F.Supp.2d 871 (S.D.Cal. 2011) ....................................................... 12, 13

*Internet Direct Response, Inc. v. Buckley*,
2011 WL 835607 (C.D.Cal. 2011) ............................................................. 13

*In re JMC Telecom LLC*,
416 B.R. 738 (C.D.Cal. 2009) ............................................................... 12, 13

*Macedo v. Bosio*,
86 Cal.App.4th 1044 ................................................................................. 13

*In re Mehlhaff*,
491 B.R. 898 (B.A.P. 8th Cir. 2013) .......................................................... 17

*Melamed v. Lake County Nat'l Bank*,
727 F.2d 1399 (6th Cir. 1984) ................................................................... 16

*In the Matter of O.P.M. Leasing Servs., Inc.*,
46 B.R. 661 (Bankr.S.D.N.Y. 1985) .......................................................... 17

OPPOSITION OF ERIKA GIRARDI TO TRUSTEE'S MOTION FOR ORDER FOR TURNOVER OF PERSONAL
PROPERTY

*Pealman v. Reliance Ins. Co.*,
   371 U.S. 132 (1962) ................................................................ 14

*Pena v. Toney*,
   98 Cal. App. 3d 534 (1979) ...................................................... 18

*PGA v. West Residential Assn., Inc. v. Hulven Internat., Inc.*,
   14 Cal.App.5th 156 ................................................................. 13

*In re Ridge II*,
   158 B.R. 1016 (Bankr. C.D. Cal. 1993) ................................... 11

*Roach v. Lee*,
   369 F.Supp.2d 1194 (C.D.Cal. 2005) ...................................... 12

*Stevenson v. J.C. Bradford & Co. (In re Cannon)*,
   277 F.3d 838 (6th Cir. 2002) ................................................... 15

*In re Stotz Fredenhagen Indus., Inc.*,
   554 B.R. 777 (Bankr.D.S.C. 2016) .................................... 10, 11

*Stratton v. Sacks*,
   99 B.R. 686 (D.Md. 1989) ........................................................ 10

*United States v. Whiting Pools, Inc.*,
   462 U.S. 198 (1983) ................................................................. 15

*Valley Forge Christian Coll. v. Am. United for Separation of Church and State,
   Inc.*,
   454 U.S. 464 (1982) ................................................................. 16

*Williams v. Boeing Co.*,
   517 F.3d 1120 (9th Cir. 2008) ................................................. 16

**Statutes**

Civil Code § 3439.09(c) ...................................................... 12, 13

Code Civ. Proc. § 512.010 ................................................... 18, 19

Code Civ. Proc. § 2338 ............................................................ 11

Code Civ. Proc. § 338(c) ......................................................... 11

Uniform Fraudulent Transfers Act .......................................... 13

11 U.S.C. § 363 ....................................................................... 17

11 U.S.C. § 522 ....................................................................... 17

11 U.S.C. § 541(a)(1) ........................................................ 10, 15

-4-

11 U.S.C. § 541(b)(1) .................................................................................................. 7, 15

11 U.S.C. § 541(d) ........................................................................................................ 16

11 U.S.C. § 542 ........................................................................................................ 11, 17

**Other Authorities**

Robert E. Weil et al., California Practice Guide: Bankruptcy ¶ 21:1709 (2021
       Update) ................................................................................................................ 17

S.Rep. No. 989, 95th Cong., 2d Sess., 82-83 (1978), reprinted in 1978
       U.S.C.C.A.N. 5787 ............................................................................................. 10

U.S. Const., art. III .......................................................................................................... 16

OPPOSITION OF ERIKA GIRARDI TO TRUSTEE'S MOTION FOR ORDER FOR TURNOVER OF PERSONAL
PROPERTY

Defendant Erika Girardi ("Ms. Girardi" or "Erika") hereby submits the following

Opposition to the *Motion for Order for Turnover of Personal Property* [Dkt. 28] (the "Motion")

filed by chapter 7 trustee Elissa D. Miller (the "Trustee"):

I.    **INTRODUCTION**

If 50 years ago in 1972, a military officer in charge of disbursing funds held in trust during

the Vietnam War were to have taken government trust funds to buy a diamond ring for his wife,

and if that officer were to file bankruptcy in 2020, absent application of a special statute, no Court

would even think of holding that the bankruptcy trustee for the officer's estate could:

(1) bring claims against the wife arising out of an alleged conversion of funds 50 years ago

about which the debtor was aware at the time, given undisputed law that the trustee stands in the

shoes of the debtor and, therefore, the debtor's knowledge was and is legally imputed to the

trustee; or

(2) claim that the funds in question, which were held in trust, were ever property of the

debtor's estate, such that the trustee for the estate has suffered an injury in fact and would have

standing to bring a claim to recover the funds (as opposed to a claim being brought by the true

alleged victim, the party for whom the funds were held in trust).

Other than the passage of time being 50 as opposed to 15 years (a difference that is

immaterial as a matter of law), the above facts are the facts of this case, subject to two differences

that make the Trustee's burden even more insurmountable:  First, in the present case, the Trustee

has not met her burden to show with actual evidence that the funds in question were in fact

misappropriated, as opposed to constituting funds due to the debtor and therefore the debtor's

rightful property.  Second, in the present case, the alleged rightful owners of the funds are

numerous and disparate and the Trustee has not even purported to identify them.  Rather, the

Trustee seeks to recover a marital gift from an innocent spouse solely for the purpose of

recovering the asset in question for the benefit of *other* creditors of the debtor who never had any

right to the funds in question.  Even according to the Trustee, the debtor's estate never had any

right to the funds in question.

Accordingly, as a matter of law, the Trustee's Motion should and must be denied for two

OPPOSITION OF ERIKA GIRARDI TO TRUSTEE'S MOTION FOR ORDER FOR TURNOVER OF PERSONAL
PROPERTY

1   fundamental reasons:

2       ***First***, claims by a trustee in 2022, based on a 15 year-old transaction in 2007, are barred by

3   every conceivable statute of limitations, as well as by the 7 year statute of repose in California

4   applicable to fraudulent transfers.  The Trustee's sole argument is that somehow, the Trustee is

5   entitled to the "delayed discovery" rule of accrual of statutes of limitation, because the Trustee did

6   not learn of the underlying 2007 transfer of funds until late 2021.  Here, the Trustee ignores the

7   fundamental and binding legal principle that the Trustee stands in the shoes of the debtor,

8   including for purposes of knowledge of the fact of the alleged fraudulent transfer of funds in 2007.

9   Importantly, the check in question out of the GK trust account, which was used to pay a jeweler

10  for the earrings, was signed by not one, but two GK partners:  Tom Girardi and James O'Callahan.

11  The Trustee, as a matter of law, inherits the knowledge of the debtor in 2007, and therefore, all

12  statutes of limitation began to accrue in 2007 and have expired.  Further, the seven-year statute of

13  repose under California law, which "notwithstanding any other provision of law," applies to

14  transfers that occurred more than seven years before an action is filed, presents a further

15  insurmountable time bar to the Trustee's Motion.  The Court need go no further than to address

16  the statute of limitations and statute of repose, and the Motion should be denied on that basis.

17      ***Second***, as an additional ground for denying the Motion, as the Trustee concedes, in

18  California, an attorney trust account (which was the source of funds for the 2007 transfer at issue)

19  is an express trust.  As a matter of Ninth Circuit law, and as provided in 11 U.S.C. § 541(b)(1),

20  funds held by a debtor under an express trust for another are **not** property of the estate.  The GK

21  trust funds at issue were one of two things:  either property of GK's clients or fees due to GK and

22  therefore property that GK was entitled to receive.  In either scenario, the Trustee's Motion must

23  be denied.  If the trust funds at issue were client funds, then GK (and therefore the GK estate) had

24  and have no property right in the funds at issue, and suffered no harm by the taking of the trust

25  funds.  As a result, the GK estate, and by extension the Trustee, have not suffered an injury in fact

26  and lack standing to bring the Motion.

27      By contrast, if the funds at issue constituted fees to which GK had an entitlement (a factual

28  inquiry as to which the Trustee provides no evidence, including evidence to which the Trustee

OPPOSITION OF ERIKA GIRARDI TO TRUSTEE'S MOTION FOR ORDER FOR TURNOVER OF PERSONAL
PROPERTY

1   should have access such as the underlying fee agreements between GK and its clients), then the

2   transfer of funds from a GK account, at the directive of TG and one other partner of the firm, *may*

3   be a constructive fraudulent transfer if GK were insolvent in 2007.  But as noted above, any

4   fraudulent transfer claim is undisputedly barred by the seven-year statute of repose under

5   California law.

6        In sum, the Trustee's Motion should and must be denied.

7   **II.    FACTUAL BACKGROUND**

8        In approximately 1998, Erika first met Tom Girardi (TG").  On January 7, 2000, Erika and

9   TG were married, when she was 27 years old and he was 60 years old.  (See Declaration of Erika

10  Girardi filed concurrently herewith ("EG Decl.") at ¶ 2.)

11       After Erika and TG married, TG and his law firm, Girardi Keese ("GK"), handled all of the

12  couple's marital finances, along with outside accountants retained by TG and GK.  *Id*. at ¶ 4.

13       Erika is not and never has been an attorney.  Her career during her marriage to TG was as

14  an entertainer.  *Id*. at ¶ 5.

15       Erika never worked at GK; she never managed the finances of GK; and she never had

16  access to or knew anything about how TG or GK managed any of their client trust accounts.  *Id*. at

17  ¶ 6.  Erika also had no involvement in or knowledge of the actions of TG or GK in connection

18  with the Rezulin litigation or the GK trust account in the Rezulin litigation.  *Id*. at ¶ 6.

19       At all times during the marriage, Erika believed that TG and GK were financially

20  successful, extremely wealthy, and made large amounts of money.  *Id*. at ¶¶ 3, 7.

21       In approximately 2004 or 2005, as a gift for either Erika's birthday or the couple's

22  wedding anniversary, TG gave her a set of diamond earrings.  This gift had high sentimental value

23  to Erika.  *Id*. at ¶ 8.

24       In approximately 2006, TG and Erika's home was ransacked while they were out for

25  dinner.  Erika had left the diamond earrings in a crystal container in her bathroom, and discovered

26  upon searching the house that the earrings had been stolen.  Neither TG nor Erika had insurance

27  on the earrings.  *Id*. at ¶ 9.

28       After the passage of a fair amount of time after the burglary, in 2007, TG gave Erika

-8-

1   another set of diamond earrings to replace the set that had been stolen. The replacement earrings

2   were a replica of the earrings that had been stolen. At the time, Erika believed that TG and their

3   marital community had a high net worth and that TG and GK had very high income. Erika had no

4   reason to doubt or question the source of funds used by TG to buy the earrings. Specifically,

5   Erika never knew or heard anything from anyone to the effect that any of the gifts that TG had

6   given her, including the earrings in 2007, were bought using money that did not belong to TG or

7   that belonged to someone else. *Id*. at ¶ 10.

8        In November 2020, Erika filed a petition for divorce against TG and moved out of the

9   couple's residence. Since that time, Erika has been living in a rental. Her principal assets are her

10   personal belongings (which include jewelry) and her income from the Real Housewives of

11   Beverly Hills television program. Since her separation from TG, Erika has not held or received

12   and has no expectation to hold or receive in the future any assets or income of TG or GK, unless it

13   is awarded to her by the divorce court or unless all legitimate creditors are paid in the GK

14   bankruptcy case and a surplus remains left over. Erika intends to finalize her divorce from TG

15   (which is stayed by his pending bankruptcy case). Since the separation, Erika has been trying to

16   move on with her life independently of TG and GK. *Id*. at ¶¶ 11, 12.

17        In late 2021 or early 2022, Erika heard for the first time that the Trustee alleges that the

18   replacement earrings given to her by TG as a gift in 2007 were bought with money from a GK

19   client trust account, which allegedly did not belong to GK or TG. *Id*. at ¶ 13.

20        At all times, Erika has been willing to put the earrings in an escrow until a final court order

21   is issued regarding who is entitled to the earrings. Based on an agreement with the Trustee, the

22   earrings are currently held in a safe deposit box, to which the Trustee has access. Erika has agreed

23   that the earrings may be held in the safe deposit box until such time as there is a final judicial

24   determination as to ownership of the earrings. *Id*. at ¶ 14.

25        The Trustee's Motion is based solely on records located at GK (which the Trustee has

26   previously stated were in disarray and unreliable) as interpreted by the Trustee's paralegal, who

27   only worked on this matter post-bankruptcy filing. The Motion provides no declaration from any

28   person with actual personal knowledge who worked at GK or on the Rezulin case.

Many of the facts surrounding the 2007 transaction, based on which TG obtained the funds to acquire the earrings, are unknown.  The Trustee's evidence thus far establishes only three material facts:  (1) the earrings were paid for by a check drawn from the "Girardi Keese Client Trust Account" for the Rezulin Mass Tort Case, which was signed by two GK partners, TG and James O'Callahan; (2) the GK trust account's ledger identifies the expense as a "cost"; and (3) the GK trust account shows a final negative balance.  No actual evidence is provided to establish ownership of the funds in the GK trust account, and specifically, whether the funds were client funds or funds to which GK was legitimately entitled as payment of a fee.

## III.    THE TRUSTEE'S MOTION IS BARRED BY THE APPLICABLE STATUTES OF LIMITATION AND THE STATUTE OF REPOSE.

In formulating the bankruptcy laws, Congress was adamant that a trustee would not have any greater right, legal or equitable, than the debtor, as evidenced by the notes of the Senate Judiciary Committee:

> Though this paragraph [11 U.S.C. § 541(a)(1)] will include choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others more than they exist at the commencement of the case. **For example, if the debtor has a claim that is barred at the time of the commencement of the case by the statute of limitations**, then the trustee **would not be able to pursue that claim, because he too would be barred**. He could take no greater rights than the debtor himself had.

S.Rep. No. 989, 95th Cong., 2d Sess., 82-83 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5868 (emphasis added); see also *Stratton v. Sacks,* 99 B.R. 686, 692 (D.Md. 1989) ("It is well established that a trustee in bankruptcy stands in the shoes of the debtor and has no greater rights than the debtor itself had.  Thus, any defense, legal or equitable, which might have been raised against a debtor may be raised against the trustee.").

The relevant inquiry regarding statutes of limitation is the *debtor's* knowledge, not the trustee's.  *In re Stotz Fredenhagen Indus., Inc*., 554 B.R. 777, 783 (Bankr.D.S.C. 2016)("[t]herefore, the relevant inquiry for determining when the statute of limitations begins to run is 'not when [the trustee] learned sufficient facts but rather when the [debtors] acquired sufficient knowledge to put them on notice.'").  The debtor in *In re Stotz* was a party to an alleged

-10-

1  conspiracy.  In calculating the statute of limitations, the Court focused on *when the debtor*, *not the*

2  *trustee*, acquired sufficient knowledge to put the debtor on notice:  "Because Debtor was a party to

3  the alleged conspiracy, Debtor's knowledge of the relevant facts would have been obtained by

4  way of participating in the conspiracy from day one…  Therefore, there [was] no genuine dispute

5  of material fact that Trustee's causes of action are time-barred." *Id.*

6        The same reasoning applies here.  TG and James O'Callahan co-signed the check used to

7  purchase the earrings.  Trustee's RJN, Ex. 5.  As in *In re Stotz*, because the debtor was fully aware

8  of the alleged fraudulent transfer in 2007, the Trustee, when "stepping into the shoes" of the

9  debtor, is charged with that knowledge for purposes of the statute of limitations.  To hold

10  otherwise would allow a trustee to bring actions on behalf of the debtor decades after the running

11  of statutes of limitation.

12      **A.**    **<u>The Motion Does Not Address the Correct Statute of Limitations.</u>**

13        The Trustee ignores the applicable statute of limitations for the turnover and conversion

14  claims.  *See* Motion at 12-17.  Out of desperation, the Trustee cites to California Code of Civil

15  Procedure § 2338, which governs the "theft of an article of historical, interpretive, scientific, or

16  artistic significance."  *Id*. at p. 13.  The Trustee then asserts:  "Diamond Earrings that cost

17  $750,000…certainly can be considered of artistic significance."  *Id*.  The Trustee's interpretation

18  would re-write the statute and create new law to add "any luxury item."  Section 2338, in short, is

19  inapposite.

20        A cause of action for conversion is subject to a three-year statute of limitations.  Code Civ.

21  Proc. § 338(c).  Additionally, while 11 U.S.C. § 542 does not have an explicit statute of

22  limitations, courts have held that such actions must be filed within a "reasonable time."  *In re De*

23  *Berry*, 59 B.R. 891, 898-99 (Bankr. E.D.N.Y. 1986); *see also In re Ridge II*, 158 B.R. 1016,

24  1020 (Bankr. C.D. Cal. 1993)(finding *De Berry*'s reasoning on "reasonable period" for turnover

25  deadline "persuasive").

26        **1.**    **The Trustee's Claims Are Time-Barred.**

27        The Trustee's conversion and turnover claims are premised on a fraudulent transfer—*i.e.*

28  the alleged wrongful transfer of funds from the debtor or the debtor's clients.  Therefore, these

OPPOSITION OF ERIKA GIRARDI TO TRUSTEE'S MOTION FOR ORDER FOR TURNOVER OF PERSONAL
PROPERTY

1  claims are subject to California Civil Code Section 3439.09(c).  *Donell v. Keppers*, 835 F.Supp.2d

2  871, 877 (S.D.Cal. 2011) (citing *Forum Ins. Co. v. Comparet*, 62 Fed.Appx. 151, 152 (9th Cir.

3  2003) ("[W]e find that CAL. CIV.CODE § 3439.09(c) is a statute of repose pertaining to all

4  actions relating to fraudulent transfers.").

5       Section 3439.09(c) operates as an absolute bar on fraudulent transfer claims older than

6  seven years.  *See In re JMC Telecom LLC*, 416 B.R. 738, 742 (C.D.Cal. 2009).  As the Court in

7  *JMC Telecom* explained:

8          The California Uniform Fraudulent Transfer Act ("CUFTA") sets forth a statute
         of limitation that requires a plaintiff to file within four years of the transfer or, for
9          an intentional fraud, within one year after the transfer was or could reasonably
         have been discovered. Cal. Civ.Code §§ 3439.09(a)-(b).  The CUFTA also
10         includes a statute of repose, Cal. Civ.Code § 3439.09(c), which creates an
         absolute backstop of seven years within which a cause of action for fraudulent
11         transfer must be filed.

12  *Id.*

13       Section 3439.09(c) specifically provides that, "***[n]otwithstanding any other provision of***

14  ***law***, a cause of action under this chapter with respect to a transfer or obligation is extinguished if

15  no action is brought or levy made within seven years after the transfer was made or the obligation

16  was incurred."  Cal. Civ. Code § 3439.09(c) (emphasis added).  Critically, while a statute of

17  limitations creates an affirmative defense, a statute of repose "*extinguishes the 'substantive cause*

18  *of action' as well as the remedy.*"  *See Roach v. Lee*, 369 F.Supp.2d 1194, 1200 (C.D.Cal. 2005)

19  (emphasis added).  A statute of repose is therefore much more exacting than a statute of

20  limitations.  *See id.*

21       The Trustee argues that, despite the earring transaction occurring more than 15 years ago,

22  her claims are not barred because of the "delayed discovery rule."  Mot. at 12-14.  The Trustee's

23  argument fails as to both the statute of limitations and the statute of repose.

24       First, the delayed discovery rule applies only to "those who are ignorant of their cause of

25  action through no fault of their own.  It permits delayed accrual until a plaintiff knew or should

26  have known of the wrongful conduct at issue."  Mot. at p. 14 (citing *Society of California Pioneers*

27  *v. Baker,* 43 Cal.App.4th 774, 783-784 (1996).)  As discussed above, however, when pursuing

28  causes of action, the Trustee as a bankruptcy trustee "stands in the shoes" of the debtor and is

-12-

1    charged with the debtor's knowledge.  Thus, in this case, the delayed discovery rule is inapplicable

2    because based on the Trustee's own theory of the case, the debtor knew of and its agents

3    participated in the alleged fraud.  Indeed, both TG and Mr. O'Callahan were partners of GK at the

4    time and signed the check used to purchase the earrings.  Trustee's RJN, Ex. 5.  Accordingly, the

5    debtor was aware of, and its agents and partners facilitated, the alleged fraudulent transfer.  The

6    Trustee now brings this Motion 15 years after the transfer, seeking a benefit based on alleged bad

7    acts of the debtor of which the debtor had full knowledge.  Because the Trustee stands in the

8    debtor's shoes, the delayed discovery rule does not apply.

9        Second, the requirements of section 3439.09(c) are "absolute" and cannot be tolled,

10    extended, or waived.  *See Internet Direct Response, Inc. v. Buckley*, 2011 WL 835607, at *6

11    (C.D.Cal. 2011) ("This seven-year period is absolute, so it cannot be tolled or otherwise

12    extended.") (collecting cases);  *In re JMC Telecom LLC*, 416 B.R. 738, 742-44 (C.D.Cal. 2009)

13    (section 3439.09(c) cannot be tolled by equitable tolling or estoppel); *Donnell*, *supra*, 835

14    F.Supp.2d at 877 ("Unlike a traditional statute of limitations, a statute of repose cannot be

15    waived.").  Indeed, the California legislature's decision to include the prefatory phrase

16    "[n]otwithstanding any other provision of law" confirms the immutability of the statutory time-

17    period.  *Macedo v. Bosio*, 86 Cal.App.4th 1044, 1050 fn. 4 ("[W]e think that, by its use of the term

18    '[n]otwithstanding any other provision of law,' the Legislature clearly meant to provide an

19    overarching, all-embracing maximum time period to attack a fraudulent transfer.")

20        In sum, the California Courts of Appeal as well as federal courts have repeatedly declined

21    to allow a plaintiff to use the delayed discovery rule to circumvent the statute of repose.  *See e.g.,*

22    *Macedo, supra*, 86 Cal. App. 4th at 1050 fn. 4 ("*even if* belated discovery can be pleaded and

23    proven as suggested in section 3439.09(a), in any event **the maximum elapsed time for a**

24    **suit under either the UFTA _or otherwise_** is seven years after the transfer.") (italics emphasis in

25    original); *PGA v. West Residential Assn., Inc. v. Hulven Internat., Inc*., 14 Cal.App.5th 156, 171

26    ("Although the language just quoted from *Macedo* [regarding belated discovery and the statute of

27    repose imposing a maximum time period to attack a fraudulent transfer] was technically dicta, we

28    agree with two lower federal courts applying the UFTA that it is "well-considered dicta.") (citing

-13-

1    *Roach v. Lee*, 369 F.Supp.2d 1194, 1199 (C.D. Cal. 2005) and *In re JMC Telecom LLC* 416 B.R.

2    738, 743 (C.D. Cal. 2009) (footnote omitted); *see also Geist v. Sequoia Ventures, Inc.*, 83

3    Cal.App.4th 300, 305 (2000) ("A statute of repose thus is harsher than a statute of limitations in

4    that it cuts off a right of action after a specified period of time, *irrespective of accrual or even*

5    *notice that a legal right has been invaded*.") (emphasis added)).

6        The Trustee's Motion is barred by the applicable statutes of limitation, and the Trustee

7    cannot use the "delayed discovery rule" to evade California's unambiguous seven-year statute of

8    repose for fraudulent transfers.  Thus, the Motion must be denied.

9    **IV.    THE TRUSTEE'S MOTION DOES NOT SEEK TO RECOVER PROPERTY OF**

10            **THE ESTATE; ACCORDINGLY, THE TRUSTEE LACKS STANDING.**

11            **FURTHER, THE MOTION MUST BE DENIED REGARDLESS OF WHETHER**

12            **THE FUNDS USED TO PURCHASE THE EARRINGS WERE GK CLIENT**

13            **PROPERTY OR GK PROPERTY.**

14        Writing for the Supreme Court's majority in *Pealman v. Reliance Ins. Co.*, 371 U.S. 132,

15    135-36 (1962), Justice Hugo Black explained the Bankruptcy Act's unconditional constraint on a

16    trustee's authority to pursue other people's property:

17            Property interests in a fund not owned by a bankrupt at the time of
            adjudication, whether complete or partial, legal or equitable,
18            mortgages, liens, or simple priority of rights, are of course not a part
            of the bankrupt's property and do not vest in the trustee. The
19            Bankruptcy Act simply does not authorize a trustee to distribute
            other people's property among a bankrupt's creditors.
20

21    Sixty years later, the Trustee's Motion violates Justice Black's admonition.

22        According to the Trustee's Motion, the funds used by GK to pay for the earrings were

23    client property held in trust, and therefore embezzled by TG and GK.  Alternatively, the funds in

24    the GK trust account, which were used to purchase the earrings, were fees due to GK and therefore

25    property to which GK (and its sole owner TG) was entitled.  The answer as to ownership of the

26    GK trust account funds in question, however, does not change the conclusion that the Motion must

27    be denied.

28        The Trustee's Motion reaches a conclusion of "theft" based on records that the Trustee

1    previously advised this Court were unreliable, with no declaration from any person or employee of

2    GK with personal knowledge of the Rezulin case or the terms of the underlying fee agreements

3    between GK and its clients.  In any event, whether the funds from the GK trust account used to

4    buy the earrings in 2007 were client funds or funds to which GK was entitled as a fee, does not

5    change the conclusion that the Motion must be denied.

6       **A.    The GK Trust Account Funds Were and Are Not Property of the Estate.**

7          As the Motion emphasizes, the Rezulin trust account was a client trust account and thus,

8    under California law, was an express trust for the benefit of GK's clients.  Section 541(a)(1) of the

9    Bankruptcy Code defines the estate as including all legal or equitable interests of a debtor in

10   property as of the commencement of the case, subject to certain statutory exceptions.  Section

11   541(b)(1) sets forth one of these exceptions, and provides that property of the estate does **not**

12   include property over which a debtor exercised power "solely for the benefit of an entity other

13   than the debtor."  11 U.S.C. § 541(b)(1).

14         Following the statutory mandate, the Ninth Circuit has long held that "[b]ankruptcy law

15   does not view property held in trust by the debtor as property of the estate available for general

16   creditors."  *In re California Trade Technical Schools, Inc.*, 923 F.2d 641, 645-46 (9th Cir. 1991).

17   Thus, property that a debtor holds in trust for another does not become property the estate.  *Id.*

18         Because Section 541(b)(1) excludes from the estate property held in trust for another's

19   benefit, and because an attorney exercises power over a client trust account for the benefit of his or

20   her clients, an attorney trust account is, as a matter of law, excluded from the bankruptcy estate.

21   *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10 (1983) ("Congress plainly

22   excluded [from the bankruptcy estate] property of others held by the debtor in trust at the time of

23   the filing of the petition.").

24         Other courts have similarly concluded that property held in trust by the debtor is excluded

25   from the estate.  *See, e.g., Stevenson v. J.C. Bradford & Co.* (*In re Cannon*), 277 F.3d 838, 851

26   (6th Cir. 2002) ("Because [the debtor] held the funds deposited into his escrow accounts in

27   express trust for his clients, we hold that these monies are not part of his estate in bankruptcy.");

28   *Bavely v. Powell*, 219 B.R. 754, 762 (6th Cir. BAP 1998) ("Property held by a debtor as a trustee

-15-

1    pursuant to an express trust is not property of the bankruptcy estate."); *Daly v. Kennedy*, 279 B.R.

2    455, 458 (Bankr.D.Conn. 2002) ("[F]unds held in trust by a debtor are not property of his

3    bankruptcy estate.").

4    Importantly, because the GK client trust account at issue was not and cannot be property of

5    the GK estate, the Trustee and GK's creditors have no property right to the funds held in that

6    account, and no right to claim for themselves funds withdrawn from that account or property

7    acquired with those funds.  Hence, as discussed next, the Trustee lacks standing due to the lack of

8    any injury in fact.

9    **B.       The Trustee Lacks Standing to Pursue Turnover of the Earrings.**

10    The standing requirement of Article III of the Constitution is met if a party can

11    demonstrate that he or she suffered actual or threatened injury in fact, that the injury was the result

12    of defendant's action, and that the injury can be redressed by judicial decision.  *Valley Forge*

13    *Christian Coll. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–72

14    (1982).  Accordingly, to have standing, a party may only assert his or her own rights, not the rights

15    of a third party.  *Williams v. Boeing Co.*, 517 F.3d 1120, 1126-27 (9th Cir. 2008).  Further, a

16    bankruptcy trustee stands in the shoes of the debtor and has standing only to bring an action that

17    the debtor could have brought absent a bankruptcy filing.  *Melamed v. Lake County Nat'l Bank*,

18    727 F.2d 1399, 1404 (6th Cir. 1984).

19    Because the GK trust account at issue was and is not property of the estate, the Trustee

20    does not have standing to pursue funds withdrawn from that account or items purchased with those

21    funds.  In addition, even if the Trustee had legal title to the GK trust account, under Bankruptcy

22    Code Section 541(d), title is all that would be vested in the estate – meaning the Trustee and the

23    estate are not entitled to actual ownership and use of the trust funds for general purposes, such as

24    paying other creditors.  Section 541(d) provides that any "[p]roperty in which the debtor holds, as

25    of the commencement of the case, only legal title and not an equitable interest … becomes

26    property of the estate … only to the extent of the debtor's legal title to such property, but not to the

27    extent of any equitable interest in such property that the debtor does not hold."  11 U.S.C. §

28    541(d).  "In other words, 'to the extent such an interest is limited in the hands of the debtor, it is

-16-

1  equally limited in the hands of the estate.'" *In the Matter of O.P.M. Leasing Servs., Inc.*, 46 B.R.

2  661, 667 (Bankr.S.D.N.Y. 1985) (quoting 124 Cong. Rec. H11096 (Sept. 28, 1978) (remarks of

3  Sen. DeConcini)).

4        Having a legal right to the title of the GK client trust account at issue as of 15 years ago

5  does not give the Trustee or the estate ownership of any kind in the funds held in that account or to

6  property acquired with those funds.  The Trustee has no property right and no injury in fact, and

7  cannot sue to recover funds or property that never would be property of the estate.

8        **C.    The Trustee's Turnover and Writ of Possession Claims Fail.**

9              **1.    The Trustee's Turnover Claim Lacks Merit.**

10        As a matter of law, "property subject to a turnover action is limited to identifiable estate

11  property and money ***due to the debtor without dispute***.  The turnover provision cannot be used to

12  *create or expand the debtor's interest in property beyond what existed on the petition date*."

13  Robert E. Weil et al., California Practice Guide: Bankruptcy ¶ 21:1709 (2021 Update) (emphasis

14  added).  A trustee seeking turnover of property under 11 U.S.C. § 542 must prove, among other

15  things, that estate property (1) is in the possession of the counterparty, and (2) may be used by the

16  trustee in accordance with § 363 or exempted by the debtor under § 522.  *See* 11 U.S.C. § 542(a).

17  The moving party bears the burden of proof on a turnover motion.  *In re Mehlhaff*, 491 B.R. 898,

18  901 (B.A.P. 8th Cir. 2013).

19        As noted above, the Trustee's Motion already is premised on an alleged taking of client

20  funds held in trust which were not and are not property of the GK estate, and to which the Trustee

21  and other creditors of the estate do not have any ownership right.  Further, the Trustee's Motion is

22  barred by the applicable statutes of limitation and the statute of repose, which eliminate the

23  existence of any underlying cause of action or right upon which to base a turnover remedy.

24        Here, the threshold question for the Trustee's Motion is whether the specific funds used to

25  purchase the earrings in 2007 were and are property of GK or its bankruptcy estate.  *See* 11 U.S.C.

26  § 542(a); *Collect Access, LLC v. Hernandez (In re Hernandez),* 483 B.R. 713, 720 (9th Cir.,

27  B.A.P. 2012) ("[a] bankruptcy court may order turnover of property to the debtor's estate if,

28  among other things, such property is considered 'property of the estate.'").

1    Given that the Trustee has not established the estate's actual ownership of the funds in the

2    GK client trust account at issue (and in fact, has argued the opposite, namely, that the funds

3    belonged to GK clients), the Trustee's reliance on *Pena v. Toney,* 98 Cal. App. 3d 534 (1979), a

4    case with inapposite facts, is unpersuasive.  First, the plaintiff in that case brought the action as the

5    aggrieved party to reclaim property stolen from him.  In the present case, if any funds were

6    stolen—a fact that the Trustee has only purported to establish by circumstantial evidence in the

7    form of business records —GK's former clients would be entitled to those funds and would be the

8    proper party to bring this action, not the Trustee.

9    Second, in *Pena*, it was *undisputed* that $15,000 was stolen from Pena and thus he was

10    entitled to recover the stolen and subsequently-transferred funds.  *Pena v. Toney,* 98 Cal. App. 3d

11    534, 538 (1979).  The facts in the present case are different.  Here, the bankruptcy estate did not

12    and does not have an ownership interest in the client trust funds previously held by GK.  The

13    claim here, if one exists, would be one brought by GK's former clients, not the Trustee.[1]

14    Finally, as noted above, based on the statute of limitations and statute of repose, no

15    underlying valid legal claim exists for the Trustee to bring, based on which a turnover remedy

16    could be based.  The Trustee's Motion must be denied.

17    **2.    The Trustee's Writ of Possession Claim Fails.**

18    The Trustee's lack of an underlying valid and enforceable legal claim is also fatal to the

19    requested writ of possession remedy under Section 512.010 of the California Code of Civil

20    Procedure.  Section 512.010(b) requires:

21    (1) A showing of the basis of the plaintiff's claim and *that the plaintiff is entitled*

22

23    [1] Additional problems exist with the Trustee's Motion.  Bankruptcy trustees such as the
Trustee lack standing to assert claims on behalf of individual creditors of the estate for funds owed
24    to the individual creditors but not owed to the estate.  *See In re Bernard L. Madoff Investment
Secur., LLC*  721 F.3d 54, 67 (2nd Cir. 2013) (trustee not empowered to collect money not owed
25    to the estate); *Ahcom, Ltd. v. Smeding* (9th Cir. 2010) 623 F.3d 1248, 1250 (trustee can only assert
claims belonging to the debtor and does not have general standing to sue third parties on behalf of
26    estate's creditors).  Alternatively, if the evidence shows that GK (and TG as its sole owner) was in
fact entitled to the funds in question as payment of a fee due, then the only claim based on TG and
27    Mr. Callahan using the funds to pay for the earrings would be, perhaps, a constructive fraudulent
transfer claim, assuming GK were insolvent in 2007.  Once again, based on the statute of
28    limitations and statute of repose, no fraudulent transfer or any other underlying claim exists.

-18-

1    *to possession of the property claimed.*  If the basis of the plaintiff's claim is a
written instrument, a copy of the instrument shall be attached.

2    (2) *A showing that the property is wrongfully detained by the defendant*, of the

3    manner in which the defendant came into possession of the property, and,
according to the best knowledge, information, and belief of the plaintiff, of the

4    reason for the detention.

5    *Id.* (emphasis added.)

6        For the reasons noted above, including the indisputable application of the statute of

7    limitations and statute of repose, as well as the fact that the GK client trust funds were never

8    property of GK or its bankruptcy estate, the Trustee has no underlying valid legal claim to enforce

9    that could form the basis of the draconian remedy of a writ of possession before trial.  In addition,

10   no provisional remedy is required.  It is undisputed that by agreement with the Trustee, the

11   earrings are held in a safe deposit box pending a final adjudication of rights to ownership of the

12   earrings.

13   **V.    CONCLUSION**

14       For the foregoing reasons, Ms. Girardi requests that the Court deny the Trustee's Motion.

15   DATED:  June 14, 2022                    GREENBERG GROSS LLP

16

17                                           By: _____

18                                              Evan C. Borges
                                             Attorneys for Defendant Erika Girardi

19

20

21

22

23

24

25

26

27

28

OPPOSITION OF ERIKA GIRARDI TO TRUSTEE'S MOTION FOR ORDER FOR TURNOVER OF PERSONAL
PROPERTY

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

650 Town Center Drive, Suite 1700
Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): ***OPPOSITION OF ERIKA GIRARDI TO TRUSTEE'S MOTION FOR ORDER FOR TURNOVER OF PERSONAL PROPERTY*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 14, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒        Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **_____,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐        Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **June 14, 2022,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒        Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| June 14, 2022 | Cheryl Winsten | |
| *Date* | *Printed Name* | *Signature* |

OPPOSITION OF ERIKA GIRARDI TO TRUSTEE'S MOTION FOR ORDER FOR TURNOVER OF PERSONAL PROPERTY

**In re GIRARDI KEESE**
Case No. 2:20-bk-21022-BR
**Elissa D. Miller. Chapter 7 Trustee v. Erika N. Girardi, et al.**
Case No. 2:21-ap-01155-BR

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING**:

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Ori S Blumenfeld**    ori@marguliesfaithlaw.com, Helen@MarguliesFaithLaw.com;Angela@MarguliesFaithLaw.com; Vicky@MarguliesFaithLaw.com

- **Evan C Borges**    eborges@ggtriallaw.com, cwinsten@ggtriallaw.com

- **Larry W Gabriel**    lgabrielaw@outlook.com, tinadow17@gmail.com

- **Daniel A Lev**    dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com

- **Craig G Margulies**    Craig@MarguliesFaithlaw.com, Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com; Angela@MarguliesFaithlaw.com

- **Elissa Miller (TR)**    CA71@ecfcbis.com, MillerTrustee@Sulmeyerlaw.com;C124@ecfcbis.com;ccaldwell@sulmeyerlaw.com

- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com

- **Frank X Ruggier**    frank@ruggierlaw.com, enotice@pricelawgroup.com

- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

- **Timothy J Yoo**    tjy@lnbyb.com

3.    **SERVED BY PERSONAL DELIVERY:**

**U.S. Bankruptcy Court:**
U.S. Bankruptcy Court
Hon. Barry Russell
255 E. Temple Street, Suite 1668
Los Angeles, CA 90012

`

OPPOSITION OF ERIKA GIRARDI TO TRUSTEE'S MOTION FOR ORDER FOR TURNOVER OF PERSONAL PROPERTY