LARRY W. GABRIEL [SBN 68329]
JENKINS MULLIGAN & GABRIEL LLP
585 Lorna Lane
Los Angeles, CA 90049
Telephone: 818.943.8992
Email:   lgabrielaw@outlook.com

Special Litigation Counsel for Plaintiff
Elissa D. Miller, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>GIRARDI KEESE,<br><br>Debtor.<br><br>―――――――――――――――<br><br>ELISSA D. MILLER, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>ERIKA N. GIRARDI, an individual; EJ GLOBAL, LLC, a limited liability company and PRETTY MESS, INC., a corporation,<br><br>Defendants. | Case No. 2:20-bk-21022-BR<br><br>Chapter 7<br><br>Adv. No. 2:21-ap-01155-BR<br><br>**REPLY OF ELISSA D. MILLER, CHAPTER 7 TRUSTEE, TO OPPOSITION OF ERIKA GIRARDI TO TRUSTEE'S MOTION FOR ORDER FOR TURNOVER OF PERSONAL PROPERTY**<br><br>**Hearing Date**<br>Date:   June 28, 2022<br>Time:   2:00 p.m.<br><br>Action Filed:   April 19, 2022<br>Trial Date:   Not Assigned<br><br>**Judge:  Hon. Barry Russell**<br><br>Place:   Courtroom1668<br>United States Bankruptcy Court<br>255 East Temple Street<br>Los Angeles, CA 90012 |

## I.    INTRODUCTION

In her effort to retain the fruit of her husband's $750,000.00 theft from the Girardi & Keese Rezulin mass tort client trust account, Mrs. Girardi presents a number of plausible, but legally unsupportable, theories that, when stripped away, can be summed up by the Latin idiom "Finders Custodes Victos Weepers."[1]

The opposition starts with a hypothetical, about a soldier stealing money and some 50 years later, his embezzlement was discovered. The hypothetical does not present the facts of this case (incomplete hypothetical) and does not go to the purpose of a hypothetical - to provide an expert a vehicle for expressing an opinion as to what may occur in the future or to explain a complex topic. Fed. Rule of Evidence 703. In this case, the facts are not disputed, and there is nothing to determine in the future that requires an expert opinion. The hypothetical is of no moment and should be rejected assuming the same was an offer of proof.

The facts are that in 2007, Thomas Girardi issued a check drawn against the Girardi Keese client trust account that contained the settlement proceeds from the recoveries made in the Rezulin mass tort cases on behalf of those who suffered serious health issues from their use of the drug Rezulin.[2]   The amount of the check was $750,000.00. The check was payable to M&M. The client trust ledger describes the check as being for "costs."  The check was negotiated by M&M Jewelers and deposited in an account at First Republic Bank, endorsed with a business stamp, "For Deposit Only." Trustee's Motion, Exhibits 4-5, Mrs. Girardi admits she received $750,000 Diamond Earrings.

Mrs. Girardi's hypothetical does pose questions that are germane to this case. Whether the Trustee can recover the diamond earrings, liquidate the same, and return the proceeds to the trust,

---

[1] Lat. for: "Finders Keepers, Losers Weepers."  The expression alludes to an ancient Roman law. The saying is a "very faulty law."  Brewer's Dictionary of Phrase and Fable 14th Ed. P.422.

[2] Rezulin was manufactured by Warner-Lambert and was "fast-tracked" by the FDA as an approved drug for the treatment of diabetes.  In three years on the U.S. market (1997-2000), Rezulin generated sales of $2.1 billion. The problem was that Rezulin was highly toxic to the liver and also lowered blood-sugar for adult-onset diabetics. The use of the drug caused sever liver damage which in some cases led to death. *See*, Diabetes Drug Rezulin Pulled Off the Market, Los Angeles Times, March 22, 2000.

so that health care can be provided for those whose health was destroyed by the drug? Or can Mrs. Girardi keep the fruits of her husband's poisonous tree because of the time that has passed since the crime occurred, for stealing from a trust account, which constitutes the crime of embezzlement**.** California Penal Code § 503. [Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted.] The conduct also is a crime under California Penal Code §496 [Crime of concealing stolen property.] And it describes the tort of conversion under California law. *L.A. Fed. Credit Union v. Madatyan,* 209 Cal. App. 4th 1383, 1387 (2012). [The elements of conversion under California law are: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.] " The conduct is also a fraudulent conveyance under 11 U.S.C. § 550(a), and a breach of fiduciary duty to properly administer the trust account. *See, e.g., Prakashpalan v. Engstrom, Lipscomb & Lack,* 223 Cal.App.4th 1105 (2014).

    Nor can Mrs. Girardi simply ignore the demand of the Trustee and not return the Diamond Earrings. Mrs. Girardi in her declaration stated that she first learned of her husband's embezzlement when the issue surfaced in this case – November 2021. At that time, Mrs. Girardi had an obligation to return the earrings to the Trustee. She did not, and the Trustee was compelled to file her Motion. Mrs. Girardi's response, because of the passage of time, she gets to keep the fruit of the embezzlement. Not so. Penal Code §496(a) provides that "every person who withholds any property from the owner . . . knowing the property to be stolen.. . . shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170." Her conduct appears to be a new crime. Cal. Pen. Code §496, Legislative Note, Stats 1992 ch 1146 provides: Sec. 2. "It is the intent of the Legislature to provide for the prosecution of principals in the actual theft of the property who continue to possess that property after the statute of limitations has run on the theft of the property." Her refusal to now turn over the Diamond Earrings is conversion, for which she can be held accountable in damages. She can

also be civilly liable for the value of the Diamond Earrings, plus statutory interest and punitive damages, which with prejudgment interest could easily be $5.4 million.[3]

We now turn to a discussion of the facts, and then to Mrs. Girardi's opposition arguments and asserted defenses, none of which "hold water."

## II.    STATEMENT OF FACTS

In her opposition, Mrs. Girardi admits to the following facts:

1. On January 7, 2000, Erika and TG were married, when she was 27 years old, and he was 60 years old. [*See*, Declaration of Erika Girardi ¶ 2]

2. At all times during the marriage, Erika believed that TG and GK were financially successful, extremely wealthy, and made large amounts of money. [Id. at ¶¶ 3, 7]

3. In approximately 2004 or 2005, as a gift for either Erika's birthday or the couple's wedding anniversary, TG gave her a set of diamond earrings. [Id. at ¶ 8]

4. In approximately 2006, TG and Erika's home was ransacked while they were out for dinner. Erika had left the diamond earrings in a crystal container in her bathroom and discovered upon searching the house that the earrings had been stolen. Neither TG nor Erika had insurance on the earrings. [Id. at ¶ 9].

5. In 2007, TG gave Erika another set of diamond earrings to replace the set that had been stolen. The replacement earrings were a replica of the earrings that had been stolen. [Id. at ¶ 10].

6. In November 2020, Erika filed a petition for divorce against TG and moved out of the couple's residence. [Id. at ¶ 11].

7. In late 2021 or early 2022, Erika heard for the first time that the Trustee alleges that the replacement earrings given to her by TG as a gift in 2007 were bought with money from a GK client trust account, which allegedly did not belong to GK or TG. [Id. at ¶ 13]

Mrs. Girardi also admits in her opposition that:

---

[3] California Civil Code § 3287(a) (prejudgment interest). The interest factor is 10% per annum. As the principal amount is $750,000.00, that translates to $75,000 per year for 15 years, or $1,125,000.00 for a total of $l,875,000. Punitive damage at 2x's would increase the damage award by another $3.6 million. Total potential claim $5,475,000.

(1) the earrings were paid for by a check drawn from the "Girardi Keese Client Trust Account" for the Rezulin Mass Tort Case; [4]

(2) which was signed by two GK partners, TG and James O'Callahan; [Opp. 7:10]

(3) the GK trust account's ledger identifies the expense as a "cost;" [Opp.10:5] and,

(4) the GK trust account shows a final negative balance. [5] [Opp. 10:5-6]

## III. DISCUSSION

### A. The Trustee Has Standing to Assert the Claims Presented in Complaint Filed Against Mrs. Girardi and to Obtain Possession of the Diamond Earrings

Mrs. Girardi argues that the Trustee does not have standing to recover the stolen property (cash in the Firm's trust account that was wrongfully taken and then turned into Diamond Earrings) because the trust funds are not property of the bankruptcy estate. Not True.

An attorney's trust account is an expressed trust. An express trust is defined as a fiduciary relationship whereby a trustee holds property for another's benefit. (*Placerville Fruit Growers' Assn. v. Irving,* (1955) 135 Cal.App.2d 731, 736). California's Rules of Professional Conduct, rule 4-100 provides: "(A) All funds received or held for the benefit of clients by a member or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labeled 'Trust Account,' 'Client's Funds Account' or words of similar import, maintained in the State of California … ." Further, an attorney owes the client a duty to account for funds held in the client trust account. Rule 4-100 also provides: "(B) A member shall: [¶] … [¶] (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the member or law firm and render appropriate accounts to the client regarding them; preserve such records for a period of no less than five years after final appropriate

---

[4] Rezulin was manufactured by Warner-Lambert. a drug used to treat Type II diabetes. The drug was originally "fast tracked" for FDA approval. It was later determined that the drug caused liver failures and heart problems. In 1997 the drug was pulled from the market in England and Japan. Over 100 class action lawsuits and 4000 individual cases were filed.

[5] A party is bound by the admissions in its pleadings, and "judicial admissions are proof possessing the highest possible probative value. Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence

distribution of such funds or properties; and comply with any order for an audit of such records issued pursuant to the Rules of Procedure of the State Bar. [¶] (4) Promptly pay or deliver, as requested by the client, any funds, securities, or other properties in the possession of the member which the client is entitled to receive." *See, Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App.4th 1105 (2014) ("*Prakashpalan*") [Suit by victims of 1994 Northridge earthquake against Enstrom, Lipscomb & Lack claiming $22 million in settlements from the Northridge earthquake was missing or withheld by the firm].

In this case, the Rezulin Trust Account is what is known as an "aggregate settlement trust" as it is established in mass tort and class action cases where funds are received for multiple clients who are entitled to received distributions based upon certain prescribed criteria. The administration of these trusts is complex and involve substantially more than simply receiving funds and then paying the same over to the client. To address these accounts, the American Bar Association Model Rules of Professional Conduct, adopted rule 1.8(g), which precisely defines the scope of disclosure in an aggregate settlement, and an attorney's duty accurately to account for client trust funds in the context of an aggregate settlement. Although California has not adopted this rule, the essence of the rule is contained in California Rules of Professional Conduct, rule 4-100(B). Under rule 4-100(B) in the context of an aggregate settlement, the attorney must disclose sufficient information to enable the client to evaluate whether the settlement proceeds have been properly distributed. That rule imposes a more particularized duty than the general duty imposed under Civil Code section 1710 not to omit or misrepresent facts, which duty is the basis for a generic claim of fraud.

It is black letter law that, if "a trustee who commits a breach of trust is thereafter removed or otherwise ceases to serve as trustee, a successor trustee can maintain a suit against the former trustee (or that trustee's personal representative) to redress the breach[.]" Restatement (Third) of Trusts § 94 (2012); *see also,* Robert I. Weil, *et al*., *California Practice Guide: Civil Procedure Before Trial* Ch. 2-A (2015 ed.) ("The beneficiary of a trust generally is not the real party in

---

to controvert them." *Best Canvas Prods. & Supplies, Inc. v. Ploof,* 713 F.2d 618, 621 (11th Cir. 1983).

interest on claims belonging to the trust and may not sue in the name of the trust."); 13 Bernard E. Witkin, *et al.*, *Summary of California Law*, Trusts § 150 (10th ed. 2005) ("Generally the trustee is the real party in interest with legal title to any cause of action on behalf of the trust."). Therefore, Ms. Miller, as the de-facto successor trustee, has standing to bring suit against Girardi, (and other attorneys of the firm involved in the management of the trust account) for the alleged breaches of fiduciary duty and to take all other necessary and appropriate steps to address the acts and conduct of those that caused harm to the trust. *See*, *Old Canal Fin. Corp. v. Sarsenstone Corp. (In re Old Canal Fin. Corp.,* 550 B.R. 519 (D.C. Cal. 2006).

If Mrs. Girardi's standing arguments were to be accepted, no one would be able to pursue recovery of the money that was embezzled by Girardi, the fruits from which are literally now in the hands of Mrs. Girardi. As noted above, the beneficiaries of a trust generally are not the real party in interest on claims belonging to the trust and may not sue in the name of the trust. And, if Ms. Miller doesn't have standing to bring the lawsuit, who does? Mrs. Girardi offers no solution to her self-created conundrum.

For the same reasons, in addressing issues pertaining to the trust account, the Trustee is not standing in the shoes of the Debtor but is a successor trustee and therefore is not bound by the acts and conduct of the firm, nor is *in pari delicto* applicable for the same reason. *See*, *Ehrenberg v. WSCR, Inc. (In re Hoover WSCR Assocs.)* 2005 Bankr. LEXIS 2005 (BAP. May 31, 2005) (under §544, the trustee steps into the shoes of a creditor).

Mrs. Girard next contends that because the "the alleged rightful owners of the funds are numerous and disparate and the Trustee has not even purported to identify them, and that the Trustee is attempting to recover the asset for the benefit of other creditors who never had any right to the funds."

Here again, Mrs. Girardi offers arguments that have no basis in law. Once again, given the claim being asserted is that of the trust, and Ms. Miller is the successor trustee as the Chapter 7 Trustee for the firm, the trust is the proper recipient of the recovery. Once recovered, the Trustee will be obligated to address how the recovery will be distributed to the beneficiaries of the trust. But that is an issue for another day.

**B.    The Trustee Has Satisfied Her Burden of Proof to Establish Misappropriation by Girardi through the Firm's Business Records and Now by Mrs. Girardi's Admissions**

Mrs. Girardi asserts that "the Trustee has not met her burden to show with actual evidence that the funds in question were in fact misappropriated, as opposed to constituting funds due to the debtor and therefore the debtor's rightful property." Here again, Mrs. Girardi's theory is without legal support, and in fact, Mrs. Girardi offers no authorities to support her position.

For purposes of discussion, the Trustee assumes *arguendo* that to establish Girardi's fraudulent conduct, the burden of proof required is "clear and convincing" evidence.[6] Because fraudulent intent is rarely established by direct evidence, a trier of fact may infer fraudulent intent from various kinds of circumstantial evidence. *Bradford v. Commissioner*, 769 F.2d 303 (9th Cir. 1986) ("*Bradford*"). As presented in Bradford, "badges of fraud" include (1) inadequate records (citations omitted); (2) implausible or inconsistent explanations or behavior (citations omitted); (3) concealing assets. *Bradford*, 769 F.2d at 307; *see also*, Internal Revenue Manual, IRM §25.1.2.3 (04-23-2021). "Indicators of Fraud" listing numerous badges of fraud including false entries, or alterations made on the books and records; false statements, or other false documents; transfer of assets for purposes of concealment, or diversion of funds and/or assets by officials or trustees; payment of improper expenses by or for officials or trustees; false entries in books of transferor or transferee.

Girardi's conduct meets all the above "badges of fraud" and then some. Mrs. Girardi argues that it would be perfectly permissible for Girardi to have issued a $750,000.00 check to a jewelry store and record the check as a payment for "costs" if Girardi was entitled to the money as part of this contingency fee, and that it was the Trustee's burden to demonstrate that he was not owed the fee. Nonsense. Girardi's conduct is so out of the norm and against several mandates of

---

[6] See, Manual of Model Civil Jury Instructions>1. Preliminary Instructions. 1.7 "Burden of Proof-Clear and Convincing Evidence:" When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt."

the California Rules of Professional Conduct, that the only conclusion one can draw is that he was embezzling trust funds.

To start, the California Rules of Professional Conduct Rule 9 strictly prohibits the commingling of an attorney's personal funds with a client's money that are held in trust. *Vaughn v. State Bar of California*, 6 Cal.3d 847 (1972) (We have recognized that commingling, prohibited by rule 9 of the Rules of Professional Conduct, is established where a client's money is intermingled with that of his attorney in such a way that it may be used by the attorney for his personal expenses or be subjected to the claims of the attorney's creditors. (*Clark* v. *State Bar,* 39 Cal.2d 161, 167-168 [246 P.2d 1] (1952).)

And Rule 4-100 (A)(2), "Preserving Identity of Funds and Property of a Client" mandates that the attorney withdraw the firm's fees as soon as the fees become fixed, to avoid the issue now argued by Mrs. Girardi – there wasn't a fraud committed because the firm was still owed fees. The Rule provides:

> (A)  All funds received or held for the benefit of clients by a member or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labelled "Trust Account," "Client's Funds Account" or words of similar import, maintained in the State of California, or, with written consent of the client, in any other jurisdiction where there is a substantial relationship between the client or the client's business and the other jurisdiction. No funds belonging to the member or the law firm shall be deposited therein or otherwise commingled therewith except as follows:
> (2) In the case of funds belonging in part to a client and in part presently or potentially to the member or the law firm, <u>the portion belonging to the member or law firm must be withdrawn at the earliest reasonable time after the member's interest in that portion becomes fixed.</u>

And even assuming *arguendo* Girardi was owed fees or costs at the time he bought the earrings, the proper method of withdrawing the funds would be to issue a check to the law firm, deposit the check in its general account, pay himself from the general account and if he so desired buy his wife the earrings. That logical scenario did not occur. Rather, the evidence presented is "clear and convincing" and supports the conclusion that Girardi embezzled $750,000 from the Rezulin Trust Account to buy the Diamond Earrings: (1) The check was issued in such a manner that name "M&M" did not fully disclosed the name of the payee; (2) The description in the ledger

was false as the check was described as a payment of "costs;" (3) The backside of the check shows an endorsement "M&M Jewelry" and that M&M Jewelry negotiated the check at their bank. Mrs. Girardi admits that the GK trust account shows a final negative balance; (4) Mrs. Girardi admits that she received the Diamond Earring from Girardi; (5) Mrs. Girardi retains possession of the Diamond Earrings.

One would be hard pressed to develop a factual scenario that more clearly and convincingly demonstrates that the described conduct establishes a fraud and a fraudulent intent.

### C.    The Statute of Limitations Does Preclude the Trustee's Claim

Mrs. Girardi offers the Statute of Limitations as a defense to the Trustees claim, offering a number of arguments for the court to hang its hat on based upon the statute of limitations for the claims of conversion (3 years); fraudulent conveyances (California) (7 years); and to further confuse things, California's "Statute of Repose" would automatically bar any action because of the 15 year time period that passed since the fraud/embezzlement occurred. Mrs. Girardi also asserts that the delay discovery rule as codified in CCP §338, subd.(d) is not applicable because the Trustee, standing in the shoes of the Debtor, had knowledge of the fraud.

As previously stated, in taking control of the firm's client trust account, Ms. Miller is not stepping in the shoes of the debtor but is the successor trustee. And where the Trustee's claims are based upon statutory authority (*e.g.*, §544) or claims for conversion, Ms. Miller is not standing in the shoes of the debtor, but in fact, stands in the shoes of the creditors. *See, Ehrenberg v. WSCR, Inc. (In re Hoover WSCR Assocs.),* 2005 Bankr. LEXIS 3267 (9th Cir. BAP, 2005) (*in pari delicto* not applicable to §544 strong-arm power claims); *Hagan v. Baird (In re B&P Holdings, Inc.),* 591 F.App'x 434,435 n1 (6th Cir. 2015) (*In pari delicto* not applicable to Trustee's conversion claims).

### 1.    The Delay Discovery Rule Extends the Accrual of a Cause of Action for Fraud Until the Discovery by the Aggrieved Party – in this Case, after the Appointment of the Chapter 7 Trustee

Mrs. Girardi's statute of limitation argument misses the mark, as it fails to address the complexities of an aggregate settlement and the duties of the lawyer/trustee to provide an accounting to the beneficiaries in disbursing the proceeds from a recovery in the context of a mass tort action. The issue was, however, discussed in detail in *Prakashpalan,* which involves the

Engstrom, Lipscomb & Lack law firm and allegations that it committed fraud in distributing the settlement funds recovered from the insurance companies for damages sustained in the 1994 Northridge earthquake.[7]

In *Prakashpalan,* Engstrom entered a settlement with State Farm and obtained over $100 million for 93 insured families in or around November 1997, and shortly thereafter distributed the Plaintiffs' allocated shares of the settlement to them, after taking its 1/3 fee (about $245,000) of the plaintiff's settlement and distributing the remaining $500,000 to the plaintiffs. Fifteen years later, the plaintiffs were able to randomly contact 17 of the plaintiffs and, based on their discussions, it was clear to plaintiffs that Engstrom had instructed all plaintiffs not to discuss the settlement funds with anyone. However, the plaintiffs concluded, after conducting a mathematical analysis of the settlement and of the overall litigation, that there was over $22 million of settlement funds unaccounted for.  Based upon this discrepancy, plaintiffs calculated that Engstrom had withheld funds from plaintiffs' share of the settlement funds and filed suit for, among other claims, fraud, conversion, and breach of fiduciary duty. Engstrom demurred, asserting that the statute of limitations precluded the case from going forward. The trial court agreed and dismissed the case without leave to amend.

The Plaintiff's successfully appealed the ruling, with the Court of Appeal, holding the Plaintiffs claims did not ripen until they became aware of the wrongdoing, which, as stated, occurred 15 years after the alleged fraudulent acts took place. In so holding, the Court determined

---

[7] The decision mentions that the plaintiffs and other property owners were represented by Engstrom and "two other law firms." The other firms were Girardi & Keese, and Shernoff, Bidart, Echeverria, Bentley. All three firms were sued by another group of property owners who they represented, for failing to properly distribute the settlement proceeds. The complaint alleged that $48 million of the settlement proceeds were not accounted for. The case was dismissed based upon the statute of limitations. See, *Britton v. Girardi*, 235 Cal.App.4th 721(2015). Girardi and the Lipscomb firm (Walter Lack) were also sanctioned by the 9th Circuit Court of Appeals for filing false declarations in an attempt to enforce a $400 million foreign judgment against a company that was not named in the action. See, *Franco v. Dow Chemical Co., (In re Girardi)* 611 F.3d 1027 (9th Cir. 2010). The Ninth Circuit referred the matter to the State Bar for investigation. The results of that investigation are now being investigated by the State Bar.

that the Plaintiffs were entitled to apply the "delay discovery" rule entitling them to a tolling of the statute of limitations under Prob. Code, § 16460, based upon an assertion that their attorneys failed to provide an accounting sufficient for them to determine whether their portion of settlement proceeds had been fairly and accurately distributed to them. *Prakashpalan at p. 1125*.

The Court determined that because of this insufficient accounting, alleged to be the result of concealment, the clients, who had no other sources of information, were not put on notice of any wrongdoing until they later conducted an investigation by surveying other settling plaintiffs. The Court then reversed the trial court's decision, based upon the accounting duty the attorneys owed to the clients under the California Professional Rules of Conduct, and the clients' allegations indicating they received an insufficient amount of information concerning the disposition of the aggregate settlement. The Court held that the statutory limitations period of Prob. Code, § 16460 (as applied to clients' fraud-based claims against attorneys due to the exception of Code Civ. Proc., § 340.6), is identical to that of the three-year statute of limitations of Code Civ. Proc., § 338, subd. (d), and there is a similar, if not identical, delayed discovery rule. The difference is that discovery is triggered under § 16460 by the receipt of an accounting, or if no accounting is supplied, by facts sufficient to put the plaintiff on notice of any wrongdoing. The Court determined that the triggering facts did not occur until the clients conducted the survey and determined that there was an alleged shortage of $48 million. *Prakashpalan at p. 1125.*

The instant case is on all fours with *Prakashpalan,* as discovery of Girardi's fraud could not have occurred until a third party took over Girardi's books and records and audited the trust account, which produced the information that the fraud took place. Under *Prakashpalan,* the delayed discovery rule, as applied to Prob. Code § 16460, tolled the statute of limitations until the Trustee conducted the audit of the Rezulin Trust account and discovered the fraud. Accordingly, and for the reasons expressed in *Prakashpalan,* Mrs. Girardi's arguments regarding the statute of limitations are to no avail.

  **2.**  **The Statute of Repose is a "Red Herring."**

Mrs. Girardi makes much of the fifteen years that passed since Girardi helped himself to $750,000 from the Rezulin Client Trust Account so that she could have sparkling earlobes. But not

-12-

once did she argue or present evidence that the beneficiaries of the Trust, the clients who were deprived of funds needed to pay for their special needs from the damages sustained from taking the drug, had any inkling of the embezzlement that took place. Bootstrapping her fifteen-year argument, she attempts to shield the earrings from the Trustee's request that they be returned, by raising the penultimate "red herring" issue, the "Statute of Repose." According to "Witkin," "a statute of repose thus is harsher than a statute of limitations in that it ends a right of action after a specified period of time, irrespective of accrual or even notice that a legal right has been invaded." 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 414.

Mrs. Girardi's theory doesn't hold enough water to keep her red herring alive. In 1956, the 2nd District Court of Appeal, in *Sears, Roebuck & Co. v. Blade*, 139 Cal.App. 3d 580, 589 rejected application of the concept to claims based on undiscovered fraud or fraudulent concealment:

> The cases herein discussed thoroughly refute this contention. They unequivocally demonstrate that in actions based on negligence, malpractice, breach of written contract, and in various types of restitutionary actions brought upon the common count to recover benefits tortiously acquired, **defendant's undiscovered fraud or fraudulent concealment will toll the statute of repose.** [emphasis added]

139 Cal.App.3d at 589-590 (collecting case cites omitted).

Moreover, the Statute of Repose is a limitation applicable only to specific "statutory claims," whether federal or state law claims, and does not apply to all claims of every kind or nature as implied by Mrs. Girardi.

State: *Hensel Phelps Construction Co. v. Superior Court*, 44 Cal.App.5th 595, [rejecting the application of the 10-year statute of repose for construction defect cases addressing the issue of "substantial completion]; *Bulter v. Bell Helicopter Textron, Inc.* 109 Cal.App.4th 1073, reversing summary judgment order for defendants based upon the 18-year statute of repose of the General Aviation Revitalization Act of 1994, holding the fraud exception precludes application of the statute where defendant concealed or withheld from the FAA required information material to the maintenance or operation of aircraft].

Federal: *NCUA Bd. V. RBS Sec.* 833 F.3d 1125,1129-1130 (9th Cir. 2016) [The Extender Statute, 12 U.S.C. § 1787(b)(14), replaces all preexisting time limitations—whether styled as a

statute of limitations or a statute of repose]; *Zakinov v. Ripple Labs, Inc.*, 2020 U.S.Dist. LEXIS 32982 (D.C.N.D.Cal. 2020) [15 U.S.C. § 77m's statute of repose did not bar plaintiff's federal securities claim]; but *see*, *Labuanan v. U.S. Bank Nat'l Ass'n ex rel. CItitgroup Mortg. Loan Trust, Inc.,* 773 F.Supp.2d 900 (D.C. Hawaii, 2011) [TILA case, 3-year statute of limitations in §1635(f) is a special statue of repose].

And just to close the loop, the Trustee's claims for fraud and conversion do not have specific statute of repose, nor does it impact the delayed discovery rule in the case of a fraud involving an attorney's trust account, as demonstrated by *Prakashpalan*.

## I.    CONCLUSION

For the foregoing reasons, the Court should grant the Trustee's Motion.

Respectfully Submitted,

Dated: June 21, 2022                    JENKINS MULLIGAN & GABRIEL, LLP

By: _____
Larry W. Gabriel, Special Litigation Counsel, Elissa D. Miller, Chapter 7 Trustee

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 8001 Lurline Avenue, Winnetka, CA 91306.

A true and correct copy of the foregoing document entitled (*specify*): **REPLY OF ELISSA D. MILLER, CHAPTER 7 TRUSTEE, TO OPPOSITION OF ERIKA GIRARDI TO TRUSTEE'S MOTION FOR ORDER FOR TURNOVER OF PERSONAL PROPERTY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

\*\*Judge's courtesy copies are not required if under 25 pages, pursuant to General Order 21-05\*\*

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **June 21, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ori S Blumenfeld**   oblumenfeld@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com
- **Evan C Borges**   eborges@ggtriallaw.com, cwinsten@ggtriallaw.com
- **Larry W Gabriel**   lgabrielaw@outlook.com, tinadow17@gmail.com
- **Daniel A Lev**   dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com
- **Craig G Margulies**   Craig@MarguliesFaithlaw.com, Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- **Elissa Miller (TR)**   CA71@ecfcbis.com, MillerTrustee@Sulmeyerlaw.com;C124@ecfcbis.com;ccaldwell@sulmeyerlaw.com
- **Ronald N Richards**   ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Frank X Ruggier**   frank@ruggierlaw.com, enotice@pricelawgroup.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Timothy J Yoo**   tjy@lnbyb.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 21, 2022 | KRISTINA DOW | /s/ Kristina Dow |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                          F 9013-3.1.PROOF.SERVICE