1  LARRY W. GABRIEL [SBN 68329]
   JENKINS MULLIGAN & GABRIEL LLP
2  585 Lorna Lane
   Los Angeles, CA 90049
3  Telephone:  818.943.8992
   Email:      lgabrielaw@outlook.com
4
   Special Litigation Counsel for Plaintiff
5  Elissa D. Miller, Chapter 7 Trustee

6              **UNITED STATES BANKRUPTCY COURT**

7              **CENTRAL DISTRICT OF CALIFORNIA**

8              **LOS ANGELES DIVISION**

9  In re                                    Case No. 2:20-bk-21022-BR

10 GIRARDI KEESE,                           Chapter 7

11            Debtor,                       Adv. No. 2:21-ap-01155-BR

12
   ELISSA D. MILLER, Chapter 7 Trustee for the   **TRUSTEE'S OPENING BRIEF**
13 Estate of Girardi Keese,                      **ADDRESSING ISSUES PRESENTED BY**
                                                 **DISTRICT COURT'S REMAND ORDER;**
14            Plaintiff,                         **DECLARATION OF NICHOLAS R.**
                                                 **TROSZAK.**
15     vs.
                                                 **[REQUEST FOR JUDICIAL NOTICE**
16 ERIKA J. GIRARDI, an individual; EJ           **FILED CONCURRENTLY HEREWITH]**
   GLOBAL, LLC, a limited liability company;
17 and PRETTY MESS, INC., a corporation,

18            Defendants.

19                                          Judge:  Hon. Barry Russell
                                            Date:   November 14, 2023
20                                          Time:   10:00 a.m.
                                            Place:  Courtroom 1668
21                                                  Roybal Federal Building
                                                    255 E. Temple Street
22                                                  Los Angeles, CA 90012

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

2    I.    INTRODUCTION AND SUMMARY OF ARGUMENT………………………    1

3    II.    STANDARD OF FACTS………………………………………………….    4

4        A.  Procedural Background …………………………………………………….    4

5        B.  Facts Pertaining to the Issue of Commingling………………………………    6

6    III.    DISCUSSION…………………………………………………………………    7

7        A.  Mandate by the District Court and the Issue Presented……………………...    7

8        B.  The *Res Judicata* Effect of the Court's Consolidation Order and the Factual
            Findings Upon Which it is Based Conclusively Establishes Commingling of the
9           Trust Funds………………………………………………………….........    8

10           1.  The Consolidation Order's Establishes Commingling of the Trust Funds and
                is Issue Determinative of the Remand Order Upon Claim Preclusion or *Res
11              Judicata*…………………………………………………………...    8

12           2.   The Evidence Presented in the Turnover Motion, the Consolidation Motion,
                and the Declaration of Nicholas Troszak Submitted Herewith Satisfies the
13              Preponderance of the Evidence Standard Mandated by the District
                Court…………………………………………………………….    9

14
        C.  The Motion Should be Granted as the District Court Decision Precludes Erika
15          from Asserting an Interest in the Proceeds of the Sale of the Earrings...    13

16
     IV.    CONCLUSION…………………………………………………………...    14
17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d at 1529 (9th Cir. 1985)........................10

*Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204 (9th Cir. 2009)........................9

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for So.*
  *Cal.*, 508 U.S. 602, 113 S. Ct. 2264, 124 L. Ed. 2d 539 (1993) ........................11

CV 22-5176 DSF, Docket No. 35 ........................2

*Dilks v. Aloha Airlines*, 642 F.2d 1155 (9th Cir. 1981) ........................14

*Hall v. City of Los Angeles*, 697 F.3d 1059 (9th Cir. 2012) ........................9

*In re Rezulin Products Liability Litigation, MDL No. 1348, Master File 00 Civ.*
  *2843 (LAK) (S.D.N.Y. Sep. 12, 2002)* ........................passim

*Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168 (9th Cir.2006)........................9

*Nw. Forest Res. Council v. Glickman,* 82 F.3d 825 (9th Cir. 1996)........................14

*Payne v. Borg*, 982 F.2d 335 (9th Cir. 1992)........................11

*Pedrina v. Chun*, 97 F.3d 1296 (9th Cir. 1996) ........................9

*Segal v. American Tel. & Tel. Co*., 606 F.2d 842 (9th Cir. 1979) ........................10

*Stacy v. Colvin*, 825 F.3d 563 (9th Cir. 2016) ........................9

*Stewart v. U.S. Bancorp*, 297 F.3d 953 (9th Cir. 2002)........................9

*United States v. Arnold & Baker Farms,* 177 B.R. 648 (9th Cir. BAP 1994) ........................11

*United States v. Garcia-Beltran*, 443 F.3d 1126, 1130 (9th Cir. 2006)........................8

*United States v. ITT Rayonier, Inc.*, 627 F.2d 996 (9th Cir. 1980)........................9

*United States v. Kelly*, 527 F.2d 961 (9th Cir. 1976) ........................11

*United States v. Nelson*, 419 F.2d 1237 (9th Cir. 1969) ........................11

*United States v. Ramirez-Rodriquez,* 552 F.2d 883 (9th Cir. 1977)........................11

*United States v. Stauffer*, 922 F.2d 508 (9th Cir. 1990)........................11

## <u>Statutes</u>

11 U.S.C. § 554........................6

11 U.S.C. § 721........................6

**<u>Rules</u>**

California Rules of Professional Conduct..........................................................5, 8, 10, 13

Elissa D. Miller, Chapter 7 Trustee for the Estate of Girardi Keese ("GK"), respectfully submits this memorandum of points and authorities in response to the District Court's "Order Reversing in Part the Order of the Bankruptcy Court and Remanding for Further Proceedings" ("Remand Order") [CV 22-5176 DSF, Docket No. 35]. The Remand Order directs the parties to address the evidentiary issue concerning the commingling of funds in the Girardi Keese IOLTA trust account and whether such commingling renders the proceeds from the sale of the diamond earrings that were the subject of the Turnover Motion presumptively part of the GK Estate's property. [*Id*, at 13-14].[1]

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

After her appointment as the Chapter 7 Trustee, the Plaintiff, Elissa D. Miller ("Trustee"), conducted a review of the GK's Trust Accounts.  The review led to the discovery of Thomas V. Girardi's massive fraud, his embezzlement of millions of dollars of client trust funds, and what was essentially a criminal enterprise operated by Girardi disguised as a law firm.[2]  One of Girardi's crimes, was the theft of $750,000 from the Comerica Bank GK Client "IOLTA" Trust Account ("Comerica Trust Account").  Girardi perpetrated this crime when he issued a check drawn against the Comerica Trust Account payable to M&M and then used the check to pay for diamond earrings ("Earrings") purchased from a downtown jeweler, Ared M. Menziclian, doing business as M&M Jewelry.  Girardi then attempted to conceal his theft by recording the purpose of the check on a GK case register for its *Rezulin* cases (a mass tort action on behalf of diabetes patients) as being issued for the payment of "costs."  This further defrauded the clients as the cost was deducted from the gross payout.

Upon discovering this information, the Trustee requested Defendant Erika Girardi

---

[1] *See*, Request for Judicial Notice ("RFJN") Exhibit 1, presented therein for the convenience of the Court and the parties.

[2] On January 31, 2023, the Grand Jury sitting in Los Angeles issued a five-count indictment against Thomas Vincent Girardi and Christopher Kazuo Kamon ("Kamon"), GK's former Chief Financial Officer. The indictment charged the defendants with wire fraud and criminal forfeiture. [RFJN, Exhibit 2]

On February 1, 2023, the Illinois Grand Jury issued a 12-count indictment against Girardi, Kamon, and former Girardi Keese lawyer and Girardi's son-in-law, David Lira. [RFJN Exhibit 3]

1   ("Erika") to turn the Earrings over to the Trustee for the benefit of the estate's creditors. Her

2   refusal to do so forced the Trustee to file a Turnover Motion, which was supported by two

3   evidentiary declarations that included introduction of a copy of the check used for the payment

4   and the GK *Rezulin* case ledger which recorded the check as being issued for the payment of

5   "costs". Erika opposed the Motion but failed to submit any evidence in opposition to the Trustee's

6   evidence. The Court, having considered the evidence, approved the Turnover Motion by order

7   entered on July 11, 2022 ("Turnover Order").

8       Erika's appeal of the Turnover Order led to the District Court partially upholding and

9   partially overturning the Turnover Order. The District Court remanded the Turnover Motion back

10  to this Court for additional proceedings to examine a specific evidentiary matter. This matter

11  concerns whether GK, in its administration of the Comerica Trust Account, commingled GK funds

12  and or funds of Thomas V. Girardi ("Girardi") with the settlement funds GK received from the

13  resolution of GK's clients' cases. This examination is crucial for establishing a legal conclusion

14  that the funds derived from the sale of Earrings should be considered part of the estate's assets.[3]

15      However, on August 23, 2023, this Court entered an order ("Consolidation Order")

16  approving the Trustee's "Motion for Order: (A) Authorizing the Trustee to Close and Consolidate

17  the Trust and IOLTA Bank Accounts et etc.," ("Consolidation Motion"). The Consolidation

18  Motion sought authorization, with one limited exception, to close and consolidate the Debtor's

19  remaining trust accounts, and to transfer the balances from those accounts into the Trustee's

20  debtor account, as property of the Estate. The basis for the Consolidation Motion is that the trust

21  accounts were out of trust and that the mix of non-client transactions and transactions involving

22  the settlement of GK's client cases were so commingled as to render the ability to separate out the

23  transactions essentially impossible, and accordingly, the trust res is property of the estate. [*Id.*]

24      Notably, only one objection to the Consolidation Motion was filed. Not surprisingly it

25  came from Erika, an objection that was summarily rejected by the Court at the hearing on the

26

27  _____

28  [3] The Trustee takes exception to the District Court's conclusion that there was no evidence before
    the Court to establish commingling and Girardi's embezzlement. The Trustee did not appeal
    the District Court's order for very practical reasons – the time and cost of the appeal simply
    was not in the best interest of the Estate and its creditors and was confident, this Court could
    review the issue quicker than the 9th Circuit Court of Appeals.

-2-

1    Consolidation Motion held on August 15, 2023, given Erika presented no evidence whatsoever in

2    support of her position.  The Court also admonished Erika's counsel for filing frivolous

3    objections.  Erika did not appeal the Consolidation Order and accordingly, the Consolidation

4    Order is now a final order and not subject to further challenge.  The Consolidation Order is

5    therefore *res judicata* as to the issue of commingling and conclusively decides the issue of

6    commingling for all the parties who participated in the Consolidation Motion proceedings, which

7    includes Erika.  Having resolved the issue posed by the District Court, that there was commingling

8    in the trust accounts that supported a legal conclusion that the trust *res* was property of the Estate,

9    this Court should now render judgment on the Trustee's Turnover Motion in favor of the Trustee,

10    without the need for further consideration of evidence or argument.

11        Moreover, the District Court's order wasn't limited to a direction to inquire further into the

12    ownership of the trust funds.  In fact, the District Court affirmed the Trustee's position that

13    regardless of whether the money was commingled and therefore the Earrings were property of the

14    Estate, or the property of the beneficiaries of the trust account, Erika, as the recipient of the fruits

15    of the money stolen from the trust account, does not have any right or interest in the Earrings or

16    the proceeds of the sale thereof.  This ruling is the law of the case.  As such, although the District

17    Court found that Erika had standing to prosecute the appeal, given she was the defendant in

18    adversary action, based upon the District Court's ruling, Erika no longer has a pecuniary interest

19    in the proceeds of the Earrings. Accordingly, this Court should enter judgment in favor of the

20    Trustee on the Trustee's Turnover Motion without further consideration to Erika's arguments.

21        Finally, the evidence of commingling, as presented in the previous declarations filed in

22    support of the Turnover Motion, (*see* Request for Judicial Notice ("RFJN"), Exhibit 8 )[4], and the

23    in support of the Consolidation Motion, (RFJN, Exhibit 4)  when considered with the Declaration

24    of Nicholas Troszak, a managing director at Development Specialists, Inc. ("DSI"), the duly

25    appointed forensic accountant for the Trustee submitted herewith, establishes by more than a

26    preponderance of the evidence that the commingling that took place in the Comerica Trust

27    Account is essentially the same type of commingling that occurred post 2013.  Mr. Troszak's

28    _____

[4] The declarations are attached to the Turnover Motion RFJN, Exhibit 8 and to the Consolidation Motion, RJFN, Exhibit 4, which the Trustee is incorporating herein by reference.

1    testimony elucidates that the *Rezulin* settlement funds were not placed in a separate trust account

2    but rather in the Comerica Trust Account, which also held settlement funds from other various GK

3    representations.  Mr. Troszak's testimony also reveals that between 2002 and 2010, Girardi made

4    direct payments totaling $2,082,849.59 from the Comerica Trust Account to G & L Aviation, a

5    Girardi and Walter Lack general partnership, which they used to hold title to resort properties,

6    private airplanes and yachts.  An additional $3,200,000 was paid directly from the Comerica Trust

7    Account for Girardi's real estate investment in "PacTen;" and, there was the $750,000.00 payment

8    for the purchase of Earrings.  During this same period, Girardi deposited $29,131,673.47 into the

9    Comerica Trust Account, indicating that money flowed into the account from TVG, TVG loans, or

10   funds accounted for under case number 10001 (case name: TVG). GK also disbursed

11   $31,579,332.25 in checks and made transfers, demonstrating that payments were made to TVG,

12   TVG loan, or were accounted for under case number 10001. These deposits and payments

13   unequivocally establish the commingling of personal funds with client trust funds, a direct

14   violation of California Rules of Professional Conduct, Rule 1.15, which explicitly prohibits the

15   commingling of trust funds with a lawyer's or law firm's personal funds. This compelling

16   evidence, which cannot be refuted by Erika, establishes by a preponderance of the evidence that

17   commingling occurred from 2002 to 2010, and that the funds in the GK Trust Account, including

18   the proceeds from the sale of the Earrings, should be designated as property of the Estate.

19   **II.    STATEMENT OF FACTS[5]**

20           **A.  Procedural Background**

21           The Trustee's Turnover Motion was filed on January 25, 2022, together with the

22   declarations by the Trustee, Elissa D. Miller, and Daphne Masin, both of which are attached to the

23   Turnover Motion. [Adv. Dkt., 28]

24           Erika opposed the Motion but failed to submit any evidence in opposition to the

25   testimony of Ms. Miller and Ms. Masin.  [Adv. Dkt. 47]  The Trustee replied to Erika's

---

[5] Given the extensive proceedings in this case over the almost three years since the GK bankruptcy filing, the Trustee will forego presenting well established background and foundational facts and limit the factual discussion to the facts specifically relevant to the issues presented by the District Court's Remand Order.

1    opposition [Adv. Dkt. 48]  The Turnover Motion was granted by order entered on July 11,

2    2022 [Adv. Dkt. 58]

3         Erika appealed the order on July 26, 2022. The parties fully brief the appeal and on May 1,

4    2023, the District Court entered its order reversing in part this Court's order and remanded for

5    further proceedings based upon the District Court's determination that the Trustee had not met her

6    burden of proof that the funds were commingled and were Estate property. [Remand Order, Dist.

7    Ct. Dkt. 35, pp. 13-14]. [6]

8         On June 1, 2023, the Trustee filed her *Motion for Order: (A) Authorizing the Trustee to*

9    *Close and Consolidate the Trust and IOLTA Bank Accounts; (B) Confirming the Banks' Authority*

10   *as to the Minors Blocked Bank Accounts Pursuant to 11 U.S.C. § 721; and (C) Abandoning the*

11   *Citibank Bank Account Pursuant to 11 U.S.C. § 554* (the "Consolidation Motion") [Bankr. Dkt.

12   1787]  The Consolidation Motion sought authorization, with one limited exception, to close and

13   consolidate the Debtor's remaining trust accounts and Interest on Lawyers Trust Accounts

14   ("IOLTA") bank accounts, treat these funds as property of the Estate, and transfer them to the

15   Estate's general operating bank account. This request was made following the forensic

16   accountants' analysis of the Debtor's transactions over the seven-year period preceding the

17   commencement of the bankruptcy case. During this period, the Debtor deposited and disbursed

18   over $1,000,000,000 (comprising more than $400,000,000 for non-trust bank accounts and

19   $600,000,000 for trust bank accounts). The forensic accountants discovered that the Debtor's trust

20   and IOLTA accounts were out of trust and not properly separated (with one limited exception),

21   resulting in commingling of funds. The forensic accountant also noted that tracing the source of

22   these funds has proven to be prohibitively expensive and practically impossible, further

23   complicated by the unavailability of bank records for the periods preceding the seven-year

24   analysis.

25        Notably, only one objection to the Consolidation Motion was filed.  Not surprisingly it

26   came from Erika [Bankr. Dkt. 1805], which objection was summarily rejected by the Court at the

27   August 15, 2023 hearing on the Consolidation Motion.

28   ─────────────────────────
[6] The Trustee did not appeal the District Court's order for very practical reasons – the time and
cost of the appeal simply was not in the best interest of the Estate and its creditors.

-5-

On August 23, 2023, this Court entered its order, [Bankr. Dkt. 1898] ("Trust Consolidation Order") approving the Trustee's Consolidation Motion. Erika did not appeal the Consolidation Order.

**B.  Facts Pertinent to the Issue of Commingling**

From at least 2000 through 2023, GK maintained an IOLTA Trust account at Comerica Bank, Account no. 6674 (the "Comerica Trust Account").  A majority of the transactions occurred prior to December 17, 2013.  The Comerica Trust Account was one of GK's primary IOLTA Trust accounts and was not a single purpose trust account. [Declaration of Nicholas Troszak II ("Troszak Decl. II) ¶¶ 3-4, Exhibit 6].

As outlined in Troszak Decl. II, the period spanning from 2002 through 2010 saw the recording of the following transactions in the Comerica Trust Account Activity Register ending in 6674 ("Activity Register").  This Activity Register details the transactions for the Comerica Trust Account ending in 6674, which is the trust account into which the *Rezulin* settlement proceeds were deposited. [Troszak Decl. II, ¶ 4]

| Date | Tran Type | Case # | Payer / Payee | Description | Amount |
|------|-----------|--------|---------------|-------------|--------|
| 10.16.2002 | Wire | 10001 | US Bank | Close US Bank Account | $29,123.35 |
| 10.16.2002 | Wire | 10001 | US Bank | Close US Bank Account | $4,148.76 |
| 10.16.2002 | Wire | 10001 | US Bank | Close US Bank Account | $954.48 |
| 9.23.2004 | Wire | 10001 | Comerica Bank | TVG Loan Proceeds | $1,500,000.00 |
| 9.23.2004 | Check | 10001 | GK | Loan from TVG | -$500,000.00 |
| 10.22.2004 | Check | 10001 | GK | Loan from TVG | -$250,000.00 |
| 10.27.2004 | Check | 10001 | GK | Loan from TVG | -$250,000.00 |
| 11.5.2004 | Check | 10001 | GK | Loan from TVG | -$500,000.00 |
| 1.20.2005 | Check | 10001 | TVG | TVG loan proceeds | $347,446.88 |
| 1.26.2005 | Check | 10001 | GK | Loan from TVG | -$200,000.00 |
| 1.26.2005 | Check | 10001 | TVG | Loan | -$147,466.88 |
| 1.28.2005 | Check | 10001 | TVG | Thomas V. Girardi [Loan] | $1,000,000.00 |
| 1.28.2005 | Check | 10001 | GK | TVG loan proceeds | -$500,000.00 |
| 2.11.2005 | Wire | 10001 | TVG | Loan | $750,000.00 |
| 2.11.2005 | Check | 10001 | GK | TVG loan proceeds | -$500,000.00 |
| 2.22.2005 | Check | 10001 | TVG | Loan | -$68,121.00 |
| 4.25.2006 | Check | 10001 | GK | GK Transfer from 94298 | $14,000,000.00 |
| 4.25.2006 | Check | 10001 | GK | Comerica | -$14,000,000.00 |
| 4.25.2006 | Check | 94298 | GK | Transfer to 10001 | -$14,000,000.00 |

-6-

| 4.26.2005 | Wire | 10000 | G&L Aviation | Fees-wire transfer | -$500,000.00 |
| 6.22.2006 | Check | 10001 | G&L Aviation | No entry [Girardi -Lack Airplane LLC) | -$750,000.00 |
| 6.22.2006 | Check | 10001 | Pac Ten | Scott Rd. Assoc. (TVG real estate invest). | -$3,200,000.00 |
| 7.18.2006 | Check | 10001 | Hundall et al | No entry | -$200,000.00 |
| 3.02.2007 | Check | 21101 | M7M Jewelry | Costs | -$750,000.00 |
| 3.12.2009 | Check | 23150 | G & L Aviation | Assoc. Counsel Fees | -$650,000.00 |
| 10.09.2009 | Check | 10209 | Terra Coastal Escrow | TVG | $5,844,740.63 |
| 11.10.2009 | Deposit | | Comerica | TVG | $5,000,000.00 |
| 1.13.2010 | Check | 21239 | G & L Aviation | No Entry | -$182,849.59 |

Each of these transactions clearly violated Rule 1.15.  Notably, Girardi made payments totaling $2,082,849.59 directly from the GK Trust Account to G & L Aviation, a California general partnership owned by Girardi and Walter Lack, which they used to finance their use of private airplanes and yachts and to hold title to various luxury vacation homes.  An additional $3,200,000 was allocated for Thomas Girardi's real estate investment in "PacTen." [*See, e.g.,* Declaration of Walter John Lacks, RFJN, Exhibit 7] Furthermore, there was the payment of $750,000.00 for the purchase of Earrings.  [*See,* Troszak Decl. II, at ¶¶ 5-6]

During this same period, Girardi deposited $29,131,673.47 into the GK Trust Account, indicating TVG, TVG loan, or accounted for under the case number of 10001, case name TVG. GK also disbursed $31,579,332.25 in checks or transfers indicating TVG, TVG loan, or accounted for under the case number of 10001, case name TVG.  [*See,* Troszak Decl. II, at ¶¶ 7-9]

## III.    DISCUSSION

### A.    Mandate by the District Court and the Issue Presented

The related rule of mandate requires the bankruptcy court to "act on the mandate of an appellate court, without variance." *United States v. Garcia-Beltran*, 443 F.3d 1126, 1130 (9th Cir. 2006).  However, the rule of mandate allows the bankruptcy court to "decide anything not foreclosed by the mandate." *Stacy v. Colvin*, 825 F.3d 563, 568 (9th Cir. 2016) (citing *Hall v. City*

-7-

1   *of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). Thus, the bankruptcy court is limited by the

2   appellate court's remand only "when the scope of the remand is clear." *Hall*, 697 F.3d at 1067

3   (citing *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172 (9th Cir.2006)).  Here, the mandate

4   requires the Court to address the issue of whether or not the Comerica Trust Account was

5   commingled to the extent that the proceeds of the sale of the Earrings are property of the Estate or,

6   should be distributed to the GK *Rezulin* clients as beneficiaries of the Comerica Trust Account

7   assuming *arguendo* the payment could be directly traced to the *Rezulin* settlement proceeds, which

8   as demonstrated herein, is a task that cannot be reasonably accomplished.

### B. The *Res Judicata* Effect of the Court's Consolidation Order and the Factual Findings Upon Which it is Based Conclusively Establishes Commingling of the Trust Funds

1.  The Consolidation Order's Establishes Commingling of the Trust Funds and is Issue Determinative of the Remand Order Based Upon Claim Preclusion or *Res Judicata*

The doctrine of claim preclusion, or *res judicata*, "bars any subsequent suit on claims that were raised or could have been raised in a prior action."  *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009). "Claim preclusion 'applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties.'" *Id*. (quoting *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002)). To demonstrate privity between a non-party and a party to former litigation, "the party who asserts that the matter is barred by claim preclusion must demonstrate that the nonparty's interests and rights were represented and protected in the prior action." *Pedrina v. Chun*, 97 F.3d 1296, 1301-02 (9th Cir. 1996); *see*, *United States v. ITT Rayonier, Inc*., 627 F.2d 996, 1003 (9th Cir. 1980) (holding that privity exists between a non-party and a party if the latter is so closely bound with the former as to be its "virtual representative").

The District Court's mandate regarding the commingling of trust funds was effectively resolved when Erika challenged the Trustee's Consolidation Motion. This motion aimed to ascertain if the Debtor had mixed its funds or Girardi's personal funds within the GK Trust Accounts to the extent that these trust funds became part of the Estate's property. The Court's

-8-

1    rejection of Erika's objection and its subsequent order determining that the Debtor's trust funds

2    indeed constitute Estate property has definitively settled the issue of commingling. As such this

3    matter is now subject to issue preclusion, meaning it cannot be reopened for further litigation. As

4    established in *Segal v. American Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir. 1979), as cited in

5    *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d at 1529 (9th Cir. 1985), the doctrine of

6    issue preclusion bars the reexamination of any "issues of fact or law that were actually litigated

7    and necessarily decided" in a prior proceeding.

8        For issue or claim preclusion to apply, the previous order must fulfill three elements: (1) an

9    identity of claims (the issue of commingling), (2) a final judgment on the merits (the Court's

10    order), and (3) identity or privity between the parties (the Trustee and Erika). The Consolidation

11    Motion and Order therefore satisfies all three elements *vis à vis* a determination of commingling of

12    the trust account *res* and that the same is property of the Estate. [Consolidation Motion, at pp. 7-

13    8; Consolidation Order]. As noted, *res judicata* precludes this issue from being relitigated. The

14    impact of these settled issues and the doctrines of claim preclusion and *res judicata* is decisive in

15    meeting the District Court's mandate.

16        2.    The Evidence Presented in the Turnover Motion, the Consolidation Motion, and the

17            Declaration of Nicholas Troszak Submitted Herewith Satisfies the Preponderance

18            of the Evidence Standard Mandated by the District Court.

19        Erika will undoubtedly challenge the applicability of Consolidation Order and findings

20    presented in the Motion for Consolidation and adopted by the Court as irrelevant to the issue of

21    commingling for the time-period the Earrings were purchased – 2007, notwithstanding the issue of

22    the pre-2013 transfers was presented to the Court for discussion. [*See*, Exhibit 4, Consolidation

23    Motion at 9-10:21-2; Declaration of Nicholas Troszak ("Troszak Decl. I") at 15-16:11-19]

24    Nevertheless, as detailed above and as presented in Mr. Troszak's Decl. II, between 2002 and

25    2010, Girardi consistently violated the California Rules of Professional Conduct, which expressly

26    prohibit a lawyer or law firm from depositing funds belonging to the lawyer or law firm into a

27    Clients Trust Account. According to California Rules of Professional Conduct, Rule 1.15 (c) on

28    "Safekeeping Funds and Property of Clients and Other Persons," it is stated that: "Funds belonging

-9-

1    to the lawyer or law firm shall not be deposited or otherwise commingled with funds held in a

2    trust account."

3         The District Court has mandated that the Trustee must establish, by a preponderance of the

4    evidence, that during the relevant time-period (2002-2010) commingling occurred in the Comerica

5    Trust Account sufficient to support a conclusion that it cannot be determined which funds from

6    what case, if any, were used to purchase the Earrings.[7]

7         "Proof by the preponderance of the evidence means that it is sufficient to persuade the

8    finder of fact that the proposition is more likely true than not." *United States v. Arnold & Baker*

9    *Farms,* 177 B.R. 648, 654 (9th Cir. BAP 1994) *(In re Arnold & Baker Farms). See*, *Concrete Pipe*

10   *& Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for So. Cal.*, 508 U.S. 602, 622, 113 S. Ct.

11   2264, 124 L. Ed. 2d 539 (1993) ("The burden of showing something by a 'preponderance of the

12   evidence,' . . . 'simply requires the trier of fact to believe that the existence of a fact is more

13   probable than its nonexistence before [he] may find in favor of the party who has the burden to

14   persuade the [judge] of the fact's existence.'"  In so doing the finder of fact is entitled to draw

15   reasonable inferences from proven facts using both circumstantial and testimonial evidence which

16   are indistinguishable insofar as the fact-finding function is concerned and can be used to prove any

17   fact." *United States v. Ramirez-Rodriquez,* 552 F.2d 883, 884 (9th Cir. 1977) (quoting *United*

18   *States v. Nelson*, 419 F.2d 1237, 1239-41 (9th Cir. 1969)). *See also, United States v. Kelly*, 527

19   F.2d 961, 965 (9th Cir. 1976); and *Payne v. Borg*, 982 F.2d 335, 339 (9th Cir. 1992) (citing *United*

20   *States v. Stauffer*, 922 F.2d 508, 514 (9th Cir. 1990)).  Circumstantial evidence is evidence that

21   relies on an inference to connect it to a conclusion of fact. It is not direct evidence that proves a

22   fact by itself, but rather indirect evidence that suggests a fact by proving other events or

23   circumstances.

24   [7] Because Girardi was commingling personal funds and client trust funds for years preceding the
     payment on the earrings, it is appropriate to consider an extended time frame for the analysis.
25   As noted in the Trustee's Consolidation Motion, given that the funds were hopelessly
     commingled, it is prohibitively expensive – if not nearly impossible- for the Trustee's forensic
26   team to perform a tracing analysis to determine the ultimate source of the funds in the trust and
     IOLTA accounts. Adding to the difficulties is that many of these bank accounts predated the
27   bankruptcy for so many years that the bank records of the sources and uses for the funds in the
     bank accounts prior to the seven-year period are not even available.  The Trust Activity
28   Register is the best evidence of the trust account transactions that took place, and clearly
     establishes commingling by Girardi in the millions of dollars.

-10-

The following evidence accomplishes the task assigned by the District Court.

As presented in the Declaration of Nicholas Troszak attached to the Consolidation Motion [RFJN, Exhibit 4, at pp.14-16]:

- The Debtor also utilized a MS Access database to account for the trust and Interest on Lawyers Trust Accounts ("IOLTA") bank accounts they maintained. The MS Access database contained the Client Portfolio Case name and number associated with each transaction. Initially, DSI received a download of over 78,000 trust account entries dating back to 1998 from the MS Access database.

- The downloaded information served as the initial foundation for the Cash Database. The Cash Database has been reconciled to bank statements and includes over 300,000 entries (approximately 25,000 trust account entries and approximately 275,000 non-trust account entries) for deposits and disbursements from the Debtor's accounts.

- During my analysis of the Debtor's financial documents, I observed that the Debtor had control over trust and IOLTA bank accounts that were out of trust. Further, with one limited exception, I observed that the Debtor did not properly segregate the funds in its trust and IOLTA bank accounts. Rather, the Debtor regularly commingled its client funds in the trust and IOLTA bank accounts. The intermingling of funds in the trust and IOLTA accounts included approximately $10,000,000 of the Debtor's own funds and another approximately $40,000,000 from other sources unrelated to client settlements.

- Given the high volume of transactions, the accounts out of trust and that the commingling of client funds likely occurred many years before the seven-year period prior to bankruptcy, it will be nearly impossible to conduct a tracing analysis in the Debtor's trust and IOLTA bank accounts to determine the ultimate source of the funds in the accounts.

As established by the Declaration of Daphne Masin ("Masin Decl") submitted in support of the Turnover Motion [RFJN Exhibit 8, 20-21:3-19]:

- GK records had a ledger account for checks written to M&M on the Firm's operating

-11-

account at Comerica Bank totaling in excess of $1.6 million, [RFJN, Exhibit 8]

- There were checks drawn against the Rezulin Trust Account at Comerica Bank ("RTA") dated March 2, 2007, check no. 15847 payable to M&M in the amount of $750,000.00 (the "March 2nd Check"). [RFJN, Exhibit 6, p.88]

- The description on the Rezulin ledger identifies the payment was made for "costs." [RFJN, Exhibit 6]

- A complete review of the RTA demonstrates that GK paid itself $15,074,805.82 described as "costs" and $7,500,000 described as payment for "fees".

- A listing of the fees and costs is set forth on a spreadsheet, attached as Exhibit 9 to RFJN.]

As outlined in the Declaration of Nicholas Troszak (Troszak Decl. II), submitted herewith, the period spanning from 2002 through 2010 saw the recording of a number of transactions in the Activity Register[8] that evidence that Girardi deposited $29,131,673.47 into the GK Trust Account, indicating TVG, TVG loan, or accounted for under the case number of 10001, case name TVG. GK also disbursed $31,579,332.25 in checks or transfers indicating TVG, TVG loan, or accounted for under the case number of 10001, case name TVG.

It is also noteworthy that Girardi made payments totaling $2,082,849.59 directly from the GK Trust Account to Girardi and Lack's partnership, G & L Aviation. An additional $3,200,000 was allocated for Thomas Girardi's real estate investment in "PacTen." Furthermore, there was a payment of $750,000.00 for the purchase of earrings. [Troszak Decl. II]

Taken together, this preponderance of the evidence establishes that during the relevant period (2002-2010), Girardi, as he did post-2013, operated the Comerica Trust Account as if it was his personal piggy bank. He used client trust funds, or at least funds deposited into the Comerica Trust Account to finance his resort homes, planes, yachts, cars, real estate investments, and purchases of jewelry. This evidence constitutes a clear commingling of his personal funds with client trust funds, all in blatant violation of California Rules of Professional Conduct, Rule 1.15.

---

[8] Again, this is the trust account into which the *Rezulin* settlement proceeds were deposited.

-12-

## C.  The Motion Should be Granted as the District Court Decision Precludes Erika from Asserting an Interest in the Proceeds of the Sale of the Earrings.

The District Court's decision wasn't entirely one-sided.  It also upheld the Bankruptcy Court's order rejecting Erika's statute of limitations defenses (as indicated in the Remand Order at 8-11).  Additionally, the District Court ruled that Erika had waived any objection to the sale of the Earrings.  These two determinations, in conjunction with the District Court's directive regarding commingling, now leave Erika with a diminished stake in this matter.  In other words, due to the findings of this Court and the District Court, Erika no longer possesses a substantial, legally protectable interest that would warrant her recovery.  *See*, *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996), as amended on denial of reh'g (May 30, 1996) (A significant protictible interest necessitates two key components: (1) an interest protected by law and (2) a "relationship between the protected interest and the claim at issue.")  This interest must be direct, non-contingent, substantial, and legally defensible.  *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981).

In light of the issues pertaining to commingling as defined by the District Court, the proceeds from the sale of the Earrings cannot revert to Erika. The District Court's order implicitly indicated that these funds either belong to specifically identifiable clients or the Estate and should be administered by the Trustee.  In all events, Erika no longer has a "dog in this fight."

Erika has falsely allowed her PR team to suggest she won the appeal and has gone so far as to suggest she is entitled to the proceeds from the sale.  As the Court knows and the District Court affirmed, the buyer of the earrings has no further exposure as a result of the sale.  The auctioneer and other professionals have already been paid for the work related to the sale.  The proceeds of the sale under any scenario are not Erika's.  They are the clients whose funds were misappropriated.

The District Court's order never provided a windfall to Erika to receive stolen client funds that were used to purchase her replacement earrings from an alleged burglary.  The money used to purchase the Earrings is either Estate property or the clients' property, but it is not Erika's property under any scenario.  This undisputed finding by this Court and the District Court

-13-

precludes Erika from any claim to the proceeds from the sale of the Earrings.  She cannot profit from her husband's theft of his clients' money and that should be cleared up in any order or finding by this Court. [9]

**IV.     CONCLUSION**

       As presented above, the evidence proffered by the Trustee clearly establishes that the Comerica Trust Account was so irrevocably commingled with the personal funds and transactions of Thomas V. Girardi that the proceeds from the sale of the Earrings are clearly assets of the estate, subject to administration by the Trustee.

       For all the foregoing reasons, the Court should grant the Trustee's Turnover Motion.

Dated: October 23, 2023.                    Respectfully Submitted,

                                            JENKINS MULLIGAN & GABRIEL LLC

                                            By:_____
                                                  Larry W. Gabriel
                                            Special Litigation Counsel for Plaintiff Elissa D.
                                            Miller, Chapter 7 Trustee, Estate of Girardi Keese

---

[9] Even though Erika eventually turned over the Earrings to the Trustee, there is controversy as to whether or not the Earrings Erika gave the Trustee were the same diamonds purchased with the Trust Funds in 2007. In Mr. Menziclian's declaration (RFJN Exhibit 9) he stated that "On March 2, 2007, I sold Thomas V. Girardi a pair of earrings that were approximately 7 carats each. Yet the diamonds Erika turned over to the Trustee were (1) 6.01 carats and (2) 6.57 carats.  *See*, GIA certificates 5221686770 and 5221686775, RFJN Exhibits 9 and 10.

-14-

### DECLARATION OF NICHOLAS R. TROSZAK

I, Nicholas R. Troszak, declare as follows:

1.  I am a managing director at Development Specialists, Inc. ("DSI"). I am a Certified Public Accountant. I am also Certified in Financial Forensics (CPA/CFF), and a Certified Insolvency and Restructuring Advisor (CIRA) with over 15 years of experience providing services in bankruptcy, forensic/investigative accounting, and litigation support. I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of the Girardi Keese Trustee's Opening Brief Addressing Issues Presented by the District Court's Remand Order.

2.  The information set forth in this declaration is the result of reviewing and analyzing the Debtor's books and records accounted for contemporaneously and retrieved from the Debtor's office.

3.  I have reviewed the Debtor's Trust Account System Activity Register ("Activity Register") for the Comerica Bank trust account ending in 6674, ("Comerica Trust Account" or "CTA"), retrieved from the Debtor's trust accounting system.  The Activity Register is one of the accounting methods used by the Debtor in the ordinary course of its business activities.  It represents the best available record of the transactions that took place in the Comerica Trust Account during the period of time from March 26, 2002, through January 10, 2018, at which time Girardi Keese ("GK") essentially ceased using the CTA, although it remained open until February 2021. The majority of the transactions in this account occurred between 2002 and December 17, 2013.

4.  The Comerica Trust Account was one of GK's primary IOLTA Trust accounts and was not a single purpose trust account. During DSI's construction of its cash database, for December 1, 2013, through the petition date of December 18, 2020, that was used by the Trustee to support her Motion of Consolidation, [Bankr. Dkt. 1787]  DSI utilized similar Activity Registers in electronic format to assist in the creation of the cash database.  The below information details my review of the Comerica Trust Account Activity Register for the period of time 2002

through 2010:

5. **Deposits Made into the Comerica Trust Account by Thomas V. Girardi or GK.** During the time period April 22, 2002, through December 31, 2010, $29,131,673.47 was deposited into the Comerica Trust Account that were credited as deposits made by Thomas V. Girardi ("TVG"), or as a TVG loan, or accounted for under the case number of 10001, case name TVG. See Exhibit 1.

6. **Payments Made Out of the Comerica Trust Account to Thomas V. Girardi or GK.** During the same time period (April 22, 2002, through December 31, 2010), $31,579,332.25 was disbursed from the Comerica Trust Account described as payments made to TVG, TVG loan, or accounted for under the case number of 10001, case name TVG. See Exhibit 1.

The payments in and payments out differential is a negative $ 2,447,658.78. To be clear, according to this ledger, TVG/GK took almost $2.5 million out of the Comerica Trust Account, more than it put in during this specified period of time. None of the transactions in this calculation were described as a payment for fees or costs.

7. **Comerica Trust Account Payments to G &L Aviation.** G & L Aviation was a partnership between Thomas V. Girardi and Walter J. Lack. See Declaration of Walter Johns Lack, Trustee's Request for Judicial Notice, Exhibit 2. During the time period of April 22, 2002, through December 31, 2010, $2,082,849.59 in payments were made to G & L Aviation. See Exhibit 3.

8. **The Pac Ten Payment.** On June 22, 2006, a check was issued against the Comerica Trust Account payable to Pac Ten Scott Road Associates, LLC, in the amount of $3,200,000.00. See Exhibit 3. There was no description of the payment. Mr. Girardi's Financial Statement, December 2017, sets forth as a real estate asset "Pac Ten Partners - 45% interest". See Exhibit 4 attached hereto.

9. **The Diamond Earrings Payment**. On March 2, 2007, a check was drawn against the Comerica Trust Account payable to M&M in the amount of $750,000. The description for the check, "Costs" relating to GK case name *Rezulin,* case number 21101. See Exhibit 3.

10. **The *Rezulin* Settlement Payment.** The *Rezulin* case settlement proceeds in the

1  amount of $64,845,728.14 were deposited into the Comerica Trust Account on or around January

2  30, 2007.  There are a number of other deposits made into the Comerica Trust Account that

3  represented settlement funds from other GK cases. See Exhibit 5.

4       11. A chart of the foregoing transactions is set forth below:

5

| Case | Date | Type | Payee / Payor Name | Amount | Description |
|---|---|---|---|---|---|
| 10001 | 10/16/02 | Deposit | US Bank | 954.48 | Close Bank Account TVG or David A. Prestholt |
| 10001 | 10/16/02 | Deposit | US Bank | 4,148.76 | Close US Bank Account G&K |
| 10001 | 10/16/02 | Deposit | US Bank | 29,123.35 | Close US Bank Account TVG |
| 10001 | 09/23/04 | Check | GIRARDI & KEESE | (500,000.00) | LOAN FROM TVG |
| 10001 | 09/23/04 | Deposit | COMERICA BANK | 1,500,000.00 | TVG LOAN PROCEEDS |
| 10001 | 10/22/04 | Check | GIRARDI & KEESE | (250,000.00) | loan from TVG |
| 10001 | 10/27/04 | Check | GIRARDI & KEESE | (250,000.00) | loan from TVG |
| 10001 | 11/15/04 | Check | GIRARDI & KEESE | (500,000.00) | loan from TVG |
| 10001 | 11/19/04 | Check | RAMON DESAGE | (198,000.00) | Costs |
| 10001 | 01/20/05 | Deposit | Thomas V. Girardi | 347,446.88 | TVG loan proceeds |
| 10001 | 01/26/05 | Check | GIRARDI & KEESE | (200,000.00) | loan from TVG |
| 10001 | 01/26/05 | Check | Thomas V. Girardi | (147,446.88) | LOAN |
| 10001 | 01/28/05 | Check | GIRARDI & KEESE | (500,000.00) | TVG loan proceeds |
| 10001 | 01/28/05 | Deposit | Thomas V. Girardi | 1,000,000.00 | loan |
| 10001 | 02/11/05 | Check | GIRARDI & KEESE | (500,000.00) | TVG loan proceeds |
| 10001 | 02/11/05 | Deposit | Thomas V. Girardi | 750,000.00 | LOAN |
| 10001 | 02/22/05 | Check | Thomas V. Girardi | (68,121.00) | loan |
| 10000 | 04/26/05 | Check | G&L AVIATION | (500,000.00) | Fees - wire transfer orig coded to 22194 |
| 10001 | 07/27/05 | Adj | GIRARDI & KEESE | (30,000.00) | transfer to 10205 for the Est of Mary Bennett |
| 10001 | 04/25/06 | Deposit | GIRARDI & KEESE | 14,000,000.00 | transfer from 94298 |
| 10001 | 04/25/06 | Check | COMERICA | (14,000,000.00) | . |
| 10001 | 06/22/06 | Check | G & L Aviation | (750,000.00) | . |
| 10001 | 06/22/06 | Check | Pac Ten   Scott Road Associates LLC | (3,200,000.00) | . |
| 10001 | 07/18/06 | Check | HUDNALL, COHN & ABRAMS | (200,000.00) | . |
| 21101 | 03/02/07 | Check | M&M | (750,000.00) | Costs |
| 23150 | 03/12/09 | Check | G & L Aviation | (650,000.00) | Assoc Counsel Fees |
| 10209 | 10/09/09 | Deposit | TERRA COASTAL ESCROW, INC. | 5,844,740.63 | TVG |
| 10209 | 10/15/09 | Check | UNITED STATES TREASURY | (1,500,000.00) | TVG Disb |
| 10209 | 10/15/09 | Deposit | WELLS FARGO ADVISORS, LLC | 500,000.00 | TVG |
| 10209 | 10/16/09 | Check | KELCO PROPERTIES LLC | (2,500,000.00) | TVG Disb |
| 10209 | 11/06/09 | Check | FRANCHISE TAX BOARD | (500,000.00) | TVG Disb 1106622649 , 1101731097 |
| 10209 | 11/10/09 | Deposit | COMERICA | 5,000,000.00 | TVG |
| 10209 | 11/13/09 | Check | GIRARDI & KEESE | (1,000,000.00) | TVG LOAN |
| 10209 | 11/16/09 | Check | GIRARDI & KEESE | (1,000,000.00) | TVG loan |
| 10209 | 11/17/09 | Deposit | GIRARDI & KEESE | 155,259.37 | TVG LOAN |
| 20060 | 11/17/09 | Check | GIRARDI & KEESE | (155,259.37) | TVG |
| 10209 | 12/11/09 | Check | GIRARDI & KEESE | (1,000,000.00) | TVG Loan |
| 10209 | 12/22/09 | Check | KELCO PROPERTIES LLC | (1,135,000.00) | TVG Disb |
| 10209 | 12/24/09 | Check | GIRARDI & KEESE | (1,000,000.00) | TVG Loan |
| 10209 | 12/29/09 | Check | GIRARDI & KEESE | (1,000,000.00) | TVG Loan |
| 21239 | 01/13/10 | Check | G & L Aviation | (182,849.59) | . |
| 10209 | 01/26/10 | Check | GIRARDI & KEESE | (1,000,000.00) | TVG Loan |
| 10209 | 03/23/10 | Check | GIRARDI & KEESE | (1,000,000.00) | TVG LOAN |
| 10209 | 05/10/10 | Check | GIRARDI & KEESE | (250,000.00) | TVG Loan |
| 10209 | 05/13/10 | Check | GIRARDI & KEESE | (250,000.00) | TVG Loan |

-3-

| 10209 | 07/22/10 | Check | GIRARDI & KEESE | (500,000.00) | TVG Loan |
| 10209 | 08/09/10 | Check | SHAWN MCCANN | (200,000.00) | TVG Disb Girardi Funds |
| 10209 | 08/10/10 | Check | Robert W. Finnerty | (60,000.00) | TVG Disb Girardi Funds |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 24th day of October, 2023, at Camarillo, California

_____

Nicholas R. Troszak

-4-

# Exhibit 1

Girardi Keese
Trust Account System Activity Register
Bank Account: F - Comerica Trust 6674

| CaseNbr | CaseName | TransDate | TransTypeID | CheckNbr | Payee / Payor Name | Receipts | Disbursements | Description | Description2 |
|---|---|---|---|---|---|---|---|---|---|
| 10001 | TVG | 10/16/02 | Deposit | 3626997 | US Bank | $954.48 | | Close Bank Account | TVG or David A. Prestholt |
| 10001 | TVG | 10/16/02 | Deposit | 3626996 | US Bank | 4,148.76 | | Close US Bank Account | G&K |
| 10001 | TVG | 10/16/02 | Deposit | 3626995 | US Bank | 29,123.35 | | Close US Bank Account | TVG |
| 10001 | TVG | 06/02/03 | Check | 10723 | DAILY JOURNAL | | (3,626.00) | EXCHANGE | |
| 10001 | TVG | 09/23/04 | Check | 13041 | GIRARDI & KEESE | | (500,000.00) | LOAN FROM TVG | |
| 10001 | TVG | 09/23/04 | Deposit | 987028189 | COMERICA BANK | 1,500,000.00 | | TVG LOAN PROCEEDS | |
| 10001 | TVG | 10/22/04 | Check | 13091 | GIRARDI & KEESE | | (250,000.00) | loan from TVG | |
| 10001 | TVG | 10/27/04 | Check | 13093 | GIRARDI & KEESE | | (250,000.00) | loan from TVG | |
| 10001 | TVG | 11/15/04 | Check | 13111 | GIRARDI & KEESE | | (500,000.00) | loan from TVG | |
| 10001 | TVG | 11/19/04 | Check | 13117 | RAMON DESAGE | | (198,000.00) | Costs | |
| 10001 | TVG | 01/20/05 | Deposit | 12005 | Thomas V. Girardi | 347,446.88 | | TVG loan proceeds | |
| 10001 | TVG | 01/26/05 | Check | 13246 | Thomas V. Girardi | | (200,000.00) | loan from TVG | |
| 10001 | TVG | 01/26/05 | Check | 13247 | Thomas V. Girardi | | (147,446.88) | LOAN | |
| 10001 | TVG | 01/28/05 | Check | 13248 | GIRARDI & KEESE | | (500,000.00) | TVG loan proceeds | |
| 10001 | TVG | 01/28/05 | Deposit | 12805 | Thomas V. Girardi | 1,000,000.00 | | loan | |
| 10001 | TVG | 02/11/05 | Check | 13271 | GIRARDI & KEESE | | (500,000.00) | TVG loan proceeds | |
| 10001 | TVG | 02/11/05 | Deposit | 450117075 | Thomas V. Girardi | 750,000.00 | | LOAN | |
| 10001 | TVG | 02/17/05 | Check | 13276 | GENE PRICE | | (25,000.00) | . | |
| 10001 | TVG | 02/17/05 | Check | 13277 | GENE PRICE | | (25,000.00) | . | |
| 10001 | TVG | 02/17/05 | Check | 13278 | GENE PRICE | | (25,000.00) | . | |
| 10001 | TVG | 02/17/05 | Check | 13279 | GENE PRICE | | (25,000.00) | . | |
| 10001 | TVG | 02/17/05 | Check | 13275 | J. D. Parker | | (21,879.00) | . | |
| 10001 | TVG | 02/17/05 | Check | 13272 | J. D. Parker | | (20,000.00) | . | |
| 10001 | TVG | 02/17/05 | Check | 13273 | J. D. Parker | | (20,000.00) | . | |
| 10001 | TVG | 02/17/05 | Check | 13274 | J. D. Parker | | (20,000.00) | . | |
| 10001 | TVG | 02/22/05 | Check | 13295 | Thomas V. Girardi | | (68,121.00) | loan | |
| 10001 | TVG | 07/27/05 | Adjustment | 72705 | GIRARDI & KEESE | | (30,000.00) | transfer to 10205 for the Est of Mar |
| 10001 | TVG | 04/25/06 | Deposit | 42506 | GIRARDI & KEESE | 14,000,000.00 | | transfer from 94298 | |
| 10001 | TVG | 07/18/06 | Check | 1328 | HUDNALL, COHN & ABRAMS | | (200,000.00) | . | |
| 10001 | TVG | 04/25/06 | Check | 13845 | COMERICA | | (14,000,000.00) | . | |
| 10209 | MISCELLANEOUS (2009) | 10/09/09 | Deposit | 17450 | TERRA COASTAL ESCROW, INC. | 5,844,740.63 | | TVG | |
| 10209 | MISCELLANEOUS (2009) | 10/15/09 | Check | 22451 | UNITED STATES TREASURY | | (1,500,000.00) | TVG Disb | |
| 10209 | MISCELLANEOUS (2009) | 10/15/09 | Deposit | 68120518 | WELLS FARGO ADVISORS, LLC | 500,000.00 | | TVG | |
| 10209 | MISCELLANEOUS (2009) | 10/16/09 | Check | 1986 | KELCO PROPERTIES LLC | | (2,500,000.00) | TVG Disb | |
| 10209 | MISCELLANEOUS (2009) | 11/06/09 | Check | 22975 | FRANCHISE TAX BOARD | | (500,000.00) | TVG Disb | 1106622649 , 1101731097 |
| 10209 | MISCELLANEOUS (2009) | 11/10/09 | Deposit | 99111009 | COMERICA | 5,000,000.00 | | TVG | |
| 10209 | MISCELLANEOUS (2009) | 11/13/09 | Check | 23028 | GIRARDI & KEESE | | (1,000,000.00) | TVG LOAN | |
| 10209 | MISCELLANEOUS (2009) | 11/16/09 | Check | 23030 | GIRARDI & KEESE | | (1,000,000.00) | TVG loan | |
| 10209 | MISCELLANEOUS (2009) | 11/17/09 | Deposit | 1795111709 | GIRARDI & KEESE | 155,259.37 | | TVG LOAN | |
| 20060 | SEMPRA ENERGY | 11/17/09 | Check | 1795111709 | GIRARDI & KEESE | | (155,259.37) | TVG | |
| 10209 | MISCELLANEOUS (2009) | 12/11/09 | Check | 23157 | GIRARDI & KEESE | | (1,000,000.00) | TVG Loan | |
| 10209 | MISCELLANEOUS (2009) | 12/22/09 | Check | 2662 | KELCO PROPERTIES LLC | | (1,135,000.00) | TVG Disb | |
| 10209 | MISCELLANEOUS (2009) | 12/24/09 | Check | 23367 | GIRARDI & KEESE | | (1,000,000.00) | TVG Loan | |

024

Girardi Keese
Trust Account System Activity Register
Bank Account: F - Comerica Trust 6674

| CaseNbr | CaseName | TransDate | TransTypeID | CheckNbr | Payee / Payor Name | Receipts | Disbursements | Description | Description2 |
|---|---|---|---|---|---|---|---|---|---|
| 10209 | MISCELLANEOUS (2009) | 12/29/09 | Check | 23375 | GIRARDI & KEESE | | (1,000,000.00) | TVG Loan | |
| 10209 | MISCELLANEOUS (2009) | 01/26/10 | Check | 23424 | GIRARDI & KEESE | | (1,000,000.00) | TVG Loan | |
| 10209 | MISCELLANEOUS (2009) | 03/23/10 | Check | 23672 | GIRARDI & KEESE | | (1,000,000.00) | TVG LOAN | |
| 10209 | MISCELLANEOUS (2009) | 05/10/10 | Check | 24082 | GIRARDI & KEESE | | (250,000.00) | TVG Loan | |
| 10209 | MISCELLANEOUS (2009) | 05/13/10 | Check | 24093 | GIRARDI & KEESE | | (250,000.00) | TVG Loan | |
| 10209 | MISCELLANEOUS (2009) | 07/22/10 | Check | 24682 | GIRARDI & KEESE | | (500,000.00) | TVG Loan | |
| 10209 | MISCELLANEOUS (2009) | 08/09/10 | Check | 24752 | SHAWN MCCANN | | (200,000.00) | TVG Disb | Girardi Funds |
| 10209 | MISCELLANEOUS (2009) | 08/10/10 | Check | 24799 | Robert W. Finnerty | | (60,000.00) | TVG Disb | Girardi Funds |
| | | | | | | $29,131,673.47 | ($31,579,332.25) | | |

# Exhibit 2

Timothy J. Yoo (SBN 155531)
Carmela T. Pagay (SBN 195603)
Richard P. Steelman, Jr. (SBN 266449)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Blvd. Ste. 1700
Los Angeles, CA 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: tjy@lnbyb.com; ctp@lnbyb.com; rps@lnbyb.com

Attorneys for Jason Rund,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>THOMAS VINCENT GIRARDI,<br><br>      Debtor.<br>――――――――――――――――――<br>JASON RUND, Chapter 7 Trustee for the bankruptcy estate of Thomas Vincent Girardi,<br><br>      Plaintiff,<br><br>v.<br><br>G & L AVIATION, a California general partnership,<br><br>      Defendant. | Case No. 2:20-bk-21020-BR<br><br>Chapter 7<br><br><br><br>Adv. No. 2:21-ap-01028-BR<br><br><br>**DECLARATION OF WALTER JOHN LACK IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT UNDER LBR 7055-1 AGAINST DEFENDANT G & L AVIATION, A CALIFORNIA GENERAL PARTNERSHIP** |

I, Walter John Lack, declare as follows:

1.     I am an attorney licensed to practice before all the courts of the State of California, and my California State Bar Number is 57550. I make this Declaration in support of plaintiff Jason Rund, the chapter 7 trustee's ("Plaintiff" or "Trustee") motion for default judgment under LBR

1

1  7055-1 against defendant G & L Aviation, a California general partnership ("Defendant"). Unless

2  otherwise stated, the following facts are within my personal knowledge. If called to testify as a

3  witness with respect to the statements set forth herein, I could and would competently testify

4  thereto.

5      2.      Defendant is a California general partnership formed by and comprised at all times

6  of two general partners (50% partnership interest each): the debtor Thomas Vincent Girardi (the

7  "Debtor") and me. I have reviewed the Trustee's "Verified First Amended Complaint to Quiet

8  Title, for Turnover of Real Property, and Declaratory Relief" (the "Complaint") in the above-

9  referenced adversary proceeding.

10      3.      In June 2006, Defendant purchased the real property located at 81775 Brown Deer

11  Park, La Quinta, California 92253 (Assessor Parcel Number (APN): 767-540-014) (the

12  "Property"). The legal description of the Property is as follows:

### LEGAL DESCRIPTION

Real property in the City of La Quinta, County of Riverside, State of California, described as follows:

PARCEL 1:
LOT 14 OF TRACT NO. 29347 AS SHOWN BY MAP ON FILE IN BOOK 285 PAGES 60 THROUGH 64 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA;

EXCEPT ALL OIL, MINERALS, NATURAL GAS, AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN, GEOTHERMAL RESOURCES, METALLIFEROUS OR OTHER ORES, AND ALL PRODUCTS DERIVED FROM ANY OF THE FOREGOING, THAT MAY BE WITHIN OR UNDER THE PROPERTY, AND ALL RIGHTS ASSOCIATED WITH THE FOREGOING, TOGETHER WITH THE PERPETUAL RIGHT OF DRILLING, MINING, EXPLORING AND OPERATING THERE FOR AND STORING IN AND REMOVING THE SAME FROM SAID LAND OR ANY OTHER LAND, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THE PROPERTY, OIL OR GAS WELLS, TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE PROPERTY AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AND SHAFTS UNDER AND BENEATH OR BEYOND THE EXTERIOR LIMITS THEREOF, AND TO REDRILL, RETUNNEL, EQUIP, MAINTAIN, REPAIR, DEEPEN AND OPERATE ANY SUCH WELLS OR MINE WITHOUT, HOWEVER, THE RIGHT TO DRILL, MINE, STORE, EXPLORE AND OPERATE THROUGH THE SURFACE OF THE UPPER 500 FEET OF THE SUBSURFACE OF THE PROPERTY AS RESERVED IN THE DEED RECORDED OCTOBER 29, 1999 AS INSTRUMENT NO. 1999-478750 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

028

1  PARCEL 2:

2  NON-EXCLUSIVE EASEMENTS CONTAINED IN THE GRANT DEED RECORDED
3  SEPTEMBER 23, 2003 AS INSTRUMENT NO. 2003-741895 FOR PEDESTRIAN AND
   VEHICULAR (INCLUDING CONSTRUCTION VEHICLES) INGRESS AND EGRESS
4  OVER AND ACROSS THE REAL PROPERTY DESCRIBED AS FOLLOWS:

5  LETTERED LOTS D, F AND I THROUGH M OF TRACT NO. 29136 AS SHOWN BY MAP
   ON FILE IN BOOK 285 PAGES 4 THROUGH 16 OF MAPS, RECORDS OF RIVERSIDE
6  COUNTY, CALIFORNIA.

7        A.P.N.: 780-250-014.

8        4.    In 2014, the Debtor and I, as the two equal partners of Defendant, mutually agreed

9  as the partners of Defendant to transfer the Property from Defendant to the Debtor. In

10 consideration of my agreement with the Debtor, the Debtor paid me for my partnership interest in

11 Defendant in the Property in exchange for my agreement to have Defendant transfer the Property

12 from the Defendant to the Debtor as the Debtor's sole property.

13       5.    The Debtor and I, on behalf of Defendant, performed all steps in connection with

14 transferring the Property from Defendant to the Debtor (including the Debtor's payment to me for

15 my ownership interest in the Property as a partner of Defendant), except that Defendant, the

16 Debtor and I did not sign any quit claim deed or grant deed related to the transfer of the Property

17 from Defendant to the Debtor.

18       6.    Similarly, there is a Morgan Stanley Smith Barney LLC Account No. 565-xxx581-

19 xxx (the "Account") with proceeds currently in the amount of approximately $357,631.50 listed

20 in Defendant's name. The Debtor is the owner of the Account, not Defendant or me, and the

21 Account and its proceeds belong to the Trustee, not Defendant or me.

22       7.    The Debtor never took the final steps to complete the transfer of the Account and

23 its assets from Defendant to the Debtor, as the Debtor and I had agreed and authorized as

24 Defendant's two partners.

25       8.    Based on the foregoing, I do not claim any interest in the Property or the Account.

26 The Property and the Account are the Debtor's property – not Defendant's or mine – and, thus,

27 now the Trustee's in light of the Debtor's bankruptcy case.

28

029

1      9.     I consent to the Complaint's requested relief against Defendant and in favor of the

2   Trustee, specifically a judicial declaration and judgment that the Trustee is the true and correct

3   sole owner of the Property and the Account.

4      I declare under the penalty of perjury under the laws of the United States of America that

5   the foregoing facts are true and correct and that this Declaration was executed on April **23**,

6   2021 at Los Angeles, California.

7

8                             _____

9                               WALTER JOHN LACK

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document titled **DECLARATION OF WALTER JOHN LACK IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT UNDER LBR 7055-1 AGAINST DEFENDANT G & L AVIATION, A CALIFORNIA GENERAL PARTNERSHIP** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 28, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

James J Finsten on behalf of Interested Party Courtesy NEF
jfinsten@lurie-zepeda.com, jimfinsten@hotmail.com

Carmela Pagay on behalf of Plaintiff JASON M RUND
ctp@lnbyb.com

Jason M Rund (TR)
trustee@srlawyers.com, jrund@ecf.axosfs.com

Richard P Steelman, Jr on behalf of Plaintiff JASON M RUND
rps@lnbyb.com, john@lnbyb.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Timothy J Yoo on behalf of Plaintiff JASON M RUND
tjy@lnbyb.com

**2. SERVED BY UNITED STATES MAIL**: On **April 28, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

***None.***

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 28, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Walter John Lack, General Partner of G&L Aviation
Engstrom Lipscomb & Lack
10100 Santa Monica Blvd. 12th floor
Los Angeles, CA 90067-4107

Thomas Girardi, General Partner of G&L Aviation
100 Los Altos Drive
Pasadena, California 91105

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**
031

1

2   Leonard Peña, Esq.
    Peña & Soma, APC
3   402 South Marengo Ave., Suite B
    Pasadena, California 91101
    Attorney for Robert Girardi, Conservator of Thomas Girardi

4

5   Robert Girardi, Conservator of Thomas Girardi
    3662 Aquarius Drive
    Huntington Beach, CA  92649

6

7   **Chambers Copy**
    Hon. Barry Russell
    United States Bankruptcy Court, Central District of California

8   Edward R. Roybal Federal Building and Courthouse
    255 E. Temple Street, Suite 1660 / Courtroom 1668

9   Los Angeles, CA 90012

10  I declare under penalty of perjury under the laws of the United States of America that the foregoing is
    true and correct.

11

12  | April 28, 2021 | Richard P. Steelman, Jr. | /s/ Richard P. Steelman, Jr. |
    | Date | Type Name | Signature |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# Exhibit 3

Girardi Keese
Trust Account System Activity Register
Bank Account: F - Comerica Trust 6674

| CaseNbr | CaseName | TransDate | TransTypeID | CheckNbr | Payee / Payor Name | Receipts | Disbursements | Description | Description2 |
|---------|----------|-----------|-------------|----------|--------------------|----------|---------------|-------------|--------------|
| 10001 | TVG | 06/22/06 | Check | 13916 | G & L Aviation | | ($750,000.00) | . | |
| 23150 | Jones,Tom/Price,W v. Mormon Ch. | 03/12/09 | Check | 21519 | G & L Aviation | | (650,000.00) | Assoc Counsel Fees | |
| 21239 | VIOXX | 01/13/10 | Check | 23404 | G & L Aviation | | (182,849.59) | . | |
| 10000 | GK Misc | 04/26/05 | Check | 4042 | G&L AVIATION | | (500,000.00) | Fees - wire transfer | orig coded to 22194 |
| | | | | | | 0.00 | (2,082,849.59) | | |
| 10001 | TVG | 06/22/06 | Check | 13917 | Pac Ten   Scott Road Associates LLC | | (3,200,000.00) | . | |
| | | | | | | $0.00 | ($3,200,000.00) | | |
| 21101 | REZULIN | 03/02/07 | Check | 15847 | M&M | | (750,000.00) | Costs | |
| | | | | | | $0.00 | ($750,000.00) | | |

034

# Exhibit 4

FINANCIAL STATEMENT – Thomas & Erika Girardi
December 2017

### *ASSETS*

Real Estate

| | | |
|---|---|---|
| 100 Los Altos, Pasadena, CA (see Note 1) | $14,500,000 | |
| 1126 Wilshire Blvd. - (see Note 2) | 7,500,000 | |
| 1122 Wilshire Blvd.- (see Note 3) | 7,000,000 | |
| 1138 Wilshire Blvd.  (see Note 4) | 6,000,000 | |
| 1150 Wilshire Blvd. | 4,000,000 | |
| PacTen Partners – 45% interest (see Note 5)<br>Based on investment for Temecula | 21,500,000 | |
| PGA West Property @ 81-775 Brown Deer | 850,000 | |
| Total Real Property | | $ 61,350,000 |

Cash on Hand

| | | |
|---|---|---|
| Girardi\|Keese – Comerica #1891446674<br>(Proceeds of Malibu Home Sale) | 5,000,000 | |
| Receivables from Girardi\|Keese | 120,082,000 | |
| Torrey Pines Bank #4110556201 | 52,500 | |
| Torrey Pines Bank #4110556171 | 396,928 | |
| Preferred Bank #1115464 | 36,671 | |
| Preferred Bank #118935 | 120,317 | |
| Pacific Western Bank #1000219400 | 170,455 | |
| | | $125,858,871 |

| | | |
|---|---|---|
| Outstanding Additional Expenses advanced<br>by Thomas Girardi | | $  14,576,000 |
| Interest in Girardi\|Keese  (See Note 6) | | $100,000,000 |

1

CONFIDENTIAL

EG-004110

<u>Listed Securities</u>
Various listed securities: Wells Fargo                    $   5,700,000

<u>Airplane Interests</u>
King Air 350                                             $   3,000,000
Gulf Stream IV – equity & loan are approx. equal

<u>Other Assets</u>
Household furniture, art, antiques (at cost)    2,000,000
Jewelry (at cost)                              9,000,000

Spectrum Labs, 15.5%                          62,000,000
                                                         $  73,000,000

                              **TOTAL ASSETS**        **$383,484,871**

*LIABILITIES*

Mortgage: 1138 Wilshire Blvd.                  2,500,000
Comerica Bank (guarantor only)  (see Note  7)   5,000,000

                              **TOTAL LIABILITIES**   **$   7,500,000**

                    **NET ASSETS OVER LIABILITIES**   **$375,984,871**

2

CONFIDENTIAL
EG-004111

I declare under penalty of perjury that this financial statement is true and correct.

Date:  December 30, 2017

_____
THOMAS V. GIRARDI

_____
ERIKA GIRARDI

3

CONFIDENTIAL

EG-004112

# NOTES

### Note 1- Los Altos Property

The Los Altos property sits on five acres overlooking the Rose Bowl in Pasadena. The architect was on of the most famous in the United States, Myron Hunt. He also designed the Rose Bowl and the Wrigley House. The grounds were designed by Green & Green who also designed Central Park. The home and the grounds were totally restored approximately three years ago. Documents from the 1920's permitted the home to be restored the way it was designed. Several months ago, it was featured in the *Robb Report* of luxury homes. Unsolicited cash offer $13,500,000.

### Note 2 – 1126 Wilshire Boulevard

This is an appraisal of the property three years old.

### Note 3 – 1122 Wilshire Boulevard

Same as Note 3.

### Note 4 – 1138 Wilshire Boulevard

This is based on purchased price plus appreciation based on price per square foot estimates on Wilshire Boulevard.

### Note 5 – PacTen Partners

This consists several real estate projects. I own 45%. The actual was $11 million and a recent offer was almost double that.

### Note 6 – Interest in Girardi| Keese

This simply reflects costs outstanding. Over the years, I have received more than 95% of those costs back. We did not include the value of the 4,000 cases that the firm has

### Note 7 – Comerica Bank

This represents costs advanced. The firm is primarily responsible, but Thomas Girardi has guaranteed the obligation.

### Note – Lawsuit

The only lawsuit against me is someone who's claiming an interest in one of the buildings. This would not be money that we would have to pay, but rather I would have a small ownership interest. The case is totally baloney, but I did want to disclose the lawsuit.

4

CONFIDENTIAL

EG-004113

# Exhibit 5

Girardi Keese
Trust Account System Activity Register
Bank Account: F - Comerica Trust 6674

| CaseNbr | CaseName | TransDate | TransTypeID | CheckNbr | Payee / Payor Name | Receipts | Disbursements | Description | Description2 |
|---------|----------|-----------|-------------|----------|--------------------|----------|---------------|-------------|--------------|
| 21101 | REZULIN | 01/30/07 | Deposit | 1302007 | MERCK | $64,845,728.14 | | Settlement | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
8001 Lurline Avenue, Winnetka, CA 91306.

A true and correct copy of the foregoing document entitled (*specify*): **TRUSTEE'S OPENING BRIEF ADDRESSING ISSUES PRESENTED BY DISTRICT COURT'S REMAND ORDER; DECLARATION OF NICHOLAS R. TROSZAK** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **October 24, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Ori S Blumenfeld    oblumenfeld@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com
- Evan C Borges    eborges@ggtriallaw.com, cwinsten@ggtriallaw.com
- Alan W Forsley    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com
- Larry W Gabriel    lgabrielaw@outlook.com, tinadow17@gmail.com
- Daniel A Lev    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- Craig G Margulies    Craig@MarguliesFaithlaw.com, Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com
- Elissa Miller (TR)    CA71@ecfcbis.com, MillerTrustee@gmlaw.com;C124@ecfcbis.com;cheryl.caldwell@gmlaw.com;cheryl.caldwell@ecf.courtdrive.com
- Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- Frank X Ruggier    frank@ruggierlaw.com
- Amir Shakoorian    AShakoorian@GGTrialLaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Timothy J Yoo    tjy@lnbyb.com

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **October 25, 2023**, I served the following persons and/or entities **by personal delivery**, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

**COURTESY COPY**
Hon. Dale S. Fischer
U.S. District Court Judge
First Street Courthouse
350 West 1st Street, Courtroom 7D
Los Angeles, CA  90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 24, 2023 | KRISTINA DOW | /s/ Kristina Dow |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
**F 9013-3.1.PROOF.SERVICE**
043