EVAN C. BORGES, State Bar No. 128706
  *EBorges@GGTrialLaw.com*
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone: (949) 383-2800
Facsimile: (949) 383-2801

Attorneys for Defendants Erika Girardi
EJ Global, LLC, and Pretty Mess, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:20-bk-21022-BR |
| GIRARDI KEESE, | Chapter 7 |
| Debtor. | Adv No. 2:21-ap-01155-BR |
| ELISSA D. MILLER, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>ERIKA N. GIRARDI, an individual; EJ GLOBAL, LLC, a limited liability company; and PRETTY MESS, INC., a corporation,<br><br>Defendants. | **DEFENDANT ERIKA GIRARDI'S:**<br><br>**(1) OPPOSITION TO TRUSTEE'S OPENING BRIEF ADDRESSING ISSUES PRESENTED BY DISTRICT COURT'S REMAND ORDER, DECLARATION OF NICHOLAS R. TROSZAK [DOC. 98] AND REQUEST FOR JUDICIAL NOTICE [DOC. 99] (COLLECTIVELY THE "REMAND MOTION"); AND**<br><br>**(2) REQUEST FOR CONTINUANCE OF HEARING, TO ALLOW FOR DISCOVERY AND DUE PROCESS ON NEW EVIDENTIARY SUBMISSIONS BY TRUSTEE IN SUPPORT OF REMAND MOTION AND IN CONTRAVENTION OF TRUSTEE'S PRIOR STIPULATION AND REQUEST TO BRIEF SOLELY "LEGAL ISSUES"**<br><br>**[Declaration of Evan C. Borges filed concurrently herewith]**<br><br>Date:      November 14, 2023<br>Time:      10:00 a.m.<br>Place:     Courtroom 1668<br><br>Judge:    Hon. Barry Russell |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  THE TRUSTEE'S PRIOR STIPULATION AND REQUEST TO BRIEF SOLELY "LEGAL ISSUES" ON THE DISTRICT COURT'S REMAND ORDER, AND SUMMARY OF THIS OPPOSITION. ...................................................................4

    A.  The Trustee's Prior Stipulation and Request To Brief Solely "Legal Issues" on the District Court's Remand Order ........................................4

    B.  Summary of Opposition, Including Request for Continuance of Hearing To Allow for Discovery and Due Process for Ms. Girardi on New Evidentiary Submissions By the Trustee in the Remand Motion. ...................................7

II.  SUMMMARY OF THE DISTRICT COURT'S REMAND ORDER. ................................9

III.  THE TRUSTEE'S FIRST ARGUMENT – THAT THIS COURT'S CONSOLIATION ORDER ADJUDICATED THE "SAME ISSUES" PRESENTED ON REMAND BY THE REMAND ORDER AND THEREFORE HAS COLLATERAL ESTOPPEL EFFECT – IS WITHOUT MERIT. ..............................12

IV.  THE TRUSTEE'S SECOND ARGUMENT – THAT BASED ON THE NEW EVIDENTIARY SUBMISSIONS BY THE TRUSTEE, WHICH WERE FIRST PROVIDED TO MS. GIRARDI TEN DAYS AGO – THE COURT SHOULD SUMMARILY ADJUDICATE THE REMAND MOTION, VIOLATES MS. GIRARDI'S DUE PROCESS RIGHTS.  MS. GIRARDI IS ENTITLED TO A CONTINUANCE OF THE HEARING TO CONDUCT DISCOVERY AND CONFRONT AND CROSS-EXAMINE THE EVIDENCE AGAINST HER. ..................15

V.  THE TRUSTEE'S THIRD ARGUMENT – THAT THIS COURT SHOULD OVERRRULE THE DISTRICT COURT'S RULING IN THE REMAND ORDER THAT MS. GIRARDI HAS STANDING – IS WITHOUT MERIT. ..................................18

VI.  CONCLUSION ...................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Central Delta Water Agency v. United States*,
    306 F.3d 938 (9th Cir. 2002) ................................................................................... 14

*Earley v. Comm'r of Soc. Sec.*,
    893 F.3d 929 (6th Cir. 2018) ................................................................................... 14

*Sec. & Exchange Comm'n v. Stein*,
    906 F. 3d 828 (9th Cir. 2018) .................................................................................. 14

**Statutes & Other Authorities**

11 U.S.C. § 554 ............................................................................................................... 5

11 U.S.C. § 721 ............................................................................................................... 5

Bankruptcy Code § 542 ........................................................................................... 10, 12

CA Rules of Professional Conduct, Rule 1.5 ............................................................... 13

Wright & Miller, Federal Practice and Procedure § 4417 (3d ed. 2023) ........................ 14

ERIKA GIRARDI'S:  (1) OPPOSITION TO TRUSTEE'S OPENING BRIEF ADDRESSING ISSUES PRESENTED
BY DISTRICT COURT'S REMAND ORDER; AND (2) REQUEST FOR CONTINUANCE OF HEARING

1       Defendant Erika Girardi ("Ms. Girardi") hereby submits her (1) Opposition to Trustee's

2  Opening Brief Addressing Issues Presented by District Court's Remand Order, Declaration of

3  Nicholas R. Troszak [Doc. 98] and Request for Judicial Notice [Doc. 99] (collectively the

4  "Remand Motion"); and (2) Request for Continuance of Hearing, To Allow For Discovery and

5  Due Process on New Evidentiary Submissions By Trustee in Support of Remand Motion and in

6  Contravention of Trustee's Prior Stipulation and Request to Brief Solely "Legal Issues"

7  (collectively the "Opposition") in response to the Remand Motion, which includes significant new

8  evidentiary submissions by plaintiff Elissa D. Miller chapter 7 trustee ("Plaintiff" or the "Trustee")

9  that were provided to Ms. Girardi for the first time ten days ago on October 24, 2023.

10  **I.**     **THE TRUSTEE'S PRIOR STIPULATION AND REQUEST TO BRIEF SOLELY**

11         **"LEGAL ISSUES" ON THE DISTRICT COURT'S REMAND ORDER, AND**

12         **SUMMARY OF THIS OPPOSITION.**

13       The Trustee's Remand Motion and this Opposition were and are supposed to assist this

14  Court in addressing the scope of the "further proceedings" on remand, which were ordered by the

15  District Court in its *Order Reversing in Part the Order of the Bankruptcy Court and Remanding*

16  *for Further Proceedings, Etc.* (Doc. No. 35, filed 5/1/23) (the "Remand Order").  A status

17  conference on the Remand Order is set for hearing on November 14, 2023, at the same time as the

18  hearing on the Trustee's Remand Motion.

19      **A.**     **The Trustee's Prior Stipulation and Request To Brief Solely "Legal Issues" on**

20         **the District Court's Remand Order**

21       On September 5, 2023, the Trustee and Ms. Girardi (the "Parties") submitted a Joint Status

22  Conference Report [Dkt. No. 90] (the "September JSR") in advance of a prior status conference on

23  the Remand Order.  As noted, the status conference is currently set for November 14, 2023.

24       In the September JSR, under the heading "JSR RE REMAND ORDER AND REQUEST

25  OF PARTIES FOR A BRIEFING SCHEDULE," the Parties noted that in the Remand Order, the

26  District Court provided its decision on appeal from this Court's prior order (the "Turnover Order")

27  granting the Trustee's motion (the "Turnover Motion") related to certain earrings (the "Earrings"),

28

ERIKA GIRARDI'S:  (1) OPPOSITION TO TRUSTEE'S OPENING BRIEF ADDRESSING ISSUES PRESENTED
BY DISTRICT COURT'S REMAND ORDER; AND (2) REQUEST FOR CONTINUANCE OF HEARING

1    and that specifically, the District Court made the following determinations:

2          **In the Turnover Motion, the Trustee had not met her burden of proof**

3    **to show that the funds used in 2007 to purchase certain earrings at issue (the**

4    **'Earrings') were property of the GK estate due to commingling.**

5          Based on the foregoing, the District Court reversed the Turnover Order, in

6    part, and **remanded the matter for further proceedings in which the Trustee**

7    **would bear the burden of proof on the commingling issue**.

8    *See* September JSR at 2:13-18 (citing Remand Order at 13-14).  (emphasis added).

9          In the September JSR, the Parties defined as the "Consolidation Order" an order entered by

10   this Court in the general bankruptcy case in August 2023 [BK Dkt. No. 1898], which granted a

11   separate motion by the Trustee captioned *Motion for Order (A) Authorizing the Trustee to Close*

12   *and Consolidate the Trust and IOLTA Bank Accounts; (B) Confirming the Banks' Authority as to*

13   *the Minors Blocked Bank Accounts Pursuant to 11 U.S.C. § 721; and (C) Abandoning the*

14   *Citibank Bank Account Pursuant to 11 U.S.C. § 554* [BK Dkt. No. 1805] (the "Consolidation

15   Motion").

16         Next, in the September JSR, based on the request of the Trustee[1], the Parties jointly

17   stipulated and requested that the Court permit briefing on solely **"legal issues"** raised by the

18   Remand Order and the Consolidation Order, as follows:

19         Based upon the foregoing, the Parties request that the Court set a briefing

20   schedule to address the following **legal issues** raised by the Remand Order and

21   the Consolidation Order:

22         1.  Whether the Consolidation Order is issue determinative and preclusive

23   of the commingling issue addressed by the Remand Order.

24         2.  If so, whether a partial judgment should be entered in favor of the

25   Trustee on the Turnover Motion, including a determination that the Trustee is

26   ———————————————

27       [1] The Trustee, through counsel, made this request as counsel for the Parties were meeting
     and conferring about remaining issues to be litigated, including, without limitation, in light of the

28   requirement of "further proceedings" as detailed in the Remand Order.

ERIKA GIRARDI'S:  (1) OPPOSITION TO TRUSTEE'S OPENING BRIEF ADDRESSING ISSUES PRESENTED
BY DISTRICT COURT'S REMAND ORDER; AND (2) REQUEST FOR CONTINUANCE OF HEARING

1    entitled to keep the proceeds of the sale of the Earrings.

2         3.  If the Consolidation Order is not issue-determinative on the

3    commingling issue that is the subject of the Remand Order, whether, based upon

4    the Remand Order, Ms. Girardi has standing to pursue her rights to the proceeds

5    of the sale of the Earrings, notwithstanding the District Court's Remand Order to

6    the contrary.

7         The Parties agree that the foregoing are "threshold" issues that must be

8    decided before the Parties proceed to address further on remand the commingling

9    issue described in the Remand Order.  Among other things, such further

10    proceedings may require additional discovery and the retention of expert

11    witnesses to present the commingling issue to this Court for consideration.  The

12    Parties reserve all rights to pursue or object to further discovery on the

13    commingling issue on remand.

14  September JSR at 2:19-3:13 (emphasis added).

15       Notwithstanding the Parties' joint request in the September JSR for a briefing schedule to

16  address specific "***legal issues*** raised by the Remand Order and the Consolidation Order," the

17  Trustee's Remand Motion goes far beyond the defined "legal issues," and includes an effort by the

18  Trustee to obtain an adjudication by ambush or the equivalent of summary judgment on ten days'

19  notice, based on significant new evidentiary submissions by the Trustee relating to myriad

20  financial transactions occurring between 16 and more than 20 years ago during the time period of

21  2000 to 2007 (and thereafter through 2013), as to which Ms. Girardi has had no due process,

22  opportunity to conduct discovery, or opportunity to confront and cross-examine the evidence

23  against her.

24       In addition, the Trustee's new evidentiary submissions reveal that prior representations and

25  purported evidence provided by the Trustee to this Court in the Turnover Motion were materially

26  inaccurate, and therefore, unreliable.

27       As discussed below, the District Court in the Remand Order already has commented

28  negatively on the Trustee making arguments and evidentiary assertions by fiat.  Yet, in the

ERIKA GIRARDI'S:  (1) OPPOSITION TO TRUSTEE'S OPENING BRIEF ADDRESSING ISSUES PRESENTED
BY DISTRICT COURT'S REMAND ORDER; AND (2) REQUEST FOR CONTINUANCE OF HEARING

1  Remand Motion, the Trustee has doubled down and invited error by this Court for no good reason,

2  including asking this Court to disregard and overrule express determinations by the District Court

3  in the Remand Order.  No amount of perceived convenience justifies adjudication by ambush

4  without any due process, and no basis exists for inviting error by asking this Court to disregard or

5  overrule the Remand Order.

6        **B.**    **<u>Summary of Opposition, Including Request for Continuance of Hearing To</u>**

7             **<u>Allow for Discovery and Due Process for Ms. Girardi on New Evidentiary</u>**

8             **<u>Submissions By the Trustee in the Remand Motion.</u>**

9        As an initial matter, the Trustee's Remand Motion mischaracterizes the actual rulings of

10  the District Court in the Remand Order.  Accordingly, before responding to the Trustee's

11  arguments, we discuss below the District Court's actual rulings in the Remand Order that led to

12  the mandate of further proceedings on remand.

13        The Trustee's Remand Motion makes three arguments:

14        ***First***, the Trustee asserts that based on the doctrine of collateral estoppel or issue

15  preclusion, the Consolidation Order finally adjudicated the very issues of comingling on which,

16  under the Remand Order, the Trustee on remand bears the burden of proof.  The Trustee's

17  argument, however, ignores blatant and material differences, including as to relevant time frame,

18  that the District Court in the Remand Order required the Trustee to prove in further proceedings

19  (i.e., commingling of the GK trust account from which the funds were obtained to purchase the

20  Earrings in **<u>March 2007</u>**) as compared to the time period of commingling adjudicated by this

21  Court in the Consolidation Order (namely, as of the petition date in **<u>December 2020</u>**, based on

22  evidence regarding transactions between **<u>2013 and 2020</u>**).  Accordingly, because the

23  Consolidation Order did not adjudicate the "same issues" as defined in the Remand Order, the

24  Consolidation Order has no collateral estoppel or preclusive effect on the different issues now

25  before the Court.

26        ***Second***, in recognition of the different issues that the Remand Order required to be

27  addressed in further proceedings as compared to the issues decided in the Consolidation Order, the

28  Trustee for the first time, on ten days' notice to Ms. Girardi, submits significant new evidence on

myriad financial transactions from between 16 and more than 20 years ago (specifically, the period between 2002 and 2007, and through 2013). As to these transactions, the Trustee's declarant not only admits that no actual original evidence (in the form of bank statements) exists, but the declarant purports to rely on hearsay alleged summaries of financial transactions based on hearsay documents created by and under the direction of the CFO of GK, Chris Kamon. In November 2022 and again in February 2023, Mr. Kamon was charged with federal criminal wire fraud, including stealing millions if not tens of millions of dollars from GK.[2] It is a reasonable inference that Mr. Kamon's fraud included altering or modifying the GK hearsay records created by him and under his direction. Regardless, the allegations of major wire fraud and theft against GK's long-time CFO give reason to doubt the credibility and reliability of GK's hearsay financial records, including those upon which the Trustee now relies.

In addition, as discussed below, the new evidentiary submissions by the Trustee reveal that the prior purported evidence provided by the Trustee to this Court in the Turnover Motion was materially inaccurate, including on issues that formed the basis for this Court's issuance of the Turnover Order. As a result, significant red flags exist regarding the credibility and reliability of the acknowledged hearsay if not double or triple hearsay information on which the Trustee relies in support of the Remand Motion.

In sum, the Court should not adjudicate summarily, by one-sided ambush on ten days' notice, the significant evidentiary issues that the District Court required that the Trustee prove by a preponderance of the evidence in further proceedings on remand. Ms. Girardi is entitled to due process, and requests a continuance of the hearing on the Remand Motion for 90 days to allow her time to conduct specific discovery limited to a request for documents and deposition of the Trustee's declarant. Otherwise, Ms. Girardi will be deprived of any opportunity to confront and cross-examine the significant new purported evidence offered against her by the Trustee on ten days' notice.

---

[2] https://www.justice.gov/usao-cdca/pr/grand-jury-charges-disbarred-plaintiffs-lawyer-tom-girardi-wire-fraud-allegedly; https://www.latimes.com/california/story/2022-11-08/former-cfo-tom-girardi-law-firm-arrested-federal-wire-fraud-charge

1    ***Third***, based on an admitted effort to ask this Court to overrule the District Court's

2    Remand Order, the Trustee again seeks to challenge Ms. Girardi's standing.  While the Trustee

3    may not wish to be bothered with the District Court's ruling on the merits, the Trustee's argument

4    invites error for no good reason, and does not serve the interests of justice, judicial economy, or

5    the Parties.

6    **II.    SUMMMARY OF THE DISTRICT COURT'S REMAND ORDER.**

7         It is important to note that, in the Remand Order, the District Court commented negatively,

8    twice, on the Trustee's propensity to substitute assertions and fiat for proper legal argument or

9    proof, including on two of the issues argued by the Trustee in the Remand Motion:  (1) Ms.

10   Girardi's standing; and (2) whether the Trustee has met her burden of proof to establish

11   commingling of funds in the GK trust account out of which funds were used to purchase the

12   Earrings in March 2007.

13        Regarding the Trustee's argument that Ms. Girardi lacked standing, the District Court

14   observed:  "**the Trustee is preemptively claiming a substantive victory and then claiming that**

15   **victory destroys Appellant's [Ms. Girardi's] standing**."  Remand Order at 4 (emphasis added).

16   Based on a discussion of the law of standing, the District Court ruled that "the Court is satisfied

17   that standing is not an issue."  *Id*.  As discussed below, the Trustee in the Remand Motion asks

18   this Court to overrule the District Court on the issue of standing.  Indeed, the Trustee's request that

19   this Court overrule the District Court is shown by the statement in the September JSR that the

20   Trustee seeks a "legal issue" ruling that Ms. Girardi lacks standing, "notwithstanding the District

21   Court's Remand Order to the contrary."  September JSR at 4:2-6.[3]

22        Before discussing the Trustee's problem of making arguments by conclusory assertion on

23   the very commingling issue that is the subject of the remand, the District Court explained that if,

24   in fact, the Earrings had been purchased with trust funds belonging to the *Rezulin* litigation clients

25   _____

26        [3] Similarly, the District Court dispensed with another shortcut argument by the Trustee to
     avoid a determination on the merits; namely, the Trustee's contention that the appeal was
27   equitably moot.  See Remand Order at 5-7 (ruling that the Trustee had not met her "heavy burden"
     to prove equitable mootness, and that "[h]ere, a remedy would entail the Trustee turning over the
28   proceeds of the sale, which would have no impact on an innocent party.").

-9-

1   – which as discussed below was the premise of the Turnover Motion and the Court's ruling in the

2   Turnover Order – then the Earrings would **not** have been purchased with property of the estate, the

3   Earrings would **not** be property of the estate, and Section 542 of the Bankruptcy Code – the **only**

4   basis on which the District Court held that the Trustee could have proceeded – would be

5   unavailable.  Specifically, the District Court held that:

6   > The Trustee has failed to meet her burden to show that the earrings were

7   > estate property.  The $750,000 used to purchase the earrings came from the RTA

8   > [the *Rezulin* Trust Account, as defined in the Trustee's Turnover Motion].  Reply

9   > at 20; Turnover Mot. at 6, 8.  This was an express trust account that Girardi Keese

10  > managed for its *Rezulin* clients.  Id.  **Money that Girardi Keese held in trust for**

11  > **the *Rezulin* clients was not estate property.**  *Begier v. I.R.S.,* 496 U.S. 53, 59

12  > (1990) ("Because the debtor does not own an equitable interest in property he

13  > holds in trust for another, that interest is not 'property of the estate.'").

14  Remand Order at 12.  (emphasis added).

15      The Trustee ignores the District Court's above-quoted ruling that, if the Earrings were

16  purchased with client trust funds from the *Rezulin* account – which as discussed below, is what the

17  Trustee argued in the Turnover Motion, and what at the hearing on the Turnover Motion the Court

18  stated as its reason for the Turnover Order – then the Earrings were not property of the GK estate.

19  As a result, the only basis on which the District Court held the Trustee could recover the Earrings,

20  Section 542 of the Bankruptcy Code, was and is unavailable.

21      Thus, contrary to the Trustee's arguments in the Remand Motion, if in fact the factual

22  predicate was that the Earrings were purchased with client trust funds belonging to the *Rezulin*

23  clients, then under the District Court's ruling, the funds would **not** have been property of the

24  estate, and the Trustee would **not** have been able to use a Section 542 turnover motion to compel

25  the return of property of the estate – which the District Court held was the only basis upon which

26  the Trustee could recover the Earrings.  As a result, the Turnover Motion must be denied and the

27  Turnover Order was in error (which is why it was reversed in part by the District Court).

28      In the Remand Order, the District Court proceeded to explain the only basis upon which

-10-

1  the Trustee could prevail on remand, which would be to show, by a preponderance of the

2  evidence, that while the Earrings were purchased in 2007 with funds from the GK trust account, at

3  that point in time, the funds in the trust account had been so hopelessly commingled that they may

4  be deemed property of the GK estate.  The District Court explained its ruling as follows, again

5  criticizing the Trustee's habit of arguing by fiat:

6  > The Trustee's only basis for her argument that the earrings are estate property is a

7  > claim that the trust funds are presumptively estate property because Girardi Keese

8  > commingled the money in the RTA.  Appellee Br. at 21-23. . . . **However,**

9  > **merely stating that the funds have been 'commingled' does not make it so**.

10 > The Trustee must show, by a preponderance of the evidence, that the funds were

11 > commingled such that they are presumptively estate property. . . . **The Trustee**

12 > **has done no legwork here to show the funds were commingled.  At most, the**

13 > **Trustee merely posits that the 'funds are commingled.'**  Appellee Br. At 22.

14 > There are no facts in the record that indicate when Girardi Keese's costs and fees

15 > became fixed, or whether they were withdrawn at that time.  The Trustee has

16 > made no persuasive showing that the separate identity of the money was

17 > completely lost.  Because the Trustee has failed to show that the funds were

18 > commingled, she has not met her burden to show that the earrings were estate

19 > property.

20 Remand Order at 12-14.  (emphasis added).

21      The District Court proceeded to reverse the Turnover Order, in part, and remanded the

22 matter "for further proceedings in accordance with this Order." *Id*. at 14.

23      In sum, the only basis upon which the Trustee can prevail on remand is if the Trustee

24 demonstrates, by a preponderance of the evidence, that the funds used to purchase the Earrings in

25 March 2007 came from a GK trust account that was hopelessly commingled at that time.  In

26 particular, the District Court has already ruled that if, as the Trustee argued in the Turnover

27 Motion, the funds used to purchase the Earrings were client trust funds, then those funds and the

28 Earrings were not and are not property of the estate, the Turnover Motion must be denied, and the

-11-

1    Turnover Order was in error.

2         On remand, the critical ruling of the District Court is that the Trustee had **not** met her

3    burden of proof to establish by a preponderance of the evidence that the funds used in March 2007

4    to purchase the Earrings came from a GK trust account that at the time was hopelessly

5    commingled, thereby supporting a finding that the funds (and the Earrings purchased with those

6    funds) were property of the estate and properly the subject of the Trustee's only available remedy

7    according to the District Court, a motion for turnover under Section 542 of the Bankruptcy Code.

8    **III.    THE TRUSTEE'S FIRST ARGUMENT – THAT THIS COURT'S**

9         **CONSOLIDATION ORDER ADJUDICATED THE "SAME ISSUES" PRESENTED**

10        **ON REMAND BY THE REMAND ORDER AND THEREFORE HAS**

11        **COLLATERAL ESTOPPEL EFFECT – IS WITHOUT MERIT.**

12        As noted above, the Parties in their September JSR described the District Court's ruling in

13   the Remand Order as having made the following determinations, including defining the issue on

14   remand:

15        In the Turnover Motion, the Trustee had not met her burden of proof to

16        show that ***the funds used in 2007 to purchase certain earrings at issue* (the**

17        **'Earrings') were property of the GK estate *due to commingling*.**

18        Based on the foregoing, the District Court reversed the Turnover Order, in

19        part, and **remanded the matter for further proceedings in which the Trustee**

20        **would bear the burden of proof on the commingling issue**.

21   *See* September JSR at 2:13-18 (citing Remand Order at 13-14).  (emphasis added).

22        Regarding the nature of the Trustee's burden of proof, the District Court provided the

23   following specific guidance, all of which focused on the Trustee's burden to show by a

24   preponderance of the evidence that, **in March 2007 when GK trust account funds were used to**

25   **purchase the Earrings, the GK trust account was commingled** such that it would support a

26   finding of the funds being property of the estate:

27        **The Trustee has failed to meet her burden to show that the earrings**

28        **are estate property.  The $750,000 used to purchase the earrings came from**

ERIKA GIRARDI'S:  (1) OPPOSITION TO TRUSTEE'S OPENING BRIEF ADDRESSING ISSUES PRESENTED
BY DISTRICT COURT'S REMAND ORDER; AND (2) REQUEST FOR CONTINUANCE OF HEARING

1   the RTA [the *Rezulin* trust account, as defined in the Trustee's Turnover Motion].

2   . . . **Money that Girardi Keese held in trust for the *Rezulin* clients was <u>not</u>**

3   **estate property**. . . .

4          **The Trustee's only basis for her argument that the earrings are estate**

5   **property is a claim that the trust funds are presumptively estate property**

6   **because Girardi Keese commingled the money in the RTA**. . . .

7          **However, merely stating that the funds have been 'commingled' does**

8   **not make it so.  The Trustee must show, by a preponderance of the evidence,**

9   **that the funds were commingled such that they are presumptively estate**

10  **property**. . . .

11         [Rule 1.5 of the California Rules of Professional Conduct] has been

12  interpreted to mean that a lawyer commingles funds with a client's funds where 'a

13  client's money is intermingled with that of the attorney and its separate identity

14  lost.'  Alternatively, the funds are commingled where the attorney fails to

15  withdraw the attorney's fixed fees and costs at the earliest reasonable time.  **The**

16  **Trustee has done no legwork here to show the funds were commingled.**  At

17  most, the Trustee merely posits that the 'funds are commingled.'  There are no

18  facts in the record that indicate when Girardi Keese's costs and fees became fixed,

19  or whether they were withdrawn at that time.  **<u>The Trustee has made no</u>**

20  **<u>persuasive showing that the separate identity of the money was completely</u>**

21  **<u>lost.</u>**  Because the Trustee has failed to show that the funds were commingled, she

22  has not met her burden to show that the earrings were estate property.

23  Remand Order at 12-14.  (emphasis added) (citations omitted).

24         The above-quoted language from the Remand Order demonstrates that the focus of the

25  commingling inquiry, and therefore the Trustee's burden on remand, is on the GK trust account

26  leading up to and at the time that the funds were used to purchase the Earrings in **<u>March 2007</u>**.

27         In the Remand Motion, however, the Trustee argues that as a matter of law, this Court's

28  Consolidation Order, which granted the Consolidation Motion, is preclusive and binding because

-13-

1   it allegedly involved adjudication of the "same issues" to be decided on remand under the Remand

2   Order.  It is undisputed, however, that the Consolidation Motion and this Court's Consolidation

3   Order granting it focused exclusively on and adjudicated the commingled nature of GK's trust

4   accounts as of the petition date in **December 2020**, and relied on an accountant declaration based

5   on review of documents and financial transactions involving GK trust accounts and GK operating

6   accounts during the seven year period prior to the petition date, that is, between **2013 and 2020**.

7   *See* Consolidation Motion [BK Dkt. 1805], Troszak Declaration at ¶¶ 6-8.

8       In sum, the Consolidation Motion did not ask the Court to adjudicate, and the Court did not

9   adjudicate in the Consolidation Order, whether the GK trust account in **March 2007**, from which

10  the funds were used to purchase the Earrings, was commingled to the point that the "separate

11  identity of client funds" was lost.  Simply stated, the issues adjudicated by the Consolidation

12  Order regarding the state of affairs of various GK trust accounts as of **December 2020** and for the

13  period leading up to it of **2013 to 2020**, are not the "same issues" presented for adjudication on

14  remand by the Remand Order; namely, whether as of **March 2007** and based on events leading up

15  to March 2007, the single GK trust account from which funds were used to pay for the Earrings

16  was hopelessly commingled such that the separate identity of client funds had been lost and the

17  funds may be deemed property of the GK estate.  *See Sec. & Exchange Comm'n v. Stein*, 906 F. 3d

18  828, 828-829 (9th Cir. 2018) (for collateral estoppel to apply, the issues adjudicated in the separate

19  actions or final orders must be "identical").[4]  In no way, at all, did the Consolidation Motion or the

20  Consolidation Order address the "same issue" or the "identical issue" identified by the Remand

21

22

---

23  [4] Federal case authority supports the conclusion that adjudication of multi-factor issues,
    such as commingling, as of different time periods presents different and not identical issues for

24  purposes of issue preclusion.  *See Central Delta Water Agency v. United States*, 306 F.3d 938, 953
    (9th Cir. 2002) (prior action involving water release from a reservoir between 1995 and 1997 was

25  "similar," but not "identical" to the present action, which involved water release from the same
    reservoir pursuant to a later plan adopted in 1999); *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929,

26  933 (6th Cir. 2018) (prior determination on an individual's claim for disability benefits did not
    preclude a determination on whether the individual was entitled to disability benefits "at some

27  later date," as "human health is rarely static"); WRIGHT & MILLER, FEDERAL PRACTICE AND
    PROCEDURE § 4417 (3d ed. 2023) ("If differences of time are obviously important, [the preclusive

28  effects of] prior findings are limited to the time of the first trial.").

ERIKA GIRARDI'S:  (1) OPPOSITION TO TRUSTEE'S OPENING BRIEF ADDRESSING ISSUES PRESENTED
BY DISTRICT COURT'S REMAND ORDER; AND (2) REQUEST FOR CONTINUANCE OF HEARING

1   Order for further proceedings on remand.

2       The overriding theme of the Remand Order is an effort by the Trustee to seek shortcuts and

3   avoid litigating issues on the merits.  Regardless, as the District Court ruled in the Remand Order,

4   the Trustee must be held to her burden of proof with admissible evidence.

5   **IV.**    **THE TRUSTEE'S SECOND ARGUMENT – THAT BASED ON THE NEW**

6       **EVIDENTIARY SUBMISSIONS BY THE TRUSTEE, WHICH WERE FIRST**

7       **PROVIDED TO MS. GIRARDI TEN DAYS AGO – THE COURT SHOULD**

8       **SUMMARILY ADJUDICATE THE REMAND MOTION, VIOLATES MS.**

9       **GIRARDI'S DUE PROCESS RIGHTS.  MS. GIRARDI IS ENTITLED TO A**

10      **CONTINUANCE OF THE HEARING TO CONDUCT DISCOVERY AND**

11      **CONFRONT AND CROSS-EXAMINE THE EVIDENCE AGAINST HER.**

12      In recognition of the fact that the Remand Motion's legal argument of issue preclusion is

13  without merit, the Trustee – in contravention of the Trustee's prior stipulation and request in the

14  September JSR that any motion practice would be on purely "legal issues" – has tried to railroad

15  Ms. Girardi with another shortcut designed to deprive Ms. Girardi of due process, including

16  avoiding any meaningful review of the Trustee's purported evidence.

17      Specifically, the Trustee in the Remand Motion now submits new evidence allegedly

18  addressing whether the GK trust account at issue, from which the funds were used to purchase the

19  Earrings in March 2007, was hopelessly commingled at that time, which is the Trustee's only

20  glimmer of hope under the District Court's Remand Order.

21      Of serious concern, the new alleged evidence provided by Trustee with the Remand

22  Motion shows that prior representations and purported evidence provided by the Trustee in

23  support of the Turnover Motion were materially inaccurate.  For example, in the Turnover Motion,

24  the Trustee relied exclusively on a so-called ledger of the "*Rezulin* Trust Account," the implication

25  if not representation being that it was a stand-alone account as to which the ledger was accurate,

26  and which more than a year after receipt of the *Rezulin* settlement funds in January 2007, showed

27  a negative balance that by 2014, amounted to more than $2.8 million.  *See* Motion for Turnover

28  [Doc. 28] at 6, 8, 9, and Request for Judicial Notice [Doc. 29], Exs. 6 and 9.  The Trustee used this

-15-

1    alleged evidence to argue that the purported RTA was "out of trust," implying if not representing

2    that the supposed $2.8 million negative balance evidenced harm to, fraud upon, or theft from the

3    *Rezulin* clients, whom the Trustee implied if not represented had not been paid what was due to

4    them.  *See* Motion for Turnover [Doc. 28] at 9:4-5 ("The fact that the RTA was overdrawn by

5    $2,833,662.83 is sufficient evidence to support a conclusion of misappropriation.").  Indeed, this

6    Court at the hearing on the Turnover Motion relied on the Trustee's representations and purported

7    evidence as a basis for issuing the Turnover Order, including finding that GK had committed

8    embezzlement and theft from inception.  *See* Transcript of Hearing, Exhibit 1 to Borges

9    Declaration, at  39:16-17.  Also, based on representations from the Trustee, the Court stated that,

10    at a later time, a process would have to be developed to provide restitution to *Rezulin* clients based

11    on funds allegedly not been paid to them.  *Id*. at 41:12-14 and 42:1-10.

12        Now, however, with the purported evidence submitted with the Remand Order, the Trustee

13    has presented a completely different story, including the following assertions:  (1) in fact, there

14    was no separate stand-alone RTA, but rather, GK at all times maintained a single trust account for

15    all clients including the Rezulin clients; (2) in fact, based on deposits by GK and/or TG into the

16    single trust account of multiple tens of millions of dollars, the trust account did not go into

17    negative or overdrawn status; (3) in fact, as a result, and certainly for the period leading up to and

18    after March 2007, all the checks written on the trust account, including those payable to *Rezulin*

19    clients, were honored and paid.  *See* Remand Motion [Doc. 98], Troszak Declaration at ¶¶ 2-11.

20    Therefore, contrary to the Trustee's representations to this Court and the District Court, it is a

21    reasonable inference that, in fact, the *Rezulin* clients were paid and may have been paid all

22    amounts due to them.  For present purposes, the important point is that the Trustee in the Turnover

23    Motion, based on inaccurate and incomplete hearsay documents, presented a misleading portrayal

24    of facts to this Court.[5]

25    _____

26        [5] It is in this context that the Trustee's repeated accusations in the briefing on the Turnover
Motion and on appeal – to the effect that Ms. Girardi had committed a "crime" by not immediately
27    acquiescing to the Trustee's demands and conclusory assertions about receipt or possession of
"stolen property" – evidence at best recklessness.  We discuss these issues further below,
28    including the Trustee's repeated refrain that Ms. Girardi lacks standing because she has no rights.

-16-

1    Due process requires that the Court continue the hearing on the Trustee's new Remand

2    Motion and its accompanying new submission of evidence to allow Ms. Girardi due process,

3    including the opportunity to conduct discovery and confront and cross-examine the new evidence

4    offered by the Trustee, on ten (10) days' notice, against her.  Ms. Girardi is entitled to simple and

5    limited discovery in the form of focused requests for documents and a notice of deposition of the

6    Trustee's declarant in support of her Remand Motion.  Ms. Girardi requests a continuance of the

7    hearing on the Trustee's Remand Motion – which again, is contrary to what the Trustee

8    represented to the Court would be filed in the September JSR – for at least 90 days to allow for

9    necessary discovery to be completed and for Ms. Girardi to file a supplemental opposition to the

10    Remand Motion, which is in fact a new motion for partial summary judgment without following

11    or providing any of the procedural protections of a motion for summary judgment.

12    Under no circumstances could the District Court have meant, by ordering "further

13    proceedings" on remand in which the Trustee bears the burden of proof, to allow the Trustee to

14    file a single motion supported by a declaration containing sweeping conclusory statements without

15    providing all the documents on which the declarant relied, on ten days' notice, with the result of

16    eliminating any and all due process for Ms. Girardi.

17    In addition, the accountant declaration provided in support of the Remand Motion is

18    inadmissible for several reasons, including hearsay and lack of personal knowledge.  Critically, the

19    declarant does not state that he reviewed actual evidence (in the form of bank account statements)

20    to support or corroborate the hearsay documents describing thousands of financial transactions

21    spanning a period of years starting more than 20 years ago.  *See* Remand Motion [Doc. 98],

22    Troszak Declaration at ¶¶ 2-11.  Further, the accountant's declaration, while relying on and

23    referring to hearsay documents and hearsay databases created from hearsay documents, does not

24    attach, provide, or offer access to all the hearsay documents and hearsay databases upon which he

25    relies.  *Id*.

26    The evidence certainly now shows that GK was not an ordinary law firm or business, and

27    did not have anything close to audited financial statements.  In fact, at every opportunity, the

28    Trustee has repeatedly stated that the purported business records of GK were in complete disarray,

-17-

ERIKA GIRARDI'S:  (1) OPPOSITION TO TRUSTEE'S OPENING BRIEF ADDRESSING ISSUES PRESENTED
BY DISTRICT COURT'S REMAND ORDER; AND (2) REQUEST FOR CONTINUANCE OF HEARING

1   making any reconstruction of past events, much less events of 15 to 20 years ago, very difficult.

2   The answer to this void of evidence is not to conclude that Ms. Girardi must lose.  Rather, as the

3   District Court held in the Remand Order, the Trustee bears the burden of proof and must meet it.

4          Finally, as noted, in November 2022 and February 2023, the long-time CFO of GK, Chris

5   Kamon, was arrested and federally indicted on significant wire fraud charges, including stealing

6   millions if not tens of millions of dollars from GK over a period of many years.  This fact alone

7   gives rise to legitimate questions about the reliability of the GK hearsay accounting and financial

8   records created by and under Mr. Kamon's direction.  In fact, it is not unreasonable to infer and

9   conclude that the Trustee's declarant's premise, that all the GK hearsay financial records, created

10  and maintained by or under the direction of Mr. Kamon, is erroneous and speculative.  In fact, the

11  GK hearsay financial records may be nothing more than a false backbone of vapor, unreliable

12  hearsay, and likely fraud.  It is this backbone of vapor and likely fraud – which the evidence is

13  undisputed Ms. Girardi had no role or participation in creating – that may well form the basis of

14  the Trustee's new alleged evidence of events starting more than two decades ago.  More than 20

15  years after the fact, the Trustee's declarant cannot do much more than speculate or guess.

16  **V.**    **THE TRUSTEE'S THIRD ARGUMENT – THAT THIS COURT SHOULD**

17         **OVERRRULE THE DISTRICT COURT'S RULING IN THE REMAND ORDER**

18         **THAT MS. GIRARDI HAS STANDING – IS WITHOUT MERIT.**

19         In the Remand Motion, the Trustee rehashes the same lack of standing argument as to Ms.

20  Girardi that the Trustee argued in the Turnover Motion and on appeal, which both this Court and

21  the District Court have rejected.  Once again, the Trustee is reaching for a shortcut and trying to

22  avoid an adjudication on the merits.

23         As noted, regarding the Trustee's standing argument, the District Court in the Remand

24  Order observed:  "**the Trustee is preemptively claiming a substantive victory and then**

25  **claiming that victory destroys Appellant's [Ms. Girardi's] standing**."  Remand Order at 4

26  (emphasis added).  After discussing the law of standing, the District Court ruled that "the Court is

27  satisfied that standing is not an issue."  *Id.*

28         In the Remand Motion, the Trustee asks this Court to overrule the District Court on the

1    issue of standing.  Separate and apart from the fact that the District Court has already decided the

2    issue, the Trustee appears to base her argument on the premise that, if the Trustee fails in her

3    burden of proof on remand, then it follows that the proceeds of the sale of the Earrings belong to

4    the former *Rezulin* clients and Ms. Girardi has no property right or interest at all.

5            As noted above, however, based on the District Court's ruling that if the funds used to

6    purchase the Earrings in March 2007 were client funds, and if the Trustee does not meet her

7    burden of proof on commingling sufficient to allow for a finding that the funds were property of

8    the estate, then the conclusion is not automatically that Ms. Girardi has no rights.  Rather, as the

9    District Court ruled, the result will be that the Turnover Motion should have been denied and the

10   Trustee has no remedy.

11           As Ms. Girardi noted in her original opposition to the Turnover Motion, the *Rezulin*

12   clients, if they were injured, should have standing.  *See* Opposition to Turnover Motion [Doc. No.

13   47; filed 6/14/22] at 18: 12-13.  But now, based on the new evidentiary submissions provided by

14   the Trustee with her Remand Motion, to the effect that during the relevant time period, the GK

15   trust accounts apparently never went into a negative balance due to GK or TG depositing other

16   funds into those accounts, it is not an unreasonable inference that all checks written on the GK

17   trust account to Rezulin clients, in fact, cleared.  The Trustee has not put forward any contrary

18   evidence.

19           This Court already noted, at the prior hearing on the Turnover Motion, an undeniable truth

20   supported by the undisputed Declaration of Ms. Girardi in support of her original opposition to the

21   Turnover Motion:  namely, that Ms. Girardi had no role at GK, did not direct its finances or client

22   matters, and specifically, she did not participate in or know about any of the conduct, decisions, or

23   financial transactions engaged in by GK related to the Turnover Motion and a gift of earrings that

24   she innocently received from her then-husband 16 years ago in 2007.  *See* Transcript of Hearing,

25   Exhibit 1 to Borges Declaration, at 40:5-10.  Indeed, at that time, it is likely that not only Ms.

26   Girardi, but most of the legal community in Southern California, believed that Mr. Girardi and GK

27   earned high income and were financially successful.

28           Regarding the Earrings and Ms. Girardi's standing, the Trustee ignores the real world,

ERIKA GIRARDI'S:  (1) OPPOSITION TO TRUSTEE'S OPENING BRIEF ADDRESSING ISSUES PRESENTED
BY DISTRICT COURT'S REMAND ORDER; AND (2) REQUEST FOR CONTINUANCE OF HEARING

1   indisputable facts of Ms. Girardi receiving, openly possessing, wearing, and having no reason to

2   doubt her ownership of a marital gift of Earrings from her then-husband during the more than 14

3   years between her receipt of the gift (2007) and when the Trustee first brought up the GK estate's

4   alleged claim (2021).  Yet, even after the District Court has ruled that Ms. Girardi has standing,

5   the Trustee persists on remand to try to re-argue standing, which in the September JSR, the

6   Trustee admits is a position taken "notwithstanding the District Court's Remand Order to the

7   contrary."

8         The Trustee's disdainful refrain, at every opportunity, context, and occasion in the GK

9   bankruptcy case, to the effect that Ms. Girardi, who was married to TG for 20 years and has

10   substantial community property rights in any value of GK or for that matter assets or wealth of

11   TG, and who has filed proofs of claim as a creditor in the GK and TG cases, has no standing to be

12   heard on anything – is a reflection of bias.  Ms. Girardi is an independent person with rights and

13   property interests at stake; she is entitled to equal protection of the law; and it is improper for a

14   federal bankruptcy fiduciary to treat her as having no rights at all.

15   **VI.**    **<u>CONCLUSION</u>**

16         By "further proceedings in which the Trustee would bear the burden of proof," the District

17   Court did not mean – and could not have meant, given the District Court's stated frustration with

18   the Trustee making the commingling argument and other arguments by proclamation – that on

19   remand, the Trustee simply could file a conclusory, sweeping hearsay declaration of her retained

20   accountant, which discusses myriad financial transactions spanning a period of between 16 and

21   more than 20 years ago, and which contains virtually no discussion of the events leading up to the

22   issuance of the check at issue from March 2007 – without Ms. Girardi having any right to do

23   discovery on the new factual contentions by the Trustee, and without allowing Ms. Girardi the

24   right to cross-examine the declarant and evidence being used against her.  But that is the relief

25   sought by the Remand Motion, which should be denied.

26

27

28

1  DATED:  November 3, 2023          GREENBERG GROSS LLP

2

3                                        By:

4                                            Evan C. Borges
                                             Attorneys for Defendants Erika Girardi
5                                            EJ Global, LLC, and Pretty Mess, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ERIKA GIRARDI'S:  (1) OPPOSITION TO TRUSTEE'S OPENING BRIEF ADDRESSING ISSUES PRESENTED
BY DISTRICT COURT'S REMAND ORDER; AND (2) REQUEST FOR CONTINUANCE OF HEARING

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

650 Town Center Drive, Suite 1700
Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): ***DEFENDANT ERIKA GIRARDI'S: (1) OPPOSITION TO TRUSTEE'S OPENING BRIEF ADDRESSING ISSUES PRESENTED BY DISTRICT COURT'S REMAND ORDER, DECLARATION OF NICHOLAS R. TROSZAK [DOC. 98] AND REQUEST FOR JUDICIAL NOTICE [DOC. 99] (COLLECTIVELY THE "REMAND MOTION"); AND (2) REQUEST FOR CONTINUANCE OF HEARING, TO ALLOW FOR DISCOVERY AND DUE PROCESS ON NEW EVIDENTIARY SUBMISSIONS BY TRUSTEE IN SUPPORT OF REMAND MOTION AND IN CONTRAVENTION OF TRUSTEE'S PRIOR STIPULATION AND REQUEST TO BRIEF SOLELY "LEGAL ISSUES"*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 3, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On _____**,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **November 3, 2023,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| November 3, 2023 | Cheryl Winsten | |
| *Date* | *Printed Name* | *Signature* |

ERIKA GIRARDI'S:  (1) OPPOSITION TO TRUSTEE'S OPENING BRIEF ADDRESSING ISSUES PRESENTED BY DISTRICT COURT'S REMAND ORDER; AND (2) REQUEST FOR CONTINUANCE OF HEARING

**n re GIRARDI KEESE**
Case No. 2:20-bk-21022-BR
**Elissa D. Miller. Chapter 7 Trustee v. Erika N. Girardi, et al.**
Case No. 2:21-ap-01155-BR

**1.**    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING**:

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Ori S Blumenfeld**    oblumenfeld@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com

- **Evan C Borges**    eborges@ggtriallaw.com, cwinsten@ggtriallaw.com

- **Alan W Forsley**    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com

- **Larry W Gabriel**    lgabrielaw@outlook.com, tinadow17@gmail.com

- **Daniel A Lev**    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

- **Craig G Margulies**    Craig@MarguliesFaithlaw.com, Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com

- **Elissa Miller (TR)**    CA71@ecfcbis.com, MillerTrustee@gmlaw.com;C124@ecfcbis.com;cheryl.caldwell@gmlaw.com;cheryl.caldwell@ecf.courtdrive.com

- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com

- **Frank X Ruggier**    frank@ruggierlaw.com

- **Amir Shakoorian**    AShakoorian@GGTrialLaw.com

- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

- **Timothy J Yoo**    tjy@lnbyb.com

**3.**    **SERVED BY PERSONAL DELIVERY:**

**U.S. Bankruptcy Court:**
U.S. Bankruptcy Court
Hon. Barry Russell
255 E. Temple Street, Courtroom 1668
Los Angeles, CA 90012

-23-