EVAN C. BORGES, State Bar No. 128706
  *EBorges@GGTrialLaw.com*
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Telephone: (949) 383-2800
Facsimile: (949) 383-2801

Attorneys for Defendants Erika Girardi
EJ Global, LLC, and Pretty Mess, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>GIRARDI KEESE,<br><br>　　　　Debtor. | Case No. 2:20-bk-21022-BR<br><br>Chapter 7<br><br>Adv No. 2:21-ap-01155-BR |
| ELISSA D. MILLER, Chapter 7 Trustee,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ERIKA N. GIRARDI, an individual; EJ GLOBAL, LLC, a limited liability company; and PRETTY MESS, INC., a corporation,<br><br>　　　　Defendants. | **DECLARATION OF EVAN C. BORGES IN SUPPORT OF DEFENDANT ERIKA GIRARDI'S:**<br><br>**(1) OPPOSITION TO TRUSTEE'S OPENING BRIEF ADDRESSING ISSUES PRESENTED BY DISTRICT COURT'S REMAND ORDER, DECLARATION OF NICHOLAS R. TROZAK [DOC. 98] AND REQUEST FOR JUDICIAL NOTICE [DOC. 99] (COLLECTIVELY THE "REMAND MOTION"); AND**<br><br>**(2) REQUEST FOR CONTINUANCE OF HEARING, TO ALLOW FOR DISCOVERY AND DUE PROCESS ON NEW EVIDENTIARY SUBMISSIONS BY TRUSTEE IN SUPPORT OF REMAND MOTION AND IN CONTRAVENTION OF TRUSTEE'S PRIOR STIPULATION AND REQUEST TO BRIEF SOLELY "LEGAL ISSUES"**<br><br>**[Opposition Brief filed concurrently herewith]**<br><br>Date:　　November 14, 2023<br>Time:　　10:00 a.m.<br>Place:　　Courtroom 1668<br><br>Judge:　　Hon. Barry Russell |

## DECLARATION OF EVAN C. BORGES

I, Evan C. Borges, declare as follows:

1.     I am an attorney duly licensed to practice law in the State of California.  I am an attorney with the law firm of  Greenberg Gross LLP, counsel of record for Defendant Erika Girardi in this action.  The facts stated herein are within my personal knowledge and if called upon to testify, I can truthfully and competently do so as to all matters herein.

2.     Attached hereto as **Exhibit 1** is a true and correct copy of the transcript of the June 28, 2022 hearing on the Trustee's Motion for Order for Turnover of Personal Property.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: November 3, 2023

Evan C. Borges

# EXHIBIT 1

EXHIBIT 1
-3-

1                    UNITED STATES BANKRUPTCY COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                              --oOo--

4  In Re:                      ) Case No. 2:20-bk-21022-BR
                               )
5  GIRARDI KEESE,              ) Chapter 7
                               )
6          Debtor.            ) Los Angeles, California
   _____) Tuesday, June 28, 2022
7                              ) 2:00 p.m.
                               )
   MILLER,                     )
8                              ) Adv. No. 2:21-ap-01155-BR
           Plaintiff,          )
9                              )
       vs.                     )
10                             )
   GIRARDI, ET AL.,            )
11                             )
           Defendants.         )
12 _____)

13                             CONT'D STATUS CONFERENCE RE
                               COMPLAINT FOR
14                             1) DECLARATORY RELIEF
                               2) TURNOVER OF PROPERTY OF THE
15                             ESTATE PURSUANT TO 11 U.S.C.
                               SECTION 542
16                             3) AVOIDANCE AND RECOVERY OF
                               FRAUDULENT TRANSFER
17                             4) CONVERSION
                               5) CONSTRUCTIVE TRUST
18                             6) ACCOUNT STATED
                               7) OPEN BOOK ACCOUNT
19                             8) MONEY HAD AND RECEIVED
                               9) UNJUST ENRICHMENT AND
20                             10) ACCOUNTING

21                             CONT'D HRG. RE MOTION FOR
                               ORDER FOR TURNOVER OF PERSONAL
22                             PROPERTY

23

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-4-

ii

1                        TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE BARRY RUSSELL
2                    UNITED STATES BANKRUPTCY JUDGE

3    APPEARANCES:

4    For the Plaintiff,              LARRY W. GABRIEL, ESQ.
       Elissa Miller, Chapter 7     Jenkins, Mulligan & Gabriel,
5      Trustee:                        LLP
                                     585 Lorna Lane
6                                    Los Angeles, California 90049
                                     (818) 943-8992
7

8    For Defendant Erika            EVAN C. BORGES, ESQ.
       Girardi:                     Greenberg Gross, LLP
9                                   650 Town Center Drive
                                    Suite 1700
10                                  Costa Mesa, California 92626
                                    (949) 383-2860
11

12   Court Recorder:               Wanda Toliver
                                    United States Bankruptcy Court
13                                  Edward R. Roybal Federal
                                       Building
14                                  255 East Temple Street
                                    Los Angeles, California 90012
15

16   Transcriber:                  Briggs Reporting Company, Inc.
                                    9711 Cactus Street
17                                  Suite B
                                    Lakeside, California 92040
18                                  (310) 410-4151

19

20

21

22

23

24

25

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-5-

1

1       LOS ANGELES, CALIFORNIA  TUESDAY, JUNE 28, 2022 2:00 PM

2                            --oOo--

3       (Call to order of the Court.)

4               THE CLERK:  Number Four, Girardi Keese.

5               THE COURT:  All right.  First, Number Four is the

6    -- why don't you give your appearances, counsel.

7               MR. GABRIEL:  Good afternoon, your Honor.  Larry

8    Gabriel on behalf of Elissa Miller, the Chapter 7 Trustee.

9               THE COURT:  All right.

10              MR. BORGES:  Good afternoon, your Honor.  Evan

11   Borges for Erika Girardi.

12              THE COURT:  I do have a concern about this matter,

13   gentleman, about the -- there was a status report that was

14   filed yesterday.  You know my next question.

15              MR. GABRIEL:  Yes, your Honor, my --

16              THE COURT:  You both are aware that it was due, it

17   was due two weeks ago.  I know you might have been

18   interested in the other motion before me, but this is not an

19   insignificant matter.  You just forgot about it, both of

20   you?  You're both responsible.

21              MR. GABRIEL:  I would like to say I didn't forget

22   about it.  I was engaged in trying to get the reply done,

23   but it was our responsibility and I apologize.

24              THE COURT:  Well, what about you?

25              MR. BORGES:  My -- I'm completely at fault, your

2

1  Honor.  I -- it was actually Mr. Gabriel who provided me

2  yesterday.  I've been as busy as I've ever been since the

3  pandemic.  I apologize, your Honor.  I know it's a --

4          THE COURT:  Well, you're both are fault -- at

5  fault for this?  Because you could have filed one a week

6  before.  Well, you know what I'm about to do.  I -- you

7  notice in the -- whenever a complaint is filed in any matter

8  before this Court I decided a long time ago that I will

9  enforce our rules.

10         So I'll prepare an order sanctioning you both

11 $400.  It's not a lot of money, it's to catch your

12 attention.  In fact, it's been that same amount for a long

13 time, and I don't enjoy sanctioning anybody, but I enjoy it

14 less, you know, because it tells me two things.

15         First of all, I had to figure out what's going on,

16 and I couldn't really figure it out.  And then, also, it

17 tells me that maybe you two are not working together on it.

18 So I did read the status, so I will prepare that order.

19         And then the other thing is, one thing you did

20 raise in there that I thought I would mention is that --

21 that I think it was counsel for Ms. Girardi that would be --

22 you know, request a jury trial.  I was trying -- I hadn't

23 really thought about that, but looking at it, the pleading,

24 that that's the case, right?

25         MR. BORGES:  No.  Actually, your Honor, we do not

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-7-

3

1 want a jury trial.  I think that was requested --

2          THE COURT:  Right, but I -- right.  And that's

3 fine.  I don't take it personal one way or the other.

4 You're certainly entitled.  I assume though, I hadn't really

5 thought about it before, but I assume that they are entitled

6 to it, my guess would be.  Do you have any problem with

7 that?

8          I'm not going to rule on it today, but the reason

9 I mention it, just procedurally, just so it's -- you did

10 mention it in the status report that you would at some point

11 be -- make a motion for withdrawal for reference.  I can

12 save you the bother, but let me tell you how I proceed in

13 these.  You can certainly do that if you wish, because if --

14 assuming just for argument sake, which I'm not 100-percent

15 sure at the moment, but I'm -- my thoughts are you probably

16 are.

17          But assuming that just for the argument sake, what

18 I do is -- and the scheduling has already been set back, I

19 think it was in April, the schedule and all as far as

20 discovery.  I think the last discovery was December, as I

21 recall, for experts and so forth, to the extent that's

22 needed.

23          So what I do is very simple.  I go through and

24 eventually after discovery we'll have a pretrial order, and

25 at that point I'll just, I just issue an order, assuming you

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-8-

4

1  still want the jury trial, all it needs is one of you, and

2  if you still want it, then I'm just going to just say, I've

3  done it numerous times in the past, I'll just issue the

4  order.  So, I don't -- I'll save you trouble as far as

5  withdrawing the reference.  I can -- I'll do -- that's what

6  I'm going to do.  So I just kind of want to let you know

7  procedurally what I do.

8          MR. BORGES:  Fair enough, your Honor.

9          THE COURT:  Okay.

10         MR. BORGES:  You know, under the local rules we go

11  all the way through the final pretrial conference with your

12  Honor.

13         THE COURT:  Right.

14         MR. BORGES:  And that I -- that the burden's on me

15  to file the motion within --

16         THE COURT:  No, no, no.  I think not.  What I'm

17  saying is, I'm not going to even require you file the

18  motion.  I'm just going to -- you can do that, but I will --

19  my -- save you the trouble.  If you want to do that, that's

20  fine, but you'd wait until the end of discovery or the

21  pretrial.  But what I do is I just indicate in an order to

22  the district court saying that you requested it, and I can't

23  do it without the consent of everybody, and therefore, I'll

24  transfer it.

25         So, think about it anyway.  That's what I do.  If

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-9-

5

1 you feel more comfortable having -- but then you have to

2 file a motion, and then you have to respond and so forth.

3 So that's what I do, but I just wanted to let you know.

4          The other -- and so what I do need in this

5 particular matter is before we get to the next matter, is to

6 issue a continuance date.  And usually it's about 90 days

7 maybe.

8          What's our last date that we have?  Since the

9 discovery, the ultimate discovery, unless you change that,

10 is in December.  So how about maybe sometime in December, do

11 we have -- I mean, excuse me, September do we have?

12          THE CLERK:  Yeah, we have -- the last date in

13 September we have September 27th at 2:00.

14          THE COURT:  All right.  So that will be the next

15 status.  And I am sure that you will be -- well, the ante

16 will go up.  I don't, I don't intend to do that, but it's

17 important that you -- that I know you're not only talking to

18 each other, but talking to -- letting me know what's going

19 on.  So it's September 27th at 10:00, right?

20          THE CLERK:  At 2:00.

21          THE COURT:  I'm sorry.  At 2:00.  And that will

22 request -- as you know, two weeks before that, there will be

23 a status conference.  And then we'll see about the hearing.

24 That will either be at -- probably towards the end of the

25 year one further status conference, and the one after that

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-10-

6

1  will be -- or I might just set it for a pretrial.  Well, in

2  any case, the pretrial will be coming right after, either

3  sometime -- well, I won't do the pretrial until after

4  discovery, so most likely I'll set another status and then

5  the pretrial.

6          And then after that, once the pretrial is done,

7  then either you'll make the motion, but I've indicated

8  usually people don't do that, usually I just issue an order.

9  But whatever you think is best, it's okay with me.

10          Okay.  So I'll see you -- I know you're here for

11  this other matter, but I wanted to take care of this, this

12  first.  So that takes care of it.

13          So the next, next item on the calendar is the

14  motion for the turnover of the personal property.

15          All right.  It's your motion.

16          MR. GABRIEL:  Right.  Yes.

17          THE COURT:  All right.

18          MR. GABRIEL:  Your Honor, Larry Gabriel on behalf

19  of Elissa Miller, the Chapter 7 Trustee.

20          THE COURT:  Okay.  And again, I'll allow you first

21  to argue.  I have read, several times actually up and back,

22  the briefs and the exhibits and so forth.  So, why don't you

23  -- it's your motion.  Do you wish to make any comments?  You

24  can come to the podium if you wish to.  You'll get the

25  penultimate word.  I get the last word, but you'll argue,

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-11-

7

1  then counsel will argue, you argue again, and then I'll --

2  there will be no further argument after your reply, and then

3  I will make my ruling.

4            MR. GABRIEL:  Well, first, your Honor, I'd ask if

5  you have any issues that you'd like me to address?

6            THE COURT:  The only question I have, which is not

7  -- more curiosity than anything.  It's not pertinent to what

8  I will ultimately rule after you argue.  Is I understand

9  from the papers, and there was a stipulation before, that

10 these -- the earrings are in a safe deposit box.  It wasn't

11 exactly -- I'm not going to ask you maybe for safety sake

12 where, but I wasn't quite sure who had access to it and so

13 forth and so on.  I would just -- it wasn't all that clear

14 to me from the record.

15           I know in reading one of the pleadings, it's in a

16 safe -- I know the Trustee has access to it.  So, maybe you

17 could just tell me.  You both know the answer, but I'm not

18 sure --

19           MR. GABRIEL:  The Trustee has -- the earrings are

20 in her custodial possession --

21           THE COURT:  Right.

22           MR. GABRIEL:  -- in a -- at a bank in a safety

23 deposit box.

24           THE COURT:  And she -- and the access to it is

25 just her?

8

1          MR. GABRIEL:  It is just her by the agreement of
2    the parties.

3          THE COURT:  Right.  Well, that's what I thought,
4    but I wasn't 100-percent.  And one other thing, by the way
5    -- well, that's all.  That's all I -- it was more curiosity
6    really.  It didn't really affect the ruling.  I was just
7    curious exactly.  But I'm not going to ask you to say
8    physically where it is.  That's probably not a good idea on
9    the record, other than what you've said.

10         All right.

11         MR. GABRIEL:  Okay.  Well, since the Court doesn't
12   have any --

13         THE COURT:  I don't have any, any questions --

14         MR. GABRIEL:  -- burning questions --

15         THE COURT:  -- for you.  You may -- you can either
16   say -- I have read all the papers, and you can certainly
17   have the option to reply to anything other counsel says or
18   whatever.  It's up to you.

19         MR. GABRIEL:  I'll think I'll do that.  Why don't
20   I just --

21         THE COURT:  All right.  All right, counsel.

22         MR. GABRIEL:  -- let -- hear what Mr. Borges has
23   to say, and then I'll respond.

24         THE COURT:  Again, I can assure you I've read
25   several times the briefs and the record looking through it.

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-13-

9

1          MR. BORGES:  Good afternoon, your Honor.  Evan

2    Borges for Erika Girardi.  I apologize in advance if I raise

3    my voice too much.  I -- because of water sports when I was

4    younger, I'm a little hard of hearing --

5          THE COURT:  Okay.

6          MR. BORGES:  -- and for some reason today it's

7    worse.

8          THE COURT:  I --

9          MR. BORGES:  So, that's why I turned my head to

10   listen.

11         THE COURT:  I had -- I notice it's a loud voice,

12   but that's okay with me.  I'm 20-something feet from you,

13   but --

14         MR. BORGES:  Yeah.  There are --

15         THE COURT:  But anyway, I now at least I

16   understand.  Thank you.

17         MR. BORGES:  If I could, there are, there's

18   several points I would like to go over with the Court.

19         THE COURT:  Certainly.

20         MR. BORGES:  The first was already addressed by

21   the Court's question, which is this notion of a, quote, "new

22   crime."  Unfortunately -- in other words, in failing to

23   turnover the earrings upon demand.

24         At all times our position has been, we'd put the

25   earrings in an escrow.  We did.  There has been -- they've

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-14-

10

1  been in a safe deposit box for several months I believe.  At

2  this point, only because the associate on the case who was

3  helping me, he had the other key to the safe deposit box,

4  but he left my firm.

5          So we gave -- I mean, I still have the key.  I

6  gave it to Elissa Miller, but Ms. Miller, the Trustee, has

7  the only key --

8          THE COURT:  Okay.

9          MR. BORGES:  -- to the safe deposit box where the

10  earrings are located.  And so, the property is safe and --

11          THE COURT:  And one also curiosity, again, not

12  that it matters at all for this hearing, but you had

13  mentioned that the -- and at least in the status report that

14  I just read yesterday, that it hasn't been appraised yet.  I

15  remember from a previous status report, you wanted it -- I

16  mean, both sides are obviously interested, if nothing else

17  -- well, for obvious reasons there have been allegations.

18  Again, for my purposes it makes no difference.  But that

19  there's a -- I think the papers said a six-percent rise in

20  diamonds over each year.  I have no idea how accurate that

21  is, but I was more curious than anything that you hadn't yet

22  gotten anybody to appraise it.

23          MR. GABRIEL:  It's a --

24          THE COURT:  Why don't you come to the -- that's

25  okay.

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-15-

11

1          MR. GABRIEL:  Sure.

2          THE COURT:  You can come to the podium, if you

3 would.

4          MR. GABRIEL:  It's a little more complicated than

5 just getting them appraised.  We have asked a jeweler how

6 much -- what he thought of it, who's an expert in the

7 industry.  We have to take the earrings down --

8          THE COURT:  Well, there's clearly a security

9 problem with something --

10         MR. GABRIEL:  Right.  And we have to --

11         THE COURT:  -- of that value obviously.

12         MR. GABRIEL:  -- we have to take them to Carlsbad

13 where the gemologist --

14         THE COURT:  You couldn't bring them to wherever

15 the box is?

16         MR. GABRIEL:  We -- no.  We have to take them

17 there.  So the question is, how do we get them there?  We're

18 very concerned about security.

19         THE COURT:  Okay.  Now I --

20         MR. GABRIEL:  And --

21         THE COURT:  Okay.  I understand now there's a

22 serious security problem.

23         MR. GABRIEL:  So, we've been trying to fit that in

24 with our various schedules --

25         THE COURT:  Okay.

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-16-

12

1     MR. GABRIEL:  -- and figuring out how we were

2  going to do it.  So that's been the --

3     THE COURT:  Again, that was only --

4     MR. GABRIEL:  -- in the delay.

5     THE COURT:  -- a matter of curiosity.  But, okay,

6  now I understand.

7     Okay, counsel.

8     MR. BORGES:  Yeah.  We've left that to the

9  discretion of the Trustee.  In fact, the earrings apparently

10  have to be dismounted from the mounts to be appraised.  And

11  this is -- they call it the "GIA" -- anyway, it's -- it

12  involves work.

13     THE COURT:  Well, I know the numbers, but on

14  something like this I have no idea --

15     MR. BORGES:  Yeah.

16     THE COURT:  -- how anybody appraises something

17  like that.

18     MR. BORGES:  Okay.  So, the first point is, the

19  property is safe.  And this, this ties into my next point,

20  which is whether the Court should wait for a more developed

21  record on -- my next point I want to address is -- well, let

22  me get one thing out of the way, which is --

23     THE COURT:  All right.

24     MR. BORGES:  Excuse me?

25     THE COURT:  Just so you understand, this is not a

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-17-

13

1 criminal court.  You were saying about the -- there was some

2 comment at the end of the reply documents that there might

3 be still a continuing crime.  For what it's worth, I have no

4 opinion whatsoever on any of that.  It has nothing to do --

5 other than, other than the original purchase of it, that is

6 clearly was a crime, but not -- nothing --

7            MR. BORGES:  Yes.

8            THE COURT:  I have -- I will -- this is not a

9 criminal court.  I have no interest whatsoever in any -- in

10 pursuing anything with that --

11           MR. BORGES:  Yeah.

12           THE COURT:  -- just so you understand.

13           MR. BORGES:  Yeah.  I understand, your Honor, and

14 I hope the Court can appreciate the position that my client

15 is in.  It's not only this particular issue, but a number of

16 other issues and lawsuits where she's having to deal with

17 accusations against her based on the conduct of her, you

18 know, soon-to-be former husband as soon as she can get the

19 divorce finalized.  So it's -- this is, this is all very

20 distressing to my client.

21           THE COURT:  Well, I can certainly understand that.

22           MR. BORGES:  Yeah.  As far as the evidence goes,

23 the -- there is a premise though in the Trustee's papers

24 that the initial -- this issuance of a check 15 years ago

25 for $750,000 out of a client trust account made payable to a

14

1  jeweler, signed by two partners of the firm, whether that in

2  fact was a theft.

3          And, your Honor, I just want to point a couple of

4  things in terms of evidence that's already before the Court.

5  To be clear as I can be, I am not defending in any way Mr.

6  Girardi's actions.  But to the extent there's a splash onto

7  my client, I do want to point out a couple of things about

8  -- it's Exhibit 9 in the Trustee's request for judicial

9  notice, which consists of excerpts from this <u>Resalin</u>

10 (phonetic) litigation trust account ledger.

11          THE COURT:  Right.

12          MR. BORGES:  Okay.  And, your Honor --

13          THE COURT:  Which apparently now is down by a few

14 couple million dollars, at least according to -- out of

15 trust, as I understand.

16          MR. BORGES:  That's what the ledger says.

17          THE COURT:  Yeah, right.

18          MR. BORGES:  The one difficulty of course, your

19 Honor, is that we have no one with personal knowledge who's

20 able to say that these are actually business records of

21 Girardi Keese.  The only person --

22          THE COURT:  And nobody will probably testify,

23 including the Fifth Amendment, at least of the various

24 players that I've -- that at least I'm familiar with, and

25 there may be others, would be willing to -- who -- anybody

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-19-

15

1 might -- my impression is, anybody who really knows is not

2 going to, is not going to testify, because they might be

3 criminally liable, so --

4            MR. BORGES:  That may be, but --

5            THE COURT:  At least that's my impression.

6            MR. BORGES:  Yeah.  But the only -- just so the

7 Court is aware, the only declaration we have to authenticate

8 what the Court is being told is a business record of the law

9 firm is not a former employee of the firm, it's an employee

10 of the Trustee who came in after the fact.

11            THE COURT:  Right.

12            MR. BORGES:  This is what they found.  But let

13 me --

14            THE COURT:  Which is, by the way, is not unusual.

15 That's the nature of being a trustee.  And often in cases

16 like this where there's -- they take, you know, the records

17 as they find them.

18            MR. BORGES:  I completely understand, your Honor,

19 although I think that the nature of the evidence before the

20 Court suggests that it's appropriate to exercise at least

21 some caution in drawing inferences, and remember who bears

22 the burden of proof.

23            THE COURT:  Yes.

24            MR. BORGES:  But let me point out what I'm

25 referring to specifically, your Honor, which is -- and now,

16

1 in addition to bad hearing --

2     THE COURT:  Well, I know I have those here

3 somewhere.  You can do that, but I have read your brief, but

4 you can go on.

5     MR. BORGES:  I know, but this is, this is a point

6 that I actually put in my preliminary opposition but not in

7 the opposition that I filed a few weeks ago.

8     THE COURT:  Well, okay.  All right.

9     MR. BORGES:  So just if the Court will give me a

10 moment.

11     THE COURT:  Certainly.

12     MR. BORGES:  And now I've got my reading glasses

13 on.  So, in addition to hard of hearing, it's all going,

14 Judge.

15     In any event, on Exhibit 9, page 037 --

16     THE COURT:  Yes.

17     MR. BORGES:  -- is the first page of this ledger

18 of the trust account.  And it shows a settlement deposit in

19 January of 2007 from Merck, the pharmaceutical company --

20     THE COURT:  It was about $58,000,000 as I recall.

21     MR. BORGES:  Sixty-four --

22     THE COURT:  Or 64,000,000.  Okay.

23     MR. BORGES:  -- sixty-four-point-eight-four-five-

24 million dollars, the settlement payment.

25     THE COURT:  Right.

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-21-

17

1    MR. BORGES:  Now, your Honor, I did some quick

2  math, and I don't know the terms of the Girardi Keese fee

3  agreement with these clients, and the Trustee has it, but I

4  don't have it.  But assuming a 33-percent contingent fee off

5  of that amount, it would -- sixty-four-point-eight-million

6  dollars translates into about 21.398 million in fees.  So,

7  just bear with me, your Honor.

8    And then 35-percent of the $64,000,000 would be

9  about 22.6 million in fees, and 40-percent would be about

10 25.9 million in fees.

11   So, the important point is, this money is in the

12 trust account.  So who's money is it?  Only can -- any of us

13 can do here is draw inferences.  And I would ask, I would

14 ask the Court to bear in mind that the Trustee does have the

15 burden of proof for purposes --

16   THE COURT:  Yes.

17   MR. BORGES:  -- of inferences today.

18   The next -- that was January of 2007.  This check

19 for the earrings that Mr. Girardi and another partner of the

20 firm signed was a couple of months later, in March of 2007.

21   THE COURT:  On March 7 I think.

22   MR. BORGES:  Between the time -- between the time

23 -- and that's on Exhibit 9, your Honor, page 039 of Exhibit

24 9 of the Trustee's request for judicial notice.  The

25 important point I want to emphasize to the Court is, as of

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-22-

18

1  the date of that check, okay, which was $750,000, the ledger

2  shows a remaining balance in the trust account that day of

3  $55.854 million.

4          THE COURT:  Okay.

5          MR. BORGES:  So, on the day the $750,000 were

6  taken, there was still 55.8 million left in the trust

7  account --

8          THE COURT:  Right.

9          MR. BORGES:  -- according to the ledger --

10         THE COURT:  Right.

11         MR. BORGES:  -- we're all relying on.

12         And then I looked and I said, well, I wonder what

13  the law firm took for themselves between the time the money

14  arrived and the time of this March 2007 payment?  And I was

15  able to locate in this Exhibit 9 two payments according to

16  the ledger of $1,000,000 each that Girardi Keese paid itself

17  for purported costs.  So that's $2,000,000.

18         THE COURT:  Right.

19         MR. BORGES:  But that's it.  And so as of the date

20  that the check was issued, the account was not in a negative

21  balance.  And the other point I would make, your Honor, is

22  if the fee agreement was 33-percent to 40-percent let's say,

23  the firm did have -- we're drawing inferences now, a

24  presumed entitlement to about anywhere between 21- and $25.9

25  million in fees.

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-23-

19

1        So, if they had an entitlement to let's say even

2  $20,000,000 in fees out of that account on the day they

3  wrote the check for $750,000 -- I agree by the way, well,

4  that Mr. Girardi should not have put M and M as a cost and

5  done all of that when he took out the trust account.

6        THE COURT:  To say the least that's suspicious

7  conduct.

8        MR. BORGES:  Most definitely, your Honor, but my

9  client didn't do it.  Let's bear that in mind.  And --

10        THE COURT:  Well, just so you understand --

11        MR. BORGES:  Yeah.  No, I -- it's a --

12        THE COURT:  -- and the Trustee would agree with

13  this.  Just so you -- just for the record.  From my

14  standpoint, I accept what she has said.  That given the

15  nature of what I know about the case, just strictly from

16  this case, I don't think -- to say it's unlikely that she

17  was aware of any of the shenanigans going on would be an

18  understatement.  That's just my, my view.

19        By the way, it wouldn't make a difference on my

20  ruling.  Of course, if she actually knew what was going on,

21  that would be a different story.  But the Trustee has not

22  alleged that, and the evidence is not -- just for the

23  record, it's pretty clear.  I don't see any evidence that --

24  any reason why she would be made aware of that, so.

25        MR. BORGES:  Thank you.  And that's the truth,

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-24-

20

1 your Honor.  For what the truth is worth, that is the truth

2 and what she said in her declaration.

3          THE COURT:  Well, at least from my standpoint --

4          MR. BORGES:  Yeah.

5          THE COURT:  -- I'm only neutral person here, it

6 appears to be highly likely that that indeed is what

7 happened.

8          MR. BORGES:  But here is -- and I don't mean any

9 disrespect to anyone by this comment.  But the thing that I

10 thought to myself is that, well, okay, if they were owed

11 $20,000,000 in fees in March of 2007, if they wrote a check

12 for $750,000 or $7,000,000 and, you know, made it payable to

13 God or to anybody, nothing would have been taken from the

14 clients.  In other words, they would have had an entitlement

15 to potentially $20,000,000 of the 55,000,000 --

16          THE COURT:  Well, what about now today?  Looking

17 back, and now it's out by $2,000,000 out --

18          MR. BORGES:  Well, that's on -- I would -- I think

19 you're correct, your Honor.  I think -- according to the

20 ledger.  And then you have to fast-forward about 1.5 years

21 to October of 2008, and you -- and one looks at the ledger,

22 and I'm -- as an attorney I'm mystified by what Girardi

23 Keese, or whoever prepared this ledger did.

24          The Trustee is correct.  There were millions of

25 dollars that they paid to themselves for purported costs,

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-25-

21

1  and there was -- the Trustee counted about seven-and-a-half

2  million that they paid themselves for fees.  I actually

3  counted I think eight and a half.  But my point is that on

4  the day they issued the check for the earrings, they had an

5  entitlement I would submit to at least $20,000,000 of what

6  was in that client trust account.

7          So I think it's unfair to fast-forward and look at

8  everything they did after the fact, including paying

9  themselves, paying co-counsel.  There's -- by the way, your

10 Honor, there's a very suspicious payment in here in my eyes

11 to JAMS for $500,000.  I've never heard of such a thing.

12         And there's a huge number of payments to co-

13 counsel, or described as payments to co-counsel.  I don't

14 know what those payments were.  But the reason problem I

15 would submit occurred in terms of emptying out this account,

16 that occurred after the $750,000 check.

17         So if we were to freeze time on that day, it would

18 be very -- well, it would be wrong to infer that the law

19 firm itself did not have an entitlement to at least several

20 million dollars.  And if they put out a check 750,000 to the

21 gardener or to anybody, that's on them.  I'm not defending

22 that.  That's wrong, but it's not a theft of client money if

23 the law firm had an entitlement to funds that far exceed

24 that amount.  That's my only point, your Honor.

25         THE COURT:  All right.

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-26-

22

1        MR. BORGES:  Okay.  So, the premise, the premise

2  of the theft, and looking at the way one draws inferences

3  from the evidence with the Trustee having the burden of

4  proof, I think is a premise that requires a more full

5  record.

6        The other point related to this which is

7  interesting, is in the Trustee's reply brief she cites a

8  case with -- the first name of the plaintiff is Prakash

9  Balan v. Extra, Lip, Spillman, Lack, in other words, Mr.

10  Lack's law firm.

11        THE COURT:  Right.

12        MR. BORGES:  That case cited by the Trustee

13  involves a situation where there was -- out of the

14  Northridge, Northridge earthquake, about 93 individual

15  homeowners were represented by a series of firms, including

16  Mr. Lack's law firm.  And the plaintiffs discovered that

17  they thought $22,000,000 was missing and unaccounted for out

18  of the settlement proceeds that had been received from State

19  Farm after the Northridge earthquake.

20        The Prakash Balan opinion is very instructive,

21  your Honor, on a few levels.  The first to me, and most

22  importantly for purposes of this case, is that was a case

23  brought by the clients.  This is not a motion brought by the

24  underlying clients.  This is a motion brought by a

25  bankruptcy trustee who, as the Court knows, under 541,

23

1 property that a debtor holds for the benefit of another, in

2 other words, property the debtor holds in trust, is not

3 property of the estate.

4         So, there's also a question in the Trustee's reply

5 brief where her attorney asks, well, if not Ms. Miller, as

6 what they call successor trustee, then who, who would bring

7 this claim?  And I went back -- I thought I put it in my

8 opposition, but I went back, I looked, and I did.  The

9 proper party to bring this claim is the clients.  And that's

10 what happened in the Prakash Balan case.

11         And the other thing that's interesting about that

12 case, which is why, your Honor, I would submit that a

13 decision today, if made, I would submit should be without

14 prejudice to a more fully developed record.  Because I

15 attended in a separate litigation, once again where

16 attorneys who had a fee-sharing deal with Tom Girardi are

17 suing my client.  You know, I mean, she's a dancer and a

18 signer.  She doesn't work full -- anyway.

19         My point is this, your Honor.  What I learned in

20 that deposition in that case, which was of a former Girardi

21 Keese partner is at the law firm has these --

22         THE COURT:  Well, I don't you to be adding facts.

23         MR. BORGES:  I'm not adding, your Honor, I'm just

24 trying to --

25         THE COURT:  Well, I'm not quite sure what you're

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-28-

24

1  doing.

2          MR. BORGES:  I'm not intending to, your Honor.

3  What I'm trying to say -- explain is what I think is

4  illustrated by this <u>Prakash Balan</u> case.

5          THE COURT:  Right.

6          MR. BORGES:  Which the plaintiffs were the

7  clients, not a trustee.

8          What was important about that case is it

9  demonstrated, and the Trustee's attorney argues this in

10 their reply brief, there is a duty of an attorney to account

11 to clients when you send them a settlement check of what

12 their share of the proceeds is and all of that.

13         Unbeknownst to me, at Girardi Keese, at least for

14 some of these deposition exhibits, they have forms that they

15 give to --

16         THE COURT:  Well, again, you're adding to the

17 record, counsel.  It's one thing to talk about a published

18 case.

19         MR. BORGES:  Well, I'm trying to -- I guess I --

20         THE COURT:  I can't allow you to be adding to the

21 record.

22         MR. BORGES:  Fair enough.  What I'm trying to

23 express, your Honor, is that this fact, along with the

24 inferences that one could draw from the records, I think

25 would make a final decision today inappropriate.  And the

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-29-

25

1 better decision would be without prejudice, because I would
2 like to see, I would like to see this in a trial, as part of
3 the trial of this case.  I would like to -- the earrings the
4 safe.  Okay.  And that was the first thing, by the way, my
5 client had said to me, so I --

6           THE COURT:  I didn't hear what you said.  The
7 earrings are what?

8           MR. BORGES:  Safe.

9           THE COURT:  "Safe."  Yes.

10          MR. BORGES:  Yeah.  They're in a safe deposit box.

11          The other thing I want to just mention to the
12 Court -- I sometimes speak in analogies when I'm arguing
13 legal issues inside the office.  My colleagues criticize me
14 for that, so I don't mean to use inappropriate analogies.
15 But I tried to come up --

16          THE COURT:  I guess we'll -- we'll find out in a
17 minute, I guess.

18          MR. BORGES:  Well, I tried to come up, your Honor,
19 with an analogy at the beginning of our opposition to
20 illustrate the issue that if the Trustee's arguments here
21 are accepted, it wouldn't matter if what Mr. Girardi did he
22 did 15 years ago --

23          THE COURT:  Well, let me stop you.  I don't want
24 you to repeat.  I know they didn't think much of your
25 analogy I remember in the first part of your brief.

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-30-

Case 2:21-ap-01155-BR   Doc 102-1   Filed 11/04/23   Entered 11/04/23 00:50:52   Desc
Declaration of Evan C. Borges in Support of Defendant Erika Girardis Oppo    Page 31 of 51

26

1          MR. BORGES:  He said that.

2          THE COURT:  But -- yes, he did.  But I don't want

3  you to go through the entire brief, so --

4          MR. BORGES:  I'm not going to go through it.

5          THE COURT:  Okay.  All right.

6          MR. BORGES:  All I'm going to say is that I do

7  think that in trying to determine the principle of law here,

8  because I don't think these are easy issues.  I've just --

9  no one's found a case on point I think.  I don't think that

10  if the Trustee's position is accepted, it would make no

11  difference if what Mr. Girardi did he did 50 years ago, and

12  that is extremely counterintuitive to me as a lawyer.

13          And I would submit that where -- and that's the

14  reason, your Honor, for statutes of repose.  Now I

15  understand that the California statute of repose, 3439(o)(c)

16  of our Civil Code, applies to fraudulent conveyance claims,

17  but it also -- the legislative said, notwithstanding any

18  other provision of law.

19          And as the Court knows, implicit in fraudulent

20  conveyance claims, including under the California Uniform

21  Fraudulent Act, if that's what it's still called, implicit

22  in those claims there are statutes of limitations of one

23  year and four years that depend on whether it was discovered

24  or reasonably should have been discovered.  But it was the

25  California Legislature in the context of fraudulent

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-31-

27

1  conveyances, which can be actual fraud, actual intent to

2  hinder, delay or defraud, the California Legislator opposed

3  a statute of repose of seven years.

4           And I just went back because I remembered a case

5  because we actually -- I actually had it at an earlier

6  stage.  But it's a United States Supreme Court decision that

7  I'll refer the Court to.  I can get the cite.  It's in my

8  briefcase.  From 2017.  It's a Justice Kennedy opinion.  It

9  involves the Securities of Act of 1933.

10          THE COURT:  And that was not in your brief?

11          MR. BORGES:  It was not in my brief, your Honor,

12 but it --

13          THE COURT:  It's probably a good idea, as you

14 know, if you want me to consider it to have it in your

15 brief.

16          MR. BORGES:  Your Honor, I'm responding to

17 something in the Trustee's reply brief about statutes of

18 repose --

19          THE COURT:  All right.

20          MR. BORGES:  -- that the Trustee mentioned.  And

21 the Trustee in her reply brief cited federal law.

22          The United States Supreme Court in the context of

23 claims under the Securities Act 1933.  It's a 2017 opinion,

24 a Justice Kennedy opinion.  And essentially, under the 1933

25 act, and I'm going to state it as best I can, your Honor,

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-32-

28

1  there's a bifurcated statute of limitations.

2         There's a one-year provision, you know, that I

3  think has to do with knowledge, of when you have knowledge

4  of a misstatement in a securities offering.  But then the

5  statute goes on and says, "in no event may an action be

6  brought under" -- this is Section 11 of the 1933 act.  So

7  we're not talking about 10(b)(5) or fraud.  It says, "in no

8  event may an action be brought three years after the

9  offering of the securities."

10         And Justice Kennedy's opinion is important because

11  that's obviously a federal court and this is a federal

12  court.  And we're talking about statutes of repose and what

13  do they mean.  But I would submit to your Honor that the

14  United States Supreme Court, a federal court, has

15  interpreted statutes of repose the same way.

16         And this is cited in my brief, and I'll be very

17  quick about it.  The same way that Bankruptcy Judge Richard

18  Neiter did in the, it's the JMC -- excuse me.  I think it's

19  JM -- yes, the JMC Telecom case cited in my brief.  It's a

20  -- and Judge Neiter, Bankruptcy Judge Neiter applied the

21  statute of repose to a Chapter 7 trustee's claims.  It was

22  Mr. Pringle, John Pringle was the trustee.

23         Judge Neiter dismissed the trustee's claims

24  because they went back, I believe in that case it was nine

25  years, and it was not a small thing.  It was $650,000 had

*Briggs Reporting Company, Inc.*

EXHIBIT 1

29

1  been paid out cash to a member of an LLC, which was the wife

2  of a marital partnership, nine years prior to the time the

3  Chapter 7 Trustee, John Pringle, filed his action.  And

4  Bankruptcy Judge Neiter said, sorry.  Under the seven-year

5  California statute of repose, you're done.  There's no

6  claim.

7          And equally importantly, your Honor, because I

8  have a -- or I don't even know if Judge Matz is still on the

9  bench.  But District Court Judge --

10          THE COURT:  I believe Howard Matz?

11          MR. BORGES:  "Howard Matz," yes.

12          THE COURT:  Yes, I believe he is.

13          MR. BORGES:  Okay.  I'm sorry, your Honor.  I'm

14  from Orange County.  You know, we're hillbillies.

15          THE COURT:  That's okay.

16          MR. BORGES:  But the -- but District Judge Howard

17  Matz affirmed Bankruptcy Judge Neiter in the JMC Telecom,

18  LLC case, which is cited in our brief.

19          I submit that if one is looking for guidance, a

20  good homing point or place to rest, is to read Howard Matz'

21  opinion affirming Bankruptcy Judge Neiter.  It's a 2009

22  opinion.  It's relatively recent.  And what -- and there's

23  two important things that I would just comment about that

24  opinion that jumped out at me.

25          One is that both Judge Neiter and District Judge

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-34-

30

1 Matz held that once you're passed the seven-year statute of

2 repose, you don't get to have something like an unjust

3 enrichment constructive trust claim.  Constructive trust is

4 a remedy that requires an underlying right.  Once the right

5 is extinguished by the statute of repose you're done.  And

6 so they discarded that argument.

7        The other important point to me is that the

8 Chapter 7 Trustee, Mr. Pringle, through his attorneys argued

9 that there should be a tolling under Section 338(d) of the

10 California Code of Civil Procedure, which is the fraud,

11 delayed discovery tolling requirement in California law.

12        Both Bankruptcy Judge Neiter and District Court

13 Judge Matz said, no, you cannot import a fraud, delayed

14 discovery rule onto the seven-year California statute of

15 repose because it's the legislature's intent that there's

16 finality.

17        And one of the great difficulties here, your

18 Honor, and one of the reasons that I would submit finality

19 is important is, I'm informed that Tom Girardi has dementia.

20 I have no idea if he does.  Some probate judge apparently

21 found that he did.  James O'Callahan, the other signatory on

22 that $750,000 check, he's deceased.  His widow as one of the

23 petitioning creditors in the involuntary bankruptcies in

24 this case.

25        I don't know what employee of Girardi Keese I can

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-35-

Case 2:21-ap-01155-BR    Doc 102-1    Filed 11/04/23    Entered 11/04/23 00:50:52    Desc
Declaration of Evan C. Borges in Support of Defendant Erika Girardis Oppo    Page 36 of 51

31

1 depose, because as your Honor pointed out, probably the one

2 that matters the most, Mr. Kaiman (phonetic), is going to

3 take the Fifth Amendment because he has already.  I don't

4 know if there's a minion around who used to be part of the

5 accounting department, who can attest to the accuracy of the

6 record.  But we are -- the reason we're facing some of these

7 evidentiary gaps is the reason that the legislature has

8 statutes of repose.

9         My client takes this very seriously, your Honor.

10 And we are, we are doing what we can to fully cooperate with

11 the Trustee.  We will, we will respect obviously any

12 decision of this Court.  There is a lot more here.  I hope

13 at this stage -- and I know I'm going a little off topic.

14         But when this case started there were these rumors

15 in the press about $20,000,000, you know, going to my

16 client.  There's nothing like that, your Honor.  And I

17 believe, and my client will say it under penalty of perjury,

18 that we -- and I've had separate discussions with counsel

19 for the Trustee about this, my client left this marriage to

20 move into a rental.

21         She filed for divorce on her own.  And all she

22 took with her was her personal possessions, which do include

23 jewelry.  They do include jewelry.  But all she's got is

24 those personal possessions plus her income from this Real

25 Housewives of Beverly Hills show, which is, you know, it's

32

1   funny for people to sort of snicker about, but it's all

2   she's got as far as income.  There's some miscellaneous

3   income she gets from appearances and sponsorships, but --

4           THE COURT:  Well, let me stop you.

5           MR. BORGES:  Yeah.  No, but I --

6           THE COURT:  That's really not relevant to this

7   proceeding.

8           MR. BORGES:  Well, it -- fair comment, your Honor.

9           THE COURT:  All right.

10          MR. BORGES:  And that's all I have.

11          THE COURT:  All right.  Thank you.

12          All right, counsel.

13          MR. GABRIEL:  Good afternoon, your Honor.  Larry

14  Gabriel on behalf of the Trustee.  Let me address a couple

15  of the many issues that Mr. Borges threw out to the Court to

16  consider.

17          THE COURT:  Well, they're nothing new.  They were

18  basically in the brief, so.

19          MR. GABRIEL:  Yes, but might as well address it

20  anyway.

21          THE COURT:  Well, please.

22          MR. GABRIEL:  The first thing is the evidence and

23  the ability of the Trustee to rely on the documents.

24  Documents are what they are.  The Court is more than

25  familiar with that issue and how I -- the Trustee has to

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-37-

33

1  take possession of them.  And the assumption is that they

2  are the books and records of the company, now in the

3  possession of the Trustee.  I don't think we have to really

4  go into that issue for the Court.  It's well aware of what

5  that is.

6          Mr. Borges made a whole presentation about the

7  accounting out of the trust account and whether or not the

8  law firm was entitled to the fees, and that we didn't

9  demonstrate that they were entitled to the fees.

10         There's a case on point.  I'll be glad to submit

11  it the Court.  We don't have that burden.  Not only that,

12  the burden would be on Mr. Borges' client to prove that.

13  But it doesn't really matter.  That's not what the law is.

14         The law firm cannot take money out of a trust

15  account for any purpose other than to pay themselves their

16  fee.  And they are supposed to do that as quickly as

17  possible upon the receipt of the money.  Taking a check for

18  $750,000 payable to M and M, accounting for it as a cost,

19  and then buying jewelry with it, is not a demonstration that

20  it was a fee due and owing.  It is a fraud.  It is a theft

21  of the funds.  And there is no question about that.  As I

22  said, I will be glad to submit to the Court a case that is

23  really right on point as far as that goes.

24         The statute of limitations.  The -- I think we

25  addressed that in our brief.  There is no question that when

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-38-

34

1  someone steals, in this case money out of the trust account,

2  that there is a delayed discovery statute.  Mr. Borges

3  argued that, well, the Debtor would have been aware of the

4  fraud, and therefore --

5        THE COURT:  You're talking about a pari delicto

6  argument?

7        MR. GABRIEL:  Right.  Exactly.

8        THE COURT:  It was in the brief you didn't mention

9  now, but it was in the brief.

10       MR. GABRIEL:  Except it doesn't apply in this

11 case, because we're going after --

12       THE COURT:  No, I don't believe that would apply

13 in this case.  Because if that were the case, the Trustee

14 could never go after anybody for any -- for wrongful

15 conduct.  We all know that's --

16       MR. GABRIEL:  Right.

17       THE COURT:  -- not the case.

18       So, the Trustee may step in the shoes of the

19 Debtor for certain things, but clearly not, at least in this

20 case, these -- there's so many exceptions in pari delicto.

21 Lawyers and judges usually butcher Latin anyway, but in any

22 case, it's clear that there were so many exceptions it

23 clearly would not apply in this case.

24       MR. GABRIEL:  Okay.  And so, which -- not sure

25 what other issue that you need to be addressed by me.

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-39-

35

1        THE COURT:  Well, there was a question of repose

2   and Judge Neiter and Judge Matz.

3        MR. GABRIEL:  Okay.  Again, there is -- and I

4   quoted it in our brief.  There is a period of time when this

5   fraud has occurred until discovery has occurred, that the

6   statute doesn't start to run until it's been discovered.

7        And in this case it wasn't really discovered until

8   the Trustee took possession of the records and went through

9   them and found out what had occurred.  And I don't care if

10  it's five years or 10 years or 15 years, there is no statute

11  of repose.

12       There's no blanket statute of repose.  It has to

13  be to a specific, particular statute.  Whether it's the

14  statute of frauds or the -- for real estate.  There's the

15  whole list of them that I -- we put in our brief, but not

16  for this case, not for stealing trust funds and then washing

17  those funds by buying a diamond ring.

18       THE COURT:  Earrings, but close enough.

19       MR. GABRIEL:  "Earrings."  Did I say ring?

20       THE COURT:  It's all right.

21       MR. GABRIEL:  They're big enough for a ring.

22       THE COURT:  I assume so.

23       MR. GABRIEL:  So, the -- that doesn't -- there's

24  no law that supports his position.  And, in fact, I think in

25  our brief we pointed out that there was specific language in

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-40-

36

1 the legislature, notes that said that the delay was put into

2 the statute because the legislature recognized that if

3 somebody steals something, it may take some time to get the

4 property back or to know about it, especially in this case

5 where there's a fraud that's been covered up and doctored up

6 for years.

7         So, the delay and the pause in the statute of

8 limitations applies in this case, and there is nothing,

9 there is no statute of repose that could possibly impact

10 this.  If that was the case, your Honor, what a great deal

11 Erika Girardi got.  She's in receipt of, basically

12 constructive possession, of $750,000 that came out of a

13 trust account that belongs to somebody else.

14         And she thinks because she -- and she is, as we

15 know, is a -- has no title to the property.  Because someone

16 who receives stolen property and is not a bona fide

17 purchaser, or that they -- and gives value, and certainly

18 she's not that.  She takes.  She has no title to the

19 property, and she's an impress with a constructive trust.

20 And at such time as somebody says, those are mine and they

21 can prove it, she has to give them back.  And the law is

22 clear on that, and I can cite some cases, if you'd like.

23 Mazzera v. Wolf, 30 Cal.2d 531, a California Supreme Court

24 decision.

25         This case, your Honor, is a tragedy.  It is a

37

1 tragedy for everybody that is involved in this.  Mr. Girardi

2 took a brilliant reputation and career, but there was

3 something wrong, there was something wrong with him, and a

4 lot of people are going to suffer for it, including Mrs.

5 Girardi.

6          But the people that have really suffered over the

7 years are the people that he represented, because there was

8 millions of dollars that should have gone to them that did

9 not, and this is just one example.  And it's the obligation

10 of the Trustee to recapture for the benefit of those who

11 belonged -- the money should have gone to.  That's part of

12 the bankruptcy proceedings.

13          This money and diamonds should come back into the

14 estate, and then it should be addressed accordingly.  And

15 that is not an easy process, as we know.

16          To address one other thing that Mr. Borges said,

17 and that is, the Trustee doesn't have standing to bring this

18 motion and this lawsuit.  That of course is wrong.  In fact,

19 this Court signed an order that specifically gave the

20 Trustee authority to act as trustee over the trust account,

21 and to operate that, the trust account and -- according to

22 the factors that were set forth in the order.  And that

23 order as I understand has been extended through the end of

24 July, and will be -- should be renewed again.

25          So, by order of this Court, she's the successor

38

1 Trustee.  And as we know, the Trustee has the power to go

2 out and represent the trust and obtaining whatever rights

3 that the trust has.  In this case, the Chapter 7 Trustee is

4 -- has stepped into the shoes of that Trustee by law and by

5 order of this Court.  So, the standing issue is a red

6 herring.

7          Anything further?

8          THE COURT:  No.  Thank you.

9          MR. GABRIEL:  Thank you.

10          THE COURT:  All right.  All right.  Thank you

11 both.  I know you've been busily writing, but that ends the

12 argument.  You can have a seat.

13          All right.  No, I agree with the Trustee.  This is

14 an unfortunate case, but the fact -- and again, I indicated

15 before, the facts as far as I can -- I'm concerned are

16 pretty straightforward.  It was a, it was an embezzlement

17 and fraud from day one, not by misses -- you know, there's

18 Erika Girardi, by Mr. Girardi.  And the facts are already

19 are laid out in the record.

20          The Trustee gets the record best you can, but it's

21 pretty clear by facts at that time and afterwards, at least

22 in this particular case, is as follows.  That at the time,

23 these were actually funds in trust, and it wasn't taken out

24 actually for costs.  It wasn't taken out for fees.  It was

25 part of part, and given the rest of this case, it's clear,

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-43-

39

1  you know, embezzlement, but this I'm focusing just on the

2  $750,000.

3          The check was made out of the trust, which it was

4  improper.  If they wanted to have a trust, they would -- if

5  they wanted costs but they were trying to cover it up, these

6  were not obviously costs, but it was trying to cover up that

7  somehow M and M had -- something would be -- who knew what M

8  and M -- now I know what M and M, but at the time, if you're

9  looking at the records, who would know who or what M and M

10 was.

11         So, it's clear to me that the record -- I don't

12 need any further development of the record, but this was

13 intended to be a fraud by Mr. Girardi, and it was co-signed,

14 but at least as far as Mr. Girardi, who was apparently in

15 charge.

16         So, it's clearly that this was, this was an

17 embezzlement.  This was a theft.  And I agree with the

18 Trustee, that for many purposes the Trustee stands in the

19 shoes, but not for all purposes, or else the Trustee could

20 never sue for wrong (indiscernible).  To be able to sue,

21 yes, I think the Trustee stands in the shoes, but is not, is

22 not bound by all the bad acts of the Debtor.

23         And certainly the somewhat esoteric, probably one

24 of the few folks around that actually had some cases dealing

25 with pari delicto, which is to say the least, is a doctrine

40

1 that has more exceptions than probably the rule itself.  But

2 clearly my understanding of it, clearly the Trustee would

3 not be, not be stuck with the -- with Mr. Girardi's either

4 his knowledge or his actual conduct.

5      The -- and so what we have is that, again, I've

6 indicated several times, I don't believe that Mrs. Girardi,

7 at least for our purposes, knew that this was -- you know,

8 the diamonds were stolen property.  I don't -- there's no

9 evidence of that, so at least I'm assuming that for the

10 purpose of this hearing.  But the fact is, she's still in

11 possession of stolen property, namely, it went directly from

12 the account to buy the diamond earrings, and it's stolen

13 property.

14      And my understanding of the law is, that the party

15 claiming back -- I think I've already stated it on the

16 record, but as far as standing, I think the cases are clear

17 that the Trustee, at least for purposes of what we're

18 talking about, has at least enough legal interest in it at

19 that point to have standing.  Because a practical matter,

20 who else would be there?  There is -- and especially for the

21 full, for the full amount of the $750,000.

22      There would be nobody as a practical matter to do

23 that.  And it doesn't really matter to me because if I think

24 the Trustee is -- not only has the duty to collect under the

25 bankruptcy code, to collect the assets and distribute them

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-45-

41

1 to the, you know, to the proper parties.

2        It is not before me today, but it is clear what

3 will happen as far as my order is concerned, that the -- by

4 the way, I want to add that for both the statute of repose,

5 which is what, again, most people don't even know exists,

6 but it does, and the limitations, I think under these

7 circumstances I'm satisfied that the -- there is a time

8 period in which the Trustee would not be bound by that, and

9 no one would challenge when the Trustee found out about it.

10 But, again, the Trustee does not, for the purposes of

11 knowledge, stand in the shoes of Mr. Girardi.

12        And so what we have is property, and I can't tell

13 you at this particular point which particular beneficiaries

14 of the trust will get what.  But it is clear to me, although

15 it's not necessarily relevant to today, but the Trustee --

16 that's why I asked where the property is, will sell it, and

17 most likely that sale would be an in-court, to make sure of

18 something like -- to say the least, this is unusual

19 property.

20        Most people know by very definition, diamonds are

21 worth what you -- people will pay for.  Who knows what --

22 when you buy something like that, what you could have got it

23 from someone else, although something of this value is

24 pretty -- you can't just buy it at the local jewelry store.

25        But as far as value, that will be determined,

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-46-

42

1  again, by experts.  And as far as where the money would go,

2  my impression at the moment is not a final ruling on it,

3  this portion of it, but it is, it is money that was taken

4  out of the trust.  And so, ultimately, what the Trustee will

5  have to do, and there will be no doubt people claiming

6  interest in the trust, and it might be a very complicated

7  scenario, but the money, whatever is sold for the earrings,

8  will go into the -- go to the Trustee, but for the benefit

9  of the beneficiaries, namely, the Resalin, I guess, of that

10  particular -- that class action litigation.

11        I had no idea specifically how much to anybody,

12  but since apparently it's at least -- now we know it's out

13  of trust by a couple of million dollars, no doubt that there

14  will creditors that will, that will file claims, and that

15  will be litigated at another time.

16        So, anyway, so that -- I've stated on the record

17  my -- I know you don't, Mr. Borges, you don't agree, and

18  that's fine, but that's going to be the order of the Court.

19        And I would like you, if you would, basically

20  prepare an order stating, stating what I've just said.  And

21  also in the order nobody -- that's why I was curious, but

22  now it's more than just curiosity.  So nobody but the

23  Trustee or Trustee's people have access to that?

24        MR. GABRIEL:  Correct.

25        THE COURT:  That -- now that does become relevant

**Briggs Reporting Company, Inc.**

EXHIBIT 1
-47-

43

1  for the matter of curiosity.  And you -- that will -- the

2  order will -- so I don't need to have anything else in the

3  order.  You already have, you already have possession, but

4  the order will be I'm granting your motion for the

5  possession.  You already have it technically, again, subject

6  to obviously the agreement with Erika Girardi.  But now, to

7  the extent that she had any rights to it, with my order will

8  be, she has none.

9        And what will happen next is you'll just prepare

10 an order basically stating that for the reasons stated on

11 the record, the motion is granted.  That's why I went

12 through and appreciate the argument of both counsel to

13 state, I don't have to go through written orders.  I've

14 stated pretty much what I agree, and I agree with the

15 Trustee.

16       So if you'll prepare that order, and then I guess

17 I'll see you back for a sale at some point.  So, anyway, I

18 thank you both very much, and have a good day.

19       MR. BORGES:  Thank you, your Honor.

20       THE COURT:  Thank you.

21       MR. GABRIEL:  Thank you, your Honor.

22       THE COURT:  You're welcome.

23       THE CLERK:  I'd say we're, we're done.

24       THE COURT:  Okay.

25    (Proceedings concluded.)

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-48-



44

1       I certify that the foregoing is a correct

2 transcript from the electronic sound recording of the

3 proceedings in the above-entitled matter.

4

5 /s/ Holly Steinhauer     6-30-22
  Transcriber         Date

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Briggs Reporting Company, Inc.*

EXHIBIT 1
-49-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

650 Town Center Drive, Suite 1700
Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*): ***DECLARATION OF EVAN C. BORGES IN SUPPORT OF DEFENDANT ERIKA GIRARDI'S:  (1) OPPOSITION TO TRUSTEE'S OPENING BRIEF ADDRESSING ISSUES PRESENTED BY DISTRICT COURT'S REMAND ORDER, DECLARATION OF NICHOLAS R. TROZAK [DOC. 98] AND REQUEST FOR JUDICIAL NOTICE [DOC. 99] (COLLECTIVELY THE "REMAND MOTION"); AND (2) REQUEST FOR CONTINUANCE OF HEARING, TO ALLOW FOR DISCOVERY AND DUE PROCESS ON NEW EVIDENTIARY SUBMISSIONS BY TRUSTEE IN SUPPORT OF REMAND MOTION AND IN CONTRAVENTION OF TRUSTEE'S PRIOR STIPULATION AND REQUEST TO BRIEF SOLELY "LEGAL ISSSUES"*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 3, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **November 3, 2023,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| November 3, 2023 | Cheryl Winsten | *(signature)* |
| Date | Printed Name | Signature |

DECLARATION OF EVAN C. BORGES IN SUPPORT OF ERIKA GIRARDI'S OPPOSITION TO TRUSTEE'S
OPENING BRIEF ADDRESSING ISSUES PRESENTED BY DISTRICT COURT'S REMAND ORDER

**n re GIRARDI KEESE**
Case No. 2:20-bk-21022-BR
**Elissa D. Miller. Chapter 7 Trustee v. Erika N. Girardi, et al.**
Case No. 2:21-ap-01155-BR

1.     **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING**:

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Ori S Blumenfeld**    oblumenfeld@laklawyers.com, nlessard@laklawyers.com;smcfadden@laklawyers.com

- **Evan C Borges**    eborges@ggtriallaw.com, cwinsten@ggtriallaw.com

- **Alan W Forsley**    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com

- **Larry W Gabriel**    lgabrielaw@outlook.com, tinadow17@gmail.com

- **Daniel A Lev**    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

- **Craig G Margulies**    Craig@MarguliesFaithlaw.com, Vicky@MarguliesFaithlaw.com;Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com

- **Elissa Miller (TR)**    CA71@ecfcbis.com, MillerTrustee@gmlaw.com;C124@ecfcbis.com;cheryl.caldwell@gmlaw.com;cheryl.caldwell@ecf.courtdrive.com

- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com

- **Frank X Ruggier**    frank@ruggierlaw.com

- **Amir Shakoorian**    AShakoorian@GGTrialLaw.com

- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

- **Timothy J Yoo**    tjy@lnbyb.com

3.     **SERVED BY PERSONAL DELIVERY:**

**U.S. Bankruptcy Court:**
U.S. Bankruptcy Court
Hon. Barry Russell
255 E. Temple Street, Courtroom 1668

-51-