Larry W Gabriel, State Bar No. 68329
JENKINS MULLIGAN & GABRIEL LLP
585 Lorna Lane
Los Angeles, California 90049
Tel: 818.943.8992
Email: lgabrielaw@outlook.com

Special Litigation Counsel for Plaintiff
Elissa D. Miller, Chapter 7 Trustee,
Estate of Girardi Keese

FILED & ENTERED

OCT 23 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier      DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

|  |  |
|---|---|
| In re | Case No. 2:20-bk-21022-BR |
| GIRARDI KEESE, | Chapter 7 |
| Debtor, | |
| ELISSA D. MILLER, chapter 7 trustee for the estate of Girardi Keese, | Adv. No. 2:21-ap-01155-BR |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| vs. | |
| ERIKA J. GIRARDI, an individual; EJ Global LLC, a limited liability company; and PRETTY MESS, INC., a corporation, | **Judge:  Hon. Barry Russell** |
| Defendants. | |

Pursuant to the Court's Order of September 24, 2024, Plaintiff Elissa D. Miller, Chapter 7 Trustee, Estate of Girardi Keese, submits the following proposed findings of fact and conclusions of law for the Court's consideration.

Trustee's Findings of Fact and Conclusions of Law

| UF # | UNDISPUTED FACTS | EVIDENCE |
|---|---|---|
| **A. Procedural Background: Girardi Keese Bankruptcy** | | |
| 1. | Girardi Keese ("Girardi Keese" or "Debtor") is the debtor in the Bankruptcy Case 2:20-bk-21022-BR, which case was initiated by the filing an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code on December 18, 2020 (the "Petition Date"). | Bankr. ECF Doc. 1. |
| 2. | Plaintiff Elissa D. Miller is the duly appointed, qualified and acting Chapter 7 Trustee of the Girardi Keese bankruptcy estate (the "Estate") having been so appointed on January 5, 2021, and having accepted the appointment on January 6, 2021. | Bankr. ECF Docs. 45, 48. |
| 3. | The Court entered an Order for Relief Under chapter 7 on the involuntary petition on January 13, 2021. | Bankr. ECF Doc. 69. |
| **B. The Trustee's Adversary Action** | | |
| 4. | The Trustee initiated this adversary action, *Miller v. Erika J. Girardi, et al.,* Adversary Case No.: 2:21-ap-01155-BR on July 14, 2021. | Adv. ECF Doc. 1. |
| 5. | On August 26, 2021, the Trustee filed an Amended Complaint. | Adv. ECF Doc. 12. |
| 6. | The Defendants named in the Amended Complaint are ERIKA J. GIRARDI, an individual; EJ Global, LLC, a limited liability company; and PRETTY MESS, INC., a corporation. | *Id.* |
| 7. | The Defendants answered the Amended Complaint on November 11, 2021. | Adv. ECF Doc. 20. |

Trustee's Findings of Fact and Conclusions of Law

| 8. | Defendant Erika Jayne Girardi ("Erika Girardi") is a resident of Los Angeles County, State of California. | Admitted, Defendants Amended Answer, Adv. ECF Doc. 20, ¶ 4:26-27 |
|---|---|---|
| 9. | Defendant EJ Global, LLC, ("EJ Global") is a California limited liability company. | Admitted, Defendants Amended Answer, Adv. ECF Doc. 20, ¶ 5:1-2. |
| 10. | Defendant Pretty Mess, Inc. ("Pretty Mess"), is a California corporation. | Admitted, Defendants Amended Answer, Adv. ECF Doc. 20, ¶ 6:9-10 |

**C.  Thomas V. Girardi and Erika Girardi's Relationship**

| 11. | Thomas V. Girardi ("Girardi" or "TVG") was an attorney at law admitted to practice in the State of California on January 13, 1965. | Trustee's Request for Judicial Notice, Adv. ECF Doc. 29, p. 5, Exhibit 1. |
|---|---|---|
| 12. | Erika Girardi and Girardi were married on January 7, 2000.  At the time of their marriage Erika Girardi was 27 years old. Girardi was 60 years old. | Declaration of Erika Girardi in Support of Opposition to Trustee's Motion, executed June 14, 2022, Adv. ECF Doc. 47-1, p. 2 ¶ 2. |
| 13. | On March 30, 2021, the California State Bar Association filed and served a Notice of Disciplinary Charges upon Thomas V. Girardi. | Trustee's Request for Judicial Notice, Adv. ECF Doc. 29, p. 7, Exhibit 3. |
| 14. | On June 1, 2022, the California Supreme Court entered its order disbarring Girardi from the practice of law in the State of California. | *Girardi on Discipline*, 2022 Cal. LEXIS 3753 (June 1, 2022). |
| 15. | As of June 14, 2022, Erika Girardi and Girardi remained married. | Declaration of Erika Girardi in Support of Opposition to Trustee's Motion, executed June 14, 2022, Adv. ECF Doc. 47-1, p. 2 ¶ 3-4. |

Trustee's Findings of Fact and Conclusions of Law

| 16. | On January 31, 2023, Girardi was indicted by the Grand Jury, United States District Court, Central District of California, CR No. 2:23-cr-00047-JFW. | Trustee's Request for Judicial Notice, Adv. ECF Doc. 99, Exhibit 2 |
| 17. | The indictment charged Girardi with five counts of violating 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 981(a)(1)(C); Criminal Forfeiture. | *Id.* |
| 18. | On August 27, 2024, the District Court in *USA v. Girardi,* Cr. No. 23-00047-JLS entered the verdict of the jury in this action. The jury found Girardi guilty on four counts of wire fraud, 18 U.S.C. § 1343. | Trustee's Supplemental RFJN, ECF Doc. 130, Exhibit 1. |

### D. The Trustee's Turnover Motion

| 19. | On January 25, 2022, the Trustee filed her "NOTICE OF MOTION AND MOTION FOR ORDER FOR TURNOVER OF PERSONAL PROPERTY ("Turnover Motion") and Request for Judicial Notice ("RFJN") requesting an order requiring Girardi to turnover to the Trustee a certain pair of diamond earrings TVG purchased for Erika Girardi on March 2, 2007 (the "Turnover Motion" or "Motion"). | Adv. ECF Docs., 28-29. |
| 20. | On January 26, 2022, Erika Girardi filed a preliminary opposition to the Turnover Motion. | Adv. ECF Doc. 31. |
| 21. | On June 14, 2022, Erika Girardi filed her opposition to the Turnover Motion ("Opposition") and Declaration of Erika Girardi. | Adv. ECF Docs. 47, 47-1. |
| 22. | In the Opposition, Erika Girardi alleged that: (1) the statute of limitations and statute of repose had expired and barred the Trustee's claims based on the 2007 earrings transaction; and (2) the Turnover Motion was improper because the GK Client | Id. |

-4-

Trustee's Findings of Fact and Conclusions of Law

| | | | |
|---|---|---|---|
| 1 2 | | Trust Account and, in turn, the earrings were indisputably not property of the GK bankruptcy estate. | |
| 3 | 23. | The Trustee filed her reply brief ("Reply") on June 21, 2022. | Adv. ECF Doc. 48. |
| 4 5 6 7 | 24. | On June 28, 2022, the Bankruptcy Court held a hearing on the Turnover Motion and, on July 11, 2022, entered its Order granting the Turnover Motion. | Adv. ECF Docs. 53 (Transcript) and 58 (Order). |
| 8 | 25. | Erika Girardi timely filed a Notice of Appeal on July 25, 2022. | Adv. ECF Doc. 60. |
| 9 10 11 12 | 26. | Erika Girardi did not file a bond on appeal, nor did she seek a stay of implementation of the Court's Order granting the Motion.  The Diamond Earrings were sold at auction on December 7, 2022. | Bankr. ECF Doc. 1543, Exhibit 6. |
| 13 14 | 27. | The Court approved the sale of the diamond earrings on January 23, 2023. | Bankr. ECF Doc. 1568. |
| 15 16 17 18 19 20 21 22 23 24 25 26 | 28. | On May 1, 2023, the District Court issued its order, reversing in part the order of this Court granting the Trustee's Turnover Motion requiring Erika Girardi to turn over to the Trustee diamond earrings that Girardi bought for $750,000 using settlement funds from the Rezulin litigation trust account ("Earrings App. Order"). In so doing, the District Court made the following determinations: (1) that Erika Girardi had standing to prosecute the appeal, because "standing is a doctrine that limits who can bring a suit, and does not limit a party's ability to defend herself when sued; (2) the appeal was not equitably moot; (3) the Turnover Motion was not barred by the statute of limitations or the statute of repose; and the | District Court Case No.: 2:22-CV-05176-DSF; DC ECF Doc. 35, Adv. Doc. 79. *Miller v. Girardi, (In re Keese),* 671 F. Supp. 1053 (2023). |

| | | | |
|---|---|---|---|
| | | Trustee had not met her burden to show that the earrings were estate property because of commingling. | |
| 29. | | The Trustee filed her Opening Brief Addressing Issues Presented by District Court's Remand Order, Declaration of Nicholas R. Troszak, (ECF Doc. 98) and Request for Judicial Notice, (ECF Doc. 99) on October 24, 2023. | Adv. ECF Docs. 98, 99. |
| 30. | | Erika Girardi filed her Opposition to Trustee's Opening Brief Addressing Issues Presented by the District Court's Remand Order, Declaration of Nicholas R. Troszak [Doc.98] and Request for Judicial Notice [Doc. 99] on November 4, 2023. | Adv. ECF Doc. 102. |
| 31. | | The Trustee filed her Reply Brief to Erika Girardi's Opposition on November 11, 2023. | Adv. ECF Doc. 105 |
| 32. | | On January 3, 2024, the Court entered its order continuing the hearing on the Remand Order, allowing Defendant additional time to conduct discovery and setting a briefing schedule for the parties to file Supplemental Briefs and Evidence addressing the issue presented by the Remand Order. | Adv. ECF Docs. 108-110. |
| 33. | | The Trustee filed her Supplemental Brief and Supplemental Declaration of Nicholas R. Troszak in support of her Turnover Motion on August 16, 2024. | Adv. ECF Doc. 124 |
| 34. | | Erika Girardi filed her Opposition of Defendant Erika Girardi to: Trustee's Supplemental Memorandum of Points and Authorities Addressing Issues Presented by District Court's Remand Order [DOC. 124], Declaration Evan Borges and Evidentiary Objections on September 2, 2024. | Adv. ECF Docs. 125, 125-1, 125-2. |
| 35. | | The Trustee filed her Reply to Erika Girardi's Supplemental Opposition, Supplemental RFJN and Responses to Erika | Adv. ECF Docs. 129, 130, 131. |

Trustee's Findings of Fact and Conclusions of Law

| | | |
|---|---|---|
| | Girardi's Evidentiary Objections (Doc. 131) on September 16, 2024. | |
| 36. | The hearing on the Remand Order was held on September 24, 2024 at 10 a.m.  All parties appeared at the hearing. | |
| **E.  The Girardi Keese Comerica IOLTA Trust Account # 6674** | | |
| 37. | On March 26, 2002, Girardi Keese started using a California required IOLTA Trust Account at Comerica Bank, Account # ending in "6674" ("Comerica IOLTA Account # 6674"). | Trustee's Opening Brief Addressing Issues Presented by the District Court's Remand Order; Declaration of Nicholas R. Troszak, executed October 24, 2023. Adv. ECF Doc. 98, ¶ 3. |
| 38. | The Comerica IOLTA Account # 6674 was Girardi Keese's primary IOLTA Account for the vast majority of Girardi Keese cases. | Trustee's Opening Brief Addressing Issues Presented by the District Court's Remand Order; Declaration of Nicholas R. Troszak, executed October 24, 2023 Adv. ECF Doc. 98, ¶ 4. |
| 39. | The Comerica IOLTA was not a single purpose trust account but was one of Girardi Keese's primary IOLTA Trust accounts. | Trustee's Supplemental Memorandum of Points and Authorities Addressing Issues Presented by District Court's Remand Order, Supplemental Declaration of Nicholas R. Troszak, executed August 15, 2024, ECF Doc. 124, Exhibit 6, "Declaration of Nicholas R. Troszak" executed October 24, 2023. |

Trustee's Findings of Fact and Conclusions of Law

### F.  Girardi Keese Commingled Girardi Personal Funds in the Use of Comerica IOLTA Account # 6674

| 40. | Between January 14, 2002, to January 29, 2007 (the day prior to the receipt of the Rezulin settlement funds) deposits were made into the Comerica IOLTA in the amount of $17,631,673.00 attributable to Thomas V. Girardi ("TVG") or his related or affiliated entities. | Trustee's Supplemental Memorandum of Points and Authorities Addressing Issues Presented by District Court's Remand Order, Supplemental Declaration of Nicholas R. Troszak, executed August 15, 2024, Exhibit 4. |
|---|---|---|
| 41. | During the time period April 22, 2002, through December 31, 2010, $29,131,673.47 was deposited into the Comerica IOLTA Account # 6674 that were credited as deposits made by Thomas V. Girardi ("TVG"), or as a TVG loan, or accounted for under the case number 10001, the case number used for Girardi personal transactions. | Trustee's Opening Brief Addressing Issues Presented by District Court's Remand Order and Declaration of Nicholas R. Troszak executed October 24, 2023, Adv. ECF Doc. 98, Exhibit 1. |
| 42. | During the same time period (April 22, 2002, through December 31, 2010), $31,579,332.25 was disbursed from the Comerica IOLTA Account # 6674 described as payments made to TVG, TVG loan, or accounted for under the case number of 10001, the case number used for Girardi personal transactions. | *Id.* Adv. ECF Doc. 98, ¶ 5, Exhibit 1. |
| 43. | The differential between the payments in and payments out of the Comerica IOLTA Account # 6674 attributable to TVG is a negative $ 2,447,658.78. None of the transactions in this calculation were described as a payment for fees or costs. | *Id.* |
| 44. | For the period of time between January 30, 2007, (the date the first settlement payment on the Rezulin matter was received) | *Id.* Adv. ECF Doc. 98, ¶ 6, Exhibits 2-3. |

Trustee's Findings of Fact and Conclusions of Law

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | | through October 27, 2014 (the date of the last payment attributable to Rezulin), checks were issued to G&L Aviation, an entity owned by TVG and Walter Lack. The total amount paid to G&L Aviation was $2,082,849.59. Two of the four payments are accounted for as relating to TVG and GK miscellaneous. The remaining two payments are accounted for as relating to certain GK client cases. | |
| 8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17 | 45. | The following payments were made directly from the Comerica IOLTA Account # 6674 prior the receipt of the Rezulin settlement funds:<br><br>   a.  Check # 40420 dated 4/26/05 payable to G&L Aviation in the amount of $500,000.00.<br>   b.  Check # 13916 dated 06/22/06 payable to G&L Aviation in the amount of $750,000.00.<br>   c.  Check # 13917 dated 06/22/06 payable to Pac Ten Scott Road Associates LLC in the amount of $3,200,000.00. | *Id.* Exhibit 3. |
| 18<br>19 | | **G. Receipt of the Rezulin Settlement Funds and Relevant Transactions After Receipt of the Rezulin Settlement Funds** | |
| 20<br>21<br>22<br>23<br>24<br>25<br>26<br>27 | 46. | On January 30, 2007, a wire transfer deposit was credited to the IOLTA Comerica Trust Account # 6674 in the amount of $64,845,728.14 (January 30, 2007 Deposit"). The description for the deposit, Rezulin Settlement Proceeds. | Trustee's Supplemental Memorandum of Points and Authorities and Declaration of Declaration of Nicholas R. Troszak Adv. ECF Doc. 124, executed August 15, 2024, Exhibit 7.1 Trust Account System (Comerica Trust 6674) Activity Register, p. 193. |

Trustee's Findings of Fact and Conclusions of Law

| 47. | Prior to the Rezulin Settlement Funds deposit, the IOLTA Comerica Trust Account # 6674 had a positive balance of $2,237,179.62. | *Id.* |
|---|---|---|
| 48. | After receipt of the January 30, 2007 deposit, the IOLTA Comerica Trust Account # 6674 had a positive balance of $67,082,907.76. | *Id.* |
| 49. | On January 30, 2007, Girardi Keese withdrew $4 million from the IOLTA Comerica Trust Account # 6674 as reimbursements for costs attributable to Rezulin matter. | Trustee's Supplemental Memorandum of Points and Authorities and Declaration of Nicholas R. Troszak Adv. ECF Doc. 124, executed August 15, 2024, Exhibit 7.1, Comerica IOLTA Register, at p. 571; Exhibit 5, p.1. |
| 50. | On February 13, 2007, Girardi Keese withdrew $1,000,000 from the IOLTA Comerica Trust Account # 6674 as reimbursements for costs. | *Id.* Exhibit 7.1, Comerica IOLTA Register, at p. 571; Exhibit 5, p. 1 |
| | **Girardi's Use of IOLTA Comerica Trust Account # 6674 to Purchase the Diamond Earrings and his Cover-Up of the Same** | |
| 51. | On March 2, 2007, a check was drawn against the IOLTA Comerica Trust Account # 6674 payable to M&M in the amount of $750,000. The description for the check, "Costs" relating to GK case name *Rezulin,* case number 21101. | Declaration of Nicholas R. Troszak executed October 24, 2023, Adv. ECF Doc. 98, Exhibit 3. Trustee's Exhibits and RJFN, (Adv. ECF Doc. 29) Exhibit 5. |
| 52. | The check made payable to M&M was used to purchase a pair of diamond earrings for Erika Girardi. | Trustee's Exhibits and RJFN, (Adv. ECF Doc. 29) Exhibit 5. |
| 53. | TVG represented to the California Franchise Tax Board that he paid $750,000 for the earrings to replace those stolen | Trustee's Exhibits and RJFN, (Adv. ECF Doc. 29) Exhibit 4. |

| | | | |
|---|---|---|---|
| 1<br>2<br>3 | | from his home, and that he "took the funds from my line of credit at Comerica . . . . M&M Jewelers signed an affidavit attesting to the replacement of the stolen earrings. | |
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11 | 54. | Girardi Keese first withdrew fees for the Rezulin matter from the IOLTA Comerica Trust Account # 6674 on May 24, 2007, or approximately 120 days after Girardi Keese received the Rezulin settlement proceeds and withdrew $5 million as reimbursement for costs. | Trustee's Supplemental Memorandum of Points and Authorities and Declaration of Nicholas R. Troszak Adv. ECF Doc. 124, executed August 15, 2024, p. 6 ¶ 14, Exhibit 5, p. 276, Exhibit 7.1 Trust Account System (Comerica Trust 6674) Activity Register, p. 487. |
| 12<br>13<br>14<br>15<br>16 | 55. | The last withdrawal from the IOLTA Comerica Trust Account # 6674 for Girardi Keese fees for the Rezulin matter was made on October 7, 2008, in the amount of $250,000, a year and a half after the Rezulin Settlement Funds had been received. | *Id.*, Exhibit 5, p. 317; Exhibit 7.1. |
| 17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26 | 56. | Depending on the period of time, many Girardi Keese client accounts were out of trust.  As presented in Mr. Troszak's Supp. Decl. (Exhibit 2, page 1) case 29048 *Estate of Mong Qui Sun v DW Tours* was negative in the amount of $4,875,000 (Grand Total "net" negative amount of $7,094,900); case 21101 *Rezulin* was negative in the amount of $2,831,788 (Grand total "net" negative amount of $2,833,663); and, case 25198 *Bextra/Celebrex* was negative in the amount of $1,233,620 (Grand total "net" negative amount of $1,851,279). | Trustee's Supplemental Memorandum of Points and Authorities and Declaration of Nicholas R. Troszak Adv. ECF Doc. 124, executed August 15, 2024, pp. 016-017, ¶ 12, Exhibit 2. |

27
28

Trustee's Findings of Fact and Conclusions of Law

| | | | |
|---|---|---|---|
| 57. | During the time period (January 1, 2002, through November 30, 2013), there are 68 total transactions (16 deposits and 52 disbursements), which indicate commingling of personal TVG funds and disbursements of client trust funds for the benefit of TVG.  The transactions are accounted for as associated or relating to TVG under the case number "10001," case name "TVG," or includes TVG within the transaction description.  The Trust Database accounting records indicate 16 deposits totaling $29,680,472 relating to TVG and 52 disbursements totaling $45,079,332 relating to TVG during this period. | *Id.*, p. 017, ¶ 13, Exhibit 4. |
| 58. | From the settlements reached in the Rezulin matter, case number 21101, a total of $66,380,270 in deposits were received, and a total of $69,213,933 of disbursements were made and assigned to the Rezulin matter.  The disbursements assigned to the Rezulin matter exceeded the deposits assigned to the Rezulin matter by $2,833,663. | *Id.*, p. 18, ¶ 14, Exhibits 2, 5. |
| 59. | All cash transactions for the Rezulin matter, into or out of the IOLTA Comerica Trust Account # 6674 occurred between January 1, 2002, through November 30, 2013, except for two transactions totaling $1,825 in disbursements, which took place during 2014. | *Id.*, p. 17, ¶ 14, Exhibit 5. |
| 60. | The Rezulin Case Card Register is a separate ledger for the case and was part of the Girardi Keese trust accounting system. All but three transactions totaling approximately $51,000 attributable to the Rezulin matter occurred from the Girardi Keese IOLTA Comerica Trust Account # 6674. | *Id.*, p. 17, ¶ 15, Exhibit 5. |

Trustee's Findings of Fact and Conclusions of Law

| 61. | During the period April 22, 2002, through January 2018, $17,631,673 was deposited into the IOLTA Comerica Trust Account # 6674 relating to Girardi or Girardi related entities; and, $21,479,073 was disbursed from the IOLTA Comerica Trust Account # 6674 relating to Girardi or Girardi related entities. | *Id.*, p. 18, ¶ 16, Exhibit 7.1. |
|---|---|---|
| 62. | There were 90 GK client cases that have a "net' negative balance totaling $24,682,028. For example, the 99140 Friendly Valley matter has a "net" negative balance of $4,429,524 (Exhibit 7, page 1). The "net" negative balance decreases to $4,375,522, when including all other Girardi Keese trust accounts. Also, the 21101 Rezulin matter has a "net" negative balance of $ 2,833,662.83. | *Id.*, p. 18, ¶ 16, Exhibit 7.1; Exhibit 5. |
| 63. | Between January 30, 2007 (the date the first settlement payment on the Rezulin matter was received) through October 27, 2014 (the date of the last payment attributable to Rezulin), Girardi Keese issued checks to G&L Aviation, an entity owned by TVG and Walter Lack from the IOLTA Comerica Trust Account # 6674 in the total amount of $2,082,849.59. | *Id.*, p. 19, ¶ 18, Exhibit 8. |
| 64. | Between July 2006 through December 2008, 42 payments from Magnet Consulting Inc. were deposited into the IOLTA Comerica Trust Account # 6674 in the amount of $2,580,000.00. These deposits were accounted for under accounts "10004 Exchange -s/b zero balance" and "10208 MISCELLANEOUS (2008)." | *Id.*, p. 19, ¶ 19, Exhibit 9. |

Trustee's Findings of Fact and Conclusions of Law

| 65. | During the same approximate time period (July 2006 through December 2008) Girardi Keese issued 40 checks from the IOLTA Comerica Trust Account # 6674 totaling $2,580,000 payable to Girardi Financial, Inc., for the same amounts (except for the initial payment to Girardi Financial, Inc., in the amount of $240,000) as the money received from Magnet Consulting Inc.  These disbursements were accounted for similarly to the Magnet Consulting deposits, under accounts "10004 Exchange -s/b zero balance" and "10208 MISCELLANEOUS (2008)." | Id. Exhibit 10. |
| --- | --- | --- |

## CONCLUSIONS OF LAW

**A. California Rules of Professional Conduct**

1.  The California Rules of Professional Conduct ("Rules") regulate professional conduct of attorneys licensed by the State Bar. The Rules are adopted by the Board of Trustees and approved by the California Supreme Court pursuant to statute to protect the public and to promote respect and confidence in the legal profession. The Rules and any related standards adopted by the Board are binding on all attorneys licensed by the State Bar. *See*, State Bar of California website, Rules of Professional Conduct (ca.gov), Introduction.

2.  Current Rule 1.15 "Safekeeping Funds and Property of Clients and Other Persons" was approved by the California Supreme Court effective January 1, 2023.  The current rule superseded Rule 1.15 that became effective November 1, 2018.   Rule 1.15 replaced former Rule 4-100 "Preserving Identity of Funds and Property of a Client" which was enacted in 1992 and remained effective until October 31, 2018.  *See*, Rules, at https://www.calbar.ca.gov/Portals/0/documents/ethics/Publication-250-Volume-1.pdf.

3.  For purposes of addressing the issues presented in the Turnover Motion, Rule 4-100 is controlling.

4.  Rule 4-100 provides in relevant part:

Trustee's Findings of Fact and Conclusions of Law

1    <u>Rule 4-100 of a Client Preserving Identity of Funds and Property</u> (A) All funds

2    received or held for the benefit of clients by a member or law firm, including

3    advances for costs and expenses, shall be deposited in one or more identifiable bank

4    accounts labeled "Trust Account," "Client's Funds Account" or words of similar

5    import, maintained in the State of California, or, with written consent of the client,

6    in any other jurisdiction where there is a substantial relationship between the client

7    or the client's business and the other jurisdiction. No funds belonging to the member,

8    or the law firm shall be deposited therein or otherwise commingled therewith except

9    as follows:

10          (1) Funds reasonably sufficient to pay bank charges.

11          (2) In the case of funds belonging in part to a client and in part presently or

12              potentially to the member or the law firm, the portion belonging to the

13              member or law firm must be withdrawn at the earliest reasonable time after

14              the member's interest in that portion becomes fixed.

15    California Rules of Professional Conduct, Appendix 2, 1992 Rules, p. 205.

16    **B.  The Remand Order**

17       5.   This Motion presents a mix of issues involving federal bankruptcy law and California state

18    law.

19       6.   Federal law applies to the interpretation and application of 11 U.S.C. §§ 502, 542, 544,

20    548, 550, 551, and to issues of federal jurisdiction.

21       7.   On May 1, 2023, the District Court issued its order, [2:22-CV-05176-DSF; DC ECF Doc.

22    35; Adv. Doc. 79. ("D.C. Order") reversing in part and affirming in part the order of this Court

23    granting the Trustee's Turnover Motion [Adv. Doc. 58].

24       8.   The D.C. Order contains the following determinations: (1) that Erika Jayne (Girardi) had

25    standing to prosecute the appeal, because "standing is a doctrine that limits who can bring a suit,

26    and does not limit a party's ability to defend herself when sued (D.C. Order, p. 4); (2) the appeal

27    was not equitably moot (D.C. Order at p. 7);  (3) the Turnover Motion was not barred by the

28

Trustee's Findings of Fact and Conclusions of Law

1    statute of limitations or the statute of repose (*Id.*); and (4) the Trustee had not met her burden to

2    show that the earrings were estate property because of commingling.  [D.C. Order at p. 11]

3        9.    The D.C. Order remanded the Turnover Motion to this Court for further evidentiary

4    proceedings to address the issue of commingling.

5        10. In its order, the District Court made the following factual findings:

6            Trustee has failed to meet her burden to show that the earrings are estate property.

7            The $750,000 used to purchase the earrings came from the RTA. Reply at 20,

8            Turnover Mot. at 6, 8. This was an express trust account that Girardi Keese managed

9            for its Rezulin clients. *Id.* Money that Girardi Keese held in trust for the Rezulin

10           clients was not estate property. *Begier v. I.R.S.*, 496 U.S. 53, 59, 110 S. Ct. 2258, 110

11           L. Ed. 2d 46 (1990) ("Because the debtor does not own an equitable interest in

12           property, he holds in trust for another, that interest is not 'property of the estate.'").

13   *Girardi v. Miller*, 671 F. Supp. 3d 1053 1063-1064 (2023) ("Girardi").

14   **C.  The Rezulin Settlement Funds Were Deposited into Girardi Keese IOLTA Comerica**

15   **Trust Account # 6674, Not in a Separate Trust Account**

16       6.    The District Court's factual finding a separate Rezulin Trust Account exceeded the District

17   Court's authority in its role as a reviewing court.  *Anderson v. City of Bessemer,* 470 U.S. 564,

18   573-74, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985) (Reviewing court oversteps the bounds of its

19   duty under Fed. R. Civ. P. 52(a) if it undertakes to duplicate the role of the lower court. . . .

20   Reviewing courts must constantly have in mind that their function is not to decided factual issues

21   *de novo.*")  *In re Mankin*, 823 F.2d 1296, 1305 (9th Cir. 1987) (citing 28 U.S.C. §§ 157(b)(1), 158(a),

22   (c)) (The decision of a bankruptcy judge is reviewable by an Article III judge only by an appeal governed

23   by the same rules applicable to appeals taken to the courts of appeals from the district courts.")  The

24   District Court's finding of fact is not binding on this Court.

25       7.    The IOLTA Comerica Trust Account # 6674 was not a single purpose trust account.

26       8.    The IOLTA Comerica Trust Account # 6674 was not an express trust account that Girardi

27   Keese used solely for the Rezulin clients.

28

9.   The IOLTA Comerica Trust Account # 6674 was the account used by Girardi Keese for all of the cash transactions for the Rezulin matter # and for the vast majority of Girardi Keese client transactions for the period of time 2002 through 2018.

10.   All deposits for the Rezulin matter, and payments accounted for as payments from the Rezulin matter went into or out of the IOLTA Comerica Trust Account # 6674 between January 30, 2007, through November 30, 2013, except for two transactions totaling $1,825 in disbursements, which took place during 2014.

11.   The District Court's factual determination that there was an "express trust account that Girardi Keese managed for its Rezulin clients" is not supported by the evidence presented on Remand.

**D.  The Doctrine of Judicial Estoppel is Not Applicable as a Defense to the Turnover Motion**

12.   Erika Girardi's argument is that this Court should use its discretion and adopt the doctrine of judicial estoppel as a bar to the Trustee's evidence is not well taken and is rejected.

13. Judicial estoppel, also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local* 343, 94 F.3d 597, 600 (9th Cir. 1966).  It is an equitable doctrine invoked by a court at its discretion to protect against a litigant playing fast and loose with the courts. Id. (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). In determining whether to apply the doctrine, a court should consider: "(1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position; and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.'" *In re Hoopai*, 581 F.3d 1090, 1097 (9th Cir. 2009) quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) ("*New Hampshire*"). A key inquiry is whether allowing a party to take inconsistent positions would threaten judicial integrity. *See*, *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783–86 (9th Cir.2001) (invoking

-17-

judicial estoppel "to protect the integrity of the bankruptcy process"); *see also*, *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993, (9th Cir.2012) (explaining that judicial estoppel protects "the dignity of judicial proceedings"). These factors are not "inflexible prerequisites" or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire* at 532 U.S. at 751.

14. Judicial Estoppel is an equitable doctrine that is "invoked by a court at its discretion." *New Hampshire,* 532 U.S. at 750 (emphasis added). "[C]ourts have uniformly recognized that the purpose of judicial estoppel is 'to protect the integrity of the judicial process,' ... by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment." [*Id.*]

15.  An evidentiary hearing was contemplated by the District Court's remand order for further proceedings.

16. There was nothing in anything submitted to this Court by the Trustee that causes prejudice to the Court. This is not a prior case but the same case after a remand.

17.   The Trustee did not take inconsistent positions in this case. However, even assuming *arguendo* that occurred, which it did not, the allegedly inconsistent positions offered by Erika Girardi do not seriously threaten judicial integrity.  *New Hampshire*, 532 U.S. at 750–51 (citation omitted ") (Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,'... and thus poses little threat to judicial integrity."); *see also*, *Masayesva v. Hale,* 118 F.3d 1371, 1382 (9th Cir.1997) (affirming District Court's rejection of judicial estoppel where "no court ever adopted the original ... position").

18.   The District Court specifically remanded for further evidentiary proceedings. In contrast, the "textbook case" for judicial estoppel occurs when a party gains a financial advantage by successfully taking one position in litigation and then later taking an inconsistent position to obtain another financial advantage in a different litigation. *See*, *Milton H. Greene Archives, Inc.,* 692 F.3d at 1000.

19. Given the District Court reversed and remanded this Court's approval of the Turnover Motion, there is no risk that inconsistent court determinations will allow the Trustee to have it both ways on the merits or obtain inconsistent financial or legal advantages.  Having not accepted either position yet, courts are loathe to foreclose a resolution on the merits. Cf. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir.1986) (noting "the strong policy ... favoring decisions on the merits") (citation omitted). This factor weighs against judicial estoppel.

20. Erika Girardi's argument that statements made by counsel during argument are admissions is without legal support. *Barcamerica Intern. USA Trust v. Tyfield Importers, Inc.,* 289 F.3d 589, 593 n.4 (9th Cir. 2002) (Statements made by counsel during hearings are not evidence); *EOTT Energy Operating Ltd. Partnership v. Winterthur Swiss Ins. Co.,* 257 F.3d 992, 999 (9th Cir. 2001) (Counsel's assertions made at oral argument are not part of the factual record).

21. To the extent that Trustee's counsel made statements during oral argument that are contrary to the evidence presented during the remand hearings, the statements are not evidence.

22. The Court finds the facts of this case do not meet any of the requirements for judicial estoppel.  Further, given the nature of these proceedings, and finding no harm would result from allowing additional evidence on the issue of commingling, the Court exercises its discretion and will not apply the doctrine judicial estoppel to these proceedings.

**C.  The Preponderance of Evidence Established Commingling Between 2006 through 2008 in the Use of the IOLTA Comerica Trust Account # 6674**

23. Commingling occurs when a client's money is intermingled with that of his attorney and its separate identity lost so that it may be used for the attorney's personal expenses or subjected to the claims of his creditors. Cal. State Bar Rule of Prof. Conduct Rule 4-100(A) requires that all funds received or held for the benefit of clients by an attorney be deposited in one or more identifiable bank accounts labelled Trust Account, Client's Funds Account or words of similar import and, with limited exceptions, no funds belonging to the attorney should be deposited therein or otherwise commingled therewith.

Trustee's Findings of Fact and Conclusions of Law

24.   The rule absolutely bars use of the trust account for personal purposes, even if client funds are not on deposit. *Arm v. State Bar,* 50 Cal. 3d 763 (1990).

25.   Commingling occurs when an attorney deposits his personal funds into a trust account together with funds belonging to his clients. *Jackson v. State Bar,* 25 Cal.3d 398, 404 (1979). *Vaughn v. State Bar,* 6 Cal.3d 847, 858 (1972) (Commingling, is established where a client's money is intermingled with that of his attorney in such a way that it may be used by the attorney for his personal expenses).  *Doyle v. State Bar,* 32 Cal. 3d 12 (1982) (Rule absolutely bars use of the Trust Account for personal purposes).

**i.      Girardi Keese Commingle Funds in the IOLTA Comerica Trust Account # 6674 when it deposited Girardi's Personal Funds in the IOLTA Comerica Trust Account # 6674 and then Made Payments to Girardi Personally and his Related and Affiliated Entities**

26.  Commingling in the use of the IOLTA Comerica Trust Account # 6674 occurred when Girardi Keese deposited Girardi's personal funds into the IOLTA Comerica Trust Account # 6674 unrelated to fees and costs before and after receipt of the Rezulin funds.

27.  Commingling in the use of the IOLTA Comerica Trust Account # 6674 occurred when Girardi Keese made payments from the IOLTA Comerica Trust Account # 6674 to Girardi or Girardi related or affiliated entities, unrelated to fees and costs before and after receipt of the Rezulin funds. *Jackson v. State Bar,* 25 Cal.3d 398, 404 (1979).  *Vaughn v. State Bar,* 6 Cal.3d 847, 858 (1972) (Commingling, is established where a client's money is intermingled with that of his attorney in such a way that it may be used by the attorney for his personal expenses).

**ii.      Girardi Keese Failure to Withdraw Its Fees and Costs for the Rezulin Matter Within a Reasonable Period of Time**

28.  All funds in an IOLTA Trust Account that belong to the attorney for payment of fees and costs must be withdrawn at the earliest reasonable time after the attorney's right to payment becomes fixed. Cal. State Bar Rule of Prof. Conduct rule 4-100(A)(2)  *In re the Matter of Heiner, 1 Cal. State Bar. Ct. Rptr. 301, 311, 315 (1990) ("Heiner").*

Trustee's Findings of Fact and Conclusions of Law

29.  Girardi Keese withdrew $4 million for repayment of costs incurred in the Rezulin matter on January 30, 2007.  The withdrawal creates the inference that January 30, 2007 was the date when Girardi Keese was entitled to withdraw its fees and costs from the Rezulin Settlement Proceeds.  *Giacalone v. Malget (In re Malget),* 165 B.R. 933, 937 (Bankr. S.D. Cal. 1994), citing Cal. Ev. Code § 600(b) (West 1994) (An inference is a fact which the court may find as the logical result of other facts.)  *In re Heath,* 2008 Bankr. LEXIS 2926, *11 (Bankr. E.D. Cal. 2008) citing to *In re Malget*, 165 B.R. at 937 (Inferences are an indispensable tool of logical analysis, and a finder of fact may draw reasonable inferences that are supported by evidence of sufficient probative value to form a rational basis for the court's conclusion.

30.  Commingling is assumed where an attorney did not withdraw his fees for five months after receipt and then withdrew his fees over a four-month period of time (April through July 1985).  *Heiner* at 315.

31.  Girardi Keese withdrew $6 million in costs attributable to the Rezulin Settlement between January 30, 2007 and February 16, 2007.  This evidence establishes January 30, 2007 as the date Girardi Keese believed it was entitled to receive payment for its Rezulin representation.

32.  Girardi Keese first withdrew fees for the Rezulin matter from the IOLTA Comerica Trust Account # 6674 on May 24, 2007, ($500,000), approximately 120 days after Girardi Keese received the Rezulin settlement proceeds and withdrew $6 million as reimbursement for costs.

33. GK then withdrew the balance of its fees in several installments over a year and a half time period, with the last withdrawal occurring on October 7, 2008 ($250,000).

34.  This extended retention by Girardi Keese of its Rezulin Settlement fees in the IOLTA Comerica Trust Account # 6674, is commingling as a matter of law. *See, e.g*., *Arm, Heiner.*

35.  Erika. Girardi's argument that evidence of commingling must be limited to a showing that the commingling occurred on March 2, 2007, the day the check was issued for the diamond earrings is not supportable and is rejected.  Erika Girardi failed to cite any 9th Circuit authority for her position. Rather, her only legal authority is a Massachusetts bankruptcy court decision, *Weiner v. A.G. Minzer Supply Corp. (In re UDI Corp),* 301 B.R. 104 ("Weiner"). This decision is not

-21-

precedent and cannot be used for such purposes. *Hasbrouck v. Texaco, Inc.,* 663 F.2d 930,933 (9th Cir. 1981) ("District courts are bound by the law of their own circuit . . . no matter how egregiously in error they may feel their own circuit to be.")

36. Contrary to *Weiner,* the California Supreme Court uses an expanded time period for determining commingling. *In re the Matter of Michael A. Doran*, 3 Cal. State Bar Ct. Rptr. 871, 876, (1998) ("*Doran*") cited with approval by Mrs. Girardi (SO at 18:9-16):

> The evidence is clear and convincing that respondent is culpable of repeated violations of rule 4-100. From September 1992 through August 1995 he deposited personal funds in CTA1 and CTA2 and used those accounts for his personal expenses. Such conduct constituted commingling within the meaning of rule 4-100 even where there were no client funds in the trust account.

37. The test for commingling is not limited to a single date as Mrs. Girardi argues. Rather, as presented in *Doran*, commingling can take place over an extended period of time, as is the case at bar.

38. The Trustee's evidence establishes that GK failed to withdraw its fees earned for the Rezulin matter for four months after receiving the funds, and then withdrew its fees for the Rezulin matter in installments over a year and a half time period. *Doran* compels a finding that systematic commingling occurred before and after the Rezulin settlement funds were received and when TVG used $750,000 in Trust Account funds to purchase the diamond earrings. *See, e.g.*, *In re the Matter of Heiner*, 1 Cal. State Bar. Ct. Rptr. 301, 311 ("Heiner") (Commingling is presumed to have taken place where the attorney first started to withdraw his fees from a trust account four months after receipt of the funds; and, then withdrew fees over a five-month period of time).

39. Girardi Keese failed to comply with the mandate of Rule 4-100 when it failed to withdraw its fees within a reasonable period of time as interpreted by the California Supreme Court in *Heiner*, given it waited four months to first withdraw fees earned on the Rezulin matter (May 25, 2007) from the IOLTA Comerica Trust Account # 6674. Girardi Keese then took the remainder of

-22-

its fees from time to time over 1-1/2 years.  The last withdrawal from the IOLTA Comerica Trust

Account # 6674, that was recorded as a payment for fees for services performed for the Rezulin

matter occurred on October 7, 2008 ($250,000).  Accordingly, Girardi Keese failed to withdraw its

Rezulin fees and costs within a reasonable period of time. *Heiner* at 315.  Girardi Keese

commingled its funds with its clients before the receipt of the Rezulin Settlement Funds and after

receipt of the Rezulin Settlement Funds, by failing to withdraw its fees and costs for the Rezulin

Matter within a reasonable period of time.

40.   The preponderance of the evidence demonstrates that commingling occurred in the

administration of the IOLTA Comerica Trust Account # 6674 before and after receipt of the

Rezulin Settlement Funds.  Further the IOLTA Comerica Trust Account # 6674 had a positive

balance of $2,237,179.62 just prior to the receipt of the Rezulin Settlement Funds.  Accordingly,

the burden of tracing the Rezulin funds to the payment of the diamond hearings fell on Erika

Girardi to establish.  *Danning v. Bozek (In re Bullion Reserve of N. Am.*), 836 F.2d 1214, 1217-

1218 (9th Cir. 1988) (Holding a creditor bore the burden to trace commingled funds from a trust

and show they were not property of the debtor) (citations omitted); *see also*, *Taylor Assocs. v.*

*Diamant (In re Advent Mgmt. Corp.),* 104 F.3d 293, 294 (9th Cir. 1997) ("Under the strict tracing

standard applicable to bankruptcy cases involving commingled funds, the [creditor] bears the

burden of tracing the alleged trust property . . . . If the appellant fails to trace the funds, the court

must presume that the funds constitute an interest of the debtor in property").

41.   Erika Girardi did not present any evidence on the issue of tracing.  She failed to present

any expert testimony whatsoever.  Erika Girardi's only effort to refute the Trustee's evidence and

testimony of the Trustee's expert, Nicholas R. Troszak, was by way of the evidentiary objection

Erika Girardi filed with her Supplemental Memorandum of Points and Authorities in Opposition

to the Trustee's Turnover Motion.  [Adv. ECF Doc. 124].  As presented by the Trustee in her

Response to Erika Girardi's Evidentiary Objections, (Adv. ECF Doc. 131) and based upon this

Court's independent review of the evidentiary objections, the Court finds Erika Girardi's

evidentiary objections and each and every one are denied in their entirety.

42.    Erika Girardi also reprises her argument that the Statute of Limitations and Statute of Repose precludes the granting of the Trustee's Turnover Motion. This Court previously rejected this argument.  The Court's decision on these issues was affirmed on appeal by the District Court. *See*, District Court Order, DC ECF Doc. 35, p. 17-18, Adv. ECF Doc. 80.  Erika Girardi's further argument on these issues is subject to the doctrine of the law of the case.  For the doctrine [of law of the case] to apply, the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'" *Lower Elwha Band of S'Klallams v. Lummi Indian Tribe,* 235 F.3d 443, 452 (9th Cir. 2000) (citation omitted).  Moreover, "[a]pplication of the doctrine is discretionary." *Id.* (citation omitted). "The 'law of the case acts as a bar only when the issue in question was actually considered and decided by the first court.'" *United Steelworkers of America v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.,* 512 F.3d 555, 564 (9th Cir. 2008) (citation omitted).  Independent of the "law of the case" Erika Girardi's position on the Statute of Limitations and Statute of Repose is rejected. Neither preclude the Trustee from pursuing the relief requested by the Trustee in the Turnover Motion.

43. The Court, having been fully advised in the premises as established by the findings of fact and conclusions of law presented above, the Court hereby finds that the proceeds from the sale of the Diamond Earrings are property of the estate.

The Trustee's Turnover Motion is hereby granted.

\* \* \*

1

2    Dated:  October 9, 2024                     Respectfully Submitted,

3                                                JENKINS MULLIGAN & GABRIEL LLP

4

5

6

7    By:  _____
            Larry W. Gabriel

8    Special Litigation Counsel for Plaintiff, Elissa D. Miller
     Chapter 7 Trustee for the Estate of Girardi Keese

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   Date: October 23, 2024

24   _____

25   Barry Russell
     United States Bankruptcy Judge

26

27

28

Trustee's Findings of Fact and Conclusions of Law